1

2
Todd M. Schneider (SBN 158253)
Matthew S. Weiler (SBN 236052)

3
Sunny Sarkis (SBN 258073)
Mark F. Ram (SBN 294050)

4
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**

5
2000 Powell Street, Suite 1400
Emeryville, CA 94608

6
Telephone: (415) 421-7100

7
TSchneider@schneiderwallace.com
MWeiler@schneiderwallace.com

8
MRam@schneiderwallace.com

Jason H. Kim (SBN 220279)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
300 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071
Telephone: (415) 421-7100
JKim@schneiderwallace.com

9

10
**UNITED STATES DISTRICT COURT**

11
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

13
 MARK YOUNG, on behalf of himself and all
others similarly situated,

14

15
Plaintiff,

16
v.

17
SOLANA LABS, INC.;
THE SOLANA FOUNDATION;

18
ANATOLY YAKOVENKO; MULTICOIN
CAPITAL MANAGEMENT LLC; KYLE

19
SAMANI; and FALCONX LLC,

20
Defendants.

21

Case No.  3:22-cv-03912-JD

**PLAINTIFF'S NOTICE OF MOTION AND**
**MOTION TO SERVE AS LEAD PLAINTIFF**
**AND TO APPOINT LEAD COUNSEL**

HEARING DATE: October 13, 2022
TIME:  10:00 A.M.
COURTROOM: 11

**HONORABLE JUDGE JAMES DONATO**

22

23

24

25

26

27

28

MOTION TO SERVE AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL

1       **TO: ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD, PLEASE**

2   **TAKE NOTICE** that on October 13, 2022, at 10 a.m., or as soon thereafter as the matter may be heard

3   in Courtroom 11 of the United States District Court for the Northern District of California, San

4   Francisco Courthouse, 450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102, before

5   the Honorable James Donato, plaintiff Mark Young ("Movant") will and hereby does move this Court

6   pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 77z-1, for

7   an order: (1) Appointing Movant as lead plaintiff; and (2) Approving Movant's selection of Schneider

8   Wallace Cottrell Konecky LLP ("Schneider Wallace") as lead counsel for the proposed class.

9       This Motion is made on the grounds that Movant timely filed this Motion, possesses a

10   substantial financial interest in the relief sought by the class, and qualifies as the "most adequate

11   plaintiff" under 15 U.S.C. § 77z-1(a)(3)(B). Movant meets the requirements of Rule 23 of the Federal

12   Rules of Civil Procedure because his claims are typical of the claims of the class and he will fairly and

13   adequately represent the interests of the class. Further, Movant has selected and retained counsel with

14   extensive experience in prosecuting securities fraud and class actions to serve as lead counsel. Movant

15   thus seeks this Court's approval of his selection of counsel pursuant to 15 U.S.C. § 77z1(a)(3)(B)(v).

16       This Motion is based upon the instant Motion and Notice thereof, the Memorandum of Points

17   and Authorities in support thereof, the Declaration of Sunny S. Sarkis ("Sarkis Decl."), the Proposed

18   Order granting the same, pleadings and other files herein, and such other written or oral arguments as

19   may be permitted by the Court.

20       Dated:  September 6, 2022

21

22                                       Respectfully submitted,

23                                       */s/ Matthew S. Weiler*

                                      Todd M. Schneider (SBN 158253)

24                                       Jason H. Kim (SBN 220279)

                                      Matthew S. Weiler (SBN 236052)

25                                       Sunny S. Sarkis (SBN 258073)

                                      Mark F. Ram (SBN 294050)

26                                       **SCHNEIDER WALLACE**

                                      **COTTRELL KONECKY LLP**

27                                       2000 Powell Street, Suite 1400

                                      Emeryville, CA 94608

28   MOTION TO SERVE AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL

                            Case No. 3:22-cv-03912-JD

                                          1

Telephone: (415) 421-7100
TSchneider@schneiderwallace.com
MWeiler@schneiderwallace.com
SSarkis@schneiderwallace.com
MRam@schneiderwallace.com

Jason H. Kim (SBN 220279)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
300 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071
Telephone: (415) 421-7100
JKim@schneiderwallace.com

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

### I.    INTRODUCTION

3       This securities class action lawsuit arises from Movant's complaint, filed with this Court on

4   July 1, 2022, on behalf of purchasers of SOL tokens ("SOL") between March 24, 2020 and the present,

5   inclusive (the "Class Period"). This action brings claims pursuant to: (1) §§ 5, 12(a)(1), and 15 of the

