Todd M. Schneider (SBN 158253)
Matthew S. Weiler (SBN 236052)
Sunny Sarkis (SBN 258073)
Mark F. Ram (SBN 294050)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
TSchneider@schneiderwallace.com
MWeiler@schneiderwallace.com
MRam@schneiderwallace.com

Jason H. Kim (SBN 220279)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
300 S. Grand Avenue, Suite 2700
Los Angeles, CA 90071
Telephone: (415) 421-7100
JKim@schneiderwallace.com

## THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK YOUNG, on behalf of himself and all others similarly situated,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>SOLANA LABS, INC.;<br>THE SOLANA FOUNDATION;<br>ANATOLY YAKOVENKO; MULTICOIN<br>CAPITAL MANAGEMENT LLC; KYLE<br>SAMANI; and FALCONX LLC,<br><br>　　　　　　　　　　Defendants. | Case No.  3:22-cv-03912-JD<br><br>**REPLY IN SUPPORT OF MARK YOUNG'S MOTION FOR LEAD PLAINTIFF AND TO APPOINT LEAD COUNSEL**<br><br>HEARING DATE: October 13, 2022<br>TIME:  10:00 A.M.<br>COURTROOM: 11<br><br>**HONORABLE JUDGE JAMES DONATO** |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

    A.   Rashid Fails to Overcome the Presumption in Favor of Movant as "Most Adequate" Plaintiff. ................................................................................. 2

    B.   Rashid Presents No Evidence of Mark Young's Purported Inadequacy. ........................... 3

        1.   Rashid's Roche Freedman Allegations Show No Inadequacy. ................................. 4

        2.   Adequacy and Typicality Must Be Determined Based on Movant's Current Counsel. ......................................................................................... 7

        3.   Movant's Typicality Is Uncontested. .............................................................. 9

III.  CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORTIES

**Cases**

*Andrade v. Am. Apparel, Inc.*,
  No. 10-06352 MMM (PJWx),
  2011 U.S. Dist. LEXIS 79795 (C.D. Cal. Mar. 15, 2011) ............................................................... 5

*Bodri v. GoPro, Inc.*,
  No. 16-cv-00232-JST,
  2016 U.S. Dist. LEXIS 57559 (N.D. Cal. Apr. 28, 2016) ....................................................... 2, 8, 9

*Doherty v. Pivotal Software, Inc.*,
  No. 19-CV-03589-CRB,
  2019 U.S. Dist. LEXIS 195360, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019) .......................... 4, 9

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ........................................................................................................ 9

*Harris v. Vector Mktg. Corp.*,
  753 F. Supp. 2d 996 (N.D. Cal. 2010) ........................................................................................... 2

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ............................................................................................... 2, 3, 4, 9

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ........................................................................................................ 3, 5

*In re Facebook, Inc.*,
  288 F.R.D. 26 (S.D.N.Y. 2012) .................................................................................................. 5, 6

*In re Mersho*,
  6 F.4th 891 (9th Cir. 2021) ......................................................................................................... 1, 4

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015) ............................................................................................ 7

*In re Quintus Sec. Litig.*,
  201 F.R.D. 475 (N.D. Cal. 2001) ................................................................................................... 8

*In re SemGroup Energy P'ners, L.P.*,
  No. 08-CV-425-GKF-PJC,
  2008 U.S. Dist. LEXIS 87218 (N.D. Okla. Oct. 27, 2008) ............................................................ 5

*In re Tether and Bitfinex Crypto Asset Litigation*,
  No. 1:19-cv-09236-KPF (S.D.N.Y.) ............................................................................................... 6

*In re: Facebook Privacy Litig.*,
  2016 U.S. Dist. LEXIS 119293 (N.D. Cal. Sep. 2, 2016) .......................................................... 8, 9

*Jeong v. Nexo Capital Inc., et al.*,
  case no. 5:21-cv-02392-BLF (N.D. Cal.) ....................................................................................... 9

*Leventhal v. Chegg, Inc.*,
  No. 5:21-cv-09953-EJD,
  2022 U.S. Dist. LEXIS 161501 (N.D. Cal. Sep. 7, 2022) ................................................ 4

