LATHAM & WATKINS LLP
Matthew Rawlinson (CA Bar No. 231890)
*matt.rawlinson@lw.com*
140 Scott Drive
Menlo Park, CA 94025
Telephone: +1.650.328.4600

Morgan E. Whitworth (CA Bar No. 304907)
*morgan.whitworth@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Susan E. Engel (*pro hac vice*)
*susan.engel.@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant Solana Labs, Inc.*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK YOUNG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOLANA LABS, INC.; THE SOLANA FOUNDATION; ANATOLY YAKOVENKO; MULTICOIN CAPITAL MANAGEMENT LLC; KYLE SAMANI,<br><br>Defendants. | Case No. 3:22-cv-03912-RFL<br><br>**DEFENDANT SOLANA LABS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:  August 6, 2024<br>Time:  10:00 a.m.<br>Court:  Courtroom 15 – 18th Floor<br>Judge:  Hon. Rita F. Lin |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW

1  <u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

2  **TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

3  PLEASE TAKE NOTICE that on August 6, 2024 at 10:00 a.m. in Courtroom 15 of the

4  United States District Court for the Northern District of California, located at 450 Golden Gate

5  Avenue, San Francisco, California, Defendant Solana Labs, Inc. ("Solana Labs")

6  will and hereby does move for an order dismissing Plaintiff Mark Young's Consolidated

7  Amended Class Action Complaint, Dkt. 68.

8  This motion is made pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and

9  12(b)(6), on the grounds that each of the causes of action in the Complaint fails to state a claim

10 as a matter of law.  The motion is based on Solana Labs' Notice of Motion and Motion to

11 Dismiss, Memorandum of Points and Authorities, Request for Judicial Notice, and the

12 declaration of Morgan E. Whitworth enclosed herewith, as well as the pleadings and papers on

13 file in this action, the arguments of counsel, and any other matter that the Court may properly

14 consider.

15  **STATEMENT OF RELIEF SOUGHT**

16  Solana Labs seeks an order pursuant to Federal Rule of Civil Procedure 12(b)(6)

17 dismissing this action for failure to state a claim upon which relief can be granted.

18  DATED:  April 11, 2024                    LATHAM & WATKINS LLP

19                                            By:  /s/ *Susan E. Engel*
                                              Susan E. Engel (*pro hac vice*)
20                                             *susan.engel.@lw.com*
                                              555 Eleventh Street, N.W., Suite 1000
21                                            Washington, D.C. 20004-1304
                                              Telephone: +1.202.637.2200
22
                                              Matthew Rawlinson (CA Bar No. 231890)
23                                             *matt.rawlinson@lw.com*
                                              140 Scott Drive
24                                            Menlo Park, CA 94025
                                              Telephone: +1.650.328.4600
25
                                              Morgan E. Whitworth (CA Bar No. 304907)
26                                             *morgan.whitworth@lw.com*
                                              505 Montgomery Street, Suite 2000
27                                            San Francisco, California 94111
                                              Telephone: +1.415.391.0600
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP

DAVID MCGILL (*pro hac vice pending*)
   dmcgill@orrick.com
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:   +1 202 339 8666

SACHI SCHURICHT (SBN 317845)
   sschuricht@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700

*Attorneys for Defendant Solana Labs, Inc.*

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

I.      STATEMENT OF THE ISSUES ......................................................................................... 1

II.     INTRODUCTION ............................................................................................................. 1

III.    BACKGROUND ............................................................................................................... 4

        A.      Factual Background ............................................................................................... 4

        B.      The Complaint ...................................................................................................... 5

IV.     LEGAL STANDARD ....................................................................................................... 6

V.      ARGUMENT .................................................................................................................... 7

        A.      Plaintiff Fails To Plead That Labs Is A Statutory Seller ..................................... 7

                1.      Labs Did Not Pass Title To SOL Tokens To Plaintiff ............................. 7

                2.      Labs Did Not Solicit Plaintiff's Purchase Of SOL Tokens ..................... 8

        B.      Plaintiff Fails To Plead He Purchased From Labs In A Public
                Offering ............................................................................................................... 13

        C.      Plaintiff Fails To Plead A Domestic Transaction ............................................... 17

        D.      Plaintiff's State Law Claims Fail ....................................................................... 19

VI.     CONCLUSION ............................................................................................................... 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

SOLANA LABS' MOT. TO DISMISS
AM. COMPLAINT
CASE NO. 3:22-cv-03912-RFL

# TABLE OF AUTHORITIES

## CASES

*Abagninin v. AMVAC Chem. Corp.*,

545 F.3d 733 (9th Cir. 2008) ................................................. 5

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,

677 F.3d 60 (2d Cir. 2014)................................................. 18

*Alpha Mgmt. Inc. v. Last Atlantis Cap. Mgmt., LLC*,

2012 WL 5389734 (N.D. Ill. Nov. 2, 2012) ........................... 14

*Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*,

2023 WL 8420896 (N.D. Cal. Dec. 4, 2023) ........................... 9

*Arcell v. Google LLC*,

2024 WL 1090009 (N.D. Cal. Feb. 5, 2024) ................... 6, 7, 9

*Ashcroft v. Iqbal*,

556 U.S. 662 (2009)................................................. 6

*Ballay v. Legg Mason Wood Walker, Inc.*,

925 F.2d 682 (3d Cir. 1991)................................................. 14

*Begay v. United States*,

553 U.S. 137 (2008), *abrogated on other grounds by Johnson v. United
States*, 576 U.S. 591 (2015) ................................................. 16

*Bowden v. Robinson*,

67 Cal. App. 3d 705 (Cal. Ct. App. 4th Dist. 1977) ............... 19

*Capri v. Murphy*,

856 F.2d 473 (2d Cir. 1988)................................................. 13

*Coto Settlement v. Eisenberg*,

593 F.3d 1031 (9th Cir. 2010) ................................................. 6

*Craftmatic Sec. Litig. v. Kraftsow*,

890 F.2d 628 (3d Cir. 1989)................................................. 14

*Crawford v. Glenns, Inc.*,
  876 F.2d 507 (5th Cir. 1989) ......................................................................... 10

*Cullen v. RYVYL Inc.*,
  2024 WL 898206 (S.D. Cal. Mar. 1, 2024) ..................................................... 16

*Diamond Multimedia Sys., Inc. v. Superior Court*,
  19 Cal.4th 1036 (1999) ................................................................................... 19

*Edgar v. MITE Corp.*,
  457 U.S. 624 (1982) ........................................................................................ 20

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000) ........................................................................................ 15

*Feinberg v. Leighton*,
  1987 WL 6147 (S.D.N.Y. Jan. 30, 1987) ....................................................... 14

*Goller v. Nat'l Life of Fla. Corp.*,
  554 F.2d 1349 (5th Cir. 1977) ........................................................................ 19

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995) .................................................................................. passim

*Holland v. GEXA Corp.*,
  161 F. App'x 364 (5th Cir. 2005) ................................................................... 14

*Hollifield v. Resolute Cap. Mgmt. LLC*,
  2023 WL 4291524 (C.D. Cal. May 12, 2023) ....................................... 8, 11, 19

*Holsworth v. BProtocol Found.*,
  2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) ............................................... 9, 11

*In re Aluminum Warehousing Antitrust Litig.*,
  2015 WL 1344429 (S.D.N.Y. Mar. 23, 2015) ................................................ 10

*In re Century Aluminum Co. Sec. Litig.*,
  749 F. Supp. 2d 964 (N.D. Cal. 2010) ............................................................ 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust*
    *Litig.*,
    28 F.4th 42 (9th Cir. 2022) ................................................................................. 18

*In re Genius Brands Int'l, Inc. Sec. Litig.*,
    2024 WL 1473942 (9th Cir. Apr. 5, 2024) ........................................................... 9

*In re Infonet Servs. Corp. Sec. Litig.*,
    310 F. Supp. 2d 1080 (C.D. Cal. 2003) ............................................................... 7

