1  ORRICK, HERRINGTON & SUTCLIFFE LLP       WAYMAKER LLP
2     DAVID MCGILL (*pro hac vice pending*)     BRIAN E. KLEIN (SBN 258486)
      dmcgill@orrick.com                         bklein@waymakerlaw.com
3     2100 Pennsylvania Avenue NW                SCOTT M. MALZAHN
      Washington, D.C. 20037                     (SBN 229204)
4     Telephone:   +1 202 339 8666              smalzahn@waymakerlaw.com
      Facsimile:   +1 202 339 8500              KEVIN MICHAEL CASEY (SBN 338924)
                                                 kcasey@waymakerlaw.com
5  LATHAM & WATKINS LLP                         515 S. Flower Street
6     SUSAN E. ENGEL (appearance *pro hac vice*)  Ste 3500
      susan.engel.@lw.com                        Los Angeles, CA 90071
7     555 Eleventh Street, N.W., Suite 1000      Telephone: +1 424 652 7800
      Washington, D.C. 20004-1304                Facsimile:   +1 424 652 7850
8     Telephone:   +1 202 637 2200
      Facsimile:   +1 202 637 2201
                                                 Attorneys for Defendants
9  Attorneys for Defendant                      MULTICOIN CAPITAL MANAGEMENT
   SOLANA LABS, INC.                             LLC & KYLE SAMANI
10
   *(Additional Attorneys for Defendant Solana*
11 *Labs, Inc. on subsequent page)*
12
13                     **UNITED STATES DISTRICT COURT**
14                    **NORTHERN DISTRICT OF CALIFORNIA**
                          **SAN FRANCISCO DIVISION**
15
16                                                Case No. 3:22-cv-03912-RFL
17 MARK YOUNG, on behalf of himself and all
   others similarly situated,
18
                  Plaintiff,
19
                                                 **DEFENDANTS SOLANA LABS, INC.,**
          v.                                     **MULTICOIN CAPITAL**
20                                               **MANAGEMENT LLC, AND KYLE**
                                                 **SAMANI'S NOTICE OF AND JOINT**
21 SOLANA LABS, INC., THE SOLANA                 **MOTION TO COMPEL**
   FOUNDATION, ANATOLY YAKOVENKO,                **ARBITRATION; MEMORANDUM OF**
22 MULTICOIN CAPITAL MANAGEMENT                  **POINTS AND AUTHORITIES IN**
   LLC, and KYLE SAMANI,                         **SUPPORT**
23
                  Defendants.                    (Civil L.R. 6-1, 6-2, 7-12)
24
                                                 Date: August 6, 2024
25                                               Time: 10:00 AM
                                                 Courtroom: Courtroom 15 – 18th Floor
26                                               Judge:  Hon. Rita F. Lin
27
28

ORRICK, HERRINGTON & SUTCLIFFE LLP
  SACHI SCHURICHT (SBN 317845)
  sschuricht@orrick.com
  The Orrick Building
  405 Howard Street
  San Francisco, CA 94105-2669
  Telephone:   +1 415 773 5700
  Facsimile:    +1 415 773 5759

LATHAM & WATKINS LLP
  MATTHEW RAWLINSON (SBN 231890)
  matt.rawlinson@lw.com
  140 Scott Drive
  Menlo Park, CA 94025
  Telephone:   +1 650 328 4600

  MORGAN E. WHITWORTH (SBN 304907)
  morgan.whitworth@lw.com
  505 Montgomery Street, Suite 2000
  San Francisco, California 94111
  Telephone:   +1 415 391 0600

Attorneys for Defendant
SOLANA LABS, INC.

1

## **NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION**

2

### **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3

**PLEASE TAKE NOTICE** that on August 6, 2024 at 10:00 AM or as soon thereafter as

4

the matter may be heard, in Courtroom 15 of the above-entitled Court, located at San Francisco

5

Courthouse, 450 Golden Gate Ave., San Francisco, CA 94102, before the Honorable Rita F. Lin,

6

Defendants Solana Labs, Inc. ("Labs"), Multicoin Capital Management LLC ("Multicoin") and

7

Kyle Samani ("Samani") (collectively "Defendants"),[1] will and hereby do move this Court

8

pursuant to the Federal Arbitration Action ("FAA"), 9 U.S.C. § 1 *et seq.*, to compel arbitration of

9

the claims brought against them by Plaintiff Mark Young ("Plaintiff") on behalf of himself and all

10

others similarly situated.

11

## **RELIEF REQUESTED**

12

Defendants seek an order compelling Plaintiff to arbitrate his claims on an individual basis

13

because Plaintiff is subject to a contractually-mandated arbitration provision.

14

This motion is based on this Notice of Motion and Motion to Compel Arbitration, the

15

attached Memorandum of Points and Authorities, the Declaration of David H. McGill ("McGill

16

Decl."), accompanying exhibits in support thereof, the record in this action and such further

17

evidence and argument that this Court may consider.

18

19

//

20

//

21

22

23

24

25

26

27

[1] Plaintiff also brings claims against The Solana Foundation and Anatoly Yakovenko.  *See generally* Dkt. 68.  However, those defendants have not been served and as such do not join this motion.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: April 11, 204

Respectfully Submitted,

*/s/ Sachi Schuricht*

ORRICK, HERRINGTON & SUTCLIFFE LLP
SACHI SCHURICHT (SBN 317845)
sschuricht@orrick.com
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   +1 415 773 5700
Facsimile:    +1 415 773 5759

DAVID MCGILL (*pro hac vice pending*)
dmcgill@orrick.com
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:   +1 202 339 8666
Facsimile:    +1 202 339 8500

LATHAM & WATKINS LLP
SUSAN E. ENGEL (appearance *pro hac vice*)
susan.engel.@lw.com
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone:   +1 202 637 2200
Facsimile:    +1 202 637 2201

MATTHEW RAWLINSON (SBN 231890)
matt.rawlinson@lw.com
140 Scott Drive
Menlo Park, CA 94025
Telephone:   +1 650 328 4600

MORGAN E. WHITWORTH (SBN 304907)
morgan.whitworth@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone:   +1 415 391 0600

