Brian E. Klein (Bar No. 258486)
  bklein@waymakerlaw.com
Scott M. Malzahn (Bar No. 229204)
  smalzahn@waymakerlaw.com
Kevin M. Casey (Bar No. 338924)
  kcasey@waymakerlaw.com
WAYMAKER LLP
515 S. Flower Street, Suite 3500
Los Angeles, California 90071
Telephone:   (424) 652-7800
Facsimile:   (424) 652-7850

*Attorneys for Defendants Multicoin Capital
Management LLC and Kyle Samani*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK YOUNG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOLANA LABS, INC.; THE SOLANA FOUNDATION; ANATOLY YAKOVENKO; MULTICOIN CAPITAL MANAGEMENT LLC; and KYLE SAMANI,<br><br>Defendants. | Case No. 3:22-cv-03912-RFL<br><br>**DEFENDANTS MULTICOIN CAPITAL MANAGEMENT LLC AND KYLE SAMANI'S NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   August 6, 2024<br>Time:   10:00 a.m.<br>Court:  Courtroom 15 – 18th Floor<br>Judge:  Hon. Rita F. Lin |

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on August 6, 2024 at 10:00 a.m. in the Courtroom of the Honorable Rita F. Lin, located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom 15, 18th Floor, Defendants Multicoin Capital Management LLC ("Multicoin") and Kyle Samani ("Samani") (collectively, the "Multicoin Defendants") will and hereby do move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Consolidated Amended Class Action Complaint ("AC") (Dkt. 68) against them.

This Motion is made on the grounds that the AC fails to state a claim for relief under Sections 5, 12(a)(1) and 15(a) of the Securities Act of 1933, and under Sections 25110 and 25503 of the California Corporations Code. This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, all pleadings, records and files herein, and upon such other and further matters as may be presented in connection with this Motion.

**STATEMENT OF RELIEF SOUGHT**

The Multicoin Defendants seek an order pursuant to Federal Rule of Civil Procedure 12(b)(6) dismissing this action for failure to state a claim upon which relief can be granted.

DATED:  April 11, 2024                 WAYMAKER LLP


By:   */s/ Scott M. Malzahn*
        BRIAN E. KLEIN
        SCOTT M. MALZAHN
        DONALD R. PEPPERMAN
        KEVIN M. CASEY
        *Attorneys for Defendants Multicoin Capital*
        *Management LLC and Kyle Samani*

WAYMAKER

DEFENDANTS MULTICOIN AND SAMANI'S NOTICE OF MOTION AND MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

I.  STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

II.  INTRODUCTION ........................................................................................................... 1

III.  STATEMENT OF FACTS .............................................................................................. 2

    A.  Plaintiff's Alleged Purchases of SOL Tokens on the Secondary Market ...................... 2

    B.  Multicoin and Kyle Samani ........................................................................................... 3

IV.  LEGAL STANDARD ..................................................................................................... 5

V.  ARGUMENT .................................................................................................................. 5

    A.  The First Cause of Action for Violations of Sections 5 and 12(a)(1) of the Securities Act Fails to State a Claim Against Multicoin and Samani ........................................... 5

        1.  There Are No Allegations that Multicoin or Samani Sold SOL Tokens to Plaintiff ................................................................................................................ 6

        2.  None of Plaintiff's Allegations Against Multicoin or Samani Is Sufficient to Show Solicitation ................................................................................................ 7

            (a)  The AC does not allege "successful" solicitation by the Multicoin Defendants. .................................................................................................. 7

            (b)  The statements identified by Plaintiff do not constitute solicitation to purchase SOL. ............................................................................................. 8

            (c)  The AC does not allege that the Multicoin Defendants solicited purchases for their own financial gain. .................................................................... 10

            (d)  Permitting Plaintiff's Section 12 claims is contrary to Supreme Court precedent and Congressional intent. ................................................... 11

        3.  The First Cause of Action Fails for Additional Reasons ..................................... 12

    B.  The Third Cause of Action for Violations of Sections 25110 and 25503 of the California Corporations Code Fails to State a Claim Against Multicoin and Samani .. 13

        1.  The AC Does Not Allege that Plaintiff Was In Privity with the Multicoin Defendants ......................................................................................................... 13

        2.  The AC Fails to Allege Plaintiff Purchased SOL in an Issuer Transaction ......... 14

    C.  The Second Cause of Action Against Samani for Control Person Liability Under Section 15 of the Securities Act Fails .......................................................................... 14

VI.  CONCLUSION ............................................................................................................. 17

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

*Arcaro v. Parks*,
    143 S. Ct. 427 (2022) ........................................................................................................ 7

*Arcell v. Google LLC*,
    2024 WL 1090009 (N.D. Cal. Feb. 5, 2024) .................................................................. 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................................................ 5

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................ 5

*Bowden v. Robinson*,
    67 Cal. App. 3d 705 (1977) ......................................................................................... 12

*Brody v. Homestore, Inc.*,
    2003 WL 22127108 (C.D. Cal. Aug. 8, 2003) ............................................................. 9

*Capri v. Murphy*,
    856 F.2d 473 (2d Cir. 1988) .......................................................................................... 7

*China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
    2012 WL 12893520 (C.D. Cal. Feb. 16, 2012) ............................................................ 6

*Davy v. Paragon Coin, Inc.*,
    2021 WL 2940200 (N.D. Cal. Mar. 26, 2021) ............................................................. 9

*Dep't of Corps. V. Superior Ct.*,
    153 Cal. App. 4th 916 (2007) ...................................................................................... 12

*Hollifield v. Resolute Cap. Partners Ltd.*,
    2023 WL 4291524 (C.D. Cal. May 12, 2023) ............................................................ 13

*Hollifield v. Resolute Cap. Partners Ltd., LLC*,
    2023 WL 4291524 (C.D. Cal. May 12, 2023) .............................................................. 8

