Todd M. Schneider (SBN 158253)
Matthew S. Weiler (SBN 236052)
Sunny S. Sarkis (SBN 258073)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
TSchneider@schneiderwallace.com
MWeiler@schneiderwallace.com
SSarkis@schneiderwallace.com

Jason H. Kim (SBN 220279)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
300 S. Grand Ave., Suite 2700
Los Angeles, California 90071
Telephone: (415) 421-7100
JKim@schneiderwallace.com

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK YOUNG, on behalf of himself and all others similarly situated,<br><br>                                        Plaintiff,<br><br>        v.<br><br>SOLANA LABS, INC.;<br>THE SOLANA FOUNDATION;<br>ANATOLY YAKOVENKO; MULTICOIN<br>CAPITAL MANAGEMENT LLC; KYLE<br>SAMANI,<br><br>                                        Defendants. | Case No.  3:22-cv-03912-RFL<br><br>CLASS ACTION<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>JURY TRIAL DEMANDED |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF RELEVANT FACTS ............................................................. 1

III.  ARGUMENT ...................................................................................................... 2

    A.   Defendants Have No Right to Enforce the Exodus Agreement ........................... 2

        1. Plaintiff's Claims Against Defendants Do Not Rely on and Are Neither Intimately
        Founded in Nor Intertwined with the Exodus TOS ...................................................... 3

        2.  Defendants' Misconduct is Neither Interdependent nor Intimately Connected with the
        Exodus TOS ......................................................................................................... 7

    B.   Defendants Fail to Meet Their Burden of Showing An Enforceable Arbitration
         Agreement ......................................................................................................... 8

        1. Defendants Provide No Evidence of An Accepted Agreement By Young. ................... 8

        2.  Defendants Submit Inadmissible Evidence and an Inappropriate Request for Judicial
        Notice in Support of Their Motion to Compel. ............................................................ 11

        3.  The Purported Abitration Agreement Provided By Defendants Is Unenforceable ...... 15

    C.   The Plain Terms of the Exodus Agreement Limit Third Party Arbitration Rights. ......... 19

    D.  The Issue of Arbitrability Cannot Be Delegated. .................................................. 22

IV.  CONCLUSION .................................................................................................. 25

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Aliff v. Vervent, Inc*.,

4

2020 WL 5709197 (S.D. Cal. Sept. 24, 2020), *aff'd*, 2021 WL 5985584

5

(9th Cir. Dec. 17, 2021) ................................................................................ 3

6

*Arellano v. Santos*,

7

2020 WL 1275650 (S.D. Cal. Mar. 16, 2020) ............................................. 13

8

*AT & T Techs., Inc. v. Commc'ns Workers of Am*.,

9

475 U.S. 643 (1986) .................................................................................... 22

10

*Attia v. Oura Ring, Inc*.,

11

2024 U.S. Dist. LEXIS 59906 (N.D. Cal. Apr. 1, 2024) ............................ 22

12

*Bazemore v. Jefferson Capital Sys., LLC*,

13

827 F.3d 1325 (11th Cir. 2016) ................................................................... 11

14

*Belyea v. GreenSky, Inc*.,

15

2020 WL 3618959 (N.D. Cal. July 2, 2020)......................................... 10, 17

16

*Berkson v. Gogo LLC*,

17

97 F. Supp. 3d 359 (E.D.N.Y. 2015) ........................................................... 16

18

*Berman v. Freedom Fin. Network, LLC*,

19

2018 WL 2865561 (N.D. Cal. June 11, 2018) .............................................. 8

20

*Berman v. Freedom Fin. Network, LLC*,

21

30 F.4th 849 (9th Cir. 2022) ..................................................................... 9, 15

22

*Brennan v. Opus Bank*,

23

796 F.3d 1125 (9th Cir. 2012) ..................................................................... 24

24

*Brooks v. IT Works Mktg*.,

25

2022 WL 2079747 (E.D. Cal. June 9, 2022) ............................................... 15

26

*Burzdak v. Universal Screen Arts, Inc*.,

27

2021 WL 3621830 (N.D. Cal. Aug. 16, 2021) .............................................. 8

28

*Calzadillas v. Wonderful Co., LLC,*

    2019 U.S. Dist. LEXIS 92706 (E.D. Cal. June 3, 2019) ................................................................. 8

*Caremark, LLC v. Chickasaw Nation,*

    43 F.4th 1021 (9th Cir. 2022) ......................................................................................................... 22

*Coinmint, LLC v. DX Corr. Design, Inc.,*

    2023 U.S. Dist. LEXIS 235158 (N.D. Cal. Apr. 23, 2023) ....................................................... 5, 24

*Cullinane v. Uber Techs., Inc.,*

    893 F.3d 53 (1st Cir. 2018) ........................................................................................................... 16

*DalPoggetto v. Wirecard AG,*

    2020 WL 2374948 (C.D. Cal. Apr. 15, 2020) ............................................................................... 13

*Dohrmann v. Intuit, Inc.,*

    823 Fed. App'x 482 (9th Cir. 2020) ............................................................................................... 18

*Fabian v. Renovate Am., Inc.,*

    42 Cal. App. 5th 1062 (2019) .......................................................................................................... 9

*Faucett v. Move, Inc.,*

    2024 U.S. Dist. LEXIS 73094 (C.D. Cal. Apr. 18, 2024) ............................................................. 23

*Franklin v. Cmty. Reg'l Med. Ctr.,*

    998 F.3d 867 (9th Cir. 2021) ........................................................................................................... 4

*Garcia v. Pexco, LLC*

    11 Cal. App. 5th 782 (2017) ............................................................................................................ 6

*Goldman v. KPMG,*

    173 Cal. App. 4th 209 (2009) ...................................................................................................... 3, 6

*Goldman, Sachs & Co. v. City of Reno,*

    747 F.3d 73 (9th Cir. 2014) ........................................................................................................... 22

*Gonzalez v. Comenity Bank,*

    2019 WL 5596800 (E.D. Cal. Oct. 30, 2019) ............................................................................... 15

*Heitkoetter v. Domm*,

    2024 U.S. Dist. LEXIS 15621 (E.D. Cal. Jan. 29, 2024)..................................................... 13

*Hill v. Quicken Loans Inc*.,

    2020 WL 5358394 (C.D. Cal. Aug. 5, 2020)........................................................... 10, 17

*In re Carrier IQ, Inc. Consumer Priv. Litig.*,

    2014 WL 1338474 (N.D. Cal. Mar. 28, 2014)............................................................. 3, 7

*In re Henson*,

    869 F.3d 1052 (9th Cir. 2017) ............................................................................. 3

*In re Pac. Fertility Ctr. Litig*.,

    814 Fed. App'x 206 (9th Cir. 2020) ...................................................................... 6

*In re Ring LLC Privacy Litig.*

    2021 U.S. Dist. LEXIS 118461 (C.D. Cal. June 24, 2021) ........................................... 18

*In re Uber Text Messaging*,

    2019 WL 2509337 (N.D. Cal. June 18, 2019) ......................................................... 8

*In re Zoom Video Commc'ns Priv. Litig*.,

    525 F. Supp. 3d 1017 (N.D. Cal. 2021) ................................................................. 9

*Ingalls v. Spotify USA*, Inc,

    2016 WL 6679561 (N.D. Cal. Nov. 14, 2016) .................................................. 23, 25

*Khoja v. Orexigen Therapeutics, Inc*.,

    899 F.3d 988 (9th Cir. 2018) ............................................................................ 13

*Knapke v. PeopleConnect, Inc*.,

    38 F.4th 824 (9th Cir. 2022) ............................................................................ 8

*Kramer v. Toyota Motor Corp*.,

    705 F.3d 1122 (9th Cir. 2013) ......................................................... 2, 5, 20, 22

*Laguna v. Coverall N. Am., Inc*.,

    2011 WL 3176469 (S.D. Cal. July 26, 2011) ....................................................... 8

*Lee v. Ticketmaster L.L.C.,*

    817 Fed. App'x 393 (9th Cir. 2020) ............................................................ 18

*Lindsay v. Shree Enterprise, LLC,*

    2021 WL 2711225 (E.D. Cal. July 1, 2021) ................................................ 13

*Long v. Provide Commerce, Inc.,*

    245 Cal. App. 4th 855 (2016) ..................................................................... 15

*MacClelland v. Cellco P'Ship,*

    2022 WL 2390997 (N.D. Cal. July 1, 2022) ............................................... 23

*Magill v. Wells Fargo Bank, N.A.,*

    2021 WL 6199649 (N.D. Cal. June 25, 2021) ............................................ 23

*Material Handling Sys., Inc. v. Rack Men Equip. Co.,*

    2024 U.S. Dist. LEXIS 12158 (E.D. Cal. Jan. 23, 2024) ........................... 13

*McKee v. Audible, Inc.,*

    2017 WL 4685039 (C.D. Cal. July 17, 2017) ............................................... 3

*Meadows v. Dickey's Barbecue Rests. Inc.,*

    144 F. Supp. 3d 1069 (N.D. Cal. 2015) ...................................................... 25

*Meyer v. Uber Techs., Inc.,*

    868 F.3d 66 (2d Cir. 2017) .......................................................................... 17

*Mousebelt Labs Pte. LTD v. Armstrong,*

    674 F. Supp. 3d 728 (N.D. Cal. 2023) .......................................................... 5

*Murphy v. DirecTV, Inc.,*

    724 F. 3d 1218 (9th Cir. 2013) ..................................................................... 7

*Newbill v. CVS Caremark, LLC,*

    2023 WL 4746120 (D. Ariz. July 25, 2023) ............................................... 14

*Nicosia v. Amazon.com, Inc.,*

    834 F.3d 220 (2d Cir. 2016) ........................................................................ 15

*Norcia v. Samsung Telecomms. Am., LLC,*

  845 F.3d 1279 (9th Cir. 2017) ..................................................... 22

*Olson v. Dias,*

  2010 WL 3787113 (N.D. Cal. Sept. 24, 2010) ............................... 15

*Patterson v. Jump Trading LLC,*

  2024 U.S. Dist. LEXIS 2073 (N.D. Cal. Jan. 4, 2024) ................... 23

*Peter v. DoorDash, Inc.,*

  445 F. Supp. 3d 580 (N.D. Cal. 2020) .......................................... 18

*Powell v. UHG I LLC,*

  2023 U.S. Dist. LEXIS 231197 (S.D. Cal. Dec. 23, 2023)............. 14

*Rajagopalan v. NoteWorld, LLC,*

  718 F. 3d 844 (9th Cir. 2013) ......................................................... 2

*Reid v. Tandym Grp., LLC,*

  2023 U.S. Dist. LEXIS 176664 (S.D.N.Y. Sept. 29, 2023) ........... 21

*Roberts v. Obelisk, Inc.,*

  2019 U.S. Dist. LEXIS 72065 (S.D. Cal. Apr. 29, 2019) ................. 5

*Ruiz v. Moss Bros. Auto Grp.,*

  232 Cal. App. 4th 836 (2014) ......................................................... 9

*S.S. v. Peloton Interactive, Inc.,*

  566 F. Supp. 3d 1019 (S.D. Cal. 2021)......................................... 18

*Sellers v. JustAnswer LLC,*

  73 Cal. App. 5th 444 (2021) ......................................................... 15

*Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.,*

  2017 WL 3503371 (S.D. Fla. Aug. 15, 2017)................................ 13

*Setty v. Shrinivas Sugandhalaya LLP,*

  3 F. 4th 1166 (9th Cir. 2021) ......................................................... 2

*Shansby v. Edrington*,

   2023 U.S. Dist. LEXIS 40149 (N.D. Cal. Mar. 9, 2023) ................................................ 24

*Snow v. Eventbrite, Inc.*,

   2020 WL 6135990 (N.D. Cal. Oct. 19, 2020)................................................................. 10

*Theodore v. Uber Technologies, Inc.*,

   442 F. Supp. 3d 433 (D. Mass. 2020) ............................................................................ 16

*Tomelleri v. Sunfrog, LLC*,

   2023 U.S. Dist. LEXIS 235852 (E.D. Mich. Oct. 30, 2023) .......................................... 13

*Tompkins v. 23andMe, Inc.*,

   2014 WL 2903752 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) ................... 23

*Villamar v. Clean Harbors Env't Servs.*,

   2022 WL 4465549 (C.D. Cal. Sept. 23, 2022) ................................................................. 4

*Wang v. Life Ins. Co. of the Sw.*,

   2019 WL 13201949 (N.D. Cal. Dec. 19, 2019) .............................................................. 15

*Ward v. Am. Airlines, Inc.*,

   2020 U.S. Dist. LEXIS 205771 (N.D. Tex. Oct. 16, 2020) ........................................... 14

*Weinhoffer v. Davie Shoring, Inc.*,

   23 F.4th 579 (5th Cir. 2022) ......................................................................................... 13

*Wiedenbeck v. United Educ. Inst.*,

   2015 WL 12743599 (C.D. Cal. Dec. 15, 2015) ............................................................... 3

*Wilson v. Huuuge, Inc.*,

   351 F. Supp. 3d 1308 (W.D. Wash. 2018)....................................................................... 9

*Wilson v. Huuuge, Inc.*,

   944 F. 3d 1212 (9th Cir. 2019) ....................................................................................... 8

*Wilson v. Redbox Automated Retail, LLC*,

   448 F. Supp. 3d 873 (N.D. Ill. 2020) ............................................................................. 16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Wynn Resorts v. Atlantic-Pacific Capital, Inc.,*

497 Fed. App'x 740 (9th Cir. 2012) ............................................................................... 24

**Rules**

Fed. R. Civ. Pr. 56.......................................................................................................... 15

Fed. R. Evid. 201(b)........................................................................................................ 13

Fed. R. Evid. 602 ............................................................................................................ 12

Fed. R. Evid. 901 ............................................................................................................ 12

## I.   INTRODUCTION

Defendants[1] attempt to compel Plaintiff Mark S. Young ("Plaintiff" or "Young") to arbitrate his claims against them based on an agreement they claim Young made with Exodus Movement ("Exodus"), a third party crypto platform. ECF No. 78 ("Motion"). There is no agreement between Plaintiff and any Defendant to arbitrate. Plaintiff asserts no claims against Exodus, nor is Exodus in any conceivable way involved in the sale or solicitation of Solana Securities that are the basis of Young's claims against Defendants. More fundamentally, Defendants produce no evidence that Plaintiff *agreed* to arbitrate with Exodus. Instead, Defendants point to pages they printed off the Internet and assert that Plaintiff somehow *must* have agreed with Exodus to arbitrate claims. Exs. A & B to McGill Decl.; ECF No. 78. Ninth Circuit law is clear that threshold issues of arbitrability are to be decided by the courts, and not arbitrators, where the party seeking to compel arbitration is a non-signatory and the arbitration clause at issue makes no reference whatsoever to third parties. This is true even when there is a "delegation" provision in an arbitration agreement. *See Patterson v. Jump Trading LLC*, 2024 U.S. Dist. LEXIS 2073, at *17-18 (N.D. Cal. Jan. 4, 2024) (arbitration agreement must specifically delegate the issue of thirty party enforcement rights; otherwise the Court decides).

Defendants utterly fail to meet their burden of showing that Plaintiff entered into any valid agreement with Exodus, and that, if he did, Defendants have the legal right to enforce the agreement. There are no allegations of "intertwined" wrongdoing with respect to Exodus and the Defendants, yet alone any contract with Exodus, or for that matter any allegations of wrongdoing against Exodus whatsoever. For these reasons, Defendants' Motion must be denied.

## II.   STATEMENT OF RELEVANT FACTS

On January 12, 2024, Plaintiff filed his Consolidated Amended Class Action Complaint ("CAC") against Defendants, asserting claims against, *inter alia*, Solana Labs, Multicoin, and Samani, but not Exodus, pursuant to federal and state securities laws. Nowhere in the CAC does Plaintiff make any allegations regarding Exodus. ECF No. 68.

---

[1] Defendants are Solana Labs, Inc. ("Solana Labs"), Multicoin Capital Management LLC ("Multicoin"), and Kyle Samani ("Samani") (collectively, "Defendants").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION
No. 3:22-cv-03912-RFL
1

On April 11, 2024, contemporaneously with its Motions to Dismiss, Defendants filed this Motion, asking this Court to eliminate this Class Action in its entirety and send Plaintiff to arbitration. ECF No. 78. However, Defendants' motion is not based on any arbitration agreement it has entered with the Plaintiff, or any agreement with Exodus for that matter. Instead, Defendants seek to force Plaintiff into arbitration based on agreements it invites the Court to assume Plaintiff must have entered into with non-party Exodus and must have failed to opt out of, and to which Defendants are "non-signatories."

## III.    ARGUMENT

### A.    Defendants Have No Right to Enforce the Exodus Agreement.

As set forth below, there is no evidence that Plaintiff entered to an arbitration agreement with Exodus, and by its own terms the agreement only concerns disputes between Exodus and Plaintiff, but the Court need not reach these issues. Defendants have no right to enforce the Exodus agreement. Courts in the Ninth Circuit overwhelmingly refuse to apply equitable estoppel where non-signatory defendants seek to enforce an arbitration agreement against a signatory plaintiff. *See Rajagopalan v. NoteWorld, LLC*, 718 F. 3d 844, 847 (9th Cir. 2013) ("We have never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff, and we decline to expand the doctrine here."); *Setty v. Shrinivas Sugandhalaya LLP*, 3 F. 4th 1166, 1169 (9th Cir. 2021) (same). This case is no different. Defendants are non-signatories to the Exodus TOS and cannot enforce the arbitration provision based on the doctrine of equitable estoppel.

The doctrine of equitable estoppel may allow a non-signatory to enforce an arbitration agreement in only two circumstances: "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the non-signatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the non-signatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013). Neither of these circumstances is present here. Plaintiff's claims do not mention or concern the "terms"

of any agreement with Exodus, and there is no allegation of "interdependent" or "concerted" wrongdoing by Exodus here. Indeed, "equitable estoppel is inapplicable where a plaintiff's 'allegations reveal no claim of any violation of any duty, obligation, term or condition imposed by the [customer] agreements.'" *Id.* at 1230 (quoting *Goldman v. KPMG*, 173 Cal. App. 4th 209, 230 (2009)). In this case, the CAC alleges no such claim.

### 1. Plaintiff's Claims Against Defendants Do Not Rely on and Are Neither Intimately Founded in Nor Intertwined with the Exodus TOS.

Defendants' contention that the Plaintiff's claims fall under the first prong of the equitable estoppel theory fails, because the Plaintiff does not "attempt to seek any benefit from" the Exodus Agreement. *In re Henson*, 869 F.3d 1052, 1061 (9th Cir. 2017). Equitable estoppel is only applicable to signatories who "sought to claim the benefit of the contract," such as those who "sued under the contract." *McKee v. Audible, Inc.*, 2017 WL 4685039, at *14 (C.D. Cal. July 17, 2017); *Aliff v. Vervent, Inc.*, 2020 WL 5709197, at *9 (S.D. Cal. Sept. 24, 2020), *aff'd*, 2021 WL 5985584 (9th Cir. Dec. 17, 2021). Where plaintiffs' claims "are not . . . founded upon and do not arise out of the contract[]" but instead are based on "statutory rights not dependent upon the terms of those contracts," equitable estoppel does not apply. *In re Carrier IQ, Inc. Consumer Priv. Litig.*, 2014 WL 1338474, at *7 (N.D. Cal. Mar. 28, 2014).

Here, none of Plaintiff's claims arise out of the Exodus TOS, or any other contract. Rather, each of their claims are statutory and are directly based on Defendants' violation of federal and state securities laws by promoting and selling unregistered securities. Courts have repeatedly refused to apply equitable estoppel in such circumstances. *See Carrier*, 2014 WL 1338474, at *8 (rejecting defendants' argument plaintiffs have to rely on the agreements to show lack of consent because "it is Defendants who are invoking the agreements to disprove Plaintiffs' factual assertions"); *Wiedenbeck v. United Educ. Inst.*, 2015 WL 12743599, at *4 (C.D. Cal. Dec. 15, 2015) (explaining that when plaintiff "is not arguing that the [terms of use] (or any related contract) is a source of [defendant's] liability," defendant cannot invoke equitable estoppel simply "by raising the contract as a defense.").

In *Aliff*, the court refused to apply equitable estoppel where plaintiffs "could have been defrauded by the alleged racketeering scheme even in the absence of signing [the agreements]," finding that plaintiffs' claim "[was] not necessarily founded in the underlying obligations of the [agreements]." 2020 WL 5709197, at *9. Here, Plaintiff's claims are not founded in the Exodus TOS. Each count in the CAC is based directly on Defendants' unregistered sale of cryptocurrency, not on a breach of Exodus's TOS or any other aspect of the Agreement. Defendants have not shown that Plaintiff's claims are intimately founded in and intertwined with the Exodus TOS.

Defendants' authorities as they are inapplicable to the facts alleged here. *Franklin v. Cmty. Reg'l Med. Ctr.*, for example, involves invocation of an arbitration agreement by defendant and non-signatory hospital for wage and hour claims brought by a nurse who was assigned to the hospital by the signatory staffing agency. 998 F.3d 867, 873-74 (9th Cir. 2021). The court found that plaintiff's claims against the hospital were "intimately intertwined" with her employment contract which the staffing agency, which provided that the staffing agency, and not the hospital, would reimburse the plaintiff for missed meal and break periods. *Id.* at 875-76. Such an "intimately intertwined" employment relationship clearly does not exist here. Defendants' reliance on *Herrera v. Cathay Pac. Airways Ltd.* is similarly misplaced, as courts permit non-signatories to enforce arbitration agreements to the extent the non-signatory is an *agent* of the signatory to the arbitration agreement. In *Cathay*, accordingly,  a non-signatory vendor who sells discount airline tickets on behalf of a signatory airline is an *agent* of the airline for which it sells tickets, but no such agency agreement between Defendatns and Exodus conceivably exists. Here, the same is not true, as Defendants are hard-pressed to assert that Exodus is their agent, or that they are agents of Exodus. For that reason, *Villamar v. Clean Harbors Env't Servs.*, 2022 WL 4465549, at *2 (C.D. Cal. Sept. 23, 2022) is inapposite. *See id.* ("a nonsignatory sued as an agent of a signatory may enforce an arbitration agreement").

Defendants' citation to *Mousebelt Labs Pte. LTD v. Armstrong* is not only factually inapposite, but the court expressly states that equitable estoppel allows "a nonsignatory to a written agreement containing an arbitration clause to compel arbitration where a signatory to the written agreement must rely on the terms of that agreement in asserting its claims against the nonsignatory," and that "all of

MouseBelt's claims are predicated on allegations that [non-signatory] Defendants induced [signatory Patrick] Joyce to shirk and to eventually abdicate [signatory] Knowledgr's contractual obligations to MouseBelt. Those obligations existed only by virtue of the Agreements [which contain an arbitration clause], and the harm allegedly suffered by MouseBelt cannot be divorced from those obligations." 674 F. Supp. 3d 728, 735-36, 741 (N.D. Cal. 2023) Here, unlike in *Mousebelt*, Plaintiff's claims have nothing to do with any contractual agreement with Exodus. Plaintiff's claims for violations of Securities Laws neither stem from nor bear any relationship to the TOS with Exodus, a non-signatory.

In *Roberts v. Obelisk, Inc*., defendant and signatory Obelisk "manufacture[d] and [sold] cryptocurrency miners—specialized computers designed to solve complex mathematical problems known as cryptographic hash functions," which has nothing to do with the purchase or sale of actual cryptocurrency, contrary to Defendants' suggestion otherwise. 2019 U.S. Dist. LEXIS 72065, at *2 (S.D. Cal. Apr. 29, 2019). Plaintiff sued Obelisk's parent company, Nebulous, and its officers, Vorick and Herbert, who were non-signatories to plaintiff's pre-order agreement with Obelisk. The court stated that even if it were to allow plaintiffs to proceed separately with their claims against Nebulous, Vorick, and Herbert, plaintiffs would still need to "rely on the terms of the written agreement" in asserting those claims. *Kramer*, 705 F.3d at 1128. "Determining whether the pre-order constituted a sale of securities in violation of state law, for example, will require a factfinder to wade through the Terms and Conditions of the pre-order," and that all of plaintiffs' claims allege "substantially interdependent and concerted misconduct" between the signatory defendant, Obelisk, and the non-signatory defendants. *Id.* at *25. Again, Plaintiff in the instant action in no way relies on the Exodus TOS in asserting his claims, and does not allege substantially interdependent and asserted misconduct between signatory Exodus and the non-signatory Defendants here. In fact, he alleges no claims against Exodus at all.

As set forth below, *Coinmint, LLC v. DX Corr. Design, Inc*. is likewise distinguishable, as the non-signatory plaintiff initiated an arbitration pursuant to a valid arbitration clause with a non-party and subsequently sued seven related parties in state court. 2023 U.S. Dist. LEXIS 235158, at *3 (N.D. Cal. Apr. 23, 2023). Those seven parties filed a motion to stay the litigation pending arbitration,

1  arguing that the lawsuit was based on issues referrable to arbitration, or, in the alternative, that the

2  issue of arbitrability was committed to the arbitrator. *Id*. at *3-5.

3     Defendants' contention that "a plaintiff need not affirmatively plead that the claims rely on the

4  terms of the contract or that the contract existed at all for a court to deem those claims to be intertwined

5  with the underlying contract" (Motion at 13) is simply wrong. And Defendants' citation to the

6  unpublished non-binding decision, *In re Pac. Fertility Ctr. Litig.*, does not support this sweeping

7  claim. In *Pac. Fertility*, unlike in the instant action, the litigation concerned a central document, an

8  informed consent agreement ("ICA") with an arbitration clause, and plaintiffs' allegations concerning

9  their expectations about the service signatory Pacific Fertility Center provided—then imputed onto

10 non-signatory defendants Prelude and Pacific MSO, LLC—were exactly the terms and duties of the

11 informed consent agreement. 814 Fed. App'x 206, 209 (9th Cir. 2020). "Though Plaintiffs do not

12 mention the ICA, the claims they raise against Prelude and MSO are founded in and inextricably

13 intertwined with the terms  and obligations of the ICA." *Id*. Contrary to Defendants' assertions, a

14 binding contract to arbitrate not only must exist for estoppel to be found, but the plaintiff's claims

15 must arise out of it and assert rights under it. Again, the same is not true here, as Plaintiff's claims

16 have nothing to do with the Exodus Terms of Use and do not arise from it.

17     *Goldman v. KPMG, LLP*, relied on by Defendants, cuts against their position. There, the

18 California Court of Appeals *denies* all motions to compel arbitration, and the case supports the

19 proposition that for estoppel to apply, the claims must be "founded or bound up" in the contract with

20 an arbitration provision.  173 Cal. App. 4th 209, 233 (2009) ("Goldman and Haines are not relying in

21 any way on the operating agreements to make their claims against KPMG and Sidley, while at the

22 same avoiding the arbitration clauses of those agreements—and, at bottom, that is the only basis upon

23 which they may be equitably estopped from refusing to arbitrate when they have not agreed to do so.")

24     *Garcia v. Pexco, LLC*, is another factually inapposite wage and hour case, wherein plaintiff

25 Garcia alleges that non-signatory Pexco, LLC and signatory Real Time were his joint employers. 11

26 Cal. App. 5th 782, 787-88 (2017). The court held:

27

28

1
2
3
4

> Garcia does not distinguish between Real Time and Pexco in any way. All of Garcia's claims are based on the same facts alleged against Real Time. Garcia cannot attempt to link Pexco to Real Time to hold it liable for alleged wage and hour claims, while at the same time arguing the arbitration provision only applies to Real Time and not Pexco. Garcia agreed to arbitrate his wage and hour claims against his employer, and Garcia alleges Pexco and Real Time were his joint employers.

5
6
7

*Id.* Again, these facts, and the court's reasoning for that matter, have nothing whatsoever to do with the facts or claims in the instant action, and the case should be disregarded.

8
9

### 2. Defendants' Misconduct is Neither Interdependent nor Intimately Connected with the Exodus TOS.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Defendants have also failed to show that equitable estoppel applies under the "interdependent conduct" prong of the required analysis. The indispensable requirement for equitable estoppel "is that the claims the plaintiff asserts . . . are dependent on or inextricably bound up with the contractual obligations." *Murphy v. DirecTV, Inc.*, 724 F. 3d 1218, 1232 (9th Cir. 2013). As discussed above, the Plaintiff's claims against Defendants do not rely on, and thus cannot be, "inextricably bound with" the terms of the Exodus TOS. Equitable estoppel simply cannot apply under this prong. This prong is also inapplicable for the independent reason that Plaintiff's claims against Defendants are not interdependent with any claims against Exodus. Plaintiff's claims here are not predicated on allegations that Exodus colluded or otherwise acted in concert with Defendants. *See Carrier*, 2014 WL 1338474, at *11. Exodus could have been entirely unaware of Defendants' unlawful promotion and sale of unregistered Solana Securities, and Defendants would still be liable to Plaintiff under their claims as pled in the CAC. "Equitable estoppel is a doctrine that precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Id.* at *5. While Defendants argue that the doctrine should be applied because Exodus was the means by which Plaintiff purchased the unregistered securities, Defendants have utterly failed to show that Plaintiff is claiming any benefits from that agreement. Accordingly, Defendants' equitable estoppel argument is groundless and the motion should be denied.

27
28

Under the heading of equitable estoppel, Defendants argue, in footnotes no less, for choice-of-law provisions and request discovery on the issue of arbitrability. The Exodus TOS do not govern

1  choice of law principles for the same reasons Plaintiff argues, throughout this Opposition, that the

2  arbitration clause in the Exodus TOS is inapplicable. Further, Defendants should be barred from taking

3  discovery on arbitrability given that Defendants have already attached the TOS to the McGill

4  Declaration. *Laguna v. Coverall N. Am., Inc*., 2011 WL 3176469, at *8 (S.D. Cal. July 26, 2011)

5  (denying request for arbitration-related discovery where defendants "produced the arbitration clauses

6  for each named Plaintiff that is currently subject to a motion to compel arbitration").  Defendants'

7  citation to *Knapke v. PeopleConnect, Inc*., 38 F.4th 824, 833 (9th Cir. 2022) is unavailing because that

8  case involved limited discovery on whether the plaintiffs expressly allowed their respective lawyers

9  to sign arbitration agreements as part of general research. That issue is not present in the instant action.

10  Defendants citation to *Calzadillas v. Wonderful Co., LLC* is likewise inapposite, as the court in that

11  case granted leave "to conduct discovery limited to that necessary to address the question of whether

12  defendant is an intended third-party beneficiary of the Agreement," a factual scenario which is not

13  present in the instant action. 2019 U.S. Dist. LEXIS 92706, at *33 (E.D. Cal. June 3, 2019).

14  **B.    Defendants Fail to Meet Their Burden of Showing An Enforceable Arbitration**
15  **Agreement.**

16  **1.    Defendants Provide No Evidence of An Accepted Agreement By Young.**

17  The Federal Arbitration Act "does not govern [the] question of contract formation." *Burzdak*

18  *v. Universal Screen Arts, Inc*., 2021 WL 3621830, at *3 (N.D. Cal. Aug. 16, 2021). To compel

19  arbitration Defendants "must prove the existence of a valid agreement by a preponderance of the

20  evidence." *Wilson v. Huuuge, Inc*., 944 F. 3d 1212, 1219 (9th Cir. 2019). The Court may compel

21  arbitration "[o]nly when there is no genuine issue of fact concerning the formation of the agreement."

22  *In re Uber Text Messaging*, 2019 WL 2509337, at *5 (N.D. Cal. June 18, 2019) (citation omitted)

23  (party opposing arbitration entitled to "benefit of all reasonable doubts and inferences" and courts may

24  find existence of arbitration agreements as matter of law only where no genuine issue of fact

25  concerning "formation of the agreement"); *see also Berman v. Freedom Fin. Network, LLC*, 2018 WL

26  2865561, at *4 (N.D. Cal. June 11, 2018) (denying motion to compel where movant failed to show

27  "absence of a genuine issue of fact").

28

Defendants submit no evidence, for example, that Plaintiff signed (electronically or otherwise) the Terms, agreed to the Terms, or that Exodus provided any notice of the Terms to Plaintiff. Courts deny motions to compel arbitration where, "[b]y not providing any specific details about the circumstances surrounding the Contract's execution, [a Declarant] offered little more than a bare statement that [Plaintiff] 'entered into' the Contract without offering any facts to support that assertion." *Fabian v. Renovate Am., Inc*., 42 Cal. App. 5th 1062, 1070 (2019); *accord Ruiz v. Moss Bros. Auto Grp*., 232 Cal. App. 4th 836, 844 (2014); *see also In re Zoom Video Commc'ns Priv. Litig*., 525 F. Supp. 3d 1017, 1041-42 (N.D. Cal. 2021) (holding that Zoom failed to show it had an express contract with plaintiff because its "conclusory paragraph" that "whenever an individual chooses to register for a Zoom account, they are presented with the Terms of Service on their device and asked to click 'Confirm'" lacked "detailed facts and any supporting evidence").

First, Defendants "had the burden to present evidence of actual notice" in connection with their motion to compel, and as the website operator, Exodus "undoubtedly had at least some information probative of actual notice in its control, but it offered nothing on the actual notice issue." *Wilson v. Huuuge, Inc*., 351 F. Supp. 3d 1308, 1320 (W.D. Wash. 2018). In fact, "Defendants did not contend, in their motion to compel arbitration, that [Plaintiff] had actual knowledge of an agreement to arbitrate." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022) (emphasis added). Accordingly, "actual knowledge is not at issue" here, since Defendants "do[ ] not present any evidence of [Plaintiff's] actual knowledge." *Wilson*, 351 F. Supp. 3d at 1314 (argument that a consumer was "likely" to have viewed website terms is "speculation [and] is not enough to prove actual knowledge"), *aff'd*, 944 F.3d 1212 (9th Cir. 2019).

Second, "[u]nless the website operator can show that a consumer has actual knowledge of the agreement, an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856. Inquiry notice is a "fact-bound area," and whether "notice is sufficiently conspicuous will turn on the transactional

1   context, the notice's size relative to other text on the site, the notice's proximity to the relevant button

2   or box the user must click to complete the transaction or register for the service, and whether the

3   notice's hyperlinks are readily identifiable" with the court considering "all of these factors together."

4   *Id.* at 868 (Baker, J., concurring). And fact-bound, certain forms of notice, such as "browserwrap"

5   agreements, are "unenforceable *per se*." *Id.* Defendants present no facts regarding how notice of the

6   Terms was provided to Plaintiff, or even if notice was ever provided at all. *Id.* Defendants fail to meet

7   their burden to show an agreement, let alone an agreement to arbitrate or agreement to delegate the

8   issue of arbitrability. The Court should deny their motion to compel on that threshold basis.

9       There is no evidence that the Exodus website provided Plaintiff with either actual or

10  constructive notice sufficient to bind him to the arbitration provision. On the Exodus website, the user

11  is not required to confirm that he or she actually read the TOS prior to downloading Exodus. *See Snow*

12  *v. Eventbrite, Inc*., 2020 WL 6135990, at *1 (N.D. Cal. Oct. 19, 2020) (denying defendant's motion

13  to compel arbitration on the grounds that it could not meet its burden that the plaintiffs assented to the

14  terms of service where it failed to establish a clear chain of evidence showing the exact interface

15  plaintiff saw).

16      Because Defendants have failed to present any probative evidence demonstrating that Plaintiff

17  actually agreed to arbitrate against Exodus and did not opt out, Defendants' attempt to compel Plaintiff

18  to arbitrate fails before even reaching the question of whether the terms of the agreement cover third

19  parties. After all, Defendants have submitted no records, screenshots, time records, or any other

20  evidence to indicate how and when Plaintiff "clicked the relevant buttons" that would signal them

21  "agreeing to arbitration" with Exodus through the website. *Hill v. Quicken Loans Inc*., 2020 WL

22  5358394, at *5 (C.D. Cal. Aug. 5, 2020) (denying motion to compel arbitration where defendant could

23  not show with probative evidence how user would have agreed); *see also Belyea v. GreenSky, Inc*.,

24  2020 WL 3618959, at *7 (N.D. Cal. July 2, 2020) (denying motion to compel arbitration where

25  defendant presented no evidence or records reflecting plaintiff "received or reviewed" terms of

26  agreement, including arbitration provision, and rejecting assertions of defendant's declarant that only

27

28

included "general statement[s]" and did not include supporting "evidence as to who sent the[] documents, when they were sent, and how they were sent and received.").

Here, all Defendants have provided to establish that the Plaintiff agreed to arbitrate are Exodus TOS dated July 1, 2021 and generic screenshots dated August 19, 2021 which provide that by "downloading" Exodus, one agrees to the TOS. In the case of the Exodus TOS, there is nothing to support a finding by a preponderance of the evidence that the Plaintiff assented to arbitration. Courts have rejected exactly this type of speculation. *See Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333-34 (11th Cir. 2016) ("JSC provides no competent evidence that an arbitration agreement ever was sent to plaintiff. Nor does JSC provide evidence that the terms it seeks to enforce were contained in the form of any agreement that 'would have been sent' to Ms. Bazemore. At best, JSC's statement that 'a form' of the arbitration agreement attached to its motion — a form of unknown terms of which it concededly has no copy — 'would have been sent' to plaintiff is no more than a 'mere scintilla of evidence' in support of its position, insufficient to create a genuine dispute of material fact."). The facts of *Bazemore* ring remarkably true here and demonstrate, without any doubt, that Defendants lack even a scintilla of evidence that Plaintiff agreed to arbitrate anything with anybody.

Similarly, there is nothing in the McGill Declaration about the Plaintiff himself, much less what Plaintiff saw, clicked on, or chose as he navigated the Exodus site. Instead, the McGill Declaration indicates generic records reviewed and processes that would have been in place as of specific times Exodus users purportedly visited the website. Far from being probative of Defendants' claim that Plaintiff agreed to arbitrate, Defendants' exhibits only serve to underline the complete lack of evidence they have provided to meet their burden. There are simply no documents or statements from persons with access to contemporaneous records to support a finding that Plaintiff ever assented to arbitration. Thus, Defendants lack sufficient evidence to meet their burden to prove that Plaintiff agreed to forego his litigation rights and instead arbitrate any hypothetical claims against Defendants.

### 2. Defendants Submit Inadmissible Evidence and an Inappropriate Request for Judicial Notice in Support of Their Motion to Compel.

In support of its Motion, Defendants attach unauthenticated screenshots of Exodus as exhibits to the Declaration of David H. McGill ("McGill Declaration"), a partner at a law firm who has absolutely no personal knowledge concerning the Exodus crypto platform, the business it conducts, or the events which occurred when Plaintiff used Exodus, in direct transgression of Federal Rule of Evidence 602. The McGill Declaration also inappropriately provides the following:

- In violation of Federal Rule of Evidence 901, an unauthenticated link to an article purportedly from the Exodus crypto platform regarding "getting started" with Exodus. McGill Decl., ¶ 2.

- In violation of Federal Rule of Evidence 901, an unauthenticated Exodus screen shot allegedly dated August 21, 2021, which was purportedly obtained from the Wayback Machine, which is not judicially noticeable,  as well as several other unauthenticated screen shots purportedly obtained from the same. McGill Decl., ¶¶ 3-8 & Ex. A.

- In violation of Federal Rule of Evidence 901, an unauthenticated copy of the alleged "Terms of Service," purportedly obtained from the Wayback Machine, which is not judicially noticeable, with a purported date of July 1, 2021. McGill Decl., ¶ 9, Ex. B.

Nowhere in these exhibits is the Plaintiff's name, much less any admissible evidence showing Plaintiff either agreed to any arbitration agreement or that he did not opt out of any arbitration agreement. Defendants provide no information as to when Plaintiff purportedly downloaded Exodus, as he could have downloaded well before he purchased Solana Securities. Defendants do not know whether Plaintiff used an iPhone or Android when using Exodus. Defendants present no evidence of whether Plaintiff had a wallet or not when he purchased Solana Securities. Defendants provide no admissible evidence concerning the actual TOS that were in effect at the time Plaintiff downloaded Exodus. Defendants provide no admissible evidence concerning the actual TOS that were in effect at the time Plaintiff purchased Solana Securities. Defendants present no evidence, admissible or otherwise, demonstrating that Plaintiff saw the link to the TOS, to the extent one existed at the time. Defendants provide no evidence demonstrating that Plaintiff read the TOS, much less evidence that he agreed to them. In sum, Defendants present absolutely no facts surrounding Plaintiff's actual use

of Exodus or the Exodus TOS. Instead, the entirety of Defendants' Motion to Compel rests on mere assumptions set forth by an individual lacking personal knowledge, inadmissible evidence, and inappropriate requests for judicial notice.

Courts have recently expressed concern regarding the practice of defendants using judicial notice to inject factual disputes at the motion to dismiss stage. One of the leading cases on this topic is the Ninth Circuit's decision in *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998  (9th Cir. 2018). In *Khoja*, the Ninth Circuit observed a "concerning pattern" wherein defendants use judicial notice "improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Id.* at 998. The Court must therefore be "mindful of the risk that the judicial notice rule can lead to the consideration of extrinsic evidence to resolve factual disputes, which is not proper at the pleading stage." *Arellano v. Santos*, 2020 WL 1275650, at *3 (S.D. Cal. Mar. 16, 2020). Because of this risk, courts must closely examine defendants' requests for judicial notice. *See, e.g., DalPoggetto v. Wirecard AG*, 2020 WL 2374948, at *2 (C.D. Cal. Apr. 15, 2020).

Indeed, and contrary to Defendants' cited authority, many courts, including courts within the Ninth Circuit, have refused to take judicial notice of the Wayback Machine. *Material Handling Sys., Inc. v. Rack Men Equip. Co*., 2024 U.S. Dist. LEXIS 12158, at *6 (E.D. Cal. Jan. 23, 2024) ("the court cannot conclude at this time that the contents of [Wayback Machine] records are "facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" under Fed. R. Evid. 201(b)); *Heitkoetter v. Domm*, 2024 U.S. Dist. LEXIS 15621, at *10-11 (E.D. Cal. Jan. 29, 2024) ("this [Wayback Machine] screenshot dates from May 2012 and the Court cannot conclude that the contents of this web page represent information that was in the public realm at the time or are 'facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'"); *Lindsay v. Shree Enterprise, LLC*, 2021 WL 2711225, at *3 n.3 (E.D. Cal. July 1, 2021) (declining judicial notice of Wayback Machine in connection with a motion to dismiss); *Tomelleri v. Sunfrog, LLC*, 2023 U.S. Dist. LEXIS 235852, at *17 n.4 (E.D. Mich. Oct. 30, 2023) ("Other courts have found materials from the Wayback Machine inappropriate for the taking of judicial notice, and have held that archives from the Wayback Machine may only be considered if they

are mentioned in the complaint, central to the plaintiff's claims, and authenticated. *E.g., Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 583-84 (5th Cir. 2022); *Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc*., 2017 WL 3503371, at *7-8 (S.D. Fla. Aug. 15, 2017)); *Ward v. Am. Airlines, Inc*., 2020 U.S. Dist. LEXIS 205771, at *4 (N.D. Tex. Oct. 16, 2020) ("the Court declines to take judicial notice of Hotwire's and Expedia's Terms of Use by way of the Internet Archive Wayback Machine").

The Wayback Machine's Terms of Service, themselves, provide as follows:

> Because the content of the Collections comes from around the world and from many different sectors, the Collections may contain information that might be deemed offensive, disturbing, pornographic, racist, sexist, bizarre, misleading, fraudulent, or otherwise objectionable. ***The Archive does not endorse or sponsor any content in the Collections, nor does it guarantee or warrant that the content available in the Collections is accurate, complete, noninfringing,*** or legally accessible in your jurisdiction, and you agree that you are solely responsible for abiding by all laws and regulations that may be applicable to the viewing of the content. In addition, the Collections are provided to you on an as-is and as-available basis. You agree that your use of the Site and the Collections is at your sole risk. You understand and agree that ***the Archive makes no warranty or representation regarding the accuracy, currency, completeness, reliability, or usefulness of the content in the Collections***, that the Site or the Collections will meet your requirements, that access to the Collections will be uninterrupted, timely, secure, or error free, or that defects, if any, will be corrected. We make no warranty of any kind, either express or implied.

*See* Internet Archive Wayback Machine, Internet Archive's Terms of Use, Privacy Policy, and Copyright Policy, dated Dec. 31, 2014, available at http://archive.org/about/terms.php (last visited April 17, 2024) (emphasis added).  Even the Wayback Machine itself advises ***twice*** in its Terms of Service that the information obtained therefrom may be inaccurate. *Id.* It further advises it may be incomplete or unreliable.  *Id.* Considering the foregoing, the Wayback Machine does not provide facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, as the Wayback Machine website itself provides.

In cases like this, where Defendants have submitted evidence outside the pleadings, including declarations and exhibits, the moving party's burden is governed by the standard for summary judgment. *i.e.*, the moving party must show there is no genuine issue of material fact and that it is

entitled to an order compelling arbitration as a matter of law. *Powell v. UHG I LLC*, 2023 U.S. Dist. LEXIS 231197, at \*4-5 (S.D. Cal. Dec. 23, 2023); *see also Newbill v. CVS Caremark, LLC*, 2023 WL 4746120, at \*2 (D. Ariz. July 25, 2023) (considering motion to compel arbitration under summary judgment standard where both parties submitted matters outside the pleadings, including declarations and exhibits). *See also Gonzalez v. Comenity Bank*, 2019 WL 5596800, at \*4 (E.D. Cal. Oct. 30, 2019) ("On a motion to compel arbitration under the FAA, courts apply a standard similar to the summary judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure."); *Wang v. Life Ins. Co. of the Sw.*, 2019 WL 13201949, at \*3 (N.D. Cal. Dec. 19, 2019) (same). Here, Defendants have failed to establish conclusively that Plaintiff agreed to arbitrate this matter with three non-signatory Defendants, considering the inadmissible evidence they submitted and their inappropriate request for judicial notice. *Olson v. Dias*, 2010 WL 3787113, at \*2 (N.D. Cal. Sept. 24, 2010) ("A conclusory self-serving declaration, without more, cannot satisfy defendant's burden in moving for summary judgment pursuant to Rule 56.") Thus, the Court should deny Defendants' Motion to Compel Arbitration.

### 3. The Purported Abitration Agreement Provided By Defendants Is Unenforceable.

Defendants move to compel individual arbitration of Plaintiff's claims based upon his alleged agreement to hyperlinked TOS which contained an arbitration agreement provision. Motion at 6. But courts have overwhelmingly found the presentation of hyperlinks and disclosures, even more obvious than those employed by Exodus, to be insufficiently conspicuous to provide reasonable notice. *See e.g., Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022) (concluding small hyperlink terms in black text located near relevant buttons were not reasonably conspicuous because "[s]imply underscoring words or phrases…will often be insufficient to alert a reasonably prudent user that a clickable link exists); *Brooks v. IT Works Mktg.*, 2022 WL 2079747, at \* 6 (E.D. Cal. June 9, 2022) (tiny grey hyperlink was "considerably deemphasized in relation to the other text on the webpage" and fell "woefully short" of constituting reasonable notice); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 480-81 (2021) (underlined hyperlinks were inconspicuous because they were "not set apart in any other way that may draw the attention of the consumer, such as with blue text or capital

letters"); *Long v. Provide Commerce, Inc*., 245 Cal. App. 4th 855, 865 (2016) (finding capitalized and underlined hyperlinks to terms of use in light green font situated among other text in comparative font size and style on the checkout flow page were "simply too inconspicuous to meet [the reasonable notice] standard"); *Nicosia v. Amazon.com, Inc*., 834 F.3d 220, 237 (2d Cir. 2016) (concluding the hyperlinked terms and disclaimer—"By placing your order, you agree to Amazon.com's…conditions of use"—was "not bold, capitalized, or conspicuous in light of the whole webpage" and therefore, did not constitute reasonable notice and foreclosed assent); *Cullinane v. Uber Techs., Inc*., 893 F.3d 53, 56, 62-63 (1st Cir. 2018) (concluding reference to "Terms of Service & Privacy Policy" displayed in bold, larger font in contrasting white print against black background and highlighted by a box surrounding it was not reasonably conspicuous); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 373-75, 404 (E.D.N.Y. 2015) (holding that the hyperlinked statements "By clicking 'Sign in' I agree to the terms of use and privacy policy," and "By clicking 'NEXT' I agree to the terms of use and privacy policy," which appeared in lowercase and small font located above "SIGN IN" and "NEXT" buttons on the sign-in and account creation pages, respectively, were inconspicuous because the terms were not "readily and obviously available" to plaintiff, the hyperlink was not in large font, all caps, or in bold, and the consumer was not required to scroll through those terms); *Theodore v. Uber Technologies, Inc*., 442 F. Supp. 3d 433, 440-42 (D. Mass. 2020) (although hyperlink to company's terms appeared in blue text against white background, it was not conspicuous enough to place the consumer on inquiry notice where some of the other terms on the page were the same color as the link); *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 885 (N.D. Ill. 2020) (grey text hyperlink against black background was insufficient contrast and thus, not reasonably conspicuous).

Here, Defendants maintain that the Exodus website design provided Plaintiff "adequate inquiry notice" of its TOS, and that Plaintiff assented to them when he downloaded Exodus. Defendants are wrong. When logging onto Exodus for download, the TOS are provided by hyperlink at the very bottom of the website in tiny, gray font of the Exodus homepage, which is cluttered with other media and flanked by a midnight blue and black background. *See, e.g.*, https://www.exodus.com/download/. Second, Defendants do not specify whether Plaintiff "downloaded" the Exodus application on an

iPhone or Android, and whether the processes are different between phones. If a user already has a wallet on an iPhone, for example, Exodus does not require you to agree to the TOS prior to downloading the App—it simply takes you to the Exodus homepage and provides that you agree to the TOS at the bottom of the App, *without* hyperlinking the TOS or asking you to click the hyperlink as a condition precedent to downloading. On the Android phone, the Exodus App does not require a user to agree to the TOS prior. Instead, in tiny gray font at the bottom of the screen, the Exodus app states that by continuing, you agree to the TOS.

As discussed in further detail *infra* at § II.B, Defendants provide no evidence of when Plaintiff downloaded the Exodus crypto platform, as the TOS, or the process of reaching or assenting to them, could have been different at the time Plaintiff downloaded Exodus. Indeed, Defendants' entire position is based upon Defendants' mere assumptions from their improper use of the "Wayback Machine." *Hill v. Quicken Loans Inc*., 2020 WL 5358394, at *5 (C.D. Cal. Aug. 5, 2020) (denying motion to compel arbitration where defendant could not show with probative evidence how user would have agreed); *see also Belyea v. GreenSky, Inc*., 2020 WL 3618959, at *7 (N.D. Cal. July 2, 2020) (denying motion to compel arbitration where defendant presented no evidence or records reflecting plaintiff "received or reviewed" terms of agreement, including arbitration provision, and rejecting assertions of defendant's declarant that only included "general statement[s]" and did not include supporting "evidence as to who sent the[] documents, when they were sent, and how they were sent and received."). Defendants provide no details or evidence that Plaintiff assented to the TOS other than mere speculation of what *may* have happened based on when Defendants, and not Plaintiff himself, attempted to download Exodus. The truth is that Plaintiff was not asked to assent to the TOS in order to download the App as Defendants contend, and, even if he was (he was not), the TOS were hyperlinked by tiny gray text flanked against a midnight black background—hardly conspicuous much less overt.

Defendants' citations are unavailing and therefore inapplicable here because they do not involve non-signatories attempting to compel arbitration between a non-party company and a class action representative to the litigation. Moreover, the hyperlinks at issue in those cases were overt,

1   conspicuous, and better designed to advise an assenting party to his or her rights. For example,

2   Defendants' reliance on *Meyer v. Uber Techs., Inc*., a non-binding out-of-circuit case, is unhelpful to

3   Defendants' cause. 868 F.3d 66, 78 (2d Cir. 2017). *Berman*, a Ninth Circuit case, distinguishes *Meyer*,

4   explaining that:

> [a]n online notice must explicitly notify a user of the legal significance of the action
> she must take to enter into a contractual agreement. The notice did not do so here.
> Both webpages stated, 'I understand and agree to the Terms & Conditions,' but they
> did not indicate to the user what action would constitute assent to those terms and
> conditions. Likewise, the text of the button itself gave no indication that it would
> bind plaintiffs to a set of terms and conditions.

9   30 F.4th at 858. Defendants' reliance on *In re Ring LLC Privacy Litig*. is also misplaced, because

10  unlike in the instant action, Ring's terms of service required users *check a box* providing that they

11  agreed to those terms before they could sign up for the service. 2021 U.S. Dist. LEXIS 118461, at

12  *21-22 (C.D. Cal. June 24, 2021). And in *Peter v. DoorDash, Inc*., defendants had actual information

13  about how plaintiffs signed up to use the service, as well as conspicuous warnings: "'By tapping Sign

14  Up, Continue with Facebook, or Continue with Google, you agree to our Terms and Conditions and

15  Privacy Statement.' … The words 'Terms and Conditions' appeared in blue text and were hyperlinked

16  to the DoorDash Terms and Conditions in effect at the time." 445 F. Supp. 3d 580, 583 (N.D. Cal.

17  2020) (citations omitted). Similarly, and unlike the TOS in the instant action, in *S.S. v. Peloton*

18  *Interactive, Inc*., Peloton used a series of conspicuous screens which

> (1) present the user with instructions to read and agree to Peloton's Terms of
> Service, Privacy Policy and Membership Terms; (2) advise that these terms are also
> available at onepeloton.com with the phrases 'Terms of Service,' 'Privacy Policy,'
> and 'Membership Terms' called out in underline and hyperlinked to pages
> displaying complete versions of each document; and (3) require the user to click a
> button confirming that the user agrees to the Terms.

23  566 F. Supp. 3d 1019, 1027 (S.D. Cal. 2021). In both unpublished Ninth Circuit decisions cited by

24  Defendants—*Dohrmann v. Intuit, Inc*., 823 Fed. App'x 482, 484 (9th Cir. 2020) and *Lee v.*

25  *Ticketmaster L.L.C*., 817 Fed. App'x 393, 395 (9th Cir. 2020)—the hyperlinks were found to be

26  conspicuous where they were visually highlighted by the bright blue text, which was a different color

27

28

than the rest of the text on the screens. Here, the same is not true, as the Exodus TOS hyperlink is tiny and gray, located at the bottom of the screen, and flanked against a cluttered, black background.

### C.   The Plain Terms of the Exodus Agreement Limit Third Party Arbitration Rights.

When registering to use Exodus, Plaintiff and Exodus purportedly agreed that they would arbitrate certain disputes that might arise between them. It is undisputed that Defendants Solana Labs, Multicoin, and Samani were not parties to that alleged agreement and have never entered into any other arbitration agreement with Plaintiff.  Defendants nonetheless contend that they may invoke Plaintiff's alleged agreement with Exodus to compel arbitration of Plaintiff's claims against Defendants in this lawsuit. As an initial matter, Defendants do not know precisely when Plaintiff downloaded Exodus, or which version of the TOS Plaintiff purportedly agreed to, as discussed in further detail below. However, even according to the plain language of the arbitration provisions provided by Defendants, Plaintiff could not agree to arbitrate this matter.

Section 10.1 of the TOS provides as follows:

> 10.1. Applicability of Arbitration. ***You agree that any dispute or claim relating in any way to your access or use of the Site, Services, or Software, or to any aspect of your relationship with Exodus***, will be resolved by binding arbitration, rather than in court, except that (1) you may assert claims in small claims court if your claims qualify, so long as the matter remains in such court and advances only on an individual (non-class, non- representative) basis; and (2) you or Exodus may seek equitable relief in court for infringement or other misuse of intellectual property rights (such as trademarks, trade dress, domain names, trade secrets, copyrights, and patents).

Ex. B to McGill Decl. (emphasis added). The language in Section 10.1 is limited to the "relationship" between Exodus and Plaintiff, excluding by implication Plaintiff's claims with third parties.

In addition, Provision 10.3 of the TOS,[2] makes the exclusion of third party rights even more explicit. Defendants argue that "the arbitration agreement reflects 'clear and unmistakable' intent to defer adjudication of 'gateway issues' to the arbitrator." Motion at 8. To the contrary, Provision 10.3 clarifies that only the rights of "you and Exodus" can be resolved by the arbitrator:

---

[2] Again, Defendants provide no evidence of when Plaintiff downloaded Exodus, or which version of the TOS apply.

Authority of Arbitrator. The arbitrator, and not any federal, state or local court or agency will have exclusive authority to (a) determine the scope and enforceability of this Arbitration Agreement and (b) resolve any dispute related to the interpretation, applicability, enforceability or formation of this Arbitration Agreement including, but not limited to any claim that all or any part of this Arbitration Agreement is void or voidable.

The arbitration will decide the rights and responsibilities, if any, *of you and Exodus*. **The arbitration proceeding will not be consolidated with any other matters or joined with any other cases or parties**. The arbitrator will have the authority to grant motions dispositive of all or part of any claim. The arbitrator will have the authority to award monetary damages and to grant any non-monetary remedy or relief available to an individual under applicable law, the arbitral forum's rules, and the Agreement (including the Arbitration Agreement). The arbitrator will issue a written award and statement of decision describing the essential findings and conclusions on which the award is based, including the calculation of any damages awarded. The arbitrator has the same authority to award relief on an individual basis that a judge in a court of law would have. ***The award of the arbitrator is final and binding upon you and us.***

Ex. B to McGill Decl. (emphases added). Given the plain language of this provision, ***Exodus*** intended to assign questions of arbitrability *only* to matters **between Exodus and Plaintiff**. *Id.* This matter does not involve Exodus and Plaintiff—it does not involve Exodus at all. Moreover, the plain language of Provision 10.3 provides that the arbitration proceeding will not be "consolidated" or "joined" with any other "matters" or "cases," such as the instant case here, or "parties," such as Solana Labs, Multicoin, or Samani here. *Id.* This language itself is conclusive that other matters or parties, such as securities claims and other Defendants, may not be joined in an arbitration proceeding with Exodus.

Under binding Ninth Circuit precedent, the language in §§ 10.1 and 10.3 is insufficient to demonstrate the parties' intent to assign the question of whether a third party may enforce the parties' arbitration agreement to the arbitrator. In *Kramer v. Toyota Motor Corp.*, the Ninth Circuit considered an arbitration clause that assigned questions of arbitrability to the arbitrator but also stated, before doing so, that "[e]ither you or we may choose to have any dispute between you and us decided by arbitration." 705 F.3d at 1127. That language, the Ninth Circuit held, evidenced the parties' "intent to arbitrate arbitrability" with the other party to the arbitration agreement "***and no one else***." *Id.* (emphasis added). That reasoning applies here, given that the alleged agreement between Exodus and Plaintiff contains exclusionary language concerning other parties and other matters, and the fact that

the last sentence provides that "[t]he award of the arbitrator is final and binding upon **you and us**." Section 10.3 (emphasis added). Accordingly, this Court should deny Defendants' Motion.

It is likely that Plaintiff's purchases of Solana Securities are excluded from Exodus' TOS. The plain terms disclaim application to crypto asset transactions, deeming them "third party" transactions:

> Third-Party Properties.The Services may contain links to third-party websites and applications (collectively, 'Third-Party Properties'). When you click on a link to a Third-Party Property, we will not warn you that you have left the Services and are subject to the terms and conditions (including privacy policies) of another website or application. Exodus provides these Third-Party Properties only as a convenience and does not make any representations with respect to Third-Party Properties, or their products or services. You use Third-Party Properties at your own risk. You should review applicable terms andpolicies, including privacy and data gathering practices, of any Third-Party.

ECF No. 78-3 at § 5.

Purchases of Solana Securites are defined as a "third party property." Section 1.4 of the terms says: "1.4. Third-Party Services. The Services may incorporate, or may provide access to, applications or materials that are hosted by another party, including (i) crypto assets, such as Ethereum and Bitcoin…." *Id.* The terms further explain that by purchasing crytpo assets, users may be leaving the Exodus crypto platform, and some other terms provided by a third party could conceivably apply: "Third Party Services are provided to you, subject to the terms and conditions of the third party providers. To the extent Third Party Services incorporated into or linked to from the Services (*i.e.*, communications functionality) have terms that differ from these Terms, you may be required to agree to those terms in order to access the Third Party Service." *Id.* "We do not control the terms, policies, or performance of any third party, and are not responsible for any performance, or failure to perform, of any Third Party Services, including with respect to exchange rates, processing of transactions, and similar activities." *Id.*

This language used by Exodus is similar to a "negating clause," which explain to a user that certain uses of a platform are a netherworld where the platform disclaims the terms and conditions for the platform generally. *See Reid v. Tandym Grp., LLC*, 2023 U.S. Dist. LEXIS 176664, *29 (S.D.N.Y. Sept. 29, 2023) (rejecting arbitration where there was a "'negating clause,' stating that the 'Agreement

is intended to be for the exclusive benefit of the Parties hereto and shall not be construed to create any right or benefit to any other party whatsoever.' … H+H thus lacks standing to enforce the contract as a third-party beneficiary"). No stranger to the Exodus terms and conditions, such as Defendants here, could reasonably expect that crypto asset transactions would even be covered by the terms and conditions, yet alone that they would have the right under the terms and conditions to stand in the shoes of Exodus.

### D. The Issue of Arbitrability Cannot Be Delegated.

Generally, courts decide the issue of arbitrability "[u]nless the parties clearly and unmistakably provide otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Defendants argue that this Court should delegate the issue of arbitrability to an arbitrator because the arbitration provision in the TOS provides: "any dispute related to the interpretation, applicability, [or] enforceability" of the arbitration agreement—including whether Defendants can enforce it—must be decided by an arbitrator." Ex. B to McGill Decl. ¶ 10.3. However, when the party seeking to enforce arbitration is a non-signatory, the issue of arbitrability falls to the trial court because the non-signatory was not one of the contracting parties. *Kramer*, 705 F.3d at 1127 (9th Cir. 2013) (finding that absent "clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with non-signatories, the district court had the authority to decide whether the instant dispute is arbitrable").

"[E]ven when there is a valid delegation clause, 'the court determines whether a valid arbitration agreement exists' before referring the matter to an arbitrator." *Attia v. Oura Ring, Inc.*, 2024 U.S. Dist. LEXIS 59906, at *6-7 (N.D. Cal. Apr. 1, 2024); *see also Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022) ("[T]he Supreme Court clarified that contract-formation issues are always matters for judicial resolution" and "explained that the issues reserved to the courts for decision always include whether an arbitration agreement was formed, even in the presence of a delegation clause." (internal citations omitted) (emphasis in original))). The party seeking to compel arbitration bears the burden of proving by a preponderance of the evidence that there was such an agreement. *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017). Where the existence of an arbitration agreement encompassing the claim at bar is at issue,

the court applies "general state-law principles of contract interpretation," *without* a presumption in favor of arbitrability. *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (internal quotation omitted).

Defendants are non-signatories to the alleged Arbitration Agreement and seek to enforce the arbitration provision despite not being one of the original contracting parties. *See Faucett v. Move, Inc.*, 2024 U.S. Dist. LEXIS 73094, at *8-9 (C.D. Cal. Apr. 18, 2024) (because Move is "not a signatory to the Terms, we look to California contract law to determine whether Move can enforce the arbitration provision"). Moreover, no "clear and unmistakable evidence" exists showing that Plaintiff agreed to arbitrate arbitrability with non-signatories. *Brennan*, 796 F.3d at 1130; *MacClelland v. Cellco P'Ship,* 2022 WL 2390997, at *3 (N.D. Cal. July 1, 2022) (explaining the Ninth Circuit "expressly left open the question of whether [*Brennan*] applies in the context of unsophisticated parties"). Courts have consistently answered that open question to find no delegation by incorporation—"[e]very district court decision in our circuit to address the question since Brennan has held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party." *Ingalls v. Spotify USA*, Inc, 2016 WL 6679561, at *3 (N.D. Cal. Nov. 14, 2016) (emphasis added); *accord Magill v. Wells Fargo Bank, N.A*., 2021 WL 6199649 (N.D. Cal. June 25, 2021) ("Where at least one party is unsophisticated, judges in this district routinely find that the incorporation of the AAA rules is insufficient to establish a clear and unmistakable agreement to arbitrate arbitrability."); *Tompkins v. 23andMe, Inc*., 2014 WL 2903752, at *11 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) ("[I]ncorporation of the AAA rules does not necessarily amount to 'clear and unmistakable' evidence of delegation, particularly when the party asked to accept the agreement is a consumer."). Accordingly, Defendants' argument that incorporation of the JAMS Rules into the arbitration provision compels delegation of the issue of arbitrability is wrong.

In *Patterson v. Jump Trading LLC*, the Northern District recently addressed this precise issue, where non-signatory defendant Jump Trading, LLC attempted to argue that an arbitration clause delegated the question of arbitrability to the arbitrator. 2024 U.S. Dist. LEXIS 2073, at *17-18 (N.D.

Cal. Jan. 4, 2024). The court held that "Jump's position can prevail only if there is clear and unmistakable evidence that Mr. Tobias's agreement includes an agreement to arbitrate the question of whether a third party nonsignatory to the agreement like Jump is entitled to enforce the agreement." *Id.* at \*20. The court further held:

> Jump identifies no such evidence here. The arbitration clause contains no express reference to disputes with third parties like Jump, let alone to issues of arbitrability that might arise in connection with such disputes. To the contrary, the clause provides that '*you and we* both agree to resolve [any] potential dispute according to the [arbitration] process set forth' therein, defining you as Mr. Tobias and 'we' as TFL alone.

*Id.* at \*20-21 (emphasis in original). Like the defendants in Jump Trading, the Defendants here identify no evidence that the arbitration clause at issue references dipsutes with third parties like Solana Labs, Multicoin, or Samani. *See id.* To the contrary, the clause Defendants put at issue in the instant action contains the same exclusionary language contained by the clause in Jump Trading. *Id.*

Defendants' cited authorities do not involve attempts to enforce arbitration provisions (incorporating JAMS Rules) *by non-signatories.* In *Shansby v. Edrington*, 2023 U.S. Dist. LEXIS 40149, at \*4 (N.D. Cal. Mar. 9, 2023), Shansby was a signatory on the leading purchase agreement with an arbitration clause, even though he was a non-signatory on the distribution agreements, and equitable estoppel likewise applied because the contracts were interrelated. *Wynn Resorts v. Atlantic-Pacific Capital, Inc.* is a memorandum decision and is therefore not binding on this Court; moreover, *Wynn* interpreted New York contract law wherein the court held "defendants' claims not only relate to and touch matters covered by the agreement, they directly arise out of it." *Wynn Resorts v. Atlantic-Pacific Capital, Inc.*, 497 Fed. App'x 740, 743 (9th Cir. 2012). Defendants' citation to *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2012) fails to involve a non-signatory. *Coinmint, LLC v. DX Corr. Design, Inc.* is likewise distinguishable, as the non-signatory plaintiff initiated an arbitration pursuant to a valid arbitration clause with a non-party and subsequently sued seven related parties in state court. 2023 U.S. Dist. LEXIS 235158, at \*3 (N.D. Cal. Apr 23, 2023). Those seven parties filed a motion to stay the litigation pending arbitration, arguing that the lawsuit was based on issues referrable to arbitration, or else the issue of arbitrability is committed to the arbitrators. *Id.* at \*3-5.

Thus, despite Defendants' many citations to unavailing out-of-circuit case law, under Ninth Circuit and California law, the issue of arbitrability may not be delegated.

Decisions that have enforced delegation of arbitrability by incorporation of arbitration rules where both parties were not corporations were still "in the context of commercial, rather than consumer, agreements." *Ingalls*, 2016 WL 6679561, at *4. That is because "[t]o a large corporation (like Oracle) or a sophisticated attorney (like Brennan), it is reasonable to conclude that" incorporation of the AAA rules may evidence delegation, "[b]ut applied to an inexperienced individual, untrained in the law, such a conclusion is likely to be much less reasonable." *Meadows v. Dickey's Barbecue Rests. Inc.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015). Here, Exodus's TOS are a consumer contract. Here, Plaintiff is not a large corporation or trained in the law—he is a consumer "far less sophisticated than" Solana Labs, Multicoin, or Samani. *Meadows*, 144 F. Supp. 3d at 1078; *see also Ingalls*, 2016 WL 6679561, at *4 (incorporation of AAA rules was not evidence of delegation, given Defendants' "burden," where plaintiffs were "two consumers—a music teacher and an architect—who have not been shown to have any business or legal acumen").  Based upon the foregoing, this Court should deny Defendants' Motion to Compel Arbitration.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny non-signatory Defendants' Joint Motion to Compel Arbitration.

Dated: May 13, 2024                    Respectfully submitted,

                                       */s/ Matthew S. Weiler*
                                       Todd M. Schneider (SBN 158253)
                                       Matthew S. Weiler (SBN 236052)
                                       Sunny S. Sarkis (SBN 258073)
                                       **SCHNEIDER WALLACE**
                                       **COTTRELL KONECKY LLP**
                                       2000 Powell Street, Suite 1400
                                       Emeryville, California 94608
                                       Telephone: (415) 421-7100
                                       Email: tschneider@schneiderwallace.com
                                       Email: mweiler@schneiderwallace.com
                                       Email: ssarkis@schneiderwallace.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Jason H. Kim (SBN 220279)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
300 S. Grand Avenue, Suite 2700
Los Angeles, California 90071
Telephone: (415) 421-7100
Email: jkim@schneiderwallace.com

*Attorneys for Plaintiffs*