Todd M. Schneider (SBN 158253)
Matthew S. Weiler (SBN 236052)
Sunny S. Sarkis (SBN 258073)
**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
TSchneider@schneiderwallace.com
MWeiler@schneiderwallace.com
SSarkis@schneiderwallace.com

Jason H. Kim (SBN 220279)
**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**
300 S. Grand Ave., Suite 2700
Los Angeles, California 90071
Telephone: (415) 421-7100
JKim@schneiderwallace.com

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK YOUNG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOLANA LABS, INC.;<br>THE SOLANA FOUNDATION;<br>ANATOLY YAKOVENKO; MULTICOIN<br>CAPITAL MANAGEMENT LLC; KYLE<br>SAMANI,<br><br>Defendants. | Case No.  3:22-cv-03912-RFL<br><br>CLASS ACTION<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT FILED BY DEFENDANTS MULTICOIN CAPITAL MANAGEMENT LLC AND KYLE SAMANI**<br><br>JURY TRIAL DEMANDED |

1

**TABLE OF CONTENTS**

2  I.    INTRODUCTION ........................................................................................... 1

3  II.   FACTUAL BACKGROUND ......................................................................... 2

4  III.  LEGAL STANDARD ................................................................................... 4

5  IV.   ARGUMENT ................................................................................................ 5

6        A.    Plaintiff Adequately Alleges the Multicoin Defendants are Statutory Sellers................... 5

7        B.    The Multicoin Defendants Solicited Purchases of Solana Securities. ............................... 6

8        C.    The Multicoin Defendants Solicited Purchases of Solana Securities for Their Own
9              Financial Gain.......................................................................................... 10

10       D.    "Reliance" and "Causation" Are Not Required Elements Under Section 12(a)(1).......... 11

11       E.    The Multicoin Defendants' Additional Arguments Misconstrue Supreme Court
              Precedent and Congressional Intent................................................................. 13

12       F.    The Multicoin Defendants Fail to Show Plaintiff Was Uninjured. ................................ 14

13       G.    Plaintiff Adequately Pleads Control Person Liability Against Defendant Samani........... 15

14 V.    LEAVE TO AMEND .................................................................................. 19

15 VI.   CONCLUSION ........................................................................................... 19

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Cases**

3   *AE ex rel. Hernandez v. Cnty. of Tulare*,

4      666 F.3d 631 (9th Cir. 2012) ....................................................... 19

5   *Al-Kidd v. Ashcroft*,

6      580 F.3d 949 (9th Cir. 2009), *rev'd on other grounds*, 563 U.S. 731 ............................................. 5

7   *Arcell v. Google LLC*

8      2023 WL 8420896 (N.D. Cal. Dec. 4, 2023) ................................. 9

9   *Ashcroft v. Iqbal*,

10     556 U.S. 662 (2009) ..................................................................... 4

11  *Bell Atl. Corp. v. Twombly*,

12     550 U.S. 544 (2007) ..................................................................... 5

13  *Broam v. Bogan*,

14     320 F.3d 1023 (9th Cir. 2003) ..................................................... 5

15  *Brody v. Homestore, Inc.*,

16     2003 WL 22127108 (C.D. Cal. Aug. 8, 2003) .............................. 9

17  *Davy v. Paragon Coin*,

18     2021 U.S. Dist. LEXIS 137156 (N.D. Cal. Mar. 26, 2021) ........... 9

19  *Delta Mech., Inc. v. Garden City Group, Inc.*,

20     345 Fed. App'x 232 (9th Cir. 2009) ............................................ 5

21  *Eminent Capital, LLC v. Aspeon, Inc.*,

22     316 F.3d 1048 (9th Cir. 2003) ..................................................... 19

23  *Flynn v. Sientra, Inc.*,

24     2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016) ................ 16

25  *Foman v. Davis*,

26     371 U.S. 178 (1962) ..................................................................... 19

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Friel v. Dapper Labs, Inc.*,

   2023 WL 2162747 (S.D.N.Y. Feb. 22, 2023) ................................................................ 16

*Hollifield v. Resolute Capital P'ners Ltd., LLC*,

   2023 U.S. Dist. LEXIS 52362 (C.D. Cal. Feb. 14, 2023) ............................................... 10

*Houghton v. LeShner*,

   2023 U.S. Dist. LEXIS 188539 (N.D. Cal. Sept. 20, 2023) .............................. 7, 11, 12

*Howard v. Everex Sys.*,

   228 F.3d 1057 (9th Cir. 2000) ................................................................................. 15, 16

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*

   2012 WL 12893520 (C.D. Cal. Feb. 16, 2012) ............................................................. 14

*In re Immune Response Sec. Litig.*,

   375 F. Supp. 2d 983 (S.D. Cal. 2005) .......................................................................... 16

*In re Juniper Networks, Inc. Sec. Litig.*,

   542 F. Supp. 2d 1037 (N.D. Cal. 2008) ........................................................................ 18

*In re Kimberly Kardashian*,

   SEC No. 3-21197 (Oct. 3, 2022) ..................................................................................... 7

*In re Longfin Corp. Sec. Class Action Litig.*,

   2019 U.S. Dist. LEXIS 126209 (S.D.N.Y. July 29, 2019) ........................................... 11

*In re Longfin Corp. Sec. Class Action Litig.*,

   2019 WL 1569792 (S.D.N.Y. Apr. 11, 2019) ................................................................ 5

*In re Rigel Pharms., Inc. Sec. Litig.*,

   697 F.3d 869 (9th Cir. 2012) ........................................................................................ 16

*In re Tezos Sec. Litig.*

   2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ............................................................... 11

*In re Tezos Secs. Litig.*,

   2018 U.S. Dist. LEXIS 157247 ..................................................................................... 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re WorldCom, Inc. Sec. Litig.*,

   346 F. Supp. 2d 628 (S.D.N.Y. 2004) ........................................................................ 5

*Lane v. Page*,

   649 F. Supp. 2d 1256 (D.N.M. 2009) ...................................................................... 15

*Medehi v. View, Inc*

   WL 3592098 (N.D. Cal. May 22, 2023). .................................................................. 9

*Mendiondo v. Centinela Hosp. Med. Ctr.*,

   521 F.3d 1097 (9th Cir. 2008) ................................................................................. 5

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,

   96 F.3d 1151 (9th Cir. 1996) ................................................................................. 16

*Pino v. Cardone Cap., LLC*,

   55 F.4th 1253 (9th Cir. 2022) ......................................................................... 6, 7, 11

*Pinter v. Dahl*,

   486 U.S. 622 (1988) ..................................................................................... passim

*Risley v. Universal Navigation Inc.*,

   2023 WL 5609200 (S.D.N.Y. Aug. 29, 2023) ..................................................... 9, 11

*Ryder Int'l Corp. v. First Am. Nat'l Bank*,

   943 F.2d 1521 (11th Cir. 1991) ................................................................................ 6

*SEC v. LBRY, Inc.*,

   639 F. Supp. 3d 211 (D.N.H. 2022) ......................................................................... 7

*Slack Techs., LLC v. Pirani*,

   143 S. Ct. 1433 (2023) ........................................................................................... 13

*Slack Techs., LLC v. Pirani*,

   598 U.S. 759 (2023) ............................................................................................... 13

*Tooley v. Napolitano*,

   556 F.3d 836 (D.C. Cir. 2009) ................................................................................ 5

*Warth v. Seldin,*

    422 U.S. 490, 502 (1975) ........................................................................................... 12

*Welgus v. TriNet Grp., Inc.,*

    2017 WL 167708 (N.D. Cal. Jan. 17, 2017) ............................................................... 18

*Wells Fargo Mortg. Backed Certificates Litig.,*

    712 F. Supp. 2d 958 (N.D. Cal. 2010) ....................................................................... 18

*Wildes v. BitConnect Int'l PLC,*

    25 F.4th 1341 (11th Cir. 2022) ............................................................................ 6, 11

*Zakinov v. Ripple Labs, Inc.,*

    2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ......................................................... 12, 16

*Zakinov v. Ripple Labs, Inc.,*

    2023 U.S. Dist. LEXIS 113557 (N.D. Cal. June 30, 2023) .......................................... 12

**Statutes**

15 U.S.C. § 77o ............................................................................................................. 15

15 U.S.C. § 77o(a) ........................................................................................................ 15

15 U.S.C. § 77l(o) ......................................................................................................... 16

17 C.F.R. § 230.405 ..................................................................................................... 15

**Other Authorities**

Securities Act of 1933, Section 12(a)(1) ................................................................... passim

Securities Act of 1933, Section 12(a)(2) ....................................................................... 18

Securities Act of 1933, Section 15 ........................................................................... 15, 19

Securities Act of 1933, Section 17(b) .............................................................................. 8

**Rules**

Fed. R. Civ. P. 8(a) ..................................................................................................... 4, 16

Fed. R. Civ. P. 9(b) ................................................................................................... 16, 18

Fed. R. Civ. P. 12 ............................................................................................................. 5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Fed. R. Civ. P.  12(b)(6)...................................................................................................... 5

Fed. R. Civ. P.  15(a) ...................................................................................................... 19

Fed. R. Civ. P. 15(a)(2).................................................................................................. 19

1

## I.    INTRODUCTION

2         Plaintiff Mark S. Young ("Young" or "Plaintiff") demonstrates that Defendants Multicoin

3   Capital Management LLC ("Multicoin") and Kyle Samani ("Samani") (Samani and Multicoin are

4   collectively referred to herein as the "Multicoin Defendants") acted as statutory sellers of securities

5   under Sections 12(a)(1) and 15 of the Securities Act of 1933, through the solicitation of unregistered

6   securities. Defendants argue that Plaintiff's claims fail because the Multicoin Defendants never

7   solicited purchases of any Solana Securities to Plaintiff, but the Multicoin Defendants improperly

8   assert additional elements such as privity, reliance, and causation into a Section 12 claim. Similarly,

9   contrary to the Multicoin Defendants' assertions that they were simply offering information about

10  Solana, the Multicoin Defendants' statements on social media are explicit in their endorsement of

11  Solana Securities' potential to increase in value. In other cases involving promotion of crypto assets,

12  courts have held that a single suggestive social media post speaking to the potential for financial gain

13  suffices to state a claim for promotion. The Multicoin Defendants have made dozens of social media

14  posts touting Solana Securities as valuable investments.

15        The Multicoin Defendants were certainly motivated by financial gain when they touted the

16  long-term investment prospects of Solana Securities. On September 15, 2021, Samani boasted:

17  "Anyone who bought SOL in 2020 and held can afford to rent a Ferrari today." CAC, ¶ 97. Samani

18  cheered when the price of Solana Securities topped $200. *Id.* (tweeting, "'The world is healing' above

19  an image of the price of Solana Securities (up 6.1% to $212.22)); *see also id.* (Samani repeatedly

20  suggests that the value of a Solana Securities is $5,000, a claim he first made in May 2021). Samani

21  suggested that Solana Securities would surpass the market capitalization of bitcoin, which at the time

22  he made the claim in November 2021 had a market capitalization of over $1 trillion. *Id.*

23        The degree of the Multicoin Defendants' involvement in early Solana Securities offerings, and

24  their zealous commitment to endorsing the investment prospects of Solana Securities, makes the

25  Multicoin Defendants liable as "control persons" under Section 15 of the 1933 Act. Solana itself

26  thought of Multicoin "like a third co-founder" (CAC, ¶ 90) to Anatoly Yakovenko and Raj Gokal,

27  who co-founded Solana. The Multicoin Defendants argue that their relationship to Solana is passive

28

Plaintiff's Opposition to the Multicoin Defendants' Motion to Dismiss
Case No. 3:22-cv-03912-RFL

1

and that they played no role within either Solana Labs or Solana Foundation. Motion at 15-17. These contentions are at odds with Plaintiff's allegations, however. Solana Lab's co-founder credited the Multicoin Defendants with bringing "Solana to the attention of the broader ecosystem, galvanizing its extraordinary 2021." CAC, ¶ 90. In 2021, when Plaintiff and other class members purchased Solana Securities, prices for Solana Securities climbed to $220 before crashing to under $50 in 2022. *See* Ex. 2 to RJN. "Samani himself explained that his efforts were integral in getting Solana Labs through difficult times during the first two quarters of 2020, 'when Solana was both a) almost out of money b) irrelevant.'" *Id.* at ¶ 91. The Multicoin Defendants claimed to "own 10-figures worth" of Solana Securities as of November 2021. *Id.* at ¶ 92. For these reasons, as discussed in more detail below, the Court should deny the Multicoin Defendants' Motion.

## II.     FACTUAL BACKGROUND

In 2017, Solana Labs created the "Solana" "blockchain network upon which decentralized apps ('dApps') are built. Such decentralized apps include the development of non-fungible tokens ('NFTs') and decentralized finance ('DeFi') applications." CAC, ¶ 2[1]. The Solana block chain is the source of value from which the securities that are the heart of this litigation derive their value.

Defendant Multicoin Capital Management LLC ("Multicoin") is a limited liability corporation whose main offices are located in Austin, Texas. CAC, ¶ 19.  Multicoin has a presence in Los Angeles, California. *Id.* Multicoin's books and records are maintained in Mountain View, California, and in San Francisco. *Id.* Multicoin serves customers in California and has close ties to California-based Solana. *Id.* Defendant Kyle Samani is the Managing Partner of Multicoin. *Id.* at ¶ 20. Samani regularly travels to California to conduct business related to Multicoin's investments in California-based companies, such as Solana. *Id.* In April 2018, Samani was introduced to Defendant Anatoly Yakovenko, CEO of Solana Labs, during the development of a project called Loom. *Id.* at ¶ 87.

The Multicoin Defendants marketed and promoted Solana Securities since the earliest offerings. CAC, ¶¶ 49, 54, & 87. But Multicoin did not simply promote Solana Securities. Multicoin

---

[1] "CAC" refers to the Consolidated Amended Class Action Complaint filed by Plaintiff on January 12, 2024. ECF No. 68.

actually led Solana's $20 million Series A funding round in July 2019. *Id.* at ¶ 88. The Series A investors "received SOL tokens in exchange for their investment, not equity in Solana, Inc." *Id.* Around the time the Series A was announced, Multicoin published an article touting Solana's technology as a "profound change relative to other [block]chains," claiming that "[i]n Solana, validators never stop progressing. They always move forward independently, regardless of network conditions and consensus." *Id.*

Samani, through his personal Twitter account, aggressively promoted and solicited others to purchase Solana Securities. He first referenced Solana on Twitter on January 28, 2019, when he suggested Solana as an alternative to Ethereum. CAC, ¶ 96.

In 2019, Samani and Multicoin led a crucial early fundraising offering for Solana Securities. CAC, ¶ 89 n.16. Samani touted the investment value of the Solana blockchain: "Solana is the only chain that scales at Layer 1 while preserving architectural and political decentralization, ensuring that smart contracts retain the key properties of being composable and modular." *Id.*

Samani and Multicoin are enthusiastic promoters Solana investors. They tout the capacity of Solana Securities to grow in value—repeatedly announcing their purchases, claiming the price of Solana Securities would grow to $5000, predicting Solana Securities would surpass bitcoin in value, describing the size of their positions, and telling investors to "never sell." CAC, ¶ 97. As one publication reported:

> [Multicoin] *were pretty intimately involved in every major turning point, every major decision, every funding round that we had*, Solana co-founder Raj Gokal said of the firm. *Multicoin felt like a third co-founder to me and Anatoly*. Perhaps Multicoin's most impactful contribution was its orchestration of a partnership with Sam Bankman-Fried, who agreed to build a decentralized exchange on top of Solana. Not only did it bring Yakovenko's vision to life, but it brought Solana to the attention of the broader ecosystem, galvanizing its extraordinary 2021.[2]

---

[2] Mario Gabriele, Multicoin Capital: The Outsiders, GENERALIST (Mar. 20, 2022), https://www.readthegeneralist.com/briefing/multicoin-capital-1.  CAC, ¶ 90.

1   *Id.* at ¶ 90 (emphasis added). Samani himself explained that his efforts were "integral" in getting
2   Solana Labs through difficult times during the first two quarters of 2020, "when Solana was both a)
3   almost out of money b) irrelevant." *Id.* at ¶ 91.

4       In November 2021, Samani was asked on Twitter, "What % of SOL do you [and] Multicoin
5   own?" CAC, ¶ 97. He responded that "[the Multicoin Defendants] own 10-figures worth across our
6   various funds." *Id.*

7       Throughout 2021 and early 2022, the Multicoin Defendants have sold millions of dollars of
8   Solana Securities on retail investors such as Plaintiff. CAC, ¶ 93. To offload the Solana Securities,
9   the Multicoin Defendants used OTC trading desks to act as a broker for the sale of Solana
10  Securities. *Id.* at ¶ 94. These brokers sold the Solana Securities by receiving them from the Multicoin
11  Defendants and then selling the tokens through U.S.-based exchanges, such as Coinbase. *Id.* at ¶¶ 93-
12  95.

13  **III.   LEGAL STANDARD**

14      Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and
15  plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). As the
16  Supreme Court reaffirmed in *Ashcroft v. Iqbal*, "the pleading standard Rule 8 announces does not
17  require 'detailed factual allegations,'" though the complaint must offer more than just "a formulaic
18  recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead,
19  a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that
20  is plausible on its face." *Id.* (internal citations and quotation marks omitted). "A claim has facial
21  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable
22  inferences that the defendant is liable for the misconduct alleged." *Id.*

23      Despite Defendant's contentions otherwise, specific facts need not be pled. Rule 8, and
24  Supreme Court interpretation of it, require that Plaintiff's pleading "give the defendant fair notice of
25  what the claim is . . . and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
26  555 (2007) ("*Twombly*"); *see also Tooley v. Napolitano*, 556 F.3d 836, 839 (D.C. Cir.
27  2009) ("*Twombly* leaves the longstanding fundamentals of notice pleading intact"). Post *Iqbal* and

28

*Twombly*, the Ninth Circuit has clarified that granting a Rule 12 motion to dismiss is inappropriate where the fact in the "complaint and reasonable inferences therefrom are plausibly suggestive of a claim entitling [plaintiff] to relief." *Delta Mech., Inc. v. Garden City Group, Inc.*, 345 Fed. App'x 232, 233 (9th Cir. 2009).

When considering a Rule 12(b)(6) motion to dismiss, the Ninth Circuit has explained that the trial court still proceeds "accepting as true all facts alleged in the complaint and drawing all reasonable inferences in favor of the plaintiff." *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009), *rev'd on other grounds*, 563 U.S. 731. Dismissal is appropriate "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Courts have viewed with "disfavor" Rule 12(b)(6) motions because of the lesser role pleadings play in federal practice and the liberal policy regarding amendment to pleadings. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). Plaintiff's Section 12(a)(1) claim also has the benefit of a lower pleading standard since alleging scienter, reliance, or fraud is not required. *See In re Longfin Corp. Sec. Class Action Litig.*, 2019 WL 1569792, at *5 (S.D.N.Y. Apr. 11, 2019); *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 659 (S.D.N.Y. 2004).

## IV.   ARGUMENT[3]

### A.   Plaintiff Adequately Alleges the Multicoin Defendants are Statutory Sellers.

Under Section 12(a)(1) of the Securities Act, a defendant is a statutory seller if it (i) "passed title, or other interest in the security, to the buyer for value," or (ii) "successfully solicit[ed] the purchase [of a security], motivated at least in part by a desire to serve [its] own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 642, 647 (1988). Plaintiff has alleged solicitation under the second prong of *Pinter* and the Multicoin Defendants arguments to the contrary mischaracterize the applicable standard. Accordingly, the Court should deny the Multicoin Defendants' Motion to Dismiss.

---

[3] Plaintiff does not challenge Defendants' Motion insofar as it relates to his claims under Sections 25110 and 25503 of the California Corporations Code.

**B.     The Multicoin Defendants Solicited Purchases of Solana Securities.**

Solicitation is construed broadly under the *Pinter* test, and does not require privity, reliance, or causation. *See Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1258-59 (9th Cir. 2022) ("nothing in the Act indicates that mass communications, directed to multiple potential purchasers at once, fall outside the Act's protections"). "The Securities Act does not distinguish between individually targeted sales efforts and broadly disseminated pitches…" *Pino*, 55 F.4th at 1258. In *Pino*, the Ninth Circuit ruled that "to conclude that their social media communications fall outside the [Securities] Act's protections would be at odds with Congress's remedial goals." 55 F.4th at 1260.

Indeed, in *Pino v. Cardone Cap., LLC*, the Ninth Circuit expressly approved of the reasoning set forth by the Eleventh Circuit in *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341 (11th Cir. 2022), which explicitly provides that solicitation by social media is actionable under Section 12:

> The Eleventh Circuit recently held that videos posted publicly on YouTube and similar websites can constitute solicitation under § 12, even if the offering's promoters did not directly target the particular purchasers. *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341 (11th Cir. 2022). Specifically, in *Wildes*, the Eleventh Circuit considered "whether a person can solicit a purchase, within the meaning of the Securities Act, by promoting a security in a mass communication." *Id.* at 1345. The Eleventh Circuit concluded that, to qualify as solicitation under § 12, a person must "urge or persuade" another to buy a particular security, but those efforts at persuasion need not be personal or individualized. *Id.* at 1346 (quoting *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1531, 1534 (11th Cir. 1991)). In reaching its holding, the Eleventh Circuit observed that the Securities Act does not distinguish between individually targeted sales efforts and broadly disseminated pitches and noted that in early cases applying the Securities Act of 1933, "people understood solicitation to include communications made through diffuse, publicly available means—at the time, newspaper and radio advertisements." *Id.* at 1346.
>
> The Eleventh Circuit correctly recognized that nothing in § 12 expressly requires that solicitation must be direct or personal to a particular purchaser to trigger liability under the statute. *See id.* at 1345-46. Put differently, nothing in the Act indicates that mass communications, directed to multiple potential purchasers at once, fall outside the Act's protections.

*Pino*, 55 F.4th 1253, 1258 (9th Cir. 2022). The *Pino* court further stated:

> In fact, if anything, the advertisements at issue in this case—Instagram posts and YouTube videos—are the types of potentially injurious solicitations that are intended to command attention and persuade potential purchasers to invest in the

Plaintiff's Opposition to the Multicoin Defendants' Motion to Dismiss
Case No. 3:22-cv-03912-RFL

> Funds during the "most critical" first stage of a selling transaction, when the buyer becomes involved. *See Pinter*, 486 U.S. at 646-47. Pino fairly alleges that the nature of social media presents dangers that investors will be persuaded to purchase securities without full and fair information.

*Id.* at 1260.

Both courts and the SEC have found promoter liability based on social media posts similar to those of the Multicoin Defendants. *See, e.g., In re Kimberly Kardashian*, SEC No. 3-21197, at 2-3 (Oct. 3, 2022) ("*Kim K.*"). Extolling the earning potential of an instrument, even in a qualified way, can constitute promotion – so long as the general tone suggests an upside, the statement can be promotion. *SEC v. LBRY, Inc.*, 639 F. Supp. 3d 211, 218 (D.N.H. 2022). Even simply encouraging investors to hold onto a crypto asset can constitute promotion. *Id.* at 218-19, 221. One post can be enough. *Kim K.*, SEC No. 3-21197 (Oct. 3, 2022). Social media posts such as those by Samani are *exactly* the type of mass communications that constitute solicitation. *See Houghton v. LeShner*, 2023 U.S. Dist. LEXIS 188539, at *12-13 (N.D. Cal. Sept. 20, 2023) (citing *Pino*, 55 F.4th at 1253) (distinguishing the broader Ninth Circuit approach attaching promoter liability to mass communication). In *LBRY*, the court held that social media posts suggesting a crypto asset has the potential to grow in value, even if it needs "some tweaks" or, in its current form, was a "minimum proof-of concept" application with "no reason to buy," could be promotion if the overall message is one touting a financial upside from owning the crypto asset. 639 F. Supp. 3d at 217-19. Indeed, the *LBRY* court further found that encouraging investors to "hold onto [their LBC]" was also sufficient to constitute promotion. *Id.*

While promotional social media posts can be part of a broad media blitz, a single post may be enough to trigger promoter liability, albeit under a different section of the Securities Act. *See In re Kim Kardashian* ("*Kim K.*"), SEC No. 3-21197, 2022 SEC LEXIS 2649 (Oct. 3, 2022) ("Order Instituting Cease-and-Desist Proceedings Pursuant to Section 8A of the Securities Act of 1933, Making Findings, and Imposing a Cease-and-Desist Order"). In *Kim K.*, the SEC ruled that celebrity Kimberly Kardashian "promoted a crypto asset security on her Instagram" by putting a post on her Instagram story which stated: "THIS IS NOT FINANCIAL ADVICE BUT SHARING WHAT MY

1   FRIENDS JUST TOLD ME ABOUT THE ETHEREUM MAX TOKEN! A FEW MINUTS AGO
2   ETHEREUM MAX BURNED 400 TRILLION TOKENS – LITERALLY 50% OF THEIR ADMIN
3   WALLET GIVING BACK TO THE ENTIRE E-MAX COMMUNITY." *Id.* at *2-3. Her post ended
4   with seven tags: five hashtags, an "@" tag to the crypto asset, and a seventh hashtag "#AD" indicating
5   that her post was an advertisement. *Id.* at *3. The SEC found this seventh hashtag to be an insufficient
6   disclosure of her compensation for the promotion, ergo she violated Section 17(b) of the Securities
7   Act. *Id.*

8        The Multicoin Defendants solicited purchases of Solana Securities from Plaintiff and others
9   through Samani's tweets.[4] Samani is a managing partner of Multicoin.[5] Far more than touting the
10  general benefits of Solana Securities, the Multicoin Defendants explicitly solicited token sales and
11  touted an express, if hubristic, financial upside to token purchase, in particular:

- September 24, 2020: Samani announces "SOL is listed on http://binance.us and http://ftx.us today!"
- November 3, 2020: Samani promotes the "first virtual Multicoin Summit, with presentations including @solana . . . ."
- January 7, 2021: Samani states: "the holder base of SOL is basically all strong hands," explaining "we [Multicoin] are long SOL obviously We actually bought more recently! We are not selling."
- February 18, 2021: Samani announces he is "taking [his] SOL to the grave" [6]
- September 15, 2021, Samani boasts: "Anyone who bought SOL in 2020 and held can afford to rent a Ferrari today." CAC ¶ 97.
- November 11, 2021, Samani "will happily . . . argue that SOL will pass BTC in market cap." (For perspective, on this day, BTC's market cap was approximately $1.21 trillion; SOL's about $69.22 billion.) *Id.*

---

[4] Multicoin Defendants may have misunderstood Plaintiff's "attempt to identify" which statements in CAC ¶ 97 constitute solicitation. For the sake of clarity: all of them. As stated in CAC ¶ 97, "[t]he . . . following timeline of statements, though non-exhaustive, *are representative of the Multicoin Defendants' solicitations of SOL through* [Samani's] *Twitter account*." (emphasis added).

[5] CAC ¶ 20; *Our Firm*, MULTICOIN CAPITAL, https://multicoin.capital/about/, (last accessed May 8, 2024).

[6] August 30, 2021, Samani (again) announces he will be "[t]aking SOL to the grave[;]" September 5, 2021, Samani advises: "Never sell SOL." CAC ¶ 97.

Samani's unabashed praise exceeds the qualified optimism of the *LBRY* defendant's statements, found adequate for promoter liability. Moreover, Samani encourages readers to hold their Solana Securities as the *LBRY* defendant did – which the *LBRY* court found to be a promotional statement. Samani's prolific tweeting exceeds Ms. Kardashian's single social media post; indeed, the CAC cites **thirty-five (35) tweets**, even though one post is enough for liability. CAC, ¶ 97. The Multicoin Defendants, via Kyle Samani, engaged in textbook solicitation.

The Multicoin Defendants are wrong in their assertion that Plaintiff impermissibly "lumps" Multicoin Capital LLC and Kyle Samani. Motion at 9. Unlike the *Medehi v. View, Inc*. and *Arcell v. Google LLC* plaintiffs, who attempted to lump several independent parties together without independent allegations, Plaintiff has already alleged that Samani has held himself out as synonymous with Multicoin. *Compare* 2023 WL 3592098, at *12 (N.D. Cal. May 22, 2023) (no independent allegations as to separate business entities) and 2023 WL 8420896, at *7 (N.D. Cal. Dec. 4, 2023) (the same) with CAC ¶ 97 ("February 23, 2021 . . . Kyle Samani tweets that "*we* [Multicoin] own a giant bag of SOL[.]") (emphases added). *See also* CAC ¶ 20 ("Defendant Kyle Samani is the Managing Partner of Multicoin[.]"). Neither *Medehi* nor *Arcell* control because Samani has stated, and Plaintiff has alleged, that Samani and Multicoin act as one and the same.

The Multicoin Defendants' authorities ignore the explicit nature of Samani's tweets by drawing inapt analogies to cases where the solicitations lacked the connection to financial gain that are shown here. *Davy v. Paragon Coin*, 2021 U.S. Dist. LEXIS 137156 (N.D. Cal. Mar. 26, 2021), and *Brody v. Homestore, Inc.*, 2003 WL 22127108 (C.D. Cal. Aug. 8, 2003), relied on by the Multicoin Defendants, are inapposite as the facts here promise much more explicit financial gains. In *Davy*, a celebrity merely suggested buying a coin, without touting any financial gain. *Id.* at *21-23. In *Brody*, the defendant underwriter forecasted a company's strong performance, but said nothing about a potential capital gain from investing. *Id.* at *5. The Multicoin Defendants' reliance on *Risley v. Universal Navigation Inc.*, 2023 WL 5609200, at *19 (S.D.N.Y. Aug. 29, 2023), is misplaced, because plaintiffs there relied on two tweets about the safety of a blockchain, with no representations about financial upside of investing. Samani, on behalf of the Multicoin Defendants, touted unrealistic goals

1    prices for Solana Securities, claimed it would be bigger than bitcoin, and that he "expect[s] SOL … to

2    substantially outperform BTC through the next 'bear market.'" ¶ 97. For the same reasons, *Hollifield*

3    *v. Resolute Capital P'ners Ltd., LLC*, 2023 U.S. Dist. LEXIS 52362, *24 (C.D. Cal. Feb. 14, 2023), is

4    inapposite. There, the plaintiff pled "almost no explanation of why each of these Defendants is a

5    statutory seller and therefore subject to liability for the sale of unregistered securities." *Id.* The plaintiff

6    alleged generally that two of the defendants hosted dinners and meetings but did "not plead any

7    statement of Powell or Toth's, much less explain when and to whom it was made and why it was false

8    or misleading." *Id.* at *21-22.

9    **C.    The Multicoin Defendants Solicited Purchases of Solana Securities for Their**

10   **Own Financial Gain.**

11   To plead solicitation, Plaintiff must only show some financial interest is at stake. In *Pinter*, the

12   Court held that the statutory seller requirement extends liability "to the person who successfully

13   solicits the purchase, motivated *at least in part* by a desire to serve his own financial interests or those

14   of the securities owner." *Pinter*, 486 U.S. at 646 (emphasis added). The CAC includes numerous

15   specific allegations which illustrate how each of the Multicoin Defendants had a financial interest in

16   soliciting sales of Solana Securities, of which they owned a significant amount. "Because Solana Labs

17   and its insiders directly control significantly more than 50% of the total SOL supply, the underlying

18   value of SOL depends primarily on the efforts taken by Defendants." CAC ¶ 59. "In November 2021,

19   Samani was asked on Twitter, 'What % of SOL do you [and] Multicoin own?' He responded that '[the

20   Multicoin Defendants] own 10-figures worth across our various funds.'" *Id.* ¶ 92. Multicoin

21   Defendants' financial interest in Solana Securities sales is manifest.

22   Defendants argue that Plaintiff does not sufficiently allege that the Multicoin Defendants'

23   solicitation efforts were made with "a desire to serve [their] own financial interests." Motion at 10.

24   Defendants again rely upon *Risley.*, 2023 WL 5609200, to contend that "a generalized interest in

25   increasing the value of one's holdings is insufficient to show a financial interest in the particular

26   transaction at issue." Motion at 10. In fact, *Risley* does not so hold. The court held instead that it was

27   "fatal" to the Plaintiffs' claim that Plaintiffs offered "nothing more than a conclusory allegation that

28

Defendants" promoted or solicited tokens. *Risley*, 2023 U.S. Dist. LEXIS 152946, at *54. The court also stated that "[p]laintiffs' citation to SEC Chair Gensler's conclusory statement that 'there's some incentive structure for those promoters and sponsors in the middle of' the decentralized software cannot support a claim that Defendants had a financial interest in the particular transactions at issue here." *Id.* at *57. This is far from a holding that a generalized interest in increasing the value of one's holdings is insufficient to show a financial interest.  Accordingly, Plaintiff has pled a sufficient financial interest for purposes of solicitation.

**D.      "Reliance" and "Causation" Are Not Required Elements Under Section 12(a)(1).**

The Multicoin Defendants argue that there is no allegation that the solicitations were "successful," or that they were even persuasive (Motion at 8), but these contentions attempt to insert additional elements into a Section 12(a)(1) claims. *Pinter*, 486 U.S. at 652 ("[N]o congressional intent to incorporate tort law doctrines of reliance and causation into § 12[(a)](1) emerges from the language or the legislative history of the statute."); *Pino*, 55 F.4th at 1260 ("Reliance is not an element."); *Houghton*, 2023 U.S. Dist. LEXIS 188539, at *13 n.5 ("To state a claim under Section 12(a)(1) of the Securities Act, a plaintiff need not plead scienter, reliance, or fraud.") (quoting *In re Longfin Corp. Sec. Class Action Litig.*, 2019 U.S. Dist. LEXIS 126209, at *13 (S.D.N.Y. July 29, 2019)). Accordingly, the Multicoin Defendants' contentions that Plaintiff failed to allege "that [he] saw Samani's tweets" or "was even aware of Samani at the time he purchased his SOL" improperly assert causation and reliance defenses. Motion at 8.

As mass communications on social media are sufficient to show solicitations under *Pino*, there is no requirement that messages be targeted to any specific individual. 55 F.4th at 1258-59 (9th Cir. 2022) (citing *Wildes*, 25 F.4th at 1341); *accord Houghton*, 2023 U.S. Dist. LEXIS 188539, at *12-13 (citing *Pino*, 55 F.4th at 1253) (distinguishing the broader Ninth Circuit approach attaching promoter liability to mass communication).

Multicoin Defendants' authorities provide no support for their efforts to require pleading additional elements for a solicitation claim. The court in *In re Tezos Sec. Litig.* 2018 WL 4293341, at *9 (N.D. Cal. Aug. 7, 2018), dismissed one of the defendants, Tim Draper, a prominent investor.

1  Although Draper had backed the Tezos project, he did not make the type of mass communications that

2  Samani and Mulitcoin Capital did here. The *Tezos* plaintiff's theory was premised on the prominence

3  of Draper's reputation in the startup community, and therefore the failure to allege the plaintiff knew

4  who he was fatal; this is not an allegation Plaintiff makes here with respect to Samani.

5          The Multicoin Defendants' reliance on *Warth v. Seldin* is misplaced. *Warth* is a case about a

6  discriminatory zoning ordinance that required an element of privity; but privity is not required for

7  solicitation liability. *Compare* 422 U.S. 490, 502 (1975), *with Zakinov v. Ripple Labs, Inc.*, 2023 U.S.

8  Dist. LEXIS 113557, at *13 (N.D. Cal. June 30, 2023) ("[D]efendants have no controlling case law

9  that [distinguishes] between direct purchasers and indirect purchasers . . . a plaintiff can bring an

10 unregistered securities claim against solicitor sellers.") (internal citations omitted). The issue n *Warth*

11 was whether plaintiffs, as low-or-moderate income individuals allegedly discriminated against by a

12 zoning ordinance, may trace their inability to find housing to the ordinance. 422 U.S. 490, 502. The

13 Court held they could not. *Id.* at 502-07. The Multicoin Defendants try to graft *Warth's* standing

14 holding on a Section 12 claim, asserting that "Plaintiff [cannot] rely on the possibility that others,

15 including members of the purported class, may have seen Samani's tweets," purportedly barring

16 recovery absent allegations that Plaintiff voraciously pored over Kyle Samani's Twitter. Motion at 8.

17 Multicoin Defendants are mistaken. *Pino* allows precisely this presumption. And the square peg of a

18 justiciability case does not fit into the round hole of a securities law claim, particularly when securities

19 law specifically disclaims the reliance requirement which Multicoin Defendants invent for Section

20 12(a)(1) in their motion. *Compare id. with Houghton*, 2023 U.S. Dist. LEXIS 188539, at *13, n.5.

21         The Multicoin Defendants' reliance on *Pinter* to assert that plaintiffs may not recover for

22 secondary market purchases is contrary to established law. *See* Pl.'s Opp. to Solana Labs Motion to

23 Dismiss; *Zakinov v. Ripple Labs, Inc.*, 2020 WL 922815, at *12 & n.6 (N.D. Cal. Feb. 26, 2020)

24 (holding that purchasers of cryptocurrency units had standing to assert claims for unregistered

25 securities despite not having purchased in the initial offering, noting that the *Pinter* direct-seller

26 "holding" is mere dictum).

27

28

E.     **The Multicoin Defendants' Additional Arguments Misconstrue Supreme Court Precedent and Congressional Intent.**

The Multicoin Defendants also argue that permitting Plaintiff's Section 12 claims under a solicitation theory would be a return to the "substantial factor" test that the Supreme Court rejected in *Pinter*. *See* Motion at 11-12. Defendants misread *Pinter*. The Supreme Court rejected the "substantial factor" test because it would implicate persons *in addition* to those who pass title and those who, as here, solicit sales:

> Thus, although the substantial-factor test undoubtedly embraces persons who pass title and who solicit the purchase of unregistered securities as statutory sellers, the test also would extend §12(1) liability to participants only remotely related to the relevant aspects of the sales transaction. Indeed, it might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services, to §12(1) strict liability for rescission.

*Pinter*, 486 U.S. at 651. The *Pinter* court specifically noted that it was Congress' intent to include persons who solicit as statutory sellers: "Given Congress' overriding goal of preventing this injury, we may infer that Congress intended solicitation to fall under the mantle of §12(1). . . . [W]e conclude that Congress intended to extend §12(1) liability to those who solicit securities purchases . . . ." 486 U.S. at 647.

The Multicoin Defendants cite to *Slack Techs., LLC v. Pirani*, 598 U.S. 759 (2023) for the unremarkable proposition that Plaintiffs' theory of liability under Section 12 "would run contrary to the intent of the Securities Act, which is meant to be 'narrower' and 'focused primarily on the regulation of new offerings.'" Motion at 11-12. But this is unavailing because *Slack Techs.* relates specifically to liability under Section 11, *and not* Section 12.  See *Slack Techs.*, 598 U.S. at 770 (Section 11 requires a plaintiff to have purchased shares "traceable to the allegedly defective registration statement."). The Multicoin Defendants conveniently omit that the Supreme Court refused to pass on the merits of the Section 12 issue after vacating and remanding the case following appeal. *See* 13 F.4th 940, 949-50 (9th Cir. 2021), *vacated and remanded sub nom. Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433, 1442 n.3 (2023) ("[B]ecause we find that court's § 11 analysis flawed, we think the best course is to vacate its judgment with respect to Mr. Pirani's § 12 claim as well for reconsideration

in the light of our holding today about the meaning of § 11. In doing so, *we express no views about the proper interpretation of § 12* or its application to this case.") (emphasis added).[7]

In sum, the Multicoin Defendants successfully solicited Solana Securities purchases from Plaintiff and are liable as solicitor sellers. Their arguments to the contrary have no grounding in securities law.

### F.    The Multicoin Defendants Fail to Show Plaintiff Was Uninjured.

The Multicoin Defendants argue, citing to the Solana Labs Motion to Dismiss, that "[t]he AC fails to allege that Plaintiff suffered an injury; to the contrary, the value of his SOL has appreciated." Motion at 12. Although the Solana Labs brief references the volatility of prices of Solana Securities— including that Solana Securities briefly traded at over $180 in March 2024—Solana Labs does not seek dismissal on the basis that Plaintiff was uninjured, or even argue that he was. In any event, for the vast majority of time from when Plaintiff tendered his shares and filed in July 2022 Solana Securities traded for a fraction of their 2021 peak. *See* Ex. 2 to RJN. Any suggestion that Plaintiff's damages should be measured at an arbitrary point in time is entirely unsupported. A very large number of Solana Securities investors, including Plaintiff, purchased Solana Securities at prices well above $146, the price that Solana Securities were trading at as of the afternoon, Pacific Time, on May 10, 2024:

---

[7] Similarly, *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.* is readily distinguishable, as it involves a Section 12(a)(2) claim rather than a 12(a)(1) claim. 2012 WL 12893520, at *5 (C.D. Cal. Feb. 16, 2012).

*Id.*

### G.    Plaintiff Adequately Pleads Control Person Liability Against Defendant Samani.

Plaintiff pleads a control person liability claim against Defendant Samani based on his status as a 'third founder' of Solana, his financial backing and ownership stake, and his garish claims that Solana Securities would be bigger than bitcoin. Section 15 of the Exchange Act confers secondary liability upon "[e]very person who, by or through stock ownership, agency, or otherwise . . . controls any person liable' under Section 12. 15 U.S.C. § 77o(a). To allege controlling person liability under Section 15 of the Securities Act, 15 U.S.C. § 77o, a plaintiff needs only plead: (i) that there was a primary violation of federal securities laws; and (ii) that the defendant possessed actual power or control over the primary violator. *Howard v. Everex Sys.*, 228 F.3d 1057, 1065 (9th Cir. 2000). Control may be direct or indirect. *See* 17 C.F.R. § 230.405 (SEC defining control as the "possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through ownership of voting securities, by contract, or otherwise."). However, "it is not necessary to show actual participation or the exercise of actual power." *Howard*, 228 F.3d at 1065.

Accordingly, day-to-day involvement in the operations of a primary violator is not necessary for control person liability. *Lane v. Page*, 649 F. Supp. 2d 1256, 1308 (D.N.M. 2009) ("The regulation thus focuses on the power to direct, not on the exercise of that power. Requiring that a defendant have actually exercised power over the primary violator's general operations would involve divining an

exercise of power requirement from a regulation that mentions only the possession of power.").
Moreover, a "[p]laintiff need not show that the defendant was a culpable participant in the violation
[to prove the defendant is a 'controlling person' under section 15(a) or section 20], but defendant may
assert a good faith defense." *Flynn v. Sientra, Inc*., 2016 U.S. Dist. LEXIS 83409, at *53 (C.D. Cal.
June 9, 2016) (citing *Howard*, 228 F.3d 1057) (text in brackets in original, internal quotation marks
omitted).

First, Defendants attempt to argue that Plaintiff does not allege a primary violation of Section
12 of the Securities Act. Motion at 15. For the reasons argued *infra*, at §§ III.A - E, Plaintiff adequately
alleges a primary violation. *Zakinov*, 2020 WL 922815, at *13 (denying dismissal of control person
claim under 15 USC § 77l(o) upon finding primary violation of § 77l(a)(1)); *In re Immune Response
Sec. Litig*., 375 F. Supp. 2d 983, 1040 (S.D. Cal. 2005) (holding that because plaintiff stated a "viable
claim" under Section 12, he also had a "viable claim for § 15 control liability"); *Friel v. Dapper Labs,
Inc*., 2023 WL 2162747, at *22 (S.D.N.Y. Feb. 22, 2023) (same). Defendants' citation to *In re Rigel
Pharms., Inc. Sec. Litig*., 697 F.3d 869, 886 (9th Cir. 2012) is unavailing, as it does not involve a
Section 12 claim at all, and the instant action is based on Section 12. *Paracor Fin., Inc. v. Gen. Elec.
Capital Corp*., 96 F.3d 1151, 1161 (9th Cir. 1996), a 28-year-old case, is also unavailing because it
does not even address Securities Act violations or control person violations under Section 15—it deals
with Exchange Act violations under Rule 10b-5 and control person violations under Section 20. This
distinction is significant considering Exchange Act violations are subject to heightened pleading
standards under Federal Rule of Civil Procedure 9(b), whereas Securities Act violations are governed
by Federal Rule of Civil Procedure 8(a).

Second, Defendants argue that Plaintiff does not allege facts sufficient to support Samani's
liability for control person violations under Section 15. Motion at 15. Not so. The CAC more than
adequately alleges that Samani was co-founder and managing partner of Multicoin, who led Solana's
$20 million Series A funding round in July 2019. ¶¶ 87-88. Samani, and therefore Multicoin, were not
mere passive investors, as Defendants strain to argue. Indeed, the co-founder of Solana states:

> *They were pretty intimately involved in every major turning point, every major decision, every funding round that we had*, Solana co-founder Raj Gokal said of the firm. *Multicoin felt like a third co-founder* to me and Anatoly. Perhaps Multicoin's most impactful contribution was its orchestration of a partnership with Sam Bankman-Fried, who agreed to build a decentralized exchange on top of Solana. Not only did it bring Yakovenko's vision to life, but it brought Solana to the attention of the broader ecosystem, galvanizing its extraordinary 2021.

¶ 90 (emphasis added).

The Multicoin Defendants contend that the CAC "fails to allege facts to support conclusory allegations that Samani 'directly or indirectly controlled' Labs," (Motion at 15), including that he does not have an office or "voting securities" (*id.* at 17), but statements made by Solana itself under these assertions. Solana admits that Multicoin, and therefore Samani, as its co-founder and managing partner, were "intimately involved in every major turning point, every major decision, [and] every funding round" Solana had. ¶ 90. Multicoin and Samani were so involved that they "*felt like a third co-founder*," according to Solana. *Id.* (emphasis added). And, as alleged in the CAC, Samani himself asserted his efforts were integral in getting Solana Labs through difficult times during the first two quarters of 2020, "when Solana was both a) almost out of money b) irrelevant." ¶ 91. That Samani does not now have a controlling voting interest, or other trappings of status as a Solana executive such as his own office, is irrelevant to the question of whether Samani directed Solana Labs in the early stages of the company's public offerings. He certainly did.

Defendant Samani's tweets, as set forth in the CAC, also establish his liability as a control person of Solana. For example, on February 23, 2021, Samani tweeted: "[W]e [Multicoin] own a giant bag of SOL actions speak louder than words :)" CAC, ¶ 97. On February 24, 2021, he tweeted: "*I run one of the largest crypto funds Can we talk about @solana We are the seed and largest investors*[.]" *Id.* (emphasis added).

Accordingly, the Court should reject Samani's attempt to downplay his role and distance Multicoin from its "intimate" involvement with Solana. As noted in the above discussion of Section 12 liability, Samani and Multicoin's role in establishing and aiding the Solana rendered the two entities "deeply intertwined, if not functionally interchangeable," throughout the Series A funding round,

1  which was functionally equivalent to an ICO. *In re Tezos Secs. Litig.*, 2018 U.S. Dist. LEXIS 157247,
2  at \*32.

3         The Mulitcoin Defendants' authorities in support of their untenable position are readily
4  distinguishable. *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1053 (N.D. Cal. 2008),
5  for example, is not a case involving liability under Section 12 of the Securities Act, Moreover, *Juniper*
6  supports Plaintiff's position here, as the court found that plaintiffs had adequately alleged violations
7  of Section 15 against Jupiter executives because "[plaintiffs'] allegations essentially state that
8  Defendants had the power to influence or control the primary violators and actively used this influence
9  or control so as to be a culpable participant in the primary violation." *Id.* at 1054. *Wells Fargo Mortg.*
10  *Backed Certificates Litig.*, 712 F. Supp. 2d 958, 969 (N.D. Cal. 2010) is similarly unavailing as it is
11  factually inapposite to the extent it concerns credit rating agencies as control persons and involves
12  liability under Section 11of the Securities Act, which is not at issue in the instant action. Defendants'
13  citation to *Welgus v. TriNet Grp., Inc.*, 2017 WL 167708, at \*12 (N.D. Cal. Jan. 17, 2017) refers to
14  Section 20 liability under the Exchange Act, which is subject to the heightened pleading requirements
15  of Federal Rule 9(b). In that case, in addressing Section 15 liability, the court stated, with no analysis,
16  that the plaintiffs failed to allege a primary violation under Section 12(a)(2) of the Securities Act. *Id.*
17  at \*61-62. Here, the same is not true, as Plaintiff has adequately pled a primary violation under Section
18  12(a)(1).

19         Finally, Defendant Samani cherry picks statements in the CAC that he made on behalf of
20  himself and Multicoin related to Solana and argues "minority ownership of even a significant portion
21  of shares is insufficient to establish control person liability." Mot. at 16. But Samani's argument is a
22  non-starter, and the cases he cites do not merit consideration, because Plaintiff does not allege Samani
23  is liable as a result of "minority ownership" of a "significant portion of shares" in order to substantiate
24  Plaintiff's claims for control person liability. *See id.* Rather, Plaintiff points to Solana, Multicoin and
25  Samani's own statements and admissions regarding Samani and Multicoin's intimate involvement ***in***
26  ***every major turning point, every major decision, [and] every funding round***; that Multicoin and
27  Samani were so involved that they "***felt like a third co-founder***; and that Samani's efforts were

28

1  *integral* in getting Solana Labs through difficult times during the first two quarters of 2020, "when

2  Solana was both a) almost out of money b) irrelevant." CAC, ¶¶ 90-91 (emphasis added).

3      For the foregoing reasons, the Court should deny Samani's Motion to Dismiss Plaintiff's

4  control person claims under Section 15 of the Securities Act.

5  **V.    LEAVE TO AMEND**

6      In the event the Court elects to grant the Multicoin Defendants' Motion to Dismiss, Plaintiff

7  respectfully requests that the Court grant Plaintiff leave to amend. "Leave to amend should be "freely

8  given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant,...undue

9  prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the

10  amendment...." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminent Capital, LLC v. Aspeon, Inc*., 316

11  F.3d 1048, 1052 (9th Cir. 2003). Federal Rule of Civil Procedure 15(a) provides leave to amend should

12  be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2). "A district court abuses its

13  discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to

14  cure the complaint's deficiencies despite repeated opportunities." *AE ex rel. Hernandez v. Cnty. of*

15  *Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (reversing district court's dismissal without leave to amend).

16  Given the foregoing, Plaintiff respectfully requests that the Court permit Plaintiff to amend the CAC

17  should the Court grant the Multicoin Defendants' Motion to Dismiss.

18  **VI.    CONCLUSION**

19      For the foregoing reasons, Plaintiff Mark S. Young respectfully requests that the Court deny

20  the Motion to Dismiss filed by Defendants Multicoin Capital Management LLC and Kyle Samani. In

21  the alternative, should the Court grant the Multicoin Defendants' Motion to Dismiss, Plaintiff

22  respectfully requests leave to amend the CAC.

23

24      Dated: May 13, 2024                    Respectfully submitted,

25

26                              */s/ Matthew S. Weiler*
                            Todd M. Schneider (SBN 158253)

27                              Matthew S. Weiler (SBN 236052)
                            Sunny S. Sarkis (SBN 258073)

28

1

**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**

2
2000 Powell Street, Suite 1400
Emeryville, California 94608

3
Telephone: (415) 421-7100
Email: tschneider@schneiderwallace.com

4
Email: mweiler@schneiderwallace.com

5
Email: ssarkis@schneiderwallace.com

6
Jason H. Kim (SBN 220279)

7
**SCHNEIDER WALLACE
COTTRELL KONECKY LLP**

8
300 S. Grand Avenue, Suite 2700
Los Angeles, California 90071

9
Telephone: (415) 421-7100
Email: jkim@schneiderwallace.com

10

11
*Attorneys for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
Plaintiff's Opposition to the Multicoin Defendants' Motion to Dismiss
Case No. 3:22-cv-03912-RFL