6   Securities Act of 1933 (the "Securities Act"); and (2) §§ 25110 and 25503 of the California

7   Corporations Code.

8       Pursuant to the PSLRA, the Court "shall appoint the most adequate plaintiff as lead plaintiff."

9   *See* 15 U.S.C. § 77z-1(a)(3)(B)(ii). The lead plaintiff is the "member or members of the purported

10   plaintiff class that the court determines to be most capable of adequately representing the interests of

11   class members." 15 U.S.C. § 77z-1(a)(3)(B)(i). Here, Movant should be appointed lead plaintiff

12   because he: (1) Timely filed this Motion; (2) Has a substantial financial interest in the outcome of this

13   litigation; and (3) Will adequately represent the interests of the class. *See* 15 U.S.C. §

14   77z1(a)(3)(B)(iii). *See* Sarkis Decl., Ex. A. In addition, Movant's selection of Schneider Wallace to

15   serve as lead counsel should be approved because Schneider Wallace possesses extensive experience

16   prosecuting federal securities class actions and will adequately represent the interests of all class

17   members.

18

### II.    STATEMENT OF ISSUES TO BE DECIDED

19       1.    Whether the Court should appoint plaintiff Mark Young as lead plaintiff pursuant to 15

20   U.S.C. § 77z-1(a)(3)(B); and

21       2.    Whether the Court should approve plaintiff Mark Young's selection of counsel to serve

22   as lead counsel for the class, pursuant to 15 U.S.C. § 77z1(a)(3)(B)(v).

23

### III.    BRIEF SUMMARY OF THE ACTION

24

25

26

27

28

MOTION TO SERVE AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL
Case No. 3:22-cv-03912-JD

The U.S. Securities and Exchange Commission has made it clear that digital tokens, such as SOL, often constitute "securities and may not be lawfully sold without registration with the SEC or pursuant to an exemption from registration."[1]

The Complaint alleges that Solana Labs Inc., the Solana Foundation, and certain executives and other insiders promoted, offered, and sold hundreds of millions of dollars' worth of SOL to the general public, yet neglected to register any SOL as securities in violation of federal and California law. The Complaint alleges that Defendants are therefore liable in their capacity as issuers, statutory sellers, and/or direct or indirect offerors of SOL.

Based on the foregoing facts, on July 1, 2022, Plaintiff Mark Young commenced this action against Defendants, asserting claims on behalf of himself and the proposed Class. Count I alleges claims for violations of §§ 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e, 77l(a)(1) for unlawful use of means or instruments of transportation or communication in interstate commerce or the mails for the purposes of offering, selling, or delivering of unregistered securities in direct violation of §§ 5(a) and 5(c) of the Securities Act. Count II alleges claims against individual defendants Anatoly Yakovenko and Kyle Samani under § 15 of the Securities Act, 15 U.S.C. § 77o for control person liability. Count III provides all Defendants violated §§ 25110 and 25503 of the California Corporations Code for the sale of unregistered securities.

On July 6, 2022, Roche Freedman and Schneider Wallace issued a press release informing investors and prospective plaintiffs of the pending action against Defendants. (*See* Dkt. No. 20-1.) The notice summarized the allegations and notified investors that if they wish to serve as lead plaintiff, they must move the Court no later than September 6, 2022. *Id.*

## IV.   ARGUMENT

### A.   Movant is the Most Adequate Plaintiff and Should Be Appointed as Lead Plaintiff.

The PSLRA establishes the procedures for the appointment of a lead plaintiff in "each private action arising under [the Securities Act] that is brought as a plaintiff class action pursuant to the

---

[1] *See* Investor Bulletin: Initial Coin Offerings (July 25, 2017), available at https://www.sec.gov/oiea/investor-alerts-and-bulletins/ib_coinofferings (last visited August 5, 2022).

1   Federal Rules of Civil Procedure" ("Rules") 15 U.S.C. § 77z-1(a)(1); *see also* 15 U.S.C. § 77z-

2   1(a)(3)(B)(i). First, pendency of the action must be publicized in a widely circulated national business-

3   oriented publication or wire service not later than twenty (20) days after filing of the first complaint.

4   15 U.S.C. § 77z1(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that

5   the most adequate plaintiff is the person or the group of persons that:

6          (aa)     Has either filed the complaint or made a motion in response to a notice . . .;

7          (bb)     In the determination of the court, has the largest financial interest in the relief sought

8   by the class; and

9          (cc)     Otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); *In*

10  *re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (discussing application of identical standard

11  under 15 U.S.C. § 78u-4(a)(3)(B)). Movant meets each of these requirements and should be appointed

12  Lead Plaintiff.

13                    **1.  This Motion is Timely.**

14        The statutory notice of this action was published on July 6, 2022, advising class members of:

15  (1) The pendency of the action; (2) The claims asserted therein; (3) The proposed class period; and (4)

16  The right to move the Court to be appointed within sixty (60) days. *See* Dkt. Nos. 20 & 20-1; Sarkis

17  Decl., Ex. A. Because this Motion is timely filed, Movant is entitled to be considered for appointment

18  as lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(aa).

19            **2.  Movant Filed the First and Only Complaint in this Case.**

20        On July 1, 2022, Movant filed the instant action in the United States District Court for the

21  Northern District of California. To date, no other party has come forward with a Complaint against

22  the Defendants. All other class members, and complaints for that matter, will necessarily rely on

23  Movant's work and formulation of legal theories in his Complaint. No race to the courthouse has

24  occurred, and over two (2) months have passed since Movant filed the initial Complaint.

25
26            **3.  Movant Has the Largest Financial Interest in the Relief Sought by the
                   Class.**

27

28
     MOTION TO SERVE AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL
                        Case No. 3:22-cv-03912-JD

1    Movant is aware of no other plaintiff who has filed suit concerning Solana securities and

2  believes he has suffered the largest alleged losses, and therefore has the largest financial interest in

3  this matter. "The Ninth Circuit has not provided clear guidance on what metric district courts should

4  use in determining which potential plaintiff has the largest financial interest in a case, noting only that

5  'the court may select accounting methods that are both rational and consistently applied.'" *Xu v.*

6  *FibroGen, Inc.*, No. 21-cv-02623-EMC, 2021 U.S. Dist. LEXIS 164034, at *13 (N.D. Cal. Aug. 30,

7  2021) (quoting *Mulligan v. Impax Labs., Inc.*, No. C-13-1037 EMC, 2013 U.S. Dist. LEXIS 93119, at

8  *14 (N.D. Cal. July 2, 2013)). "Courts in this district primarily have relied on two methods: '[m]ethods

9  in the first category equate financial interest with actual economic losses suffered.'" *In re Lyft Secs.*

10  *Litig.*, No. 19-cv-02690-HSG, 2020 U.S. Dist. LEXIS 37606, at *10 (N.D. Cal. Mar. 4, 2020) (quoting

11  *Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813, at *12

12  (N.D. Cal. Feb. 15, 2011)). "In contrast, a second category of methods equates largest financial interest

13  with potential recovery." *Id.* (quoting *Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *12).

14    "Within the first category, courts have used the *Lax-Olsten* four-factor test to approximate

15  economic losses." *Lyft*, 2020 U.S. Dist. LEXIS 37606, at *10. "These four factors are '(1) the number

16  of shares purchased during the class period; (2) the number of net shares purchased during the class

17  period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered

18  during the class period.'" *Id.* (quoting *In re Olsten Corp. Securities Litig.*, 3 F. Supp. 2d 286, 295

19  (E.D.N.Y. 1998)). "Courts then consider the totality of these factors in order to determine an

20  approximate loss for each movant." *Id.*

21    With respect to the second category—potential recovery—some courts endeavor to exclude

22  "economic losses that are not caused by a defendant's misrepresentations." *Xu*, 2021 U.S. Dist. LEXIS

23  164034, at *13-*14; *compare Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *17 ("[R]ecent Ninth

24  Circuit authority favors considering loss causation on a motion for appointment as lead plaintiff."),

25  *with Melucci v. Corcept Therapeutics Inc.*, No. 19-CV-01372-LHK, 2019 U.S. Dist. LEXIS 173932,

26  at *11 (N.D. Cal. Oct. 7, 2019) ("Assessing potential recovery in a case involving gradual disclosures

27  would require fact-intensive loss causation inquiries that are not amenable to analysis at this stage of

28

1    the proceedings."). Courts adopting this approach "have chosen 'not to consider losses resulting from

2    stock trades that occurred prior to any disclosure of the defendant's fraud' when evaluating potential

3    plaintiffs' financial interests in the litigation." *Xu*, 2021 U.S. Dist. LEXIS 164034, at *14 (quoting

4    *Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at *15).

5        As evidenced by his PSLRA Certification, Movant purchased 1007.48 SOL unregistered

6    tokens in the approximate amount of $117,696.82. *See* Sarkis Decl., Ex. B. Movant is aware of no

7    other applicant with as large of an interest.

8                    **4.   Movant Satisfies Rule 23's Typicality and Adequacy Requirements.**

9        In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise

10   satisf[y] the requirements of Rule 23." 15 U.S.C. § 77z1(a)(3)(B)(iii)(I)(cc). Rule 23 requires that "the

11   claims or defenses of the representative parties are typical of the claims or defenses of the class; and

12   [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R.

13   Civ. P. 23(a)(3)-(4); *Cavanaugh*, 306 F.3d at 730 (focusing "in particular" on typicality and adequacy

14   at the lead plaintiff stage). At this stage of litigation, when making a determination regarding movant's

15   satisfaction of Rule 23, the Court need not raise its inquiry to the level required when ruling on a

16   motion for class certification; instead, a *prima facie* showing is sufficient. *Osher v. Guess?, Inc.*, No.

17   CV01-00871 LGB(RNBX), 2001 WL 861694, at *3 (C.D. Cal. Apr. 26, 2001). Further, at this stage,

18   "[t]he typicality and adequacy requirements of Rule 23 are the main focus . . ." and "[e]xamination of

19   the remaining requirements [of Rule 23 are] deferred until the lead plaintiff moves for class

20   certification." *Richardson v. TVIA*, Inc., No. 06-cv-06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal.

21   Apr. 16, 2007) (citing In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002)).

22       "Typicality asks whether 'the claims or defenses of the representative parties are typical of the

23   claims or defenses of the class.'" *Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS

24   57559, at *16 (N.D. Cal. Apr. 28, 2006) (quoting Fed. R. Civ. P. 23(a)(3)). The adequacy requirement

25   "inquires whether 'the representative parties will fairly and adequately protect the interests of the

26   class.'" *Id*. (quoting Fed. R. Civ. P. 23(a)(4)).

27

28

1    Here, like all other members of the class, Movants purchased unregistered SOL and suffered

2    harm. *See* Sarkis Decl., Ex. B. In addition, Movant's substantial stake in the outcome of the case

3    indicates he has the requisite incentive to vigorously represent the class's claims. Moreover, Movant

4    is unaware of any conflicts between his claims and those asserted on behalf of the putative class. Nor

5    is Movant subject to any unique defenses. Finally, as discussed below, Movants has also selected

6    qualified counsel experienced in securities litigation and class actions.

7    Movant's common interests shared with the class, substantial financial interest in the litigation,

8    and selection of qualified counsel demonstrate that he satisfies the Rule 23 inquiry.

9    **B.    The Court Should Approve of Movant's Selection of Counsel.**

10    The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the

11    Court's approval. *See* 15 U.S.C. § 77z-1(a)(3)(B)(v). The Court should not disturb Movant's choice

12    of counsel unless it is necessary to protect the interests of the class. *In re Cohen*, 586 F.3d 703, 711-

13    12 (9th Cir. 2009); *Cavanaugh*, 306 F.3d at 732-35. Movant has selected Schneider Wallace to serve

14    as lead counsel in this case.

15    Rule 23(g) provides further guidance on the appointment and adequacy of class counsel.

16    "When one applicant seeks appointment as class counsel, the court may appoint that applicant only if

17    the applicant is adequate under Rule 23(g)(1) and (4)." Fed. R. Civ. P. 23(g)(2). Pursuant to Rule

18    23(g)(4), "[c]lass counsel must fairly and adequately represent the interests of the class." In pertinent

19    part, Rule 23(g)(1) requires that in appointing class counsel, this Court:

20    (A) must consider:

21    (i) The work counsel has done in identifying or investigating potential claims in the

22    action;

23    (ii) Counsel's experience in handling class actions, other complex litigation, and the

24    types of claims asserted in the action;

25    (iii) Counsel's knowledge of the applicable law; and

26    (iv) The resources that counsel will commit to representing the class; [and]

27

28    MOTION TO SERVE AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL
Case No. 3:22-cv-03912-JD

1    (B) May consider any other matter pertinent to counsel's ability to fairly and adequately

2    represent the interests of the class.

3        To determine, for class certification purposes, whether representative parties will protect the

4    interests of the class fairly and adequately, the court asks whether the representative plaintiffs and their

5    counsel have any conflicts of interest with other class members and whether representative plaintiffs

6    and their counsel will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327

7    F.3d 938, 957 (9th Cir. 2003); *In re Mego Fin. Corp. Securities Litig.*, 213 F.3d 454, 462 (9th Cir.

8    2000) (same). In the Rule 23 inquiry, the burden rests on class counsel to establish that representation

9    of the class will be adequate, and class counsel will prosecute the action vigorously. *Farms v. Calcot,*

10   *Ltd.*, No. CV-F-07-0464 LJO DLB, 2010 U.S. Dist. LEXIS 93548, at *17 (E.D. Cal. Aug. 23, 2010).

11       The adequacy of representation requirement "is often more difficult to resolve" than the other

12   Fed. R. Civ. P. 23(a) requirements, because "whenever certain named persons purport to represent

13   others without their knowledge or consent, the court must be assured that the named parties are

14   qualified and capable of fully pursuing the common goals of the class without ... conflicts of interests.

15   That requires competent and experienced counsel able to conduct the litigation." *Eggleston v. Chicago*

16   *Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 896 (7th Cir. 1981). With respect to the

17   qualifications of counsel, the court will consider any prior failure to proceed in the best interests of

18   putative class in litigation as well as counsel's general qualifications. *Sullivan v. Chase Inv. Servs. of*

19   *Boston, Inc.*, 79 F.R.D. 246, 258 (N.D. Cal. 1979).

20       A lawyer's unethical conduct, both before and during the litigation in question, is relevant to

21   determining whether counsel is adequate under Rule 23. *See Creative Montessori Learning Ctrs. v.*

22   *Ashford Gear LLC*, 662 F.3d 913, 918 (7th Cir. 2011); *Yumul v. Smart Balance, Inc.*, No. 10-00927,

23   2010 U.S. Dist. LEXIS 116960, at *18 (C.D. Cal. Oct. 8, 2010) ("In determining whether to certify a

24   class in this case, however, unethical conduct by plaintiff's counsel would be a relevant

25   consideration."); *Walter v. Palisades Collection, LLC*, No. 06-378, 2010 U.S. Dist. LEXIS 7374, at

26   *31 (E.D. Pa. Jan. 26, 2010) ("Prior unethical conduct is a relevant consideration pursuant to

27   certification under Rule 23(a)(4)."); *Bogner v. Masari Investments, LLC*, 257 F.R.D. 529, 533 (D.

28

MOTION TO SERVE AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL
Case No. 3:22-cv-03912-JD
9

1    Ariz. 2009) (examining prior ethical complaints against proposed class counsel in a FDCPA class

2    action). Not every ethical violation, however, produces inadequacy under Rule 23. *See Creative*

3    *Montessori*, 662 F.3d at 917 (finding counsel adequate despite their obtaining materials from a third

4    party "on the basis of a promise of confidentiality that concealed the purpose of obtaining the material,

5    a purpose inconsistent with maintaining confidentiality and likely to destroy [the broadcaster's]

6    business," and sending a misleading letter to class representative).

7                        **a.  Schneider Wallace is Best Qualified to Serve as Lead Counsel.**

8            Here, pursuant to the standards set forth above, Schneider Wallace should be appointed as lead

9    counsel. On behalf of Movant, Schneider Wallace seeks to lead this litigation to serve the interests of

10   the putative class, *i.e.*, investors who have suffered losses from their investment in unregistered SOL

11   securities.

12           Schneider Wallace has nearly twenty (20) years of experience litigating successful conclusions

13   to all types of class actions, including securities, violations of ERISA, and antitrust litigation. *See*

14   Sarkis Decl., Ex. C. Indeed, Schneider Wallace is well-known for its extensive experience in

15   prosecuting class actions and has demonstrated its ability to efficiently, aggressively, and effectively

16   litigate these types of actions and protect the interests of stockholders and other plaintiffs.

17           Founded in 1993, Schneider Wallace has served as interim lead or co-lead counsel in dozens

18   of class actions in federal and state courts, and has extensive experience in litigation concerning

19   securities, violations of ERISA, and in antitrust litigation. Attorneys from Schneider Wallace have

20   experience that includes the following representations:

21       •      Serving as Interim Co-Lead Counsel in *In re Tether and Bitfinex Crypto Asset*

22   *Litigation*, No. 1:19-cv-09236-KPF (S.D.N.Y.) in a class action that advanced first-of-its-kind

23   antitrust, commodities, and RICO legal theories against a group of Defendants for manipulation of the

24   cryptocurrency market, with allegations similar to those alleged here. Indeed, the complaint was the

25   first in any jurisdiction seeking redress for a sophisticated scheme to manipulate the prices for

26   cryptocurrencies such as USDT, ether, bitcoin, and bitcoin derivatives, thereby creating arguably "the

27   largest bubble in human history" and causing hundreds of billions in losses when the bubble burst.

28
                   MOTION TO SERVE AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL
                                       Case No. 3:22-cv-03912-JD

- Serving as lead counsel or co-lead counsel in representing investors in complex securities litigation, including dozens of ERISA actions seeking to recover losses from investments under federal law. *See, e.g., In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-cv-2548 (VSB) (S.D.N.Y.) (concerning imprudent investments in JPMorgan's 401(k) plans and settling for $75 million); *Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State Street Bank & Trust Co.*, No. 10-cv-10588 (D. Mass.) (certified class settled for $10 million and substantial injunctive relief); *Daugherty et al v. Univ. of Chicago*, No. 1:17-cv-03736 (N.D. Ill.) (settled for $6.5 million); *Dennard v. Transam. Corp.*, No. 1:15-cv-00030-EJM (N.D. Iowa) (settled for $3.8 million cash and $8 million in prospective fee reductions in ERISA litigation); *Bilewicz v. FMR LLC*, No. 13-10636 (D. Mass.) (ERISA litigation settled for $12 million cash and structural changes); *Diebold v. N. Trust Invs.*, Civil Action No. 09-7203 (N.D. Ill.) (ERISA litigation settled for $36 million cash settlement).

- Serving as co-lead counsel representing a class of investors seeking to recover under theories including state antitrust laws for claims related to fixing and manipulation of the foreign exchange ("FX") rate. *Contant v. Bank of Am.*, No. 16-cv-07512- LGS (S.D.N.Y.).

Schneider Wallace has obtained outstanding results on behalf of its clients. For example, in *In re J.P. Morgan Stable Value Fund ERISA Litig.*, the United States District Court for the Southern District of New York in September 2019 approved a $75,000,000.00 settlement of Class claims where Schneider Wallace served as co-lead counsel in hard-fought litigation concerning allegations J.P. Morgan mismanaged 401K funds for hundreds of companies. In granting final approval of the settlement, Judge Broderick noted "the Class has been well represented in this matter." 2019 U.S. Dist. LEXIS 163884, *11-*12 (S.D.N.Y. Sept. 23, 2019).

Schneider Wallace has the resources that are necessary to devote to this litigation, both in terms of human capital and financial capabilities. Schneider Wallace is well-resourced, having successfully represented plaintiffs and other claimants in recovering hundreds of millions of dollars for their injuries. *See* Sarkis Decl., Ex. C.

**b. Schneider Wallace Has a Highly Qualified Team Dedicated to Litigating This Case.**

The team from Schneider Wallace who will represent Plaintiffs has extensive experience in complex litigation, including in securities, antitrust, and RICO litigation.

**Todd M. Schneider**

Todd M. Schneider has served as class counsel in dozens of class actions, including the *J.P. Morgan Stable Value Fund ERISA Litigation*. Sarkis Decl., Ex. C. Mr. Schneider has numerous court victories in both jury and bench trials alike. *Id.* He has argued cases in courts at every level from trial courts to the United States Supreme Court. *Id.* Mr. Schneider is a published author who lectures widely. *Id.* He is a past president of The San Francisco Trial Lawyers Association and has served as vice president for Consumer Attorneys of California. *Id.*

Mr. Schneider was named Trial Lawyer of the Year by the San Francisco Trial Lawyers' Association and he has been honored as a Super Lawyer in the area of class actions and mass torts by San Francisco Super Lawyers Magazine for each year that the list has been published. Sarkis Decl. at Ex. C. He has twice been a finalist for the Consumer Attorneys of California's prestigious Consumer Attorney of the Year award. *Id.* He is AV® Preeminent™ Peer Review Rated by Martindale-Hubbell and received a rating of "superb" by AVVO. *Id.* Mr. Schneider was appointed by the Chief Justice of the California Supreme Court to serve on California's Advisory Committee on Civil Jury Instructions, the body that writes the Judicial Council of California Civil Jury Instructions. *Id.* He has served on that committee for over a decade alongside of a select group of the state's elite trial lawyers, judges, and appellate justices. *Id.*

**Jason H. Kim**

Mr. Jason H. Kim, a Harvard Law School alumnus, is head of the firm's Business Litigation and Competition practice group. Sarkis Decl. at Ex. C. Mr. Kim is an accomplished plaintiff-side litigator in a variety of fields, including antitrust, consumer class actions, civil rights, and ERISA. *Id.* He has lead roles in antitrust litigation concerning financial services and market manipulation, including *In re Aluminum Warehousing Antitrust Litig.,* No. 13-md-2481-KBF (S.D.N.Y.), where Schneider Wallace represents Fuji Films, Kodak, and MAG. *Id.* Additionally, Mr. Kim has served as

lead counsel in several class actions to vindicate the rights of disabled individuals, public benefit recipients, and public housing tenants that led to substantial settlements. *Id.*

Mr. Kim represents several of the nation's largest health insurers in antitrust litigation against pharmaceutical companies, including three of the top ten insurers in *In re Generics Pharmaceuticals Pricing Antitrust Litigation*, one of the largest-price fixing cases in U.S. history. Sarkis Decl. at Ex. C. He also represents the Commonwealth of Puerto Rico in *In re Pork Antitrust Litigation*. *Id.* Mr. Kim represented an online travel agency in settled antitrust litigation against the nation's largest hotel companies. *Id.*

With respect to consumer class actions, Mr. Kim Obtained settlement in *Knapp v. Art.com,* a class action alleging Art.com advertised perpetual sales on its website in violation of California law. Sarkis Decl. at Ex. C. Mr. Kim also obtained settlement in *Dashnaw v. New Balance Athletics, Inc.*, a class action alleging New Balance falsely marketed certain of its athletic shoes as "Made in USA" in violation of California law. *Id.*

In addition, Mr. Kim worked to establish that the State of Hawaii violated the Americans With Disabilities Act and the Rehabilitation Act by excluding individuals with disabilities from a state-funded healthcare program and that such exclusion was intentional, allowing recovery of compensatory damages in *Lovell v. Chandler*, 303 F.3d 1039 (9th Cir. 2002). Sarkis Decl. at Ex. C. He obtained settlement in *McMillion v. State of Hawaii*, a class action alleging that Hawaii's public housing authority was in violation of the Americans with Disabilities Act with respect to access at the largest public housing complex in the state. *Id.* Mr. Kim prevailed in three appeals establishing that the States of Hawaii, Rhode Island, and Connecticut had violated the Individuals with Disabilities in Education Act by prematurely terminating students' entitlement to special education in *E.R.K. v. State of Hawaii Dep't of Educ.*, 728 F.3d 982 (9th Cir. 2013), *K.L. v. Rhode Island Bd. of Educ.*, 907 F.3d 639 (1st Cir. 2018), and *A.R. v. Conn. St. Bd. of Educ.*, 5 F. 4th 155 (2d Cir. 2021). *Id.*

Significantly, Mr. Kim obtained $75 million settlement in *In re J.P. Morgan Stable Value Fund ERISA Litigation*, a class action alleging J.P. Morgan had mismanaged its stable value funds, which

1   were offered as an investment option in the 401(k) plans of hundreds of large employers. Sarkis Decl.

2   at Ex. C. This was the largest non-church plan ERISA settlement in 2019. *Id.*

3   **Matthew S. Weiler**

4       Mr. Weiler graduated from the University of Michigan Law School, *cum laude in* 2004. Sarkis

5   Decl. at Ex. C. Prior to that, he earned his Bachelor of Arts degree from the University of Michigan in

6   Economics, *summa cum laude* with departmental honors, where he was also elected to Phi Beta Kappa,

7   and was a visiting scholar at St. Edmund Hall, Oxford University, from 2000 to 2001. *Id.*

8       Mr. Weiler has more than fifteen years' experience litigating antitrust, *qui tam*, and securities

9   matters in California state court and federal courts across the U.S. Sarkis Decl., ¶ 7. Prior to pursuing

10  his plaintiff-oriented practice, Mr. Weiler represented defendants in securities litigation for ten years.

11  *Id.* During his time as a defense attorney, Mr. Weiler defended issuers of securities in litigation brought

12  by shareholders under state and federal laws. *Id.* From January 2015 until June 2017, at a prior firm,

13  Mr. Weiler was a member of the team that pursued antitrust claims before this Court concerning price-

14  fixing of capacitors, a passive electronic component. *Id.* Mr. Weiler's responsibilities in the *Capacitors*

15  litigation included drafting the opposition to motions to dismiss and other key pretrial briefing;

16  conducting depositions of fact witnesses and Rule 30(b)(6) designees; developing economic theories

17  that supported damages analysis; and presenting oral argument to this Court. *Id.*

18      At a prior plaintiff-oriented firm, Mr. Weiler had responsibilities in the *In re Twitter Securities*

19  *Litigation*, Case No. 3:16-cv-05314 (N.D. Cal.) related to that firm's role as liaison counsel. Sarkis

20  Decl., ¶ 8. The *Twitter Securities* case settled for $809.5 million. *Id.* Additionally, Mr. Weiler played

21  a limited role in focusing on the price-fixing allegations that were the basis for the securities laws

22  violations and certain expert work in *In re Teva Securities Litigation*, Case 3:17-cv-00558-SRU

23  (S.D.N.Y.), which settled earlier this year for $420 million. *Id.*

24      At Schneider Wallace, Mr. Weiler represents firm clients in pursuing claims related to price

25  fixing of generic drug, and other anticompetitive practices in the health care industry that harm health

26  care providers. Sarkis Decl., ¶ 9. Mr. Weiler is a key team member in the *Tether* litigation, which

27  concerns claims brought by crypto asset purchasers for market manipulation. *Id.*

28

**Sunny S. Sarkis**

Sunny S. Sarkis began her career clerking for two (2) federal bankruptcy judges in the United States Bankruptcy Court for the Eastern District of California. Sarkis Decl., ¶ 3. Following her clerkships, Ms. Sarkis joined the country's largest plaintiff-side securities litigation firm in their San Francisco office, where she successfully litigated securities fraud class actions across the country against large companies and businesses. *Id.* at ¶ 4. Her representative matters include:

- *Hutchinson v. Perez (In re Eastman-Kodak Securities Litigation)*, No. 1:12-cv-01073-HB (S.D.N.Y. Feb. 10, 2012) (Baer, J.);

- *In re Celera Corporation Securities Litigation*, No. 5:10-cv-02604-EJD (N.D. Cal. June 17, 2010) (Davila, J.);

- *City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*, No. 5:12-cv-06039-BLF (N.D. Cal. Nov. 28, 2012) (Freeman, J.);

- *Westley et al v. Oclaro, Inc.*, No. 3:11-cv-02448-EMC (N.D. Cal. May 19, 2011) (Chen, J.);

- *Thomas v. Magnachip Semiconductor Corp.*, No. 3:14-cv-01160-JST (N.D. Cal. Mar. 12, 2014) (Tigar, J.);

- *Bodri v. GoPro, Inc.*, No. 4:16-cv-00232-JST (N.D. Cal. Jan. 13. 2016) (Tigar, J.);

- *Steck v. Santander Consumer USA Holdings Inc.*, No. 3:15-cv-02129-K (N.D. Tex. June 24, 2015) (Kinkeade, J.);

- *City of Roseville Employees Retirement System v. Sterling Financial Corporation*, No. 2:09-cv-00368-SAB (E.D. Wa. Dec. 11, 2009) (Bastian, J.);

- *City of Westland Police and Fire Retirement System v. Metlife, Inc.*, No. 1:12-cv-00256-LAK (S.D.N.Y. Jan. 12, 2012) (Kaplan, J.); and

- *City of Sterling Heights General Employees Retirement System v. Prudential Financial, Inc.*, No. 2:12-cv-05275-MCA-LDW (D.N.J. Aug. 22, 2012) (Wettre, J.).

*Id.*

## V.    CONCLUSION

Movant Mark Young satisfies each of the PSLRA's requirements for appointment as lead plaintiff. As such, he respectfully requests that the Court appoint him as Lead Plaintiff and approve his selection of Schneider Wallace as lead counsel.

1

Dated:  September 6, 2022

2

Respectfully submitted,

3

*/s/ Matthew S. Weiler*

Todd M. Schneider (SBN 158253)

4

Jason H. Kim (SBN 220279)
Matthew S. Weiler (SBN 236052)

5

Sunny S. Sarkis (SBN 258073)
Mark F. Ram (SBN 294050)

6

7

**SCHNEIDER WALLACE**

8

**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400

9

Emeryville, CA 94608
Telephone: (415) 421-7100

10

TSchneider@schneiderwallace.com
MWeiler@schneiderwallace.com

11

SSarkis@schneiderwallace.com
MRam@schneiderwallace.com

12

13

Jason H. Kim (SBN 220279)
**SCHNEIDER WALLACE**

14

**COTTRELL KONECKY LLP**
300 S. Grand Avenue, Suite 2700

15

Los Angeles, CA 90071
Telephone: (415) 421-7100

16

JKim@schneiderwallace.com

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO SERVE AS LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL
Case No. 3:22-cv-03912-JD