*Lockhart v. BAM Trading Services Inc., et al.*,
  No. 3:22-cv-03461-JSC, ECF No. 35 (N.D. Cal. Sept. 19, 2022) .................................... 8

*Murphy v. JBS S.A.*,
  No. 17-CV-3084, 2017 U.S. Dist. LEXIS 166262 (E.D.N.Y. Oct. 6, 2017) ...................................... 4

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
  63 F. Supp. 3d 394 (D. Del. 2014) ..................................................................... 5

*Ross v. US Bank Nat'l Ass'n*,
  No. C 07-2951 SI,
  2009 U.S. Dist. LEXIS 116875 (N.D. Cal. Nov. 25, 2009) ........................................... 8

*SEC v. CMKM Diamonds, Inc.*,
  729 F.3d 1248 (9th Cir. 2013) ........................................................................ 10

*Shankar v. Zymergen Inc.*,
  No. 21-cv-06028-JD, 2021 U.S. Dist. LEXIS 242621 (N.D. Cal. Dec. 20, 2021) ........................... 1

*Spinelli v. Capital One Bank*,
  265 F.R.D. 598 (M.D. Fla. 2009) ..................................................................... 8

*Sudunagunta v. Nantes, Inc.*,
  No. CV-16-1947-MWF, 2018 U.S. Dist. LEXIS 137084 (C.D. Cal. Aug. 13, 2018) ...................... 9

*Valenti v. DFINITY USA Research LLC, et al.*,
  case no. 3:21-cv-06118-JD (N.D. Cal.) ............................................................... 8

*Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*,
  No. 17-cv-04732 VAP (KSx), 2017 U.S. Dist. LEXIS 229452 (C.D. Cal. Sep. 29, 2017) ............ 3

*Williams v. Block.One, et al.*,
  case no. 1:20-cv-02809-LAK (S.D.N.Y.) ............................................................... 6

*Zucker v. Zoran Corp.*,
  No. C 06-04843, 2006 U.S. Dist. LEXIS 93469 (N.D. Cal. Dec. 11, 2016) ................................ 9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ..................................................................... 1

**Other Authorities**

Private Securities Litigation Reform Act of 1995 .............................................. 1

**Rules**

Fed R. Civ. Proc. 23 ...................................................................................... passim

1   Proposed lead plaintiff Mark Young ("Mark Young" or "Movant") respectfully submits this
2   Reply in support of his motion for appointment as Lead Plaintiff and for appointment of Schneider
3   Wallace Cottrell Konecky LLP ("Schneider Wallace") as Lead Counsel pursuant to the Private
4   Securities Litigation Reform Act of 1995 ("PSLRA").

5   **I.     INTRODUCTION**

6   Mohammed Rashid does not contest that Movant is the proposed lead plaintiff with the largest
7   financial stake in the litigation. ECF No. 44. Nor does Rashid grapple with the materials presented by
8   Movant as part of the "second step" of the PSLRA selection process that establish Movant has made
9   a *prima facie* case of typicality and adequacy. *Shankar v. Zymergen Inc.*, No. 21-cv-06028-JD, 2021
10  U.S. Dist. LEXIS 242621, at *3-*4 (N.D. Cal. Dec. 20, 2021) ("In step two, the Court determines
11  presumptive lead plaintiff status relying on the 'presumptive lead plaintiff's complaint and sworn
12  certification.'") (Donato, J.).

13  Instead, Rashid assumes away this presumption and launches an offensive as to the "*third* step"
14  of the PSLRA process, directed to an adversarial showing of "proof" of inadequacy. Rashid ignores
15  that Movant presents a *prima facie* showing that entitles him to the presumptive lead plaintiff, and
16  fails to meet the exacting burden of proof under the PLSA's third step. *See In re Mersho*, 6 F.4th 891,
17  901 (9th Cir. 2021) ("competing movants must point to evidence of inadequacy," and they "must
18  convince the district court that the presumptive lead plaintiff would not be adequate, not merely that
19  the district court was wrong in determining that the prima facie elements of adequacy were met."); 15
20  U.S.C. § 78u-4(a)(3)(B)(iii)(II) (presumption "may be rebutted only upon proof by a member of the
21  purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and
22  adequately protect the interests of the class; or . . . is subject to unique defenses that render such
23  plaintiff incapable of adequately representing the class.").

24  Rashid argues that Movant's retention of Roche Freedman LLP ("Roche Freedman") at an
25  earlier stage of this litigation renders him inadequate and atypical to serve as lead plaintiff.  Rashid's
26  attack is based on a single false predicate. Movant does not seek to appoint Roche Freedman as lead
27  counsel. He moves to appoint Schneider Wallace. His fusillade of criticism thus misses the mark. For

28

1    example, Rashid's wayward accusation this litigation was pursued for ulterior motives has no

2    application to either Movant or his counsel, Schneider Wallace. Rashid himself, in adopting the case

3    theory and work product developed by Movant, and in seeking to be lead plaintiff here, confirms the

4    merit of this litigation. For these reasons, and the reasons discussed below, Rashid fails to sustain his

5    burden of proof under the PSLRA's third step and the Court should appoint Movant as lead plaintiff

6    and Schneider Wallace as lead counsel.

7    **II.    ARGUMENT**

8         **A.    Rashid Fails to Overcome the Presumption in Favor of Movant as "Most**
9              **Adequate" Plaintiff.**

10        Movant has made a threshold showing of typicality and adequacy, the "second step" of the

11   PSLRA analysis. As a matter of law, this *prima face* case is determined by the Court based on the

12   complaint and materials submitted by Movant: "At step two of the [PSLRA] process, when the district

13   court makes its initial determination [of the presumptively most adequate plaintiff], it must rely on the

14   presumptive lead plaintiff's complaint and sworn certification; there is no adversary process to test the

15   substance of those claims." *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002). As Rashid's attack

16   is based on matters well outside of the pleadings, the Court must evaluate it under the third prong of

17   the PLSRA lead plaintiff selection analysis. *See id.* ("**At the third stage** [of determining whether the

18   presumption has been rebutted], the process turns adversarial and other plaintiffs may present evidence

19   that disputes the lead plaintiff's prima facie showing of typicality and adequacy.") (emphasis added).

20        The Court should analyze Rashid's challenge to Movant's choice of prior counsel as a form of

21   alleged misconduct under the PSLRA "third step." *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d 996,

22   1015 (N.D. Cal. 2010) ("There is inadequacy only where the representative's credibility is questioned

23   on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a

24   criminal conviction for fraud."); *Bodri v. GoPro, Inc.*, No. 16-cv-00232-JST, 2016 U.S. Dist. LEXIS

25   57559, at *17-*18 (N.D. Cal. Apr. 28, 2016) (analyzing criminal history of lead plaintiff under the

26   third step and rejecting challenge to adequacy); *see also* Section II.B.1, below (discussing challenges

27   to adequacy based on conflicts under the third PSLRA step).

28   REPLY IN SUPPORT OF MARK YOUNG'S MOTION FOR LEAD PLAINTIFF AND FOR
     APPOINTMENT OF LEAD COUNSEL
     Case No. 3:22-cv-03912-JD
     2

1    // //

2    // //

3    It is undisputed that Movant's claimed losses are more than eleven (11) times greater than

4    Rashid's:

| Movant | Reported Losses |
|---|---|
| Mark Young | $117,696.82 |
| Mohammed Rashid | $9,853.10 |

Focusing instead on the salacious (but irrelevant) Roche Freedman allegations, Rashid's opposition fails to address the PSLRA second step, and thus he errs in not applying the presumption of the "most adequate" lead plaintiff.  "At this stage in the proceedings, courts give great deference to the most adequate plaintiff's selection of counsel…." *Waterford Twp. Police & Fire Ret. Sys. v. Mattel, Inc.*, No. 17-cv-04732 VAP (KSx), 2017 U.S. Dist. LEXIS 229452, at *24 (C.D. Cal. Sep. 29, 2017) (quoting *In re Cavanaugh*, 306 F.3d at 734 n.14).[1]

Movant's claims are typical because he purchased SOL securities during the class period at inflated prices. He purchased $117,696.82 in SOL securities between August 19, 2021, and September 9, 2021. ECF No. 1; PSLRA Verification. These purchases are all within the class period. Movant is adequate because he has selected the Schneider Wallace firm to represent him. Schneider Wallace has substantial experience in crypto asset, securities, and class action litigation. ECF Nos. 33 at 10-15. Rashid contests none of this.

Because Rashid has not challenged Movant's *prima facie* case of adequacy and typicality, he thus concedes that Movant is entitled to the presumption of being the most adequate lead plaintiff.

**B.    Rashid Presents No Evidence of Mark Young's Purported Inadequacy.**

---

[1] "[T]he Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention. When a properly-appointed lead plaintiff asks the court to approve its choice of lead counsel and of a retainer agreement, the question is not whether the court believes that the lead plaintiff could have made a better choice or gotten a better deal. Such a standard would eviscerate the Reform Act's underlying assumption that, at least in the typical case, a properly-selected lead plaintiff is likely to do as good or better job than the court at these tasks." (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)).

REPLY IN SUPPORT OF MARK YOUNG'S MOTION FOR LEAD PLAINTIFF AND FOR
APPOINTMENT OF LEAD COUNSEL
Case No. 3:22-cv-03912-JD

3

1    As Movant meets the *prima facie* test, and Rashid's losses are so much lower than Movant's,

2  the only way the Court could ever appoint him as lead plaintiff is to find that Movant does not meet

3  the Rule 23 factors of typicality and adequacy under the PSLRA's third step. *See Mersho*, 6 F.4th at

4  899 ("If the movant with the largest losses does not satisfy the Rule 23 requirements, the district court

5  must then look to the movant with the next largest losses and repeat the inquiry."). The framework

6  under the PSLRA's third step requires more than innuendo concerning a lead plaintiff's prior counsel:

7  "just because 'the presumption is rebuttable does not mean that it may be set aside for any reason that

8  the court may deem sufficient.'" *In re Cavanaugh*, 306 F.3d at 729 n.2.

9    As the basis for Movant's *prima facie* case is unchallenged, it is not enough to merely contend

10  that Mark Young is "inadequate" or "atypical" in representing the class.  *Mersho*, 6 F.4th at 901.

11  Rashid offers nothing but innuendo apparently created by a litigation adversary of Roche Freedman

12  in another case, which is inapplicable to his counsel Schneider Wallace. Thus, he fails to overcome

13  Movant's showing of adequacy. *Doherty v. Pivotal Software, Inc.*, No. 19-CV-03589-CRB, 2019 U.S.

14  Dist. LEXIS 195360, 2019 WL 5864581, at *18 (N.D. Cal. Nov. 8, 2019) 18 ("The test for adequacy

15  is whether the presumptive lead plaintiff and **its counsel** have any conflicts of interest with other class

16  members, and whether they will prosecute the action vigorously on behalf of the class.") (emphasis

17  added).

18    Additionally, Rashid fails to make any showing whatsoever with respect to typicality. Instead,

19  he relies on the same failed showing for adequacy.

20        **1.    Rashid's Roche Freedman Allegations Show No Inadequacy.**

21    The Roche Freedman allegations do not constitute "proof" of inadequacy under the PSLRA.

22  Rashid simply parrots a speculative report. *See Doherty*, 2019 U.S. Dist. LEXIS 195360, at *6 ("The

23  PSLRA requires 'proof' to overcome the presumption entitling the plaintiff with the largest financial

24  interest in the litigation to appointment as lead plaintiff; speculative assertions are insufficient.");

25  *Leventhal v. Chegg, Inc.*, No. 5:21-cv-09953-EJD, 2022 U.S. Dist. LEXIS 161501, at *10 (N.D. Cal.

26  Sep. 7, 2022) (speculation that lead plaintiff submitted an invalid assignment is not "proof"); *Murphy*

27  *v. JBS S.A.*, No. 17-CV-3084, 2017 U.S. Dist. LEXIS 166262, at *21 (E.D.N.Y. Oct. 6, 2017)

28  REPLY IN SUPPORT OF MARK YOUNG'S MOTION FOR LEAD PLAINTIFF AND FOR
APPOINTMENT OF LEAD COUNSEL
Case No. 3:22-cv-03912-JD
4

1  (presumption not rebutted where "allegations concerning the potential use of tax havens and the

2  supposed economic illogic of investing in ADRs are mere speculation and innuendo"); *OFI Risk*

3  *Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 403 (D. Del. 2014) ("The burden is

4  [competing movant] 'to come forward with some proof' that the unique defenses raised are legitimate

5  issues that will likely be litigated at trial").

6      The Court should give particular scrutiny to any claim that a lead plaintiff is inadequate

7  because of something his prior counsel did, especially where the assertions rely on a series of

8  inferences about the motives of law firm not seeking appointment as lead counsel. [2] *See Andrade v.*

9  *Am. Apparel, Inc.*, No. 10-06352 MMM (PJWx), 2011 U.S. Dist. LEXIS 79795, at *34 (C.D. Cal.

10 Mar. 15, 2011) ("tax accounting irregularities" that are "vague and, at least on this record,

11 unsubstantiated" fail to show inadequacy); *accord In re Facebook, Inc.*, 288 F.R.D. 26, 40 (S.D.N.Y.

12 2012) ("exacting proof" of a conflict is required and "[c]ourts have found that a presumptive lead

13 plaintiff's declared intent to vigorously prosecute an action is sufficient to dispense with 'baseless

14 conjecture' about conflicts based on business relationships"); *In re SemGroup Energy P'ners, L.P.*,

15 No. 08-CV-425-GKF-PJC, 2008 U.S. Dist. LEXIS 87218, at *9 (N.D. Okla. Oct. 27, 2008)

16 ("challengers have failed to carry their burden of establishing that either the managing partner's former

17 position on the Buckeye board of directors or Harvest's ownership interest in Eagle Rock will create

18 a conflict of interest or subject Harvest to unique defenses so as to render it inadequate as lead counsel.

19 The Aziz Group's assertion that Harvest was privy, as a result of these relationships, to insider

20 information, is simply speculation.").

21      Rashid shirks the burden of "proof" he faces here. Rashid contends Mark Young is inadequate

22 due to his selection of Roche Freedman as counsel, but Movant has not selected Roche Freedman as

23 his lead counsel. Instead, Movant seeks to appoint Schneider Wallace as his lead counsel. This fact

24 alone undermines Rashid's opposition *in its entirety.*

25 _____

26 [2] "Allegations of impropriety are not proof of wrongdoing. If they were, then any class member (or
   lawyer seeking to be appointed lead counsel) could disable any presumptive lead plaintiff by making

27 unsupported allegations of impropriety." *In re Cendant Corp. Litig.*, 264 F.3d 201, 270 (3d Cir.
   2001).

28

1   As Movant does not seek to appoint Roche Freedman, Rashid's discussion of Mr. Roche's

2   potential conflicts of interest due to AVAX (a supposedly competing crypto asset) the other cases in

3   which Kyle Roche has withdrawn, is unavailing.[3] Mr. Rashid similarly fails to show inadequacy by

4   reference to the position Schneider Wallace has taken on behalf of a different class of crypto asset

5   purchasers in *In re Tether and Bitfinex Crypto Asset Litigation*, No. 1:19-cv-09236-KPF (S.D.N.Y.).

6   There, Schneider Wallace in its capacity as interim co-lead counsel advised the court that Roche

7   Freedman's continued participation as interim co-lead counsel in that litigation was not in the best

8   interest of the class because it would be an unnecessary distraction. No such problems are presented

9   here, however, because Movant is not seeking to appoint Roche Freedman as lead counsel. Unlike in

10  *Tether*, at no point was Roche Freedman appointed lead counsel. Kyle Roche has withdrawn from this

11  case, and Roche Freedman will perform no further work in this litigation. Therefore, Schneider

12  Wallace has not taken "conflicting" positions; Schneider Wallace has requested that Roche Freedman

13  step down from leadership in both instances.

14  At bottom, there is no logical or evidentiary link between Rashid's Roche Freedman

15  allegations, and Movant or his counsel. Rashid does not claim that Schneider Wallace has any AVAX

16  tokens, or any link whatsoever to Ava Labs. Movant similarly possesses no AVAX tokens, has no

17  relationship to Ava Labs, and did not learn of Roche Freedman's interest in these crypto assets until

18  the report was published. Declaration of Mark Young in Support of Reply ("Young Decl."), ¶¶ 2-4.

19  Movant will vigorously prosecute this litigation on behalf of SOL investors and will direct his counsel.

20  *Id.* at ¶ 5; *Facebook.*, 288 F.R.D. at 40 (rejecting accusations of a conflict where lead plaintiff will

21  vigorously pursue claims).

22

23

24  [3] Rashid cites to *Williams v. Block.One, et al*., case no. 1:20-cv-02809-LAK (S.D.N.Y.), where Roche

25  Freedman with co-counsel moved to substitute lead plaintiff but then Roche Freedman withdrew. Lead
    plaintiff opposed the motion, citing four grounds that included the argument the substitute lead

26  plaintiff was inadequate because it had hired Roche Freedman. *Williams* ECF No. 160 at 10-11. Today
    Judge Kaplan denied the request from substitute lead plaintiff, but specifically noted in his order he

27  "expresses no view" as to the arguments about substitute lead plaintiffs' choice of counsel. *Id.* at ECF
    No. 164. *Williams* thus does not support Rashid's position.

28

1    Insofar as Rashid contends that Roche Freedman was pursuing this litigation to benefit Ava

2  Labs, Rashid fails utterly. Cursory scrutiny shows the report that is the basis of the allegations lacks

3  credibility. The report attacks Ava Labs and its founder personally. ECF No. 41-2 at 17, 20-21, 22.

4  The report was apparently arranged with the help of one of Roche Freedman's litigation adversaries.[4]

5  One respected crypto asset publication has noted the obvious problems with the report: "The situation

6  suggests self-cannibalization across-the-board, including the probability that Dfinity is funding

7  mudslinging against its rivals. Of course, this is all really just speculation based on speculation."[5] With

8  respect to Ava Labs, the logic of Rashid's attack collapses on itself. That *Rashid himself* also seeks to

9  serve as lead plaintiff to pursue these claims concerning SOL securities underscores that they have

10  merit and are not being pursued to benefit Ava Labs.

11    Movant paid over $117 thousand in assets to purchase SOL securities. *See In re Petrobras Sec.*

12  *Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015) ("Congress's express purpose in mandating that the

13  lead plaintiff (if otherwise qualified) be appointed on the basis of financial interest was to 'transfer

14  primary control of private securities litigation from lawyers to investors.'" (citation omitted)).

15  Movant's powerful financial motive to recover on behalf of himself and other investors obliterates any

16  notion that Movant is motivated by anything other than to recover his losses. In any event, Ava Labs

17  certainly does not direct Schneider Wallace here. Young Decl. ¶ 5. Only Mark Young directs

18  Schneider Wallace's litigation objectives here. *Id.*

19
20
### 2.    Adequacy and Typicality Must Be Determined Based on Movant's Current Counsel.

21    Rule 23 adequacy or typicality challenges based on a class representative's former counsel

22  generally fail because Rule 23 and the PLSRA consider these issues in the context of class counsel, or

23  lead counsel, who are leading the litigation as fiduciaries to the class. Ethical violations of former

24  ―――――――――――――

25  [4]  Daniel Kuhn, "What to Make of the Avalanche Whistleblower Report," Coindesk (Aug. 30, 2022),
    *available      at*      https://www.coindesk.com/layer2/2022/08/30/what-to-make-of-the-avalanche-
26  whistleblower-report/.

27  [5] *Id.*

28

1  counsel do not raise adequacy concerns. *See Ross v. US Bank Nat'l Ass'n*, No. C 07-2951 SI, 2009

2  U.S. Dist. LEXIS 116875, at *25-*26 n.6 (N.D. Cal. Nov. 25, 2009) (established ethical violations of

3  former counsel do not raise adequacy issues).[6] Even criminal activity by former counsel provides no

4  basis to find current class counsel inadequate. *See Spinelli v. Capital One Bank*, 265 F.R.D. 598, 603

5  (M.D. Fla. 2009) ("The Court would be much more concerned if Attorney Cauley were presently

6  attempting to act as class counsel in this case. The record shows that he is, in no way, involved in the

7  present matter.") (addressing an attorney's criminal record). Rashid cites no authority that shows a

8  lead plaintiff's prior selection of counsel, apart from his proposed lead counsel, can be a basis to show

9  inadequacy under Rule 23.[7]

10        As discussed above, the Roche Freedman allegations are not "proof" of any wrongdoing for

11  purposes of rebutting the presumption under the PSLRA. Courts have found lead plaintiffs adequate

12  even when they have had criminal convictions. *See Bodri*, 2016 U.S. Dist. LEXIS 57559, at *18

13  (appointing as lead plaintiff in securities class action an entity led by individual who pled guilty to

14  making false statements on shipper's export declaration 14 years prior to litigation); *In re: Facebook*

15  *Privacy Litig.*, 2016 U.S. Dist. LEXIS 119293, *17-*18 (N.D. Cal. Sep. 2, 2016) (appointing as lead

16  plaintiff in a consumer class action an individual with a 2-year-old embezzlement conviction). Roche

17  Freedman continues to represent plaintiffs in class action litigation, including in this District.[8] Should

18

19  [6] "Defendant previously challenged the adequacy of plaintiffs' former counsel because Bailey Pinney
PC has been disqualified by the Northern District of California and disciplined by the Oregon and

20  Washington Bars for ethical violations. … In response, Jose Mata and Grant Mullen withdrew as
plaintiffs' counsel, and Kevin T. Barnes and Gregg Lander of the Law Offices of Kevin T. Barnes

21  became plaintiffs' new counsel. Since Bailey Pinney PC is no longer associated with this lawsuit, this
Court finds it unnecessary to consider the disqualification and disciplinary proceedings against Bailey

22  Pinney PC in assessing the adequacy of class counsel."

23  [7] Rashid cites *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 481 (N.D. Cal. 2001) for the proposition that
absent class members have the right to "competent" counsel.  *Quintus* is inapposite, however, as the

24  decision did not address whether a potential lead plaintiff's prior selection of counsel could make him
inadequate or atypical under Rule 23.

25

26  [8] *Lockhart v. BAM Trading Services Inc., et al.*, No. 3:22-cv-03461-JSC, ECF No. 35 (N.D. Cal. Sept.
19, 2022) (order granting stipulation to name Roche Freedman sole lead counsel in securities litigation

27  against Binance after co-lead counsel's withdrawal); *Valenti v. DFINITY USA Research LLC, et al.*,
case no. 3:21-cv-06118-JD (N.D. Cal.) (Roche Freedman remains as lead counsel in securities

28

1    this litigation be successful, Schneider Wallace will submit the time spent by Roche Freedman in a

2    fee application for the Court's approval, as the work Roche Freedman did in identifying and

3    developing claims on behalf of the putative class with Schneider Wallace has substantial value. Indeed,

4    Rashid has piggybacked off this work rather than develop his own complaint. That Rashid relies on

5    the work product Schneider Wallace created with Roche Freedman undercuts his contention that

6    Movant erred in its initial selection of counsel.

7            **3.      Movant's Typicality Is Uncontested.**

8            Case law interpreting adequacy and typicality in class action litigation and under the PSLRA

9    deems issues with class counsel under the "adequacy" prong of Rule 23, whereas typicality focuses

10   on issue with a movant's injuries. *Sudunagunta v. Nantes, Inc.*, No. CV-16-1947-MWF, 2018 U.S.

11   Dist. LEXIS 137084, at *20-*22 (C.D. Cal. Aug. 13, 2018) (analyzing issues with selection and

12   monitoring counsel under "adequacy" and contentions related to trading under "typicality"); *see also*

13   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Under [Rule 23 typicality's]

14   permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those

15   of absent class members; they need not be substantially identical."); *Doherty*, 2019 U.S. Dist. LEXIS

16   195360, at *19 ("The test of typicality is whether other class members have the same or similar injury,

17   whether the action is based on conduct that is not unique to the presumptive lead plaintiff, and whether

18   other class members have been injured by the same course of conduct").

19          Rashid conflates Rule 23's distinct adequacy and typicality prongs; his challenge solely relates

20   to the actions of Roche Freedman. As explained above, these are misbegotten adequacy contentions.

21   *See Facebook Privacy Litig.*, 2016 U.S. Dist. LEXIS 119293, at *17-*18 (lead plaintiff misconduct

22   analyzed under adequacy); *Bodri*, 2016 U.S. Dist. LEXIS 57559, at *5 (same).[9]

23   ────────────────────

24   litigation before this Court); *Jeong v. Nexo Capital Inc., et al.*, case no. 5:21-cv-02392-BLF (N.D.
     Cal.) (Roche Freedman continues as counsel for the putative class).

25   [9] There are no issues with respect to adequacy or typicality with either Movant or Rashid's trading,
     nor is the Court required to pick the "most adequate" plaintiff in light of the presumption given to

26   Movant under the PSLRA's second step. *Cf. Zucker v. Zoran Corp.*, No. C 06-04843, 2006 U.S. Dist.
     LEXIS 93469, *12-13 (N.D. Cal. Dec. 11, 2016) ("The PSLRA does not demand that the district court

27   choose the most adequate lead plaintiff.") (citing *In re Cavanaugh*, 306 F.3d at 730). Due to the nature
     of the "strict liability" theory that Movant pursues here, and the fact that the disclosures were partial

28   REPLY IN SUPPORT OF MARK YOUNG'S MOTION FOR LEAD PLAINTIFF AND FOR
     APPOINTMENT OF LEAD COUNSEL
     Case No. 3:22-cv-03912-JD

1

## III.    CONCLUSION

2

3       For all the foregoing reasons, Movant respectfully requests that the Court grant his motion for

4 appointment of Lead Plaintiff, approve his selection of Lead Counsel, and deny the competing motion

for appointment of Lead Plaintiff filed by Rashid.

5

6       Dated: September 27, 2022

7                                         Respectfully submitted,

8                                         /s/ Matthew S. Weiler
                                          Todd M. Schneider (SBN 158253)
9                                         Jason H. Kim (SBN 220279)
                                          Matthew S. Weiler (SBN 236052)
10                                        Sunny S. Sarkis (SBN 258073)
                                          Mark F. Ram (SBN 294050)
11                                        **SCHNEIDER WALLACE**
                                          **COTTRELL KONECKY LLP**
12                                        2000 Powell Street, Suite 1400
                                          Emeryville, CA 94608
13                                        Telephone: (415) 421-7100
                                          TSchneider@schneiderwallace.com
14                                        MWeiler@schneiderwallace.com
                                          SSarkis@schneiderwallace.com
15                                        MRam@schneiderwallace.com

16

17                                        Jason H. Kim (SBN 220279)
                                          **SCHNEIDER WALLACE**
18                                        **COTTRELL KONECKY LLP**
                                          300 S. Grand Avenue, Suite 2700
19                                        Los Angeles, CA 90071
                                          Telephone: (415) 421-7100
20                                        JKim@schneiderwallace.com

21

22

23

24

25

26    _____

27 and occurred over time as Solana's network issues persisted and worsened, both Movant and Rashid
satisfy these Rule 23 requirements. *See SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1254 (9th Cir.
2013) (claims for selling unregistered securities have strict liability).

28              REPLY IN SUPPORT OF MARK YOUNG'S MOTION FOR LEAD PLAINTIFF AND FOR
                            APPOINTMENT OF LEAD COUNSEL
                               Case No. 3:22-cv-03912-JD