*In re Longfin Corp. Sec. Class Action Litig.*,
    2019 WL 1569792 (S.D.N.Y. Apr. 11, 2019) ..................................................... 10

*Kainos Lab'ys, Inc. v. Beacon Diagnostics, Inc.*,
    1998 WL 2016634 (N.D. Cal. Sept. 14, 1998) ................................................... 14

*Lewis v. Fresne*,
    252 F.3d 352 (5th Cir. 2001) ............................................................................... 14

*Me. State Ret. Sys. v. Countrywide Fin. Corp.*,
    2011 WL 4389689 (C.D. Cal. May 5, 2011) ........................................................ 7

*Mehedi v. View, Inc.*,
    2023 WL 3592098 (N.D. Cal. May 22, 2023) ..................................................... 10

*Mirkin v. Wasserman*,
    858 P.2d 568 (1993) ............................................................................................. 19

*Moore v. Kayport Package Express, Inc.*,
    885 F.2d 531 (9th Cir. 1989) ............................................................................... 13

*Morrison v. Nat'l Australia Bank, Ltd.*,
    561 U.S. 247 (2010) ................................................................................... 3, 16, 17

*Pino v. Cardone Cap., LLC*,
    55 F.4th 1253 (9th Cir. 2022) ..................................................................... 7, 9, 11

*Pinter v. Dahl*,
    486 U.S. 622 (1988) .................................................................................... passim

*Risley v. Universal Navigation, Inc.*,

    2023 WL 5609200 (S.D.N.Y. Aug. 29, 2023), *appeal filed*, No. 23-1340 (2d

    Cir. Sept. 28, 2023) ........................................................................................................... 12

*Rosensweig v. Azurix Corp.*,

    332 F.3d 854 (5th Cir. 2003) ............................................................................................... 7

*SEC v. Levine*,

    462 F. App'x 717 (9th Cir. 2011) ...................................................................................... 17

*Shaw v. Digit. Equip. Corp.*,

    82 F.3d 1194 (1st Cir. 1996), *abrogated on other grounds by* 15 U.S.C. §

    78u–4(b)(2) ..................................................................................................................... 7, 12

*Silver Top Ltd. v. Monterey Indus. Inc.*,

    1995 WL 20266 (S.D.N.Y. Jan. 19, 1995) ....................................................................... 14

*Silverton v. Dep't of Treasury*,

    644 F.2d 1341 (9th Cir. 1981) ............................................................................................. 5

*Slack Techs., LLC v. Pirani*,

    598 U.S. 759 (2023) .......................................................................................................... 15

*Sollberger v. Wachovia Sec., LLC*,

    2010 WL 2674456 (C.D. Cal. 2010) ................................................................................... 9

*Sprewell v. Golden State Warriors*,

    266 F.3d 979 (9th Cir. 2001) ............................................................................................. 18

*Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*,

    2001 WL 1111508 (S.D.N.Y. Sept. 20, 2001) .................................................................. 11

*Stoyas v. Toshiba Corp.*,

    896 F.3d 933 (9th Cir. 2018) ................................................................................... 3, 17, 18

*Toombs v. Leone*,

    777 F.2d 465 (9th Cir. 1985) ............................................................................................. 12

*Wildes v. BitConnect Int'l PLC*,

    25 F.4th 1341 (11th Cir. 2022) ............................................................................................ 9

*Williams v. Block one*,

2022 WL 5294189 (S.D.N.Y. Aug. 15, 2022) .................................................................. 18

*Yates v. Municipal Mortg. & Equity, LLC*,

744 F.3d 874 (4th Cir. 2014) ......................................................................................... 16

*Zakinov v. Ripple Labs, Inc.*,

2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ................................................................. 14

**STATUTES**

15 U.S.C. § 10(b) ........................................................................................................................ 17

15 U.S.C. § 77e(a) ............................................................................................................... 15, 17

15 U.S.C. § 77e(c) ...................................................................................................................... 15

15 U.S.C. § 77l ........................................................................................................................... 15

15 U.S.C. § 77l(a) ................................................................................................................... 3, 14

15 U.S.C. § 77l(a)(1) ......................................................................................................... 2, 7, 15

15 U.S.C. § 77l(a)(2) .................................................................................................................. 15

15 U.S.C. § 77m ......................................................................................................................... 12

15 U.S.C. § 78j(b) ...................................................................................................................... 17

Cal Admin. Code § 260.011 ....................................................................................................... 19

Cal. Corp. Code § 25008(a) ....................................................................................................... 20

Cal. Corp. Code § 25008(b) ....................................................................................................... 20

Cal. Corp. Code § 25011 ............................................................................................................ 19

Cal. Corp. Code § 25110 ................................................................................................... 1, 5, 19

Cal. Corp. Code § 25503 ................................................................................................... 1, 5, 19

**OTHER AUTHORITIES**

H.R. Rep. No. 85, 73d Cong., 1st Sess. 1 (1933) ...................................................................... 15

**RULES**

Fed. R. Civ. Proc. 12(b)(6) .......................................................................................................... 6

Fed. R. Civ. Proc. 4(m) .............................................................................................................. 10

Fed. R. Civ. Proc. 8 ................................................................................................................. 7, 9

Fed. R. Civ. Proc. 8(a) ............................................................................................................ 10

**REGULATIONS**

17 C.F.R. § 230.901 ................................................................................................................ 17

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      STATEMENT OF THE ISSUES**

3          1.      Whether Plaintiff adequately pleads that (a) Solana Labs is a statutory seller,

4   (b) he purchased in a public offering, or (c) he purchased in a domestic transaction, as required to

5   state a claim under Section 12(a)(1) of the Securities Act of 1933 ("Securities Act").

6          2.      Whether Plaintiff adequately pleads that he (a) purchased from Solana Labs

7   directly, (b) purchased in an issuer transaction, or (c) purchased through an in-state transaction,

8   as required to state a claim under Sections 25503 and 25110 of the California Corporations Code.

9

**II.     INTRODUCTION**

10         Plaintiff's Consolidated Amended Class Action Complaint ("AC"), Dkt. 68, is the latest

11  in a line of lawsuits where buyers are seeking to unwind their transactions in crypto assets.

12  Whatever the merit of other litigation, Plaintiff here stands apart in his attack on Solana Labs

13  ("Labs"), who has no alleged connection to *his transactions* in SOL tokens.[1]  Plaintiff admits

14  that Labs offered the SOL token at issue to the public in *March 2020* in an auction held on

15  CoinList.  He does not allege that he purchased in March 2020 or in the CoinList auction, which

16  was open only to non-U.S. purchasers.  Instead, he admits that he bought SOL tokens *17 and 18*

17  *months* later, in August and September 2021, through a crypto platform called "Exodus" that

18  facilitates transactions on mostly foreign crypto exchanges.  He points to generic Tweets that

19  allowed people to follow news about the SOL token, other products that are compatible with the

20  SOL token, and the Solana blockchain.  And that's it.  There are no allegations of any connection

21  between Plaintiff and Labs itself, or even between Plaintiff and any other named defendants.

22  Plaintiff does not allege that he saw or even knew about any of the Tweets, or that any of them

23  (which span from March 2020 to March 2022) had anything to do with his purchase.  Not

24

---

25  [1] Labs, along with Defendants Multicoin Capital Management LLC and Kyle Samani, are filing
    contemporaneously a Motion to Compel Arbitration of Plaintiff's claims.  As a condition of
26  purchasing the tokens at issue in this lawsuit on the Exodus platform, Plaintiff accepted its terms
    of service.  As a result, any claims resulting from those purchases (including the AC's claims)
27  are subject to mandatory arbitration.  Because the AC also fails to state a claim, Labs files this
    Motion in addition to the Motion to Compel Arbitration in the event that the Court denies the
28  latter motion.

surprisingly, the provision of the federal securities laws under which he seeks relief and its state counterpart do not allow this suit.  The AC should be dismissed in its entirety.

The Supreme Court has made clear that Section 12 of the Securities Act is narrow in scope.  Not everyone who purchases an alleged security can bring a lawsuit against anyone who has ever sold it.  Rather, Section 12(a)(1) offers a recission remedy that allows a purchaser to sue only the person *from whom they purchased* the security, when such person *offers or sells* the security to the public without the required registration statement and prospectus.  15 U.S.C. § 77l(a)(1).  The Supreme Court has explained that this language stringently limits liability to the "immediate seller" who passed title to the security to the plaintiff, or, at its outer limit, to a person who "successfully solicits" the purchase—*i.e.*, causes the sale by urging the plaintiff to buy the security in order to gain a financial benefit from that transaction.  *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988).  Plaintiff does not come close to meeting Section 12(a)(1)'s requirements for alleging a claim—or those of California's stricter counterpart.

*First*, Plaintiff fails to plead that he purchased SOL tokens *from Labs*, as required by Section 12(a)(1).  Labs was a developer of open source software for a high performance, permissionless blockchain called Solana.  Labs sold SOL, the native token for the Solana blockchain, to the public for the first and only time in March 2020 through a Dutch Auction[2] open only to non-U.S. purchasers.  Plaintiff did not buy through the Dutch Auction.  Rather, he bought SOL tokens on the secondary market 17 and 18 months later, in August and September 2021.  Plaintiff does not even attempt to plead privity between himself and Labs—nor could he, as Plaintiff does not allege any public sales by *Labs* after the Dutch Auction.  That deficiency forecloses a "conventional" passing-title claim under *Pinter*.  486 U.S. at 642.  Plaintiff fares no better under *Pinter*'s solicitation standard, which requires interaction tantamount to "a buyer-seller relationship" between plaintiff and defendant before that defendant can be held liable as if

---

[2] In a Dutch Auction, the seller does not set a fixed price for the tokens to be sold.  Instead, the seller decides on the number of tokens they would like to sell and the price is determined by the bidders.  Buyers submit a bid with the number of tokens they would like to purchase at a specified bid price.  A list is created, with the highest bid at the top.  The auctioneer works down the list of bidders until the total desired number of tokens is sold.

1   "the buyer 'purchased' the security from him."  *Id.* at 642, 647.  The AC does not clear this

2   hurdle.  Plaintiff does not plead any communication at all *by Labs*; or that any such

3   communication "succeeded," *i.e.*, persuaded him to purchase SOL; or that Labs had a financial

4   interest in his particular SOL purchases, which were on an unspecified exchange with an

5   unspecified counterparty—each of which is an independent basis for defeating any solicitation

6   theory Plaintiff offers.  Because Plaintiff does not (and cannot) plead that Labs was his statutory

7   seller, his Section 12(a)(1) claim should be dismissed.

8       *Second*, Plaintiff fails to plead that he purchased SOL tokens *in a public offering* from

9   Labs.  Text, context, and precedent constrain Section 12(a)(1)'s scope to "purchase[s]" of

10  unregistered securities "from" a defendant in a public offering.  15 U.S.C. § 77l(a).  Section 12

11  does not permit a plaintiff to hold an issuer liable for each and every secondary market sale of an

12  alleged security in perpetuity—because downstream purchasers cannot in any way be said to

13  have "purchas[ed] such security from him."  *Gustafson v. Alloyd Co.*, 513 U.S. 561, 567-69

14  (1995) (citation omitted) (discussing same language in context of a 12(a)(2) claim).  Because

15  Plaintiff's allegations make clear that he is a downstream purchaser, his claim must be dismissed.

16      *Third*, Plaintiff fails to plead that any of his purchases were the product of a *domestic*

17  offer or sale of securities regulated by the Securities Act.  The Supreme Court has made clear

18  that the Securities Act applies "only within the territorial jurisdiction of the United States."

19  *Morrison v. Nat'l Australia Bank, Ltd.*, 561 U.S. 247, 255 (2010) (citation omitted).  To satisfy

20  this requirement for purposes of Section 12(a)(1), Plaintiff was required to plead that a party to

21  his transaction incurred "irrevocable liability" in the United States.  *Stoyas v. Toshiba Corp.*, 896

22  F.3d 933, 949 (9th Cir. 2018).  But the AC's bare bones allegations regarding Plaintiff's

23  transactions do not satisfy this requirement.  And any argument that his transaction was domestic

24  is contradicted by his admission that he purchased SOL using Exodus, a platform that directs

25  users who wish to trade tokens to third-party exchanges located outside of the United States.

26      *Finally*, for many of the same reasons that his federal claim fails, Plaintiff's claim under

27  California's stricter law governing the sale of unregistered securities is meritless.

28      The AC's claims against Labs should be dismissed.

### III. BACKGROUND

#### A. Factual Background

Labs was founded in 2018; since its inception, it has helped develop open source software for Solana, a high-performance permissionless blockchain. AC ¶¶ 2-3, 42. A blockchain is a digital ledger that stores a series of records and data points across different computers on a network that can span the globe. AC ¶¶ 33-34. Labs' founders developed the Solana blockchain to improve on earlier blockchains, such as Bitcoin and Ethereum, by providing faster transaction speeds. AC ¶¶ 33-34, 38-39, 42. Whereas Bitcoin can process fifteen transactions per second, Solana is capable of processing up to thousands of transactions per second. AC ¶ 42. The Solana blockchain also allows users to construct their own smart contracts and applications. AC ¶ 2. Just as the Bitcoin blockchain uses Bitcoin (BTC) and the Ethereum blockchain has Ether (ETH), Solana has "SOL"—a tradable native token with intrinsic utility and value. AC ¶¶ 45, 56.

Labs conducted four "private funding [] rounds" between April 2018 and February 2020—all of which were exempt from registration because they were not open to the public. AC ¶¶ 46-51.[3] In March 2020, Labs sold 8 million SOL tokens at a price of 22 cents per token via a Dutch Auction on CoinList, a crypto trading platform. AC ¶ 52. The Dutch Auction was Labs' first and only public offering, and only non-U.S. persons were eligible to participate. Ex. 2 (https://coinlist.co/solana/faq).[4]

A Twitter account (@solana) maintained by the Solana Foundation ("Foundation") provides updates and information about the Solana ecosystem, including decentralized applications (dApps) built on the Solana blockchain, community events, and technical changes to the Solana network. *See generally* https://twitter.com/solana?lang=en (last visited April 8, 2024). The @solana account has made at least 8,235 posts since joining Twitter in January

---

[3] In June 2021, Labs completed a fifth and final private fundraising round, AC ¶ 54, via another offshore token sale primarily to venture capital funds, Ex. 1 (Solana Foundation, *Solana Labs Completes a $314.15M Private Token Sale* (June 9, 2021), https://solana.com/news/solana-labs-completes-a-314-15m-private-token-sale-led-by-andreessen-horowitz-and-polychain-capital (cited in AC ¶¶ 54-55)).

[4] All exhibits are attached to the concurrently filed Declaration of Morgan E. Whitworth.

1    2018.  Ex. 3 (https://twitter.com/solana?lang=en).  The @solana account has also identified

2    crypto wallets that could hold SOL and described aspects of the "Solana ecosystem."  AC ¶ 86.[5]

3         **B.**    **The Complaint**

4         On July 1, 2022, Plaintiff Mark Young commenced this putative class action.  Dkt. 1.  On

5    November 13, 2023, Plaintiff was appointed as Lead Plaintiff, Dkt. 59, and on January 12, 2024,

6    he filed the AC against Labs, Foundation, Yakovenko, Multicoin, and Samani, AC ¶¶ 16-20.

7    Plaintiff has never served Foundation or Yakovenko in the almost two years this case has been

8    pending.  Dkt. 65 at 2 n.1.[6]  Against Labs, Plaintiff asserts claims under Sections 5 and 12(a)(1)

9    of the Securities Act (Count 1) and Sections 25110 and 25503 of the California Corporations

10    Code (Count 3).  AC ¶¶ 131-41, 150-56.

11         Plaintiff alleges that he bought SOL "from California" "in August and September 2021,"

12    AC ¶15, approximately 17 and 18 months after the Dutch Auction cleared, AC ¶¶ 52-53.  In the

13    sworn certification Plaintiff filed with his original complaint, Plaintiff elaborates that he bought

14    SOL "on Exodus."  Dkt. 1 at 38-40.  Exodus's platform allows users to "send, receive and

15    exchange crypto" using its "Exchange Aggregator," a program that "connects [Exodus's]

16    customers to third-party exchanges on which [its] customers can exchange on[e] crypto asset for

17    another."[7]  The vast majority of Exodus's revenue derives from "international third-part[ies],"

18

19

20

---

21    [5] According to the AC, posts on @solana have been attributed to "[t]he Solana Foundation" since

22    July 7, 2020, at the latest.  AC ¶ 86; *see also* Ex. 3 (https://twitter.com/solana?lang=en) (bio stating "Twitter by @SolanaFndn").

23    [6] While Foundation and Yakovenko have not been served, the claims against them can be

24    dismissed for many of the reasons stated herein.  *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742-43 (9th Cir. 2008) ("[W]e have upheld dismissal with prejudice in favor of a party which had not appeared, on the basis of facts presented by other defendants which had

25    appeared."); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1345 (9th Cir. 1981) ("A District Court may properly on its own motion dismiss an action as to defendants who have not moved to

26    dismiss where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

27    [7] Ex. 4 (Exodus Movement, Inc., (Form 253(g)(2)) at 51 (Apr. 9, 2021),

28    https://www.sec.gov/Archives/edgar/data/1821534/000114036121012255/nt10013846x18_253g 2.htm).

1   including exchanges.[8]  Plaintiff paid as little as $72.65 and as much as $188.06 per SOL token.

2   At the time he filed the original complaint and again in the AC, Plaintiff demanded recission and

3   made an offer in the AC to "tender" his SOL tokens.  AC ¶ 120.  Since the AC's filing, SOL

4   tokens have traded at a price in excess of Plaintiff's highest purchase price (*i.e.*, $188.06) on 19

5   days between March 14, 2024 and April 3, 2024.[9]  Had Plaintiff sold the SOL tokens he claimed

6   to have held as of the time of the AC's filing during that period, he would have no losses to

7   recover in this litigation.

8        Plaintiff does not allege that he transacted directly with Labs—or with any of the named

9   defendants, for that matter.  Instead, he alleges a series of private sales by Labs between April

10   2018 and June 2021, a single overseas "Dutch Auction" offering of 8 million SOL tokens in

11   March 2020, and non-sale distributions of SOL tokens.  *See supra* at 4.  And he alleges a

12   "timeline of statements" made on the @solana Twitter account.  AC ¶ 86.  But he does not

13   attribute those statements to Labs, nor does he allege that he viewed (let alone purchased as a

14   result of) any of those statements.

15   **IV.    LEGAL STANDARD**

16        To overcome a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "factual content

17   that allows the court to draw the reasonable inference that the defendant is liable for the

18   misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court "may consider

19   material incorporated into the complaint or matters of public record."  *Coto Settlement v.

20   Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).  The Court need not accept as true "conclusory"

21   or "speculative" allegations.  *Arcell v. Google LLC*, 2024 WL 1090009, at *2, 4 (N.D. Cal. Feb.

22   5, 2024).  And when a plaintiff fails to allege "specific facts identifying the relevant conduct of

23

24

---

25   [8] Ex. 4 at 6, 27, 83-84 (explaining that Exodus "contract[s] with international third-party API

26   providers" and that Exodus's "revenue in 2020 was derived primarily from non-U.S. jurisdictions" with just "3% attributable to the United States").

27   [9] Ex. 5 (CoinMarketCap, *Solana price today* (last visited April 11, 2024),

28   https://coinmarketcap.com/currencies/solana/); *see also* AC ¶¶ 76-77 (relying on "data from CoinMarketCap").

each defendant," dismissal is warranted under Rule 8 of the Federal Rules of Civil Procedure. *Id.* at *5 (citation omitted).

## V.   ARGUMENT

### A.   Plaintiff Fails To Plead That Labs Is A Statutory Seller

Section 12(a)(1) limits who a plaintiff can sue: a defendant who "*offers or sells a security in violation of*" Section 5 is "liable . . . *to the person purchasing such security from him*." 15 U.S.C. § 77l(a)(1) (emphasis added). A plaintiff must allege that the defendant was a "statutory seller" because he either (1) passed title to the alleged security to the plaintiff or (2) successfully solicited the plaintiff's purchase of the alleged security, motivated at least in part by a desire to serve the defendant's financial interests or those of the securities owner. *Pinter*, 486 U.S. at 642, 647; *Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1257-58 (9th Cir. 2022).[10]

#### 1.   Labs Did Not Pass Title To SOL Tokens To Plaintiff

It is well settled that to plead passing-title liability under Section 12, a plaintiff must bring a claim against his "immediate seller," not his "seller's seller." *Pinter*, 486 U.S. at 644 n.21. A plaintiff must therefore show that he "purchased [alleged securities] directly from" the defendant. *Me. State Ret. Sys. v. Countrywide Fin. Corp.*, 2011 WL 4389689, at *8 (C.D. Cal. May 5, 2011). For example, in a traditional "firm commitment underwriting" IPO, where an issuer sells all of the shares in the offering to underwriters who then publicly offer them to investors, investors can only pursue a passing title claim against the underwriters who sold to them directly and cannot sue the issuer who sold only to the underwriters. *Id.* at *9-11 (granting issuer's motion to dismiss); *see also Rosensweig v. Azurix Corp.*, 332 F.3d 854, 871 (5th Cir. 2003) (recognizing that "suing the issuers" in a firm commitment underwriting "is an attempt to recover against [the] seller's seller" (citation omitted)); *Shaw v. Digit. Equip. Corp.*, 82 F.3d 1194, 1215-16 (1st Cir. 1996) (similar), *abrogated on other grounds by* 15 U.S.C. § 78u–4(b)(2); *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1100 (C.D. Cal. 2003) (similar).

---

[10] The SOL token is not a security and Plaintiff's SOL purchases are not securities transactions, as the evidence will establish if this case were to proceed past the pleading stage. But the Court can dismiss Plaintiff's claims without reaching that question for all of the reasons stated herein, including because Plaintiff cannot satisfy Section 12(a)'s "statutory seller" requirement.

1       Here, Plaintiff does not even attempt to plead that he transacted directly with Labs.  Nor

2   can he.  The only sales Labs made to the public were through the Dutch Auction to non-U.S.

3   purchasers in March 2020—but Plaintiff does not allege he was one of those purchasers or even

4   purchased SOL on or around that time.  AC ¶¶ 52, 64.  Plaintiff does not allege that Labs ever

5   sold a single SOL token on a secondary exchange.  To the contrary, the AC alleges that Labs

6   privately distributed SOL tokens to specific groups of people, including employees, service

7   providers, and venture capital investors.[11]  AC ¶¶ 47-48, 50-51, 54, 75, 117.  Indeed, Plaintiff

8   does not even plead that Labs had an account connected to a secondary exchange that it could

9   have used to sell SOL tokens publicly, let alone (as required) to Plaintiff.  Plaintiff's factual

10  allegations thus foreclose his passing-title claim.  All that remains in the AC are conclusory

11  allegations that Labs "profited handsomely" from token sales, without any facts suggesting that

12  Labs transacted with Plaintiff or profited from Plaintiff's SOL purchases.  AC ¶ 138.  Because

13  the AC "contains no facts—as opposed to conclusory assertions—from which to draw the

14  inference that" Labs "transacted directly with" Plaintiff, Plaintiff cannot state a passing-title

15  claim.  *Hollifield v. Resolute Cap. Mgmt. LLC*, 2023 WL 4291524, at *6 (C.D. Cal. May 12,

16  2023).

17          **2.      Labs Did Not Solicit Plaintiff's Purchase Of SOL Tokens**

18          In *Pinter*, the Supreme Court explained that Section 12's "purchase[] . . . from"

19  requirement reaches the person who directly transacts with the plaintiff and "those who solicit

20  securities purchases."  486 U.S. at 647.  Plaintiff fares no better under this "solicitation" prong.

21          Solicitation liability extends only to [a defendant] who successfully solicits the purchase,

22  motivated at least in part by a desire to serve his own financial interests or those of the securities

23  owner."  *Id.*  This test does not sweep in "participants only remotely related to the relevant

24  aspects of the sales transaction," *i.e.*, someone who is only a "substantial factor in causing the

---

[11] Plaintiff also alleges that the number of SOL tokens in circulation among people unaffiliated with Labs increased by millions while the total number of SOL tokens remained constant and suggests that *someone* must have sold SOL tokens to the public.  AC ¶¶ 76-80.  But allegations about the *volume* of SOL tokens in circulation say nothing about whether *Labs* sold to Plaintiff (or anyone else) on the secondary market, particularly given Plaintiff's contradictory allegations in the AC that Labs privately distributed tokens to numerous other people and entities.

transaction to take place.'" *Id.* at 650-51. Rather, *Pinter*'s standard ensures that it is "fair to say that the buyer 'purchased' the security from" the soliciting party and thus to hold that party liable as if he were "the owner in a rescission action." *Id.* at 647.

*Pinter*'s solicitation test is only satisfied if three elements are all met. *First*, a plaintiff must plead that the defendant made a statement "directed at producing *the sale*." *Id.* at 644, 646-647 (emphasis added); *Pino, LLC*, 55 F.4th at 1258, 1260. *Second*, that solicitation must also be "successful[]," *Pinter*, 486 U.S. at 646-47, meaning that a plaintiff must "purchase[] securities *as a result of* [a defendant's] solicitation[]." *Holsworth v. BProtocol Found.*, 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021) (emphasis added); *see also Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1347 (11th Cir. 2022) (recognizing that whether "Plaintiffs purchased securities *as a result of*" a solicitation is an independent ground for dismissal). *Third*, a soliciting defendant must have had an "interest in the sales" that are the subject of Plaintiff's Section 12 claim, such as "where [the defendant] 'anticipat[es] a share of the profits' or receives a brokerage commission" from the transaction. *Pinter*, 486 U.S. at 654-55; *Pino*, 55 F.4th at 1258 (financial interests shown based on defendant's receipt of "35% of the Funds' profits" from investment of purchasers' funds and defendant's "personal[] control[] of" direct seller).

Here, Plaintiff fails to plead *any* of these elements. *First*, Plaintiff does not plead that Labs made any statement "directed at producing the sale." *Pinter*, 486 U.S. at 646; *see also In re Genius Brands Int'l, Inc. Sec. Litig.*, 2024 WL 1473942, at *1, 5 (9th Cir. Apr. 5, 2024) (defining solicitation as "urg[ing] or lur[ing] readers into purchasing [a particular] stock"). Plaintiff relies exclusively on the @solana Twitter account's posts, which he attributes to both Labs and Foundation. AC ¶ 86. To start, this allegation "impermissibl[y] lump[s]" Labs together with Foundation in violation of Rule 8(a). *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4-5 (C.D. Cal. 2010); *Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*, 2023 WL 8420896, at *7 (N.D. Cal. Dec. 4, 2023) (explaining that even if a plaintiff "[s]eparat[es] out each individual defendant, rather than using a defined group," a complaint must provide allegations about "how each individual party" violated the law); *Arcell v. Google LLC*, 2024 WL 1090009, at *5 (N.D. Cal. Feb. 5, 2024) (collecting cases). When a plaintiff brings a solicitation claim

against multiple defendants, he must support his claims with "specific factual allegations" as to how "each individual" defendant "played a direct role in the solicitation of the Plaintiff." *Mehedi v. View, Inc.*, 2023 WL 3592098, at *12 (N.D. Cal. May 22, 2023).  And even where "two separate legal entities may have a corporate affiliation," that "does not alter" plaintiff's obligation under Rule 8 and *Twombly* to plead more than "[m]ere generalizations" regarding "defendants as a group."  *In re Aluminum Warehousing Antitrust Litig.*, 2015 WL 1344429, at *2 (S.D.N.Y. Mar. 23, 2015).  Plaintiff cannot plead a claim against Labs by equating it with Foundation—a different entity who is not even properly part of this case.  *See* Fed. R. Civ. P. 4(m); *supra* at 5.  Plaintiff's failure to satisfy Rule 8(a) by itself requires dismissal.

Plaintiff's own allegations make clear why they rely on group pleading.  A plaintiff cannot plead a solicitation claim against a defendant who "had no communication with" the plaintiff whatsoever.  *Crawford v. Glenns, Inc.*, 876 F.2d 507, 512 (5th Cir. 1989).  But that is exactly what Plaintiff seeks to do here.  Plaintiff points to a laundry list of tweets made over a two-year time period from the @solana Twitter account, AC ¶ 86, which he claims reflect "Solana Labs' and Solana Foundation's offers and solicitations," AC ¶ 85.  But Plaintiff offers no factual allegations that *Labs* was responsible for the tweets at issue.  Indeed, several of the tweets were alleged to have been made by the "Solana Foundation."  *See* AC ¶ 86.  None even mentions Labs (which still wouldn't be sufficient, *see Mehedi*, 2023 WL 3592098, at *12).  The AC's allegations thus underscore that Plaintiff cannot plead that Labs made any statement directed at producing his purchase of SOL.[12]

*Second*, even if any of the tweets were attributable to Labs, none of them successfully solicited, *i.e.*, caused, Plaintiff's purchase.  The AC quotes 27 tweets dating back to March 2020,

---

[12] Plaintiff does not and cannot suggest that any involvement—even substantial involvement—in facilitating the listing of SOL on an exchange amounts to an offer or sale of securities within the meaning of Section 12.  *See In re Longfin Corp. Sec. Class Action Litig.*, 2019 WL 1569792, at *7 (S.D.N.Y. Apr. 11, 2019) (rejecting argument that defendant's "assistance in the initial public offering and in the NASDAQ listing process" made it liable for solicitation); *see also Mehedi*, 2023 WL 3592098, at *12 (N.D. Cal. May 22, 2023) (recognizing "it is not sufficient to 'participate in soliciting the purchase'" (citing *Pinter*, 486 U.S. at 651 n.27)).  As *Pinter* explained, being a "substantial factor" in a "securities transaction and its surrounding circumstances" is insufficient to plead liability.  486 U.S. at 650-51.

most of which describe crypto exchanges listing SOL and others of which identify wallets SOL was compatible with or provide updates regarding the Solana network.  AC ¶ 86.  Yet Plaintiff nowhere alleges that he saw or even knew about a single one of the tweets quoted in the AC, and so none of the tweets plausibly could have "successfully" solicited his purchase.  As the court explained in *Hollifield*, allegations that defendants "engaged in general solicitation by hosting 'investor seminars, dinners, and radio shows'" get a plaintiff nowhere if that plaintiff does "not allege that [he] attended any seminars or dinners or listened to any radio shows."  2023 WL 4291524, at *6 (dismissing solicitation claim).  Here, as in *Hollifield*, Plaintiff does not allege that his purchase had any relationship to any tweet.  That silence dooms his solicitation-by-tweet theory.  After all, if an @solana tweet had something to do with his purchase, "presumably [P]laintiff would have known" and alleged as much.  *Steed Fin. LDC v. Nomura Sec. Int'l, Inc.*, 2001 WL 1111508, at *7 (S.D.N.Y. Sept. 20, 2001).

But even an allegation that Plaintiff saw the quoted tweets would not move the needle for his claim.  The content of the cited tweets does not suggest that his purchase was the result of anything the @solana Twitter account posted.  As noted, the cited @solana tweets describe exchange listings, wallet options, or information regarding the Solana network.  AC ¶ 86.  They simply provide information without trying to persuade anyone to purchase, and thus cannot amount to a solicitation, let alone a successful one.  And apart from whether a particular tweet *could* have solicited *someone's* purchase, Plaintiff fails to allege that any tweet actually and successfully solicited *his* purchase.  None of the alleged tweets mentions *Exodus*—the platform that Plaintiff used to access the unspecified third-party exchange where he purchased SOL tokens.  There is no discernible connection between Plaintiff's purchases "on Exodus," Dkt. 1 at 38-40, and @solana's tweet about listing SOL on an unrelated exchange, AC ¶ 86.

Lack of temporal proximity also undercuts Plaintiff's "successful" "solicitation" argument.  The quoted tweets begin in March 2020—well over a year before Plaintiff ever purchased SOL.  It is implausible to suggest that Plaintiff purchased in August and September 2021 "as a result of" stale tweets about SOL from 2020, *Holsworth*, 2021 WL 706549, at *3; *cf. Pino*, 55 F.4th at 1256 (plaintiff alleges he purchased the security at issue "two days after

1   attending a marketing presentation hosted by" defendant)—and in any event, any claim based on

2   tweets dating back before July 1, 2021, would be time barred.[13]   Only 3 of the 27 quoted tweets

3   were published within a month of Plaintiff's first purchase on August 19, 2021, and none of

4   those tweets even refers to the SOL token—rather, they refer to a wallet and other products on

5   the Solana blockchain, the @solana account's number of Twitter followers, and a network

6   upgrade.   AC ¶ 86; Dkt. 1 at 38-40.   A statement cannot solicit the purchase of an alleged

7   security when it does not even mention it.   Accordingly, even if Plaintiff had alleged that he

8   followed the @solana twitter feed, his allegations provide no plausible grounds for concluding

9   that any tweet solicited, let alone successfully solicited, Plaintiff's August and September 2021

10  purchases.

11        *Third*, Plaintiff fails to plead that Labs had a financial interest in his purchase.   Issuers

12  who sell securities in firm commitment underwritings—and thus do not transact directly with

13  buyers—are not liable for solicitation unless they act "in the manner of a broker or vendor's

14  agent" to "further their own financial motives."   *Shaw*, 82 F.3d at 1215-16; *Pinter*, 486 U.S. at

15  644-46.   Under this test, it is not enough to plead that Labs held SOL tokens; rather, Plaintiff

16  must show that Labs had "a financial interest in the particular transactions at issue here," namely,

17  *Plaintiff's* purchase of SOL tokens.   *Risley v. Universal Navigation, Inc.*, 2023 WL 5609200, at

18  *19 (S.D.N.Y. Aug. 29, 2023), *appeal filed*, No. 23-1340 (2d Cir. Sept. 28, 2023).   Plaintiff fails

19  to do so.   Plaintiff pleads almost no details about his purchase of SOL on an unspecified

20  exchange via Exodus or the unnamed counterparty from whom he purchased in a presumably

21  blind bid-ask transaction.   None of Plaintiff's allegations suggests that Labs received a cut of or

22  stood to gain anything from Plaintiff's purchases of SOL tokens.   And Plaintiff's failure to

23  identify his immediate seller makes it implausible to say Labs had a motive to assist that seller.

24

---

25  [13] Section 12(a)(1) claims must be "brought within one year after the violation upon which it is
    based."   15 U.S.C. § 77m; *Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985) (Section 12

26  "plaintiff must affirmatively plead sufficient facts in his complaint to demonstrate conformity
    with the statute of limitations").   Here, because Plaintiff does not plead that Labs passed title to

27  him, the only "violation[s]" at issue are the alleged solicitations.   Because the original complaint
    was filed July 1, 2022, he cannot rely on alleged solicitations before July 1, 2021—which

28  eliminates most of the quoted tweets.   AC ¶ 86 (alleging four tweets after July 1, 2021).

Accordingly, Plaintiff's claim against Labs fails to satisfy any of *Pinter*'s conditions for imposing solicitation liability.  486 U.S. at 647.  This result is consistent with the express limits the Supreme Court created for solicitation claims.  Section 12 does not impose liability on anyone who has some "degree of involvement in [a] securities transaction and its surrounding circumstances"  *Pinter*, 486 U.S. at 650-51.  So simply "playing a major role in setting up [a] venture" does not give rise to solicitation liability.  *Capri v. Murphy*, 856 F.2d 473, 478-79 (2d Cir. 1988).  A defendant must instead play a role in *the plaintiff's* purchase, such that the defendant can "fair[ly]" be "align[ed]" "with the [security's] owner in a rescission action."  *Pinter*, 486 U.S. at 647; *id.* at 651 (solicitation liability does not extend beyond participants in "the relevant aspects of the sales transaction").  Because Plaintiff does not—and cannot—plead that Labs had anything to do with his purchase, his solicitation claim fails.

## B.    Plaintiff Fails To Plead He Purchased From Labs In A Public Offering

Plaintiff does not plead that he purchased from Labs in a public offering.  As discussed, the only public offering of SOL tokens was the Dutch Auction conducted in March 2020.  Plaintiff admits he did not purchase tokens in that auction.  Yet text, precedent, and statutory context make clear that Section 12(a)(1)—like its counterpart, Section 12(a)(2)—only governs a plaintiff's "purchase[s]" of publicly offered securities "from" an issuer, its controlling shareholders, or underwriters.  *Gustafson*, 513 U.S. at 569 (Section 12(a)(2) applies only to public distributions); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 536 (9th Cir. 1989) (construing "identical language" that applies to Section 12(a)(1) and 12(a)(2) to have identical meaning).  For a plaintiff to have statutory standing to sue under either provision of Section 12, he must plead that he purchased in a public offering.  Because Plaintiff's allegations make clear that he did not, his claim must be dismissed.

In *Gustafson*, the Supreme Court explained that "[b]y and large, only public offerings by an issuer of a security, or by controlling shareholders of an issuer, require the preparation and filing of registration statements."  513 U.S. at 569.  These "registration and disclosure obligations" for "public offerings" were the "primary innovation of the 1933 Act."  *Id.* at 571-72.  The civil liability provision in Section 12(a)(2) provides a remedy for a public offering that fails

1  to fulfill these new obligations—but it did not create "vast additional liabilities" for secondary

2  market participants that were "independent of the new substantive obligations imposed" on

3  issuers, their controlling shareholders, and their underwriters.  *Id.* at 572.

4          That same principle holds for Section 12(a)(1).  For a plaintiff to "*purchase[] such*

5  *security from*" the person who violates Section 12(a)(1) and Section 5's requirements, that

6  plaintiff must do so in a public offering.[14]  15 U.S.C. §77l(a) (emphasis added).  Section 12's two

7  liability provisions "use identical language to indicate the persons who may be held liable, the

8  persons who may sue, as well as the remedy available."  *Craftmatic Sec. Litig. v. Kraftsow*, 890

9  F.2d 628, 635 (3d Cir. 1989) (citations omitted).  Courts have recognized that Sections 12(a)(1)

10 and 12(a)(2)'s parallel language "deal[s] with [public] distributions," *Ballay v. Legg Mason*

11 *Wood Walker, Inc.*, 925 F.2d 682, 691 (3d Cir. 1991), and *Gustafson*'s holding "encompasses *all*

12 of § 12," *Lewis v. Fresne,* 252 F.3d 352, 357 n.4 (5th Cir. 2001).  Accordingly, courts have

13 rejected Section 12(a)(1) claims where a plaintiff fails to show that they purchased in a public

14 offering, *i.e.*, from the person who violated the Securities Act's registration requirements.  *Id.* at

15 357 (affirming dismissal of Section 12(a)(1) and 12(a)(2) claims because "Section 12 of the 1933

16 Act does not apply to private transactions"); *Holland v. GEXA Corp.,* 161 F. App'x 364, 366 (5th

17 Cir. 2005) (explaining that Section 12(a)(1) claim would fail because plaintiff did not "allege[]

18 any facts demonstrating the sale was actually a public offering"); *Kainos Lab'ys, Inc. v. Beacon*

19 *Diagnostics, Inc.*, 1998 WL 2016634, at *6 (N.D. Cal. Sept. 14, 1998) ("'public offering'

20 requirement stated in *Gustafson* clearly extends to" Section 12(a)(1)).[15]

21

---

22 [14] Cases reaching a contrary conclusion are distinguishable.  For example, in *Zakinov v. Ripple Labs, Inc.*, the complaint alleged that the issuer itself sold to the public in an initial coin offering

23 and *also directly sold to the public* on the secondary market.  2020 WL 922815, at *11-12 (N.D. Cal. Feb. 26, 2020) (Hamilton, J.).  Here, there are no factual allegations suggesting that Labs

24 sold directly to *anyone* on the secondary market.  Further, even if a secondary market seller could be a "statutory seller," *Ripple* did not address the question of downstream purchasers'

25 *statutory standing*, which is the subject of a pending motion for summary judgment in that case.

26 [15] *See also Alpha Mgmt. Inc. v. Last Atlantis Cap. Mgmt., LLC*, 2012 WL 5389734, at *3 (N.D. Ill. Nov. 2, 2012) (defendants "unquestionably are correct" that "the absence of a public offering

27 defeats any Section 12(a)(1) claim"); *Silver Top Ltd. v. Monterey Indus. Inc.*, 1995 WL 20266, at *4 (S.D.N.Y. Jan. 19, 1995) (Section 12(a)(1) claim failed because sale involved private

28 offering); *Feinberg v. Leighton,* 1987 WL 6147, at *15 (S.D.N.Y. Jan. 30, 1987) (dismissing a 12(a)(1) claim because there "was not a public offering").

The only difference is that Section 12(a)(2) governs misleading statements in a "prospectus or *oral communication*," 15 U.S.C. § 77l(a)(2) (emphasis added), while Section 12(a)(1) bars the sale of securities offered or sold in violation of Section 5, *id.* § 77l(a)(1), which in turn bars sales or offers through a "prospectus or *otherwise*" without a registration statement in effect, *id.* § 77e(a), (c) (emphasis added).  As *Gustafson* explained, liability for securities sold pursuant to a "prospectus or oral communication" is properly limited to securities sold in public offerings, because the term "prospectus" refers to "documents related to public offerings by an issuer or its controlling shareholders," and "'oral communication' is restricted to oral communications that relate to a prospectus."  513 U.S. at 567-69.  There is no reason to read Section 12(a)(1) more broadly.  Doing so would create "vast additional liabilities" for sellers on the secondary market, when the Supreme Court did not do so for Section 12(a)(2).  *Id.* at 572. Just as an ordinary secondary market seller has no practical ability to correct a misleading statement in a prospectus, he cannot compel the filing of a registration statement.  A "symmetrical and coherent regulatory scheme" would not impose liability on the secondary seller in either situation.  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). Limiting Section 12 liability to sales in public offerings is also consistent with Section 12's title, which provides for "[c]ivil liabilities arising in connection with prospectuses and communications."  15 U.S.C. § 77l.  And it is consistent with a comprehensive framework for securities regulation that allows "a narrow class of claims to proceed on lesser proof" under the 1933 Act "but requires a higher standard of proof to sustain a broader set of claims" under the 1934 Act.  *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023).[16]

The phrase "or otherwise" does not broaden Section 12(a)(1)'s reach to secondary market transactions, any more than the phrase "oral communication" broadens Section 12(a)(2)'s reach to secondary markets.  Rather, "or otherwise" refers to something "similar to the listed

---

[16] The 1933 Act's history underscores Section 12(a)(1)'s limits.  The Supreme Court has repeatedly emphasized that the 1933 Act is "focused 'primarily' on the regulation of new offerings."  *Slack*, 598 U.S. at 762 (quoting *Gustafson*, 513 U.S. at 572); H.R. Rep. No. 85 at 5, 73d Cong., 1st Sess. 1 (1933) (explaining that the 1933 Act "affects only new offerings of securities," not "the ordinary redistribution of securities").

example[]"—(*i.e.*, "any prospectus")—"in some respects but different in others."  *Begay v. United States*, 553 U.S. 137, 144 (2008) (citation omitted), *abrogated on other grounds by Johnson v. United States*, 576 U.S. 591 (2015).  Where a seller violates Section 5's registration requirements, he will be liable to his purchasers under Section 12 regardless of whether he offers a security through the statutorily required prospectus or through other "communications held out to the public at large."  *Gustafson*, 513 U.S. at 576.  The phrase "or otherwise" in Section 5 thus confirms that Section 12 covers public distributions of securities even where the seller violates the prospectus requirement, but it does not suggest that Section 12 extends beyond that intended scope by creating unending liability for secondary market transactions.  If Congress had intended the provision to have an "all encompassing" meaning reaching any sale, "it is hard to see why it would have needed" to use the words "any prospectus or otherwise" at all, *Begay*, 553 U.S. at 142, when it could have easily used a "simpler phrase" that covered "'all . . . sales of securities,'" *Morrison*, 561 U.S. at 268 n.10.

Here, Plaintiff fails to plead a Section 12(a)(1) claim because his allegations undercut any suggestion that he purchased SOL in a public offering.  Plaintiff bears the burden of pleading "sufficient supporting facts" to give rise to a plausible inference that he has satisfied this condition of Section 12 liability.  *See Yates v. Municipal Mortg. & Equity, LLC*, 744 F.3d 874, 900 (4th Cir. 2014).  To do so, a plaintiff must typically plead that they purchased in a sale by an issuer, its controlling shareholders, or underwriters at the public offering price on the date the shares became available.  *See id.*; *see also Gustafson*, 513 U.S. 569.  Plaintiff cannot do so here.  He does not allege he purchased any alleged securities "directly from" Labs at all, let alone in a public offering.  *Cullen v. RYVYL Inc.*, 2024 WL 898206, at *9 (S.D. Cal. Mar. 1, 2024) ("If the [plaintiff] did in fact purchase stock directly from the [offering], it should have said so." (citation omitted)).  That by itself requires dismissal.  *See id.* (collecting cases rejecting "wishy-washy allegations" regarding identity of plaintiff's seller).  And what little Plaintiff pleads about his purchases confirms he cannot state a claim.  Plaintiff bought his SOL tokens over a year after Labs' only public offering in the March 2020 Dutch Auction for amounts well over the auction-clearing price of 22 cents.  *Compare* Dkt. 1 at 38-40, *with* AC ¶ 52.  Plaintiff thus cannot plead

that he "purchased any [alleged securities] on the date of the [relevant] offering, or at the . . .

offering price." *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 976-77 (N.D. Cal.

2010).  Because the AC makes clear that Plaintiff made all of his purchases on the secondary

market, not in any public offering, those purchases cannot give rise to Section 12(a)(1) liability.

## C.   Plaintiff Fails To Plead A Domestic Transaction

The Securities Act of 1933 is "focus[ed] on domestic transactions," *Morrison*, 561 U.S.

at 268; 15 U.S.C. § 77e, and its coverage does not extend to "offers and sales that occur outside

the United States," 17 C.F.R. § 230.901.

A plaintiff must "sufficiently allege a domestic violation" of the Securities Act.  *Stoyas*,

896 F.3d at 952 (dismissing Exchange Act claim).  "[T]o determine whether [alleged] securities

were the subject of a domestic transaction," the Ninth Circuit uses an "irrevocable liability test."

*Id.* at 949.[17]  A plaintiff must allege that the place where "purchasers incurred the liability to take

and pay for securities" or "sellers incurred the liability to deliver securities" was within the

United States.  *Id.*; *SEC v. Levine*, 462 F. App'x 717, 719 (9th Cir. 2011) (Securities Act

governed transactions where "actual sales closed in Nevada when [defendant] received

completed stock purchase agreements and payments").  To identify "where the parties to the

transaction incurred irrevocable liability," a plaintiff must provide "factual allegations

concerning contract formation, placement of purchase orders, passing of title, and the exchange

of money."  *Stoyas*, 896 F.3d at 949.

Plaintiff fails to meet this burden.  The sum total of Plaintiff's allegations regarding his

transactions is that "[h]e purchased SOL securities in August and September 2021 from

---

[17] In *Morrison*, the Supreme Court explained that Section 10(b)'s restrictions on "'the purchase or sale of any security registered on a national securities exchange or any security not so registered,'" applied only to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities."  561 U.S. at 266-67 (quoting 15 U.S.C. § 78j(b)).  Section 5 applies to securities sold, "through a prospectus or otherwise, making use of 'any means or instruments of transportation or communication *in interstate commerce* or of the mails.'"  *Id.* at 268-69 (emphasis added) (quoting 15 U.S.C. § 77e(a)(1)).  Section 5—and by extension Section 12(a)(1)—therefore applies to domestic transactions that violate Section 5's registration requirements.  But because Section 5's statutory text does not regulate securities based on their presence on a "national securities exchange," the availability of a token on a domestic cryptocurrency exchange does not affect the analysis for a Section 12(a)(1) claim.

California." AC ¶ 15. But a "purchaser's citizenship or residency" "is irrelevant to the location of a given transaction." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2014). And although Plaintiff's certification states that he "purchased the SOL tokens reflected here on Exodus, using other crypto assets (such as Cardano, Dash, Ethereum, Litecoin) to exchange," Dkt. 1 at 38, he provides no other information regarding contract formation, passage of title, or exchange of money related to his purchase.[18] Here, like the complaint in *Stoyas*, the AC is "[m]issing . . . specific factual allegations regarding where the parties to the transaction incurred irrevocable liability." 896 F.3d at 949.

Any argument that Plaintiff purchased in a domestic transaction "is contradicted by [Plaintiff's] allegation" that he purchased via Exodus. *In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 49 (9th Cir. 2022); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (courts need not accept allegations that "contradict matters properly subject to judicial notice or by exhibit"). Exodus does not process token transactions itself, but rather directs users to third-party exchanges. *Supra* at 5-6. The vast majority of transactions facilitated by Exodus are completed on *international* third-party exchanges; indeed, approximately *97%* of Exodus's revenue comes from non-U.S. sources, and Exodus makes most of its revenue through third-party exchange contracts. *Supra* at 5-6. The only plausible inference arising from the AC's allegations is that neither Plaintiff nor any unidentified counterparty to his transaction incurred irrevocable liability in the United States.[19]

---

[18] Indeed, had Plaintiff pleaded any further detail regarding contract formation, it would highlight that he agreed to arbitrate. *See supra* 1 n.1.

[19] Plaintiff must plead that the August and September 2021 purchases via Exodus for which he seeks rescission or damages were domestic. *Williams v. Block one*, 2022 WL 5294189, at *7 (S.D.N.Y. Aug. 15, 2022) (endorsing "transaction-by-transaction approach" to extraterritoriality). But none of Plaintiff's allegations of "offers and solicitations" describes domestic conduct. AC ¶ 86. The Dutch Auction was only open to non-U.S. purchasers, and the tweets quoted at length in the AC were authored by a Swiss non-profit. AC ¶ 86; *supra* at 4-5.

**D.     Plaintiff's State Law Claims Fail**

Liability "is even narrower" under California Corporations Code Sections 25110 and 25503 than under Section 12(a)(1).  *Hollifield*, 2023 WL 4291524, at *6.  Plaintiff's state-law claim fails for three independent reasons, which mirror the flaws in his federal claims.

*First*, Plaintiff fails to plead contractual privity with Labs.  Section 25503 affords remedies "to any person *acquiring* from [the defendant] the security sold in violation of" Section 25110, Cal. Corp. Code § 25503 (emphasis added), and unlike Section 12 of the Securities Act, a defendant is only liable to an "immediate purchaser," *Bowden v. Robinson*, 67 Cal. App. 3d 705, 712 (Cal. Ct. App. 4th Dist. 1977).  Thus, under Section 25503 of the California Corporations Code, Plaintiff was required—but failed—to plead that "the defendant actually sold the securities to the plaintiff bringing the claim."  *Hollifield*, 2023 WL 4291524, at *6.

*Second*, Plaintiff fails to plead that he purchased an alleged security "in an issuer transaction," Cal. Corp. Code § 25110—*i.e.*, a transaction "directly or indirectly for the benefit of the issuer," Cal. Corp. Code § 25011.  Transactions "indirectly" benefit an issuer where "any portion of the purchase price of any securities involved in the transaction will be received indirectly by the issuer."  Cal. Corp. Code § 25011.  But an issuer's receipt of "some other benefit" is insufficient.  *Goller v. Nat'l Life of Fla. Corp.*, 554 F.2d 1349, 1352 (5th Cir. 1977); *see also* 10 Cal Admin. Code § 260.011 (providing that "'purchase price' includes only the specific consideration bargained for in return for the securities").  Accordingly, under Section 25110, an issuer is not liable for "resales of securities after they have been purchased from the issuing corporation in a public offering." *Mirkin v. Wasserman*, 858 P.2d 568, 1104 (1993).  But the only public offering by Labs alleged in the AC is the March 2020 Dutch Auction, and Plaintiff did not purchase in that offering.  *Supra* at 4-6.  And Plaintiff does not plead that any part of his purchase price was received by Labs.  *Supra* at 4-6.

*Third*, Plaintiff fails to plead that any of his transactions took place in California.  Section 25110 makes it "unlawful for any person to offer or sell" an unqualified security "in this state." Cal. Corp. Code § 25110.  This language is "quite specific" that "a purchase or sale must occur in California" for its prohibition to apply.  *Diamond Multimedia Sys., Inc. v. Superior Court*, 19

Cal.4th 1036, 1053 (1999); *see also Edgar v. MITE Corp.*, 457 U.S. 624, 641 (1982) ("States have traditionally regulated intrastate securities transactions."). Under California law, an offer or sale is "made in this state" if (1) the offer "originates from" or "is directed to" California; (2) a purchaser's acceptance is "direct[ed] to the offeror in" California whom the purchaser "reasonably believes" to be there; or (3) "if both the seller and the purchaser are domiciled in" California, a "certificate or other evidence of the security is directed to the purchaser" in California and received there. Cal. Corp. Code § 25008(a), (b). As under federal law, Plaintiff's residency is not dispositive, and he does not plead facts that satisfy any of California law's avenues for pleading an in-state transaction. The AC is devoid of details as to the location of the counterparties to his SOL token purchases on the secondary market, the third-party exchange he accessed via Exodus, or the evidence of his receipt of SOL tokens. *Supra* at 4-6.

## VI.    CONCLUSION

For all these reasons, this action should be dismissed.

Dated: April 11, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By:    */s/ Susan E. Engel*
   Susan E. Engel (*pro hac vice*)
   susan.engel.@lw.com
   555 Eleventh Street, N.W., Suite 1000
   Washington, D.C. 20004-1304
   Telephone: +1.202.637.2200

   Matthew Rawlinson (CA Bar No. 231890)
   matt.rawlinson@lw.com
   140 Scott Drive
   Menlo Park, CA 94025
   Telephone: +1.650.328.4600

   Morgan E. Whitworth (CA Bar No. 304907)
   morgan.whitworth@lw.com
   505 Montgomery Street, Suite 2000
   San Francisco, California 94111
   Telephone: +1.415.391.0600

ORRICK, HERRINGTON &
SUTCLIFFE LLP

DAVID MCGILL (*pro hac vice pending*)
 *dmcgill@orrick.com*
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:   +1 202 339 8666

SACHI SCHURICHT (SBN 317845)
 *sschuricht@orrick.com*
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700

*Attorneys for Defendant Solana Labs, Inc.*

LATHAM&WATKINSLLP
ATTORNEYS AT LAW