***Attorneys for Defendant Solana Labs, Inc.***

*(signatures continued on following page)*

1

DATED: April 11, 2024

2                                                  */s/ Scott M. Malzahn*

3                                                  WAYMAKER LLP
                                                     SCOTT M. MALZAHN
4                                                    (SBN 229204)
                                                     smalzahn@waymakerlaw.com
5                                                    BRIAN E. KLEIN (SBN 258486)
                                                     bklein@waymakerlaw.com
6                                                    KEVIN MICHAEL CASEY (SBN 338924)
                                                     kcasey@waymakerlaw.com
7                                                    515 S. Flower Street
                                                     Ste 3500
8                                                    Los Angeles, CA 90071
                                                     Telephone: +1 424 652 7800
9                                                    Facsimile:  +1 424 652 7850

10

11                                                 ***Attorneys for Defendants Multicoin Capital
                                                   Management, LLC and Kyle Samani***

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2

**TABLE OF CONTENTS**

**Page**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I.     INTRODUCTION ................................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................... 2

       A.    Parties .......................................................................................................... 2

       B.    Plaintiff Purchases SOL On Exodus And Agrees To The Terms Of Use .............. 3

       C.    Plaintiff Sues Defendants For Allegedly Selling Unregistered Securities ............. 5

III.   ARGUMENT ....................................................................................................... 6

       A.    Plaintiff Agreed To The Arbitration Agreement In Exodus's TOS ........................ 6

       B.    Whether The Arbitration Agreement Applies To Young's Claims Against
             Defendants Must Be Decided By An Arbitrator ...................................................... 8

       C.    Defendants Can Enforce The Arbitration Agreement Against Plaintiff
             Under Equitable Estoppel ...................................................................................... 11

IV.    CONCLUSION .................................................................................................. 15

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*Apollo Computer, Inc. v. Berg,*
5      886 F.2d 469 (1st Cir. 1989) ...................................................................................... 1

6

*Arthur Andersen LLP v. Carlisle,*
7      556 U.S. 624 (2009) ................................................................................................... 11

*AT&T Mobility LLC v. Concepcion,*
8      563 U.S. 333 (2011) .............................................................................................. 8, 15

9

*Bielski v. Coinbase, Inc.,*
10      87 F.4th 1003 (9th Cir. 2023) ..................................................................................... 8

11

*Brennan v. Opus Bank,*
      796 F.3d 1125 (9th Cir. 2015) ................................................................................... 10

12

*Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.,*
13      866 F.3d 709 (5th Cir. 2017) ....................................................................................... 9

14

*Brown v. Google LLC,*
15      525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..................................................................... 4

16

*Calzadillas v. Wonderful Company, LLC,*
      No 1:19-cv-000172-DAD-JLT, 2019 WL 2339783 (E.D. Cal. June 3, 2019) ...................... 14

17

*Casa Arena Blanca LLC v. Rainwater by Estate of Green,*
18      No. 21-2037, 2022 WL 839800 (10th Cir. 2022) ....................................................... 9

19

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
20      207 F.3d 1126 (9th Cir. 2000) ..................................................................................... 8

21

*Coinmint, LLC v. DX Corr Design, Inc.,*
      No. 23-CV-00599-RS, 2023 WL 9595893 (N.D. Cal. Apr. 24, 2023) ............................ 11, 13

22

*Contec Corp. v. Remote Solution, Co.,*
23      398 F.3d 205 (2d Cir. 2005) ...................................................................................... 11

24

*Cordas v. Uber Techs., Inc.,*
25      228 F. Supp. 3d 985 (N.D. Cal. 2017) ........................................................................ 6

26

*Crypto Asset Fund, LLC v. OPSkins Grp, Inc.,*
      478 F. Supp. 3d 919 (C.D. Cal. 2020) ......................................................................... 9

27

*Dohrmann v. Intuit, Inc.,*
28      823 F. App'x 482 (9th Cir. 2020) ................................................................................ 7

*Eiess v. USAA Fed. Sav. Bank*,
    404 F. Supp. 3d 1240 (N.D. Cal. 2019) ................................................................. 6

*Erickson v. Nebraska Mach. Co.*,
    No. 15-cv-01147-JD, 2015 WL 4089849 (N.D. Cal. July 6, 2015)......................... 4

*EVO Brands, LLC v. Al Khalifa Grp. LLC*,
    657 F. Supp. 3d 1312 (C.D. Cal. 2023)................................................................. 4

*Forrest v. Spizzirri*,
    62 F.4th 1201 (9th Cir. 2023),
    *cert. granted sub nom. Smith v. Spizzirri*, 144 S.Ct. 680 (2024) ........................ 16

*Franklin v. Comm'y Regional Med. Ctr.*,
    998 F.3d 867 (9th Cir. 2021)................................................................. 12, 13, 14

*Garcia v. Pexco, LLC*,
    11 Cal.App.5th 782 (2017)................................................................................. 15

*Gerlach v. Tickmark Inc.*,
    No. 4:21-cv-02768-YGR, 2021 WL 3191692 (N.D. Cal. July 28, 2021)............... 8

*Goldman v. KPMG, LLP*,
    173 Cal.App.4th 209 (2009)............................................................................... 14

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ........................................................................ 9, 10, 11, 12

*In re Henson*,
    869 F.3d 1052 (9th Cir. 2017)............................................................................ 12

*Herrera v. Cathay Pac. Airways Ltd.*,
    94 F.4th 1083 (9th Cir. 2024)............................................................. 12, 13, 14, 15

*Holl v. U.S. Dist. Court of Cal. (In re Holl)*,
    925 F.3d 1076 (9th Cir. 2019)............................................................................. 6

*Kilgore v. KeyBank, Nat. Ass'n*,
    673 F.3d 947, 955 (9th Cir. 2012), *on reh'g en banc*, 718 F.3d 1052 (9th Cir.
    2013) ................................................................................................................. 8

*Knapke v. PeopleConnect, Inc.*,
    38 F.4th 824 (9th Cir. 2022)............................................................................... 15

*Kum Tat Ltd. v. Linden Ox Pasture, LLC*,
    845 F.3d 979 (9th Cir. 2017)............................................................................... 6

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x 393 (9th Cir. 2020) ....................................................................... 7

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017).....................................................................................7

*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011)..................................................................................8

*MouseBelt Labs Pte. Ltd. v. Armstrong*,
   674 F. Supp. 3d 728 (N.D. Cal. 2023) ..................................................................13

*Nguyen v. Barnes & Noble Inc.*,
   763 F.3d 1171 (9th Cir. 2014)............................................................................6, 7

*In re Pac. Fertility Ctr. Litig.*,
   814 F. App'x 206 (9th Cir. 2020) .........................................................................14

*Peter v. DoorDash, Inc.*,
   445 F. Supp. 3d 580 (N.D. Cal. 2020) ................................................................6, 7

*Rent-A-Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) .................................................................................................8

*In re Ring LLC Privacy Litig.*,
   No. CV 19-10899-MWF, 2021 WL 2621197 (C.D. Cal. June 24, 2021)................6

*Roberts v. Obelisk, Inc.*,
   No. 18cv2898-LAB, 2019 WL 1902605 (S.D. Cal. Apr. 29, 2019) ......................13

*S.S. by and through Stren v. Peleton Interactive, Inc.*,
   566 F. Supp. 3d 1019 (S.D. Cal. 2021) ..................................................................7

*Shanbsy v. Edrington, USA, Inc.*,
   No. 22-cv-06907-JSC, 2023 WL 2456789 (N.D. Cal. Mar. 9, 2023)...................10

*Staley v. Gilead Scis., Inc.*,
   No. 19-CV-02573-EMC, 2021 WL 4972628 (N.D. Cal. Mar. 12, 2021)..............13

*Swiger v. Rosette*,
   989 F.3d 501 (6th Cir. 2021)..................................................................................9

*White v. Ring LLC*,
   No. CV 22-6909-JFW(PVC), 2023 WL 1097554 (C.D. Cal. Jan. 25, 2023) .........9

*Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*,
   497 F. App'x 740 (9th Cir. 2012) .........................................................................11

**Statutes**

Federal Arbitration Act (9 U.S.C. § 1, *et seq.*).....................................................5, 8, 11

Securities Act of 1933 § 15(a) (15 U.S.C. §77o) .........................................................6

1    **I.    INTRODUCTION**[2]

2           As explained in Defendants' parallel Motions to Dismiss, Plaintiff fails to state any

3    cognizable claims against any of the Defendants in this case, not least because his ***only*** alleged

4    purchases of SOL occurred not through any direct transactions with Defendants, but rather

5    through secondary market transactions that he admittedly made through Exodus—an unrelated

6    third-party platform that permits users to buy, sell, or exchange cryptocurrency on third-party

7    exchanges.  *See* Dkt. 68 ("AC") ¶¶ 84-85, 93-95, 103-104; Dkt. 33-3, Affidavit of Mark Young,

8    Ex. B to Declaration of Sunny S. Sarkis ISO Motion To Serve As Lead Plaintiff And To Appoint

9    Lead Counsel ("Young Aff.") ¶ 5.  But Plaintiff's legal theories are not just fatally misguided;

10   they are directed to the wrong forum.  Because Plaintiff agreed to arbitrate "any dispute or claim

11   relating in any way" to his use of the Exodus platform, Ex. B to McGill Decl. ¶ 10.1, and

12   because all of the SOL purchases on which his claims depend arose through secondary market

13   purchases made on Exodus and pursuant to its Terms of Service ("TOS"), Plaintiff's claims

14   against Defendants are intimately founded in and intertwined with the TOS and, thus, under the

15   doctrine of equitable estoppel, this dispute must be arbitrated.

16          The AC alleges that Plaintiff purchased SOL after Labs "ensured" that SOL "would be

17   tradeable on secondary markets" and available "to the general public through [such]

18   cryptocurrency exchanges."  AC ¶¶ 84, 104.  The AC similarly alleges that Multicoin and

19   Samani sold SOL to "retail investors such as Plaintiff" by using "OTC trading desks" which in

20   turn made SOL available on secondary markets, allegedly including "U.S.-based exchanges."

21   AC ¶¶ 93-95. Young admittedly executed his transactions using Exodus, a platform for

22   acquiring and storing digital currencies.  *See* Young Aff. ¶ 5.  In purchasing SOL through

23   Exodus, Young inevitably agreed to the Exodus TOS, including the broad arbitration

24   requirements embedded therein.

25

26

27   ---
     [2] For the Court's convenience, this memorandum adopts the defined terms from Labs'
     Memorandum of Points and Authorities in Support of the Motion to Dismiss the Consolidated
28   Amended Class Action Complaint.

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

1    Under the doctrine of equitable estoppel, it does not matter that Plaintiff strategically

2    omits from the AC his broad agreement to arbitrate any claims arising from his purchases of

3    SOL on that platform.  Nor does it matter that Plaintiff asserts claims against nonsignatories to

4    the TOS.  Where a plaintiff's claims are closely intertwined with an underlying contract—here,

5    the TOS that governed the purchasing activity upon which all of his claims hinge—the plaintiff

6    cannot use artful pleading to avoid his commitment to arbitrate.

7    Moreover, the Exodus TOS unambiguously delegates to an arbitrator all threshold

8    questions as to the "interpretation, applicability, [or] enforceability" of that agreement—

9    including, as relevant here, whether it applies to non-signatories. Ex. B to McGill Decl. ¶ 10.1.

10   Thus, even if Plaintiff contests arbitrability of his claims, the Court must compel arbitration to

11   resolve that threshold question, and it should exercise its discretion to dismiss these proceedings

12   in the absence of any claims remaining for resolution in this forum.

13   **II.    FACTUAL BACKGROUND**

14       **A.    Parties**

15   Labs was founded in 2018, and since its inception has helped develop open-source

16   software for Solana, a high performance permissionless blockchain. AC ¶ 42.  In March 2020,

17   Labs conducted its first and only public offering, selling 8 million SOL tokens to non-U.S.

18   persons at a price of 22 cents per token via a Dutch Auction on CoinList.  AC ¶ 52.  Plaintiff

19   does not allege that he purchased SOL directly from Labs.  *See* AC ¶¶ 103-104.

20   Multicoin is a Securities and Exchange Commission-registered Investment Adviser and

21   asset management firm that advises funds that purchased SOL tokens from Labs in several

22   fundraising rounds, and Kyle Samani is the Managing Partner of Multicoin.  *See* AC ¶¶ 19-20.

23   Plaintiff does not allege that he purchased SOL directly from either Multicoin or Samani.  AC ¶¶

24   14, 93-95.  Plaintiff alleges that Samani is a "controlling person" of Labs.  AC ¶¶ 143-148.

25   Plaintiff is a California resident, investor in crypto assets, and lead plaintiff in this

26   putative class action.  *See* AC ¶ 15; Dkt. 59.  He represented to the Court under oath that he

27   purchased a total of 1,007.48 SOL tokens "on Exodus" through a series of 18 transactions

28   between August 19, 2021, and September 9, 2021, for which he "us[ed] other crypto assets (such

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

1   as Cardano, Dash. Ethereum, Litecoin)."  Young Aff. ¶ 5; *id.* at 2-3.  According to Plaintiff, his

2   SOL purchases are valued at approximately $117,696, *id.* at 2-3, which gives him "the largest

3   financial interest in the relief sought by the class," Dkt. 33 at 5-7.

4       **B.**    **Plaintiff Purchases SOL On Exodus And Agrees To The Terms Of Use**

5          Exodus—the platform on which Young admittedly engaged in these transactions—is a

6   secure digital wallet where users can store cryptocurrency as well as trade, purchase, and sell

7   tokens—including SOL—via third-party exchanges.[3]  To make the SOL purchases detailed in

8   his affidavit, Plaintiff had to download the Exodus platform software, which appeared as follows

9   in August 2021 (during the period of the alleged purchases):



_____

[3] *See* Getting Started with Exodus ("Getting Started"), Exodus (last visited Apr. 11, 2024),
https://www.exodus.com/support/en/articles/8598609-getting-started-with-exodus.

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

Ex. A to McGill Decl.[4]  Immediately above the hyperlinked purple icon to "DOWNLOAD

EXODUS 21.8.19" is solid white text reading: "By downloading Exodus you agree to the Terms

of Service":



*Id.* (yellow circling added).  When a user hovered the mouse over the white text, the text

brightened and expanded in size—signaling that it was a hyperlink.  *See* McGill Decl. ¶ 7.  At

the time of Plaintiff's purchases, clicking that hyperlink would have opened Exodus's July 1,

2021 Terms of Service, *id.* ¶ 8, which included the following arbitration agreement:

> 10.1.    <u>Applicability of Arbitration.</u> You agree that any dispute or claim
> relating in any way to your access or use of the Site, Services, or Software,
> or to any aspect of your relationship with Exodus, will be resolved by
> binding arbitration, rather than in court, except that (1) you may assert
> claims in small claims court if your claims qualify, so long as the matter
> remains in such court and advances only on an individual (non-class, non-
> representative) basis; and (2) you or Exodus may seek equitable relief in
> court for infringement or other misuse of intellectual property rights (such
> as trademarks, trade dress, domain names, trade secrets, copyrights, and
> patents). **This Arbitration Agreement will apply, without limitation, to
> all claims that arose or were asserted before the Effective Date of this
> Agreement or any prior version of this Agreement.**

Ex. B to McGill Decl. ¶ 10.1 (emphasis in original).[5]  The TOS also includes (i) a "Waiver of

Class or Consolidated Actions" provision that limits the user to bringing individual actions, *id.*

---

[4] This screenshot was obtained through the Wayback Machine, as indicated by the watermark at the top of the image.  Courts regularly take judicial notice of archived webpages accessed using the Wayback Machine and bearing its watermark.  *See, e.g.*, *Erickson v. Nebraska Mach. Co.*, No. 15-cv-01147-JD, 2015 WL 4089849, at *1 (N.D. Cal. July 6, 2015) (taking judicial notice of multiple webpage screenshots available through the Wayback machine); *EVO Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1322-23 (C.D. Cal. 2023) (same); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (same).

[5] This version of the TOS was also obtained using the Wayback Machine.  *See* McGill Decl. ¶ 9.  It is the same version that is linked in all of the archived versions of the Exodus download page available through the Wayback Machine across the period of Plaintiff's alleged SOL purchases, and does not materially differ from those archived prior to the time of Plaintiff's alleged SOL purchases.  *Id.* ¶¶ 10-11.

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

¶ 10.5; (ii) an "Arbitration Rules and Forum" provision that identifies the FAA as governing "the interpretation and enforcement" of the arbitration agreement and designates JAMS as the arbitration provider, *id.* ¶ 10.2; and (iii) an "Authority of Arbitrator" provision that reads as follows:

> 10.3.   <u>Authority of Arbitrator.</u> The arbitrator, and not any federal, state or local court or agency will have exclusive authority to (a) determine the scope and enforceability of this Arbitration Agreement and (b) resolve any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable. The arbitration will decide the rights and liabilities, if any, of you and Exodus. The arbitration proceeding will not be consolidated with any other matters or joined with any other cases or parties. The arbitrator will have the authority to grant motions dispositive of all or part of any claim. The arbitrator will have the authority to award monetary damages and to grant any non-monetary remedy or relief available to an individual under applicable law, the arbitral forum's rules, and the Agreement (including the Arbitration Agreement). The arbitrator will issue a written award and statement of decision describing the essential findings and conclusions on which the award is based, including the calculation of any damages awarded. The arbitrator has the same authority to award relief on an individual basis that a judge in a court of law would have. The award of the arbitrator is final and binding upon you and us.

*Id.* ¶ 10.3. Every user who downloaded Exodus as of August 19, 2021, would have had notice of the conspicuous hyperlink to the TOS containing these arbitration provisions and, by continuing to download the Exodus platform, necessarily agreed to abide by them. *See infra* Section III.A.

**C.   Plaintiff Sues Defendants For Allegedly Selling Unregistered Securities**

On July 1, 2022, Plaintiff brought this class action alleging that Defendants violated federal and state securities laws by promoting the sale of SOL tokens to purchasers like him that purchased SOL on the secondary market. *See* AC ¶¶ 1, 4-5, 21, 26, 36-37, 82-85, 102-104, 108-110, 120-129, 133-140, 153-156. Plaintiff allegedly "suffered significant damages" and, on behalf of the putative class, "seek[s] rescission[] … with respect to their purchases of SOL tokens." AC ¶¶ 120, 141; *see also* AC ¶¶ 149, 156. Plaintiff also alleges that Samani acted as a controlling person of Labs and is therefore liable under Section 15(a) of the Securities Act. AC ¶¶ 143-48.

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

1    **III.    ARGUMENT**

2        **A.    Plaintiff Agreed To The Arbitration Agreement In Exodus's TOS**

3        Plaintiff entered into a valid arbitration agreement when he affirmatively assented to the

4    Exodus TOS.  To the extent that he disputes that conclusion, "[t]he question of contract

5    formation is for the court."  *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1248 (N.D.

6    Cal. 2019) (citing *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979 (9th Cir. 2017)); *see,*

7    *e.g.*, *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) (finding website

8    user entered into contract containing arbitration clause).  In resolving that question, online

9    agreements are treated no differently than traditional agreements.  *Holl v. U.S. Dist. Court of*

10   *Cal. (In re Holl)*, 925 F.3d 1076, 1083 (9th Cir. 2019).

11       The Ninth Circuit set out the framework for determining whether a user validly assented

12   to an online agreement in *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014).  The

13   court identified two typical kinds of online contracts: (1) clickwrap agreements, where "users are

14   required to click on an 'I agree' box after being presented with a list of terms and conditions of

15   use," and (2) browsewrap agreements, where the "terms and conditions of use are generally

16   posted … via a hyperlink at the bottom of the screen."  *Id.* at 1175-76.  Courts also have

17   recognized "hybrid clickwrap/browsewrap agreements," where "the user is provided with an

18   opportunity to review the terms of service in the form of a hyperlink immediately above or

19   below a button that must be clicked" to continue using the service.  *In re Ring LLC Privacy*

20   *Litig.*, No. CV 19-10899-MWF, 2021 WL 2621197, at *5 (C.D. Cal. June 24, 2021) (citing

21   cases); *accord Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 585 (N.D. Cal. 2020) (discussing

22   these as "sign-in wrap" agreements).

23       With this spectrum in mind, the ultimate question is whether "a reasonably prudent user"

24   was put on "inquiry notice" of the terms of use, which in turn "depends on the design and

25   content" of the interface.  *Nguyen*, 763 F.3d at 1177.  In instances where there is "an explicit

26   textual notice that continued use will act as a manifestation of the user's intent to be bound," and

27   it resides in close proximity to the relevant buttons on an uncluttered screen, inquiry notice will

28   attach.  *Id.* at 1177-79; *see, e.g.*, *Peter*, 445 F. Supp. 3d at 582, 586 (finding inquiry notice where

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

1   sign-up screen was "uncluttered and wholly visible," and notice text appeared directly below

2   sign-up button); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 78 (2d Cir. 2017) (finding inquiry

3   notice where hyperlink to terms was "spatially" and "temporally coupled" with "the mechanism

4   for manifesting assent").  So long as the hyperlinked text is reasonably conspicuous, it does not

5   matter whether the user actually clicks and reads the terms.  *Meyer*, 868 F.3d at 79 (noting that

6   this "is the choice the user makes," but that they are "still on inquiry notice"); *S.S. by and

7   through Stren v. Peleton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1041 (S.D. Cal. 2021) (noting

8   that where plaintiff had the chance to access and review the terms, plaintiff was put on

9   constructive notice of the arbitration provision).

10          Here, Plaintiff agreed to the TOS because he was, at a minimum, put on inquiry notice

11   that he was agreeing to abide by these terms when he downloaded Exodus to purchase SOL.

12   The download page was uncluttered and included "explicit textual notice" that "[b]y

13   downloading Exodus you agree to the Terms of Service," which not only contrasted with the

14   dark background, but also brightened and enlarged when hovered over to signal that it was a

15   hyperlink.  *Nguyen*, 763 F.3d at 1177; *supra* at 4.  Moreover, this notice text was positioned

16   directly above "the mechanism for manifesting assent"—*i.e.*, the button to "Download Exodus."

17   *Meyer*, 868 F.3d at 78; *supra* at 4.  In all relevant aspects, Exodus's download page is equivalent

18   to hybrid clickwrap/browsewrap agreements that the Ninth Circuit has found to put users on

19   inquiry notice.  *See Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020)

20   (determining that agreement at issue was valid where the website indicated that by clicking "sign

21   in," users agreed to service's terms of use); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394-

22   95 (9th Cir. 2020) (finding that terms of use provided sufficient notice for constructive assent

23   where the phrase, "By clicking 'Place Order,' you agree to our Terms of Use," was underneath

24   the sign-in button).  Thus, by downloading Exodus to purchase SOL, Young validly assented to

25   the TOS—including its arbitration agreement.

26

27

28

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

1

2

**B.      Whether The Arbitration Agreement Applies To Young's Claims Against Defendants Must Be Decided By An Arbitrator**

3      The FAA evinces a "liberal federal policy favoring arbitration" and requires courts to

4   compel arbitration of claims covered by a written and enforceable arbitration agreement.  *AT&T*

5   *Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see* 9 U.S.C. §§ 1-4.  "The FAA leaves

6   no place for the exercise of discretion by a district court, but instead mandates that district courts

7   shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement

8   has been signed."  *Kilgore v. KeyBank, Nat. Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012), *on reh'g*

9   *en banc*, 718 F.3d 1052 (9th Cir. 2013) (citation omitted).  Generally, when deciding whether a

10  dispute is arbitrable under the FAA, a court's role is "limited to determining (1) whether a valid

11  agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute

12  at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  If

13  the answer to both questions is yes, the court must compel arbitration.  *Id.*

14      However, the role of the court is more circumscribed where, as here, the arbitration

15  agreement reflects "clear and unmistakable" intent to defer adjudication of "gateway issues" to

16  the arbitrator.  *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011).  In those cases, any

17  threshold dispute as to arbitrability—including "whether the parties … are bound by a given

18  arbitration clause"—must be resolved by an arbitrator.  *Id.*; *see also Bielski v. Coinbase, Inc.*, 87

19  F.4th 1003, 1009 (9th Cir. 2023) ("Delegation provisions further limit federal court review by

20  assigning . . . gateway questions to an arbitrator."); *Gerlach v. Tickmark Inc.*, No. 4:21-cv-

21  02768-YGR, 2021 WL 3191692, at *4 (N.D. Cal. July 28, 2021) (finding parties "clearly and

22  unmistakably" intended to delegate questions of arbitrability to the arbitrator); *Rent-A-Center,*

23  *West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010) (upholding validity of provision that delegated

24  exclusive authority to arbitrator to resolve any dispute relating to the agreement's

25  enforceability).  When such gateway questions are delegated to an arbitrator, "courts may not

26  override [the agreement] and decide these issues even if the court thinks the application of the

27  arbitration agreement is wholly groundless."  *Crypto Asset Fund, LLC v. OPSkins Grp, Inc.*, 478

28  F. Supp. 3d 919, 930 (C.D. Cal. 2020); *see Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139

- 8 -

S. Ct. 524, 526 (2019) (noting that courts lack authority to resolve delegated arbitrability questions).

Here, by assenting to Exodus's TOS, Plaintiff broadly agreed that the "[d]etermin[ation] of the scope **and enforceability**" of the arbitration agreement, as well as "**any dispute** related to the interpretation, applicability, [or] **enforceability**" of the arbitration agreement, fall under the "exclusive authority" of the arbitrator. Ex. B to McGill Decl. ¶ 10.3 (emphases added). This includes the question whether Defendants as nonsignatories can enforce the arbitration agreement against Plaintiff, a signatory to the agreement. *See Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021) (finding "whether [nonsignatory defendant] can enforce the arbitration agreement . . . presents a question of arbitrability . . . delegated to an arbitrator"); *cf. White v. Ring LLC*, No. CV 22-6909-JFW(PVC), 2023 WL 1097554, at *6 n.3 (C.D. Cal. Jan. 25, 2023) (compelling arbitration as to enforceability of arbitration agreement under third-party beneficiary doctrine. And delegation is particularly appropriate here given that "courts have generally found … arbitration is more likely to be attained when the party resisting arbitration is a signatory." *Amisil Holdings Ltd. v. Clarium Capital Mgmt.*, 622 F. Supp. 2d 825, 831 (N.D. Cal. 2007) (citing cases); *see also Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017) (delegating to arbitrator question whether nonsignatories to arbitration agreement can enforce it against signatory because the agreement, including its broad delegation provision, "does explicitly bind [the signatory plaintiff]"). Thus, to the extent Plaintiff disputes the arbitrability of his claims against Defendants, Plaintiff has already agreed that those questions must be resolved by an arbitrator in the first instance.[6]

---

[6] The Ninth Circuit rejected a related argument in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126-28 (9th Cir. 2013), but the arbitration agreement there did not delegate questions regarding the *enforceability* of the agreement—that is, who is able to enforce the agreement in what circumstances—as the Exodus TOS indisputably does here. At least one other circuit court has held that when an arbitration agreement delegates to an arbitrator issues of *enforceability*, courts must compel arbitration because the issue is not one "of contract formation, only contract enforcement." *Casa Arena Blanca LLC v. Rainwater by Est. of Green*, No. 21-2037, 2022 WL 839800, at *5 (10th Cir. Mar. 22, 2022) (unpub). Notably, the Tenth Circuit's decision in *Casa Arena* (unlike *Kramer*) post-dates the Supreme Court's decision in *Henry Schein*. *See infra* at 10-11.

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

1    That Plaintiff agreed to an arbitration provision "subject to JAMS's … Streamlined

2    Arbitration Rules" only reinforces this conclusion.  McGill Decl. ¶ 10.2.  This is because, like

3    the underlying agreement, "JAMS rules … give the arbitrator the power to decide arbitrability."

4    *Shanbsy v. Edrington, USA, Inc.*, No. 22-cv-06907-JSC, 2023 WL 2456789, at *2 (N.D. Cal.

5    Mar. 9, 2023) (compelling arbitration of arbitrability questions, including applicability of

6    equitable estoppel, where broad delegation clause incorporated JAMS rules).[7]  Indeed, the Ninth

7    Circuit has found that incorporating the rules of arbitral forums like JAMS amounts to "clear and

8    unmistakable" evidence of the parties' "intent to have an arbitrator resolve the issue of

9    arbitrability."  *Wynn Resorts, Ltd. v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012);

10   *see also Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (reaching same conclusion

11   based on incorporation of AAA rules); *Coinmint, LLC v. DX Corr Design, Inc.*, No. 23-CV-

12   00599-RS, 2023 WL 9595893, at *5 (N.D. Cal. Apr. 24, 2023) (compelling arbitration where

13   agreement incorporated AAA rules).[8]  Thus, by assenting to Exodus's TOS, Young made his

14   intent clear: "***any dispute*** related to the interpretation, applicability, [or] ***enforceability***" of the

15   arbitration agreement—including whether Defendants can enforce it—must be decided by an

16   arbitrator.  Ex. B to McGill Decl. ¶ 10.3 (emphases added).

17   To the extent Young now objects to arbitrability, he must raise that objection with an

18   arbitrator.  As the Supreme Court reaffirmed in *Henry Schein,* courts "possess[] no power to

19   decide the arbitrability issue[s]" "delegated to an arbitrator."  139 S. Ct. at 529-30.  Indeed,

20   "even if the court thinks that the argument that the arbitration agreement applies to a particular

21   dispute is wholly groundless," under controlling authority, it must nonetheless compel arbitration

22   of that threshold question.  *Id.* at 529.

23   ---

[7] The current JAMS rules are properly subject to judicial notice and can be found here:
24   https://www.jamsadr.com/rules-streamlined-arbitration/ (last visited April 11, 2024).

25   [8] *See also Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 209-11 (2d Cir. 2005) (rejecting
     attempt by a "signatory to a contract containing an arbitration clause and incorporating by
26   reference the AAA Rules[] [to] now disown its agreed-to obligation to arbitrate *all* disputes,
     including the question of arbitrability"); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 473 (1st
27   Cir. 1989) (holding that broad arbitrability provision delegated to arbitrator issue of whether
     contract "can be enforced by [nonsignatories] against [the plaintiff]").

28

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

1    As explained below, Defendants' arbitrability argument here arises from sound

2    application of the equitable estoppel doctrine.  But even if the Plaintiff (or this Court) were to

3    disagree, under *Henry Schein* and its progeny, the Court must compel arbitration of any

4    threshold question as to arbitrability, including the application of equitable estoppel.  Ultimately,

5    it is for an arbitrator to decide whether, as a matter of fairness, Plaintiff should be allowed to

6    ground his claims in SOL purchases made on Exodus—after necessarily agreeing to the TOS—

7    while simultaneously resisting his agreement to arbitrate claims based on those very purchases.

8          C.      **Defendants Can Enforce The Arbitration Agreement Against Plaintiff Under
9                  Equitable Estoppel**

10   Even if this Court were to disregard *Henry Schein* and assume for itself the task of

11   resolving any threshold question of arbitrability, it should still compel arbitration here.  For one,

12   by agreeing to arbitrate all claims "relating ***in any way*** to [his] access or use of" Exodus,

13   Plaintiff unambiguously consented to arbitrate any dispute relating to purchases made on

14   Exodus, including the instant action.  Ex. B to McGill Decl. ¶ 9.1 (emphasis added).  For

15   another, by identifying Exodus as the ***only*** mechanism through which he allegedly purchased

16   SOL and offering those purchases as the ***lone*** foundation for his claims (and as support for his

17   application to be appointed representative for the putative class), Plaintiff has affirmatively—and

18   inextricably—linked his claims to the Exodus TOS.

19   Nor can he escape arbitration merely because Defendants are not signatories to the TOS.

20   "[T]he United States Supreme Court has held that a litigant who is not a party to an arbitration

21   agreement may invoke arbitration under the FAA if the relevant state contract law allows the

22   litigant to enforce the agreement."  *Franklin v. Comm'y Regional Med. Ctr.*, 998 F.3d 867, 870

23   (9th Cir. 2021) (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)) (internal

24   quotation marks omitted).  And, under California's doctrine of equitable estoppel, a nonsignatory

25   may enforce an arbitration agreement against a signatory when the signatory's claims are

26

27

28

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

1    "intimately founded in and intertwined with the underlying contract." *Herrera v. Cathay Pac.*

2    *Airways Ltd.*, 94 F.4th 1083, 1087-88 (9th Cir. 2024).[9]

3        To assess whether the claims are "intertwined with" the underlying contract, courts "look

4    to 'the relationships of persons, wrongs, and issues[,]'" with a focus on whether "it would be

5    unfair for [the plaintiff] to avoid arbitration." *Franklin*, 998 F.3d at 870, 875.  In *Herrera*, for

6    instance, consumers brought a putative class action against an airline for failing to refund the

7    cost of cancelled flights, and the Ninth Circuit held that the airline could enforce the arbitration

8    agreement between the consumers and the third-party vendor they had used to book the flights at

9    issue.  94 F.4th at 1088-92.  The court highlighted the vendor's role as a "middleman" in the

10   transaction at the heart of the plaintiffs' claim, and noted that if the plaintiffs were entitled to a

11   refund, the court "would need to know how much the [plaintiffs] paid [the vendor] for the

12   tickets—a transaction governed by [the vendor's] Terms & Conditions." *Id.* at 1090.

13       Likewise, this Court recently applied equitable estoppel against a cryptocurrency investor

14   whose alleged losses "hinge[d] on" the value of the equity and tokens it obtained under a third-

15   party contract that provided for arbitration. *MouseBelt Labs Pte. Ltd. v. Armstrong*, 674 F. Supp.

16   3d 728, 741 (N.D. Cal. 2023); *see also Roberts v. Obelisk, Inc.*, No. 18cv2898-LAB, 2019 WL

17   1902605, at *7 (S.D. Cal. Apr. 29, 2019) (applying equitable estoppel because "[d]etermining

18   whether the pre-order [of cryptocurrency miners] constituted a sale of securities … will require a

19   factfinder to wade through the Terms and Conditions of the pre-order"); *Coinmint*, 2023 WL

20   9595893, at *2-3 (finding claims intertwined with underlying contract when plaintiff sought

21

22   _____
     [9] Federal courts "apply the choice-of-law principles of the forum state" in determining which
     substantive law to apply to the issue of equitable estoppel. *In re Henson*, 869 F.3d 1052, 1059
23   (9th Cir. 2017).  Under California's choice of law principles, when there is "no material
     difference" between California law and that of the relevant foreign jurisdictions, the inquiry ends
24   and California law applies. *Id.*  While the Exodus TOS contains a Delaware choice of law
     provision, *see* Ex. B to McGill Decl. at ¶ 11.6, the law of equitable estoppel is "materially
25   identical" under California and Delaware law: "The common thread among California [and]
     Delaware . . . law is that, in order for equitable estoppel to apply, there must be some kind of
26   relationship between the claims at issue and the contract containing the arbitration clause."
     *Staley v. Gilead Scis., Inc.*, No. 19-CV-02573-EMC, 2021 WL 4972628, at *6-7 (N.D. Cal. Mar.
27   12, 2021) (applying California law).  California law therefore applies to the narrow issue of
     equitable estoppel.  For the avoidance of doubt, however, Defendants do not concede that
28   California law generally governs the TOS or any other aspect of this dispute.

MOTION TO COMPEL ARBITRATION
                                                         3:22-cv-03912-RFL

1    damages from defendants based on sale of cryptocurrency mining rigs, and "the essence of the

2    injury" was the sale that "le[d] to the signing of and adherence to the [contract containing the

3    arbitration agreement]").  The same result should follow here.

4            Here, Plaintiff purports to assert claims under federal and state securities laws on the

5    theory that Defendants ensured that SOL would be available for purchase through secondary

6    exchanges, like those available on Exodus.  *See supra* at 1, *see also supra* Section II.C.  Thus,

7    although Plaintiff does not allege he purchased SOL from Defendants, as in *Herrera*, under

8    Plaintiff's own allegations and admissions, Exodus acted as a key intermediary or "middleman"

9    for Plaintiff's purchases of SOL on secondary exchanges.  94 F.4th at 1090.  And if Plaintiff

10   ultimately is entitled to damages, "we would need to know how much [he] paid for the [SOL]"—

11   which directly involves his use of the Exodus platform.  *Id.*; *see supra* Section II.C.

12   Underscoring the point, Plaintiff purports to calculate his alleged damages based solely on his

13   Exodus transactions and by reference to the prices and exchange rates available for various other

14   cryptocurrency assets listed on Exodus "contemporaneous with the exchange."  *See* Young Aff.

15   ¶ 5 *et seq.*  These are precisely the kinds of "relationships of the persons, wrongs, and issues"

16   that support equitable estoppel.  *Franklin*, 998 F.3d at 870; *see also Herrera*, 94 F.4th at 1090

17   ("It is this interconnectedness that makes equitable estoppel appropriate here.").  Indeed,

18   Plaintiff himself emphasizes that the question of whether SOL is a security turns "on the

19   circumstances surrounding the … manner in which [any digital asset] is offered, sold, or resold"

20   and requires analysis of these "specific facts and circumstances."  AC ¶¶ 98, 100; *see also* AC

21   ¶¶ 102, 113 ("Relevant to this inquiry is the 'economic reality' of the transaction," including "the

22   manner in which the digital asset is offered and sold").

23           Plaintiff's strategic omission of the TOS from the AC does not alter the analysis.  Under

24   controlling law, a plaintiff need not affirmatively plead that the claims rely on the terms of the

25   contract or that the contract existed at all for a court to deem those claims to be intertwined with

26   the underlying contract.  *See, e.g., In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir.

27   2020) (granting nonsignatories' motion to compel arbitration "[e]ven though Plaintiffs do not

28   mention the [contract containing the arbitration clause]"); *see also Goldman v. KPMG, LLP*, 173

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

1    Cal.App.4th 209, 230 (2009) (considering whether the allegations "are in *any way* founded in or

2    bound up with the terms or obligations in the operating agreement[]").  Nor does it matter that

3    Plaintiff is bringing statutory claims rather than claims founded in contract law.  *See Garcia v.*

4    *Pexco, LLC*, 11 Cal.App.5th 782, 795-96 (2017) (granting nonsignatory's motion to compel

5    arbitration of statutory wage-and-hour claims under equitable estoppel).  Rather, "it is the

6    substance of the plaintiff's claim that counts, not the form of its pleading."  *Herrera*, 94 F.4th at

7    1090 (internal quotation marks omitted).

8         Given the close connection between Plaintiff's claims and his alleged transactions on

9    Exodus, not to mention Plaintiff's own affirmative reliance on his purchases on Exodus to

10   advance this litigation, holding Plaintiff to his agreement to arbitrate here would advance the

11   interests of fairness—the "linchpin for equitable estoppel."  *Id.* at 1091 (internal quotation marks

12   omitted).  Conversely, if Plaintiff is able to avoid arbitration, the effect would be to reward him

13   for strategically omitting from the AC the foundational link between his purchases of SOL and

14   the Exodus TOS he assented to prior to making those purchases.  Such an outcome would not

15   only permit Plaintiff to unfairly evade an arbitration agreement, it would create a blueprint of

16   strategic omission for future plaintiffs to follow—one that would frustrate the "liberal federal

17   policy favoring arbitration."  *Concepcion*, 563 U.S. at 339.

18        Equitable estoppel was designed to prevent exactly this kind of abuse because, "in

19   matters of equity, it does not matter against whom the complaint was leveled."  *Herrera*, 94

20   F.4th at 1089 n.9.  This Court should not encourage such tactics and instead compel arbitration

21   as originally contemplated and agreed to by Plaintiff under the TOS.[10]

22

23

_____

24   [10] Alternatively, in the event that the Court determines that any disputed questions of fact as to
     contract formation need to be addressed before resolving this motion, it should allow limited
25   discovery solely as to the question of arbitrability.  *See Knapke v. PeopleConnect, Inc.*, 38 F.4th
     824, 833 (9th Cir. 2022) (finding material factual disputes warranted discovery on arbitrability
26   issue); *e.g.*, *Calzadillas v. Wonderful Company, LLC*, No 1:19-cv-000172-DAD-JLT, 2019 WL
     2339783, at *6 (E.D. Cal. June 3, 2019) (finding limited discovery was permissible concerning
27   the threshold question of whether the agreement could be enforced).

28

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL

**IV.    Conclusion**

Whether under the delegation clause of the TOS or the doctrine of equitable estoppel, this Court should compel arbitration of Plaintiff's claims against Defendants.[11]

Respectfully Submitted,

APRIL 11, 2024

*/s/ Sachi Schuricht*

ORRICK, HERRINGTON & SUTCLIFFE LLP
  SACHI SCHURICHT (SBN 317845)
  sschuricht@orrick.com
  The Orrick Building
  405 Howard Street
  San Francisco, CA 94105-2669
  Telephone:   +1 415 773 5700
  Facsimile:   +1 415 773 5759

DAVID MCGILL (*pro hac vice pending*)
  dmcgill@orrick.com
  2100 Pennsylvania Avenue NW
  Washington, D.C. 20037
  Telephone:   +1 202 339 8666
  Facsimile:   +1 202 339 8500

LATHAM & WATKINS LLP
  SUSAN E. ENGEL (appearance *pro hac vice*)
  susan.engel.@lw.com
  555 Eleventh Street, N.W., Suite 1000
  Washington, D.C. 20004-1304
  Telephone:   +1 202 637 2200
  Facsimile:   +1 202 637 2201

MATTHEW RAWLINSON (SBN 231890)
  matt.rawlinson@lw.com
  140 Scott Drive
  Menlo Park, CA 94025
  Telephone:   +1 650 328 4600

---

[11] If the Court compels arbitration of the claims against Defendants, it should exercise its discretion under the controlling law of the Ninth Circuit to dismiss all claims because "all [of Plaintiff's] claims are subject to arbitration." *Forrest v. Spizzirri*, 62 F.4th 1201, 1204 (9th Cir. 2023) (affirming dismissal of complaint after district court compelled arbitration on all claims), *cert. granted sub nom. Smith v. Spizziri*, 144 S.Ct. 680 (2024) .  *Spizzirri* is now before the United States Supreme Court to resolve a circuit split on the question whether the FAA "permits district courts to stay . . . the trial of the action *by dismissing a case without prejudice* where all claims in the case are subject to binding arbitration."  *Smith v. Spizzirri*, No. 22-1218, Resp. Br. at i (emphasis added).  However, unless and until the Supreme Court decides otherwise, this Court retains the discretion to dismiss Plaintiff's claims.  *See Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ("[A] published decision of this court constitutes binding authority which 'must be followed unless and until overruled by a body competent to do so.'").

MORGAN E. WHITWORTH (SBN 304907)
morgan.whitworth@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone:  +1 415 391 0600

*Attorneys for Defendant Solana Labs, Inc.*

*(signatures continued on following page)*

APRIL 11, 2024

/s/ Scott M. Malzahn

WAYMAKER LLP
  SCOTT M. MALZAHN
  (SBN 229204)
  smalzahn@waymakerlaw.com
  BRIAN E. KLEIN (SBN 258486)
  bklein@waymakerlaw.com
  KEVIN MICHAEL CASEY (SBN 338924)
  kcasey@waymakerlaw.com
  515 S. Flower Street
  Ste 3500
  Los Angeles, CA 90071
  Telephone: +1 424 652 7800
  Facsimile:  +1 424 652 7850

*Attorneys for Defendants Multicoin Capital*
*Management, LLC and Kyle Samani*

- 16 -

1

**SIGNATURE ATTESTATION**

2      I am the ECF User whose identification and password are being used to file the foregoing

3   Notice of Motion and Motion to Compel Arbitration, and Memorandum of Points and

4   Authorities in Support Thereof. Pursuant to L.R 5-1(i)(3) regarding signatures, I, Sachi

5   Schuricht, attest that concurrence in the filing of this document has been obtained.

6

7   Dated: April 11, 2024              _/s/ Sachi Schuricht_____

8                                      Sachi Schuricht

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO COMPEL ARBITRATION
3:22-cv-03912-RFL