*Holsworth v. BProtocol Found.*,
    2021 WL 706549 (S.D.N.Y. Feb. 22, 2021) ............................................................... 8

*In re Alstom SA*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................................................ 15

*In re Flag Telecom Hldgs., Ltd. Sec. Litig.*,
    352 F. Supp. 2d 429 (S.D.N.Y. 2005) ........................................................................ 15

*In re Juniper Networks, Inc. Sec. Litig.*,
    542 F. Supp. 2d 1037 (N.D. Cal. 2008) ...................................................................... 14

*In re Rigel Pharms., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012) ....................................................................................... 14

*In re Wells Fargo Mortg. Backed Certificates Litig.*,
   712 F.Supp.2d 958 (N.D. Cal. 2010) .................................................................................. 14

*Kaplan v. Rose*,
   49 F.3d 1363 (9th Cir. 1994) ................................................................................................ 14

*Mirkin v. Wasserman*,
   5 Cal. 4th 1082 (1993)......................................................................................................... 13

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
   96 F.3d 1151 (9th Cir. 1996)............................................................................................... 14

*Pino v. Cardone Capital, LLC*,
   55 F.4th 1253 (9th Cir. 2022).................................................................................. 7, 8, 9, 10

*Pinter v. Dahl*,
   486 U.S. 622 (1988) ..................................................................................................... passim

*Pirani v. Slack Techs., Inc.*,
   13 F.4th 940 (9th Cir. 2021) .................................................................................................. 7

*Risley v. Universal Navigation Inc.*,
   No. 22 CIV. 2780 (KPF),
   2023 WL 5609200 (S.D.N.Y. Aug. 29, 2023) ................................................................. 9, 10

*SEC v. W.J. Howey Co.*,
   328 U.S. 293 (1946) ............................................................................................................... 1

*Slack Techs., LLC v. Pirani*,
   598 U.S. 759 (2023) ......................................................................................................... 7, 11

*Spielman v. Ex'pression Ctr. For New Media*,
   191 Cal. App. 4th 420 (2010) .............................................................................................. 12

*Stoyas v. Toshiba Corp.*,
   896 F.3d 933 (9th Cir. 2018)................................................................................................... 2

*Warth v. Seldin*,
   422 U.S. 490 (1975) ............................................................................................................... 8

*Welgus v. TriNet Grp., Inc.*,
   No. 15-CV-03625-BLF,
   2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ........................................................................ 14

*Wildes v. BitConnect Int'l PLC*,
   25 F.4th 1341 (11th Cir.)........................................................................................................ 7

**Statutes**

15 U.S.C. § 77l .............................................................................................................. *passim*

15 U.S.C. § 77o ...................................................................................................... 1, 2, 15

15 U.S.C. § 77e ............................................................................................................ 1, 6

Cal. Corp. Code §§ 25110, 25503 ................................................................. 1, 2, 12, 13

1

2  **Other Authorities**

3  Harold W. Marsh & Robert H. Volk, 1 Practice Under the California Securities Laws § 14.06
4      (2018) .................................................................................................................................. 13

5

6

7

8

9

10

11

12



13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS MULTICOIN AND SAMANI'S NOTICE OF MOTION AND MOTION TO DISMISS

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether Plaintiff has adequately and plausibly alleged that Multicoin Capital Management LLC and Kyle Samani acted as statutory sellers of securities under Section 12(a)(1) of the Securities Act of 1933.

2.      Whether Plaintiff has adequately and plausibly alleged that Multicoin Capital Management LLC and Kyle Samani sold unregistered securities to Plaintiff in an issuer transaction, in violation of Sections 25110 and 25503 of the California Corporations Code.

3.      Whether Plaintiff has adequately and plausibly alleged that Kyle Samani controlled defendant Solana Labs, Inc. such that Samani is liable under Section 15(a) of the Securities Act of 1933.

**II.     INTRODUCTION**

Plaintiff Mark Young's ("Plaintiff's") claims against defendants Multicoin Capital Management LLC ("Multicoin") and Kyle Samani ("Samani") (collectively, the "Multicoin Defendants") should be dismissed with prejudice. In essence, Plaintiff seeks not only to invoke state and federal securities laws as an insurance policy against his cryptocurrency trading activity on the secondary market, but also to extend liability well beyond what the plain language of the applicable statutes contemplate. Multicoin is an asset management firm that advises funds that purchased Solana tokens ("SOL" or "SOL tokens"). (*See* Consolidated Amended Class Action Complaint ("AC"), Dkt. 68, ¶ 19.) None of Multicoin, the Multicoin-advised funds, or Samani issued, sold, or offered to sell SOL[1] tokens to Plaintiff. Nor does Samani control defendant Solana Labs, Inc. ("Labs"), a wholly separate entity in which Samani has no position or equity interest. Each of Plaintiff's claims against the Multicoin Defendants fail as a matter of law.

First, Plaintiff's cause of action under Sections 5 and 12(a)(1) of the Securities Act fails because the AC does not allege that Plaintiff purchased SOL from the Multicoin Defendants or

---

[1] The Multicoin Defendants dispute that SOL are securities under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) and its progeny. However, this motion to dismiss does not raise that issue at this pleading stage. Even assuming SOL are securities for the purposes of this motion, the AC still fails to plead cognizable claims against the Multicoin Defendants.

that the Multicoin Defendants successfully solicited his purchase, as is required to state a claim. Plaintiff merely points to alleged public statements made by the Multicoin Defendants that do not rise to the level of solicitation, and there are no allegations that any of these purported statements had any impact on Plaintiff's decision to purchase SOL or that Plaintiff was even aware of them when he made his purchases. The Multicoin Defendants also join in, and incorporate by reference, several other arguments briefed in Labs' motion to dismiss that equally apply to the Multicoin Defendants and show that Plaintiff's first cause of action is legally defective.

Second, Plaintiff's cause of action under Sections 25110 and 25503 of the California Corporations Code fails. Under these statutes, a plaintiff-purchaser may bring a claim against a seller who sold unregistered or non-exempt securities to the plaintiff in an issuer transaction. The AC does not allege that occurred here. There are no allegations that Plaintiff purchased SOL tokens directly from the Multicoin Defendants. Nor does the AC allege that Multicoin was the original issuer of those tokens. To the contrary, the AC admits that Plaintiff purchased SOL on the secondary market from unspecified persons.

Third, Plaintiff's cause of action against Samani under Section 15(a) of the Securities Act fails for two independent reasons: the AC does not adequately plead a primary violation of Section 12(a)(1), and Plaintiff fails to allege facts demonstrating Samani's control over the management and policies of Labs—an entity in which Samani holds no position or interest—or that Samani directed its day-to-day affairs.

These numerous and significant defects in the AC cannot be cured, and the Court should dismiss the AC with prejudice as to the Multicoin Defendants.

## III.    STATEMENT OF FACTS[2]

### A.    Plaintiff's Alleged Purchases of SOL Tokens on the Secondary Market

"SOL is a crypto-asset that is created and minted on Solana, the Solana Labs' blockchain network." (AC ¶ 45.) On March 24, 2020, Labs allegedly had its first public sale of SOL tokens in "'a Dutch auction,' which was tantamount to an Initial Coin Offering ('ICO')." (*Id.* ¶¶ 4, 52.)

---

[2] Unless otherwise indicated, the following facts are taken from the AC. (Dkt. 68.)

Shortly thereafter, "[b]etween March and April 2020, SOL [tokens] began publicly trading" on cryptocurrency exchanges. (*Id*. ¶¶ 4.) The AC identifies one such exchange (*i.e.*, Coinbase) that is based in the U.S. (*See id*., ¶¶ 30, 85, 95, 110.)

Importantly, the AC does *not* allege that Plaintiff purchased SOL tokens on Coinbase or any other alleged U.S.-based exchange; nor does he claim to have purchased SOL tokens from Labs, the Solana Foundation, or any other defendants. Instead, the AC alleges that Plaintiff purchased SOL tokens on the secondary market from unnamed third parties. Plaintiff "resides in California" and made these purchases "from California." (*Id*. ¶ 15.) According to his certification filed with the original complaint (the "Certification"), Plaintiff purchased SOL tokens on six different dates "in August and September 2021[,]" "by exchanging other crypto assets (such as Cardano, Dash, Ethereum, Litecoin)" for SOL tokens "on Exodus[.]" (Dkt. 1 at 38-39, ¶ 5.) Plaintiff's pleadings do not provide any other factual details about these transactions or about Exodus. Among other things, the AC does not allege that Exodus is a U.S.-based exchange;[3] it does not name or identify the location of the counterparties to Plaintiff's transactions; and it does not explain how the transactions were executed.

## B.   Multicoin and Kyle Samani

The AC names five defendants, each of whom allegedly had a different role. (AC ¶¶ 16-20.) Multicoin is a Securities and Exchange Commission-registered Investment Adviser and asset management firm that advises funds that purchased SOL tokens from Labs in several fundraising rounds, and Kyle Samani is the Managing Partner of Multicoin. (*See id*. ¶¶ 19, 20.) Although the AC asserts that Multicoin and Samani were "intimately involved" in the Solana project (*id*. ¶ 90), they are not alleged to be directors, officers, employees, or even shareholders of Labs. Moreover, the AC does not allege specific facts showing that either of them exercised voting power or other management rights over Labs.

---

[3] Exodus "contract[s] with international third-party API providers," and its "revenue in 2020 was derived primarily from non-U.S. jurisdictions" with just "3% attributable to the United States." *See* Labs' Motion to Dismiss, Section II.B, n.8.

Along with other asset management firms, Multicoin allegedly purchased significant quantities of SOL tokens from Labs or the Solana Foundation in three fundraising rounds:

- "In a June 2018 'Founding Sale,'" Multicoin and eight other entities purchased the equivalent of $12.6 million SOL from Labs. (*Id*. ¶ 48.)

- In July 2019, "Multicoin led Solana's $20 million Series A funding round" in which purchasers "received SOL in exchange for their investment, not equity in Solana, Inc." (*Id*. ¶ 88.)

- In June 2021, more than a year after the ICO, Multicoin was one of at least 15 entities that purchased SOL tokens from Labs in a "private token sale[.]"  (*Id*. ¶ 54.)

Aside from Multicoin, the AC does not name any other asset management firm as a defendant in this action.

"Kyle Samani is the Managing Partner of Multicoin" and a Texas resident. (*Id*. ¶ 20.) The AC asserts that Samani "promoted and solicited others to purchase SOL" through his "personal Twitter account[.]" (*Id*. ¶ 96.) As support, the AC identifies 35 tweets by Samani between July 30, 2019, and April 24, 2022, covering a wide range of topics including Solana's history, technology, and development; the listing of SOL on various exchanges; Multicoin's acquisition of SOL; the price of SOL; and Samani's belief in the value of the Solana network and SOL. (*Id.* ¶ 97.) Nowhere does the AC allege that Plaintiff relied on or was even aware of these tweets before making his purchases of SOL. In fact, many of the cited tweets postdate Plaintiff's purchases of SOL, which he alleges took place in August and September 2021. (*See id*. ¶¶ 15, 97.) Other than a vague reference to a statement by Samani that he assisted Labs "through difficult times," (*id.* ¶ 91), the AC does not contain any allegations that Samani acted as anything more than an enthusiastic supporter of the Solana project.

The AC alleges that, "[t]hroughout 2021 and early 2022, the Multicoin Defendants have sold billions of dollars of SOL securities on retail investors *such as* Plaintiff." (AC ¶ 93 (emphasis added).) It further alleges that, "[t]o offload the SOL securities, the Multicoin Defendants [allegedly] used OTC trading desks, such as U.S.-based FalconX,[4] to act as a broker for the sale of

---

[4] Plaintiff named FalconX as a defendant in the original complaint (Dkt. 1), but did not name it as a defendant in the AC. (Dkt. 68.)

SOL securities" and that "[b]rokers, such as FalconX, sold the SOL securities by receiving them from the Multicoin Defendants and then selling the tokens through U.S.-based exchanges, such as Coinbase." (*Id.* ¶¶ 14, 94, 95.) In other words, the AC alleges that the Multicoin Defendants sold SOL to OTC trading desks, which in turn sold SOL on U.S.-based exchanges—but the AC does *not* allege that Plaintiff purchased SOL on a U.S.-based exchange, from an OTC trading desk, or from any other purported broker acting on behalf of the Multicoin Defendants. In simple terms, the AC does not allege that Plaintiff purchased SOL from either of the Multicoin Defendants.

## IV.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). Rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court need not accept as true "conclusory" or "speculative" allegations. *Arcell v. Google LLC*, No. 22-cv-02499-RFL, 2024 WL 1090009, at *2, 4 (N.D. Cal. Feb. 5, 2024).

## V.   ARGUMENT

Each of the claims brought against the Multicoin Defendants under federal and state securities laws should be dismissed for failure to state a claim.

### A.   The First Cause of Action for Violations of Sections 5 and 12(a)(1) of the Securities Act Fails to State a Claim Against Multicoin and Samani

To state a claim under Section 12(a)(1) of the Securities Act of 1933, Plaintiff must allege that each defendant was a "statutory seller" of the particular unregistered security. *Pinter v. Dahl*, 486 U.S. 622, 641-42 (1988); 15 U.S.C. § 77l(a) (imposing civil liability on "[a]ny person who . . . (1) offers or sells a security in violation of [Section 5] . . . shall be liable . . . to the person

purchasing such security from him").[5] A defendant is a "statutory seller" only if it: (i) "passed title, or other interest in the security, to the buyer for value," or (ii) "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve [its] own financial interests or those of the securities owner." *Pinter*, 486 U.S. at 642, 647. Neither test is met here with respect to the Multicoin Defendants.

> **1.      There Are No Allegations that Multicoin or Samani Sold SOL Tokens to Plaintiff**

The AC does not—and cannot—allege that either Multicoin or Samani passed title or other interest in SOL to him for value. Plaintiff asserts that he "purchased SOL securities in August and September 2021" using the Exodus cryptocurrency wallet to execute trades, but does not identify any actual sellers. (*See* AC ¶ 15; Certification.)

Allegations that the Multicoin Defendants sold SOL to OTC trading desks that in turn sold the tokens in the secondary market are legally insufficient to show the Multicoin Defendants passed legal title to Plaintiff. (*See* AC ¶¶ 93-95.) "The 'purchase from' requirement of § 12 focuses on the defendant's relationship with the plaintiff-purchaser." *Pinter*, 486 U.S. at 651. Moreover, "a buyer cannot recover against his seller's seller." *Id.* at 644 n.21. Here, the AC fails to allege that the Multicoin Defendants sold SOL tokens to the Plaintiff directly or otherwise "passed title, or other interest in" SOL to him. *See id.* at 642; *see also In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 PSG, 2012 WL 12893520, at *5 (C.D. Cal. Feb. 16, 2012) ("[A] Section 12 plaintiff may not purchase his shares in the secondary market and then trace his shares back to the offering at issue."); *see also Pirani v. Slack Techs., Inc.*, 13 F.4th 940, 949–50 (9th Cir. 2021), *vacated and remanded sub nom. Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023) ("Section 12 also includes an express privity requirement between the seller and the purchaser.").

---

[5] There is no private right of action under Section 5; the only civil remedy available to private parties is that specified in Section 12, 15 U.S.C. § 77l. *Carol Gamble Tr. 86 v. E-Rex, Inc.*, 84 F. App'x 975, 978 (9th Cir. 2004) ("A private right of action for violations of section 5 is authorized by section 12(a)(1) of the 1933 Act.").

Because the AC does not allege any facts suggesting that Multicoin or Samani passed titled or other interest in SOL to Plaintiff for value, Plaintiff cannot state a Section 12(a)(1) claim under the first prong of the "statutory seller" requirement.

### 2.     None of Plaintiff's Allegations Against Multicoin or Samani Is Sufficient to Show Solicitation

Plaintiff's first cause of action also fails under the solicitation prong of the "statutory seller" requirement. To plead solicitation, a plaintiff must allege facts showing the defendant engaged in conduct specifically "directed at producing [a] sale" for financial gain, and the solicitation must be successful. *Pinter*, 486 U.S. at 646-47. For multiple independent reasons, the AC fails to state a solicitation claim against the Multicoin Defendants.

### (a)     The AC does not allege "successful" solicitation by the Multicoin Defendants.

To constitute solicitation, a plaintiff must allege facts showing the defendant "*successfully solicit[ed]*" the purchase of the security for financial gain. *Id.* at 647 (emphasis added); *Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1260 (9th Cir. 2022) ("the solicitation must succeed, and it must be motivated by a desire to serve the solicitor's or the security owner's financial interests") (quoting *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir.), *cert. denied sub nom. Arcaro v. Parks*, 143 S. Ct. 427 (2022)); *see also Capri v. Murphy*, 856 F.2d 473, 478-79 (2d Cir. 1988) (solicitation allegations must establish that defendant "actually solicited [plaintiffs'] investment"). It is not enough to allege that a defendant "urge[d] another to make a securities purchase" or gave "gratuitous advice, even strongly or enthusiastically." *Pinter*, 486 U.S. at 627, 647; *see also Pirani v. Slack Techs., Inc.*, 445 F. Supp. 3d 367, 383 (N.D. Cal. 2020), *aff'd*, 13 F.4th 940 (9th Cir. 2021), *vacated and remanded sub nom. Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023). The solicitation must be successful. *Pinter*, 486 U.S. at 647; *Pino*, 55 F.4th at 1260.

Here, there is no allegation that Multicoin or Samani successfully solicited Plaintiff to purchase SOL. The entire section of the AC addressing the Multicoin Defendants' purported solicitation merely states in conclusory fashion that Samani, the managing partner of Multicoin, "aggressively promoted and solicited others to purchase SOL securities" and provides a list of various statements (or Plaintiff's summary of statements) that Samani made about Solana on his

"personal Twitter account." (AC ¶¶ 96-97.) There are no allegations that Plaintiff saw these tweets or was even aware of Samani at the time he purchased his SOL, which is fatal to his solicitation claim. *Pinter*, 486 U.S. at 647; *see also Pino*, 55 F.4th at 1260; *In re Tezos Sec. Litig.*,  No. 17-cv-06779-RS, 2018 WL 4293341, at *9 (N.D. Cal. August 7, 2018) (asset management firm and its principal were not statutory sellers where Plaintiff "failed even to allege knowledge of [principal's] name, let alone his venture capital activities, prior to participating in the ICO"); *Hollifield v. Resolute Cap. Partners Ltd., LLC*, No. 2:22-cv-07885-SB-RAO, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023) (dismissing Section 12(a)(1) claim where plaintiffs did not "allege that they attended any seminars or dinners or listened to any radio shows" that formed the basis of their solicitation argument); *Holsworth v. BProtocol Found.*, No. 20 Civ. 2810 (AKH), 2021 WL 706549, at *3 (S.D.N.Y. Feb. 22, 2021) (dismissing Section 12(a)(1) claim where plaintiff failed to allege "that he purchased [crypto tokens] as a result of any active solicitations"). Nor can Plaintiff rely on the possibility that others, including members of the purported class, may have seen Samani's tweets in connection with their purchases of SOL, as Plaintiff must "demonstrate the requisite case or controversy between themselves personally and [the defendant(s)]" and "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975). Because the AC does not allege that Plaintiff saw Samani's tweets or otherwise state facts that support a "successful" solicitation by the Multicoin Defendants, Plaintiff's Section 12 claim under a solicitation theory fails and should be dismissed.

**(b)      The statements identified by Plaintiff do not constitute solicitation to purchase SOL.**

Turning to the statements themselves, Plaintiff makes no attempt to identify which if any of the statements listed in paragraph 97 of the AC constitute "solicitation." For good reason: none are sufficient to show that Samani or Multicoin solicited purchases of SOL or otherwise attempted to "persuade potential purchasers to invest" in SOL. The majority of the statements (as well as Plaintiff's summarization of statements) from Samani's personal Twitter account consist of Samani's descriptions of the Solana network's features and periodic updates on its development,

1    while others reflect Samani's descriptions of his or Multicoin's holdings of SOL and his intentions

2    with regard to such holdings.

3          As a threshold matter, the AC impermissibly lumps together the two Multicoin Defendants

4    without making "specific factual allegations" as to "each individual defendant." *Mehedi v. View,*

5    *Inc.*, 2023 WL 3592098, at *12 (N.D. Cal. May 22, 2023) (dismissing Section 12 claim where

6    plaintiff failed to allege "each individual [defendant] played a direct role in the solicitation of the

7    Plaintiff"). Without alleging "how each individual party" violated the statutes at issue, merely

8    "[s]eparating out each individual defendant, rather than using a defined group, is insufficient to

9    satisfy the pleading standard under Rule 8." *Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*,

10   2023 WL 8420896, at *7 (N.D. Cal. Dec. 4, 2023). The AC's failure to distinguish between the

11   conduct of Multicoin and Samani and to allege how each of them violated Section 12 is fatal to its

12   solicitation claims.

13         Even if the Multicoin Defendants were treated as a single person, the mere fact that Samani

14   made positive statements about Solana's technology or expressed excitement does not constitute

15   "solicitation" to purchase a security, as such statements are not "directed at producing [a] sale,"

16   *Pinter*, 486 U.S. at 646. Indeed, they are a far cry from the sort of statements that courts in the

17   Ninth Circuit have found sufficient to allege solicitation. *See, e.g., Pino,* 55 F.4th at 1256 ("I am

18   offering investment opportunities to the everyday investor, like you! . . . [Y]ou're gonna walk

19   away with a 15% annualized return. . . . If I'm in that deal for 10 years, you're gonna earn 150%. .

20   . . Want to double your money[?]" and promising a "118% return amounting to 19.6% per year.");

21   *cf. Davy v. Paragon Coin, Inc.*, No. 18-cv-00671-JSW, 2021 WL 2940200, at *8 (N.D. Cal. Mar.

22   26, 2021) (no solicitation where member of advisory board allegedly used his celebrity status to

23   encourage the public to visit a website and purchase tokens); *Brody v. Homestore, Inc.*, No. CV02-

24   08068FMCJWJX, 2003 WL 22127108, at *5 (C.D. Cal. Aug. 8, 2003) (no solicitation where

25   underwriters "presented highly favorable information about the Company, including forecasts of

26   strong revenue and profit growth"); *Risley v. Universal Navigation Inc.*, No. 22 CIV. 2780 (KPF),

27   2023 WL 5609200, at *19 (S.D.N.Y. Aug. 29, 2023) (finding tweets about safety of functions of

28   blockchain protocol "too attenuated" to constitute solicitation). Enthusiastic descriptions of the

DEFENDANTS MULTICOIN AND SAMANI'S NOTICE OF MOTION AND MOTION TO DISMISS

1    Solana network's features and developments do not constitute solicitation to purchase SOL any

2    more than praise for Apple products and features constitutes solicitation to purchase Apple stock.

3         A substantial number of the cited statements made by Samani are legally irrelevant

4    because they postdate Plaintiff's August and September 2021 purchases of SOL tokens. There is

5    no logical way those statements from October 28, 2021 to April 24, 2022 could have been

6    responsible for Plaintiff's earlier purchases of SOL. (*See* AC ¶¶ 15, 97.) Thus, all statements

7    postdating Plaintiff's purchases should be disregarded. To be clear, however, even if the Court

8    were to consider these statements, they are not "directed at producing [a] sale" or otherwise

9    sufficient to show Multicoin or Samani's intent to "persuade potential investors to invest," as is

10   required to allege solicitation. *Pinter*, 86 U.S. at 646; *Pino*, 55 F.4th at 1260.

> ### (c)      The AC does not allege that the Multicoin Defendants solicited purchases for their own financial gain.

12        Plaintiff's solicitation theory also fails because the AC does not sufficiently allege that the

13   Multicoin Defendants' purported solicitation efforts were made with "a desire to serve [their] own

14   financial interests." *Pinter*, 486 U.S. at 647. It is not enough to allege that Multicoin or Samani—

15   like anyone else who owns SOL—would indirectly benefit from a general increase in the market

16   price of SOL. *See id.* ("The person who gratuitously urges another to make a particular investment

17   decision is not, in any meaningful sense, requesting value in exchange for his suggestion or

18   seeking the value the titleholder will obtain in exchange for the ultimate sale."). To the contrary,

19   "a person who solicits the purchase will have sought or received a personal financial benefit from

20   the sale, such as where he anticipates a share of the profits . . . or receives a brokerage

21   commission." *Id.* at 654 (citations omitted). The same holds true in the context of cryptocurrency

22   tokens—a generalized interest in increasing the value of one's holdings is insufficient to show a

23   financial interest in the particular transaction at issue. *See, e.g., Risley*, 2023 WL 5609200, at *19

24   (rejecting argument that "increasing value of UNI" tokens held by defendant constitutes financial

25   interest under solicitation theory and dismissing Section 12 claim because other allegations

26   "cannot support a claim that Defendants had a financial interest in the particular transactions at

27   issue here").

28

WAYMAKER

1    Here, Multicoin and Samani are not alleged to have earned any broker fees or any other

2    form of compensation for Plaintiff's purchases of SOL. Nor do they allegedly own any equity

3    stake in Labs or the Solana Foundation. At most, the AC alleges "Defendants personally profited

4    by soliciting [unidentified] investors to purchase SOL securities on multiple online platforms, and

5    *by selling SOL securities to such investors*." (AC ¶ 139 (emphasis added).) Because the AC fails

6    to allege the Multicoin Defendants had a financial interest in the transactions at issue (*i.e.*,

7    Plaintiff's purchases of SOL), the Section 12 claim fails as a matter of law.

8    **(d)      Permitting Plaintiff's Section 12 claims is contrary to Supreme Court precedent and Congressional intent.**

9

10    Finally, dismissal of Plaintiff's first cause of action under Section 12 is warranted here

11    because permitting Plaintiff's claims to proceed on such a tenuous solicitation theory would

12    effectively represent a return to the very "substantial factor" test that the Supreme Court rejected

13    in *Pinter*. Before *Pinter*, the Ninth Circuit applied a "substantial factor" test in determining

14    whether a defendant was liable under Section 12. *See Pinter*, 486 U.S. at 648 n.25. The Court

15    rejected that test because it "focuses on the defendant's degree of involvement in the securities

16    transaction and its surrounding circumstances," whereas "[t]he 'purchase from' requirement of §

17    12 focuses on the defendant's relationship with the plaintiff-purchaser." *Id.* at 651. Noting that

18    Congress has little trouble expanding liability to reach "participants collateral to the offer or sale"

19    when it chooses to do so, the Court concluded that it "must assume that Congress meant what it

20    said." *Id.* at 650-53. It also noted that, in light of "the strict liability nature of the statutory cause of

21    action," the substantial factor test "introduces an element of uncertainty into an area that demands

22    certainty and predictability." *Id.* at 652.

23    Likewise, here, permitting Plaintiff's Section 12 claim to proceed on a solicitation theory,

24    based solely on generalized public statements about the Solana network and SOL tokens, would

25    represent a return to the substantial factor test and introduce uncertainty, particularly in the

26    cryptocurrency context. Adopting Plaintiff's theory of liability would effectively mean that any

27    individual who holds cryptocurrency tokens and makes public statements about the promise of the

28    underlying blockchain or its particular features would be subject to liability under Section 12. That

1    would run contrary to the intent of the Securities Act, which is meant to be "narrower" and

2    "focused primarily on the regulation of new offerings." *Slack Techs., LLC v. Pirani*, 598 U.S. 759,

3    762 (2023) (citations omitted). This is particularly true where, as here, the claims involve

4    allegations of purchases made on the secondary market. *See id.* (noting the Exchange Act, and not

5    the Securities Act, "regulates trading on secondary markets"). This Court should reject Plaintiff's

6    attempt to rely on a defendant's "degree of involvement" in the alleged securities transactions to

7    state a claim under Section 12—an approach that has already been rejected by the Supreme Court.

8    *See Pinter*, 486 U.S. at 648 n.25.

9              **3.    The First Cause of Action Fails for Additional Reasons**

10             This Court should also dismiss the first cause of action for several additional reasons

11   briefed in Labs' motion to dismiss, which apply equally to the Multicoin Defendants. For the sake

12   of judicial efficiency, the Multicoin Defendants do not repeat those arguments but rather

13   incorporate them by reference.[6] In particular:

14   •    The AC fails to allege that he purchased SOL tokens from the issuer in a public
          offering, rather than on the secondary market. (*See* Labs' Motion to Dismiss,
15        Section IV.B.)

16   •    The AC fails to allege a domestic securities transaction subject to federal securities
          law. Indeed, Plaintiff only alleges he "purchased SOL securities in August and
17        September 2021 from California" using a cryptocurrency wallet that incorporates
          third-party applications that facilitate trading on exchanges not alleged to be
18        located in the U.S. (AC ¶ 15; *see* Labs' Motion to Dismiss, Section IV.C.)

19   •    The AC fails to allege that Plaintiff suffered an injury; to the contrary, the value of
          his SOL has appreciated. (*See* Labs' Motion to Dismiss, Section IV.D.)
20
21             For all the above reasons, the first cause of action against the Multicoin Defendants for

22   violations of Sections 5 and 12 of the Securities Act should be dismissed.

23   / / /

24   / / /

25   / / /

26   ────────────────────
     [6] *See, e.g., Spencer v. Lunada Bay Boys*, 2016 WL 6818757, at *3 (C.D. Cal. July 22, 2016)
27   (permitting defendants to join in motions to dismiss brought by similarly situated defendants)
     (citing *Vazquez  v. Central States Joint Bd.*, 547 F. Supp. 2d 833, 867 (N.D. Ill. 2008) ("It is
28   permissible for a party to adopt the motion of another party when the facts between the parties are
     essentially the same and the adoption would promote judicial efficiency.")).

**B.**     **The Third Cause of Action for Violations of Sections 25110 and 25503 of the California Corporations Code Fails to State a Claim Against Multicoin and Samani**

Plaintiff's third cause of action against the Multicoin Defendants for selling unregistered securities in an issuer transaction in violation of California law similarly fails. The AC alleges that the defendants, including the Multicoin Defendants, violated Sections 25110 and 25503 of the California Corporations Code "by engaging in the conduct described above within California, directly or indirectly, sold and offered to sell securities" without a registration statement having "been filed with any state or federal government entity" or having otherwise "been in effect." (AC ¶¶ 152-155.) This cause of action fails because the AC does not allege that Plaintiff purchased SOL tokens from the Multicoin Defendants in an issuer transaction.

**1.**     **The AC Does Not Allege that Plaintiff Was In Privity with the Multicoin Defendants**

Section 25503 of the California Corporate Securities Law of 1968 (the "Act") creates a private right of action for buyers of securities sold in violation of certain sections of the Act. By its plain terms, it limits the scope of liability to the seller who actually sold the securities to the buyer. *See* Cal. Corp. Code § 25503 ("Any person who violates Section 25110 . . . shall be liable *to any person acquiring from them* the security sold in violation of that section. . . .") (emphasis added). Indeed, courts hold that claims brought under Section 25503 require privity between the plaintiff and the defendant. *See Bowden v. Robinson*, 67 Cal. App. 3d 705, 712 (1977) ("The Legislature, in section 25503, by the words 'any person acquiring from him' has required privity, with some exceptions, as a condition of recovery."); *see also Spielman v. Ex'pression Ctr. For New Media*, 191 Cal. App. 4th 420, 432 (2010), *as modified* (Dec. 30, 2010) (noting Sections 25110 and 25503 "create liability affording the *immediate purchaser* several specific remedies") (quoting *Bowden*, 67 Cal. App. 3d at 712) (emphasis added); *Dep't of Corps. v. Super. Ct.*, 153 Cal. App. 4th 916, 929-30 (2007) (Section 25110 of the Act "explicitly directs courts not to rely on the Act's provisions to authorize private rights of action beyond those explicitly enumerated" and "the drafters of the Act were also cognizant of the dangers of casting the net of civil liability too broadly") (citing Cal. Corp. Code § 25110). Thus, to state a claim under Sections 25110 and

25503, a plaintiff must allege that the "the defendant actually sold the securities to the plaintiff bringing the claim." *Hollifield v. Resolute Cap. Partners Ltd.*, No. 2:22-cv-07885-SB-RAO, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023).

Because the AC does not allege that either of the Multicoin Defendants sold any SOL tokens to Plaintiff, Plaintiff's third cause of action fails for that reason alone.

### 2. The AC Fails to Allege Plaintiff Purchased SOL in an Issuer Transaction

Plaintiff's third cause of action also fails because the AC does not—and cannot—allege that Plaintiff purchased SOL tokens in an issuer transaction, as is required to state a claim. Section 25503 provides a cause of action for purchasers of a security offered in violation of Section 25110, which makes it "unlawful for any person to offer or sell in this state any security in an *issuer transaction* . . . whether or not by or through underwriters, unless such sale has been qualified under Section 25111, 25112 or 25113 . . . or unless such security or transaction is exempted or not subject to qualification." Cal. Corp. Code § 25110 (emphasis added). Thus, Section 25110 applies only to "issuer transactions" and not to secondary "aftermarket transactions." *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1104 (1993) (citing § 25110 in support of the proposition that "the Legislature knew how to write a statute that addressed only issuer transactions when that was what it intended to do"). Further, an "issuer transaction" refers to the transaction that occurs the first time a security is sold. *See* Harold W. Marsh & Robert H. Volk, 1 Practice Under the California Securities Laws § 14.06 (2018).

Here, the AC admits that Plaintiff purchased SOL tokens on the secondary market after the conclusion of the alleged ICO. (*See* AC ¶¶ 4, 15, 52, 93-95.) Because the AC does not allege that Plaintiff purchased SOL tokens in any "issuer transaction," the third cause of action for violation of Sections 25110 and 25503 of the California Corporations Code should be dismissed.

### C. The Second Cause of Action Against Samani for Control Person Liability Under Section 15 of the Securities Act Fails

Plaintiff's second cause of action against Samani for control person liability under Section 15(a) of the Securities Act fails. Not only does the AC fail to plead a primary violation as to Labs, but it also fails to allege sufficient facts showing that Samani directly or indirectly controlled

Labs. *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996) ("[t]o establish 'controlling person' liability, the plaintiff must show that a primary violation was committed and that the defendant 'directly or indirectly' controlled the violator.").

As a threshold matter, the AC fails to state a claim for a primary violation of Section 12(a) for the reasons set forth in Labs' motion to dismiss, incorporated herein by reference. (*See* Labs' Motion to Dismiss, Section IV.A-D.) In the absence of a primary violation, the control person claim against Samani necessarily fails as well. *See In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 886 (9th Cir. 2012) (control person claim must be dismissed where a complaint fails to allege a primary violation).

But even assuming a primary violation is stated, the AC fails to allege facts to support conclusory allegations that Samani "directly or indirectly controlled" Labs. (*See, e.g.,* AC ¶¶ 143-145.) The inquiry over whether a person is a controlling person is focused on "the defendant's participation in the day-to-day affairs of the corporation and the defendant's power to control corporate actions." *Paracor*, 96 F.3d at 1162 (quoting *Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994)). The inquiry "must revolve around the 'management and policies' of the corporation, not around discrete transactions." *Id.* (finding no control person liability where defendant "did not exercise control over the 'management and policies' of [the violator], nor did it direct its day-to-day affairs in any sense"). A plaintiff must, for example, "allege more than the defendant's position and committee membership," as even "[a] director is not automatically liable as a controlling person." *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1053 (N.D. Cal. 2008) (citations omitted); *see also In re Wells Fargo Mortg. Backed Certificates Litig.*, 712 F.Supp.2d 958, 969 (N.D. Cal. 2010) (conclusory allegations that defendants exercised substantial control over primary violator are insufficient without specific factual allegations that defendants had the "power to direct or cause the direction of the management and policies" of the primary violators). A "plaintiff must allege *specific facts* concerning a defendant's responsibilities within the company that demonstrate his involvement in the day-to-day affairs of the company." *Welgus v. TriNet Grp., Inc.*, No. 15-CV-03625-BLF, 2017 WL 167708, at *12 (N.D. Cal. Jan. 17, 2017) (citing *Paracor*, 96 F.3d at 1163-64) (emphasis added).

Here, Plaintiff fails to allege any semblance of control by Samani. The AC does not—and cannot—allege that Samani is an officer or director of Labs; rather, it acknowledges that he is a managing partner of *Multicoin*, a completely separate entity that holds no equity in Labs. (*See* AC ¶¶ 87-88.) The only allegations regarding control specific to Samani involve general statements that he helped Labs "through difficult times" and Samani's public statements that he, together with Multicoin, owns "10-figures worth" of SOL—which, as the AC acknowledges, does not confer any voting or management rights. (*See* AC ¶¶ 45, 88.) Even assuming it did, the AC does not allege that Samani's holdings of SOL are sufficient to give rise to control person liability. SOL tokens are not equity and grant holders no rights against Labs; however, even if they were or did, minority ownership of even a significant portion of shares is insufficient to establish control person liability. *See In re Alstom SA*, 406 F. Supp. 2d 433, 489 (S.D.N.Y. 2005) ("Minority stock ownership is not enough to establish control person liability, since minority stock ownership does not give the owner the power to direct the primary violator."); *In re Flag Telecom Hldgs., Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458-459 (S.D.N.Y. 2005) (ownership of 30 percent of voting shares and ability to appoint three of nine board members did not constitute control). The AC also alleges that "Samani and Multicoin are not passive Solana investors," citing an article in which a Solana co-founder states that *Multicoin*—and not Samani as an individual—was "pretty intimately involved" in major decisions and funding rounds and in orchestrating a partnership that brought broader attention to Solana. (AC ¶ 90.) Even assuming all of Multicoin's conduct can somehow be attributed to Samani individually (it cannot; *see Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*, 2023 WL 8420896, at *7 (N.D. Cal. Dec. 4, 2023)), there are no specific allegations that Samani directed the day-to-day affairs of Labs or that he exercised control over its management and policies, as is required to establish control person liability under Section 15.

The only allegations of Samani's control over management and policy appear in connection with Plaintiff's recitation of the causes of action, where Plaintiff lumps Samani together with co-defendant Anatoly Yakovenko as "Control Person Defendants" and offers only conclusory, boilerplate allegations of control. (AC ¶¶ 143-149.) For example, the AC alleges that, "by virtue of their offices, stock ownership, agency, agreements, or understandings, and specific

DEFENDANTS MULTICOIN AND SAMANI'S NOTICE OF MOTION AND MOTION TO DISMISS

acts," Samani was a controlling person within the meaning of Section 15. (AC ¶ 144.) Yet, the AC does not allege that Samani held any "office" with Labs; concedes that he did not own any equity (*id.* ¶ 88); and does not otherwise allege the existence of any agreements or understanding between Samani and Labs regarding his ability to exercise control over it. Similarly, the AC alleges Samani possessed "the power to direct or cause the direction of the management and policies of Solana, through ownership of voting securities, by contract, subscription agreement, or otherwise," (*id.* ¶ 145), but identifies no such contract or subscription agreement and, again, concedes that Samani did not hold any "voting securities." (*Id.* ¶ 88.) The remaining paragraphs fare no better, reciting boilerplate allegations of influence and control. (*Id.* ¶ 146-149.) For all these reasons, the second cause of action against Samani for control person liability should be dismissed.

## VI.  CONCLUSION

For the foregoing reasons, Multicoin and Samani respectfully request that this Court dismiss Plaintiff's claims against them with prejudice.

DATED:  April 11, 2024                    WAYMAKER LLP


By:   */s/ Scott M. Malzahn*
      _____
      BRIAN E. KLEIN
      SCOTT M. MALZAHN
      KEVIN M. CASEY
      *Attorneys for Defendants Multicoin Capital*
      *Management LLC and Kyle Samani*