Todd M. Schneider (SBN 158253)
Matthew S. Weiler (SBN 236052)
Sunny S. Sarkis (SBN 258073)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
2000 Powell Street, Suite 1400
Emeryville, CA 94608
Telephone: (415) 421-7100
TSchneider@schneiderwallace.com
MWeiler@schneiderwallace.com
SSarkis@schneiderwallace.com

Jason H. Kim (SBN 220279)
**SCHNEIDER WALLACE**
**COTTRELL KONECKY LLP**
300 S. Grand Ave., Suite 2700
Los Angeles, California 90071
Telephone: (415) 421-7100
JKim@schneiderwallace.com

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK YOUNG, on behalf of himself and all others similarly situated, <br><br>                       Plaintiff, <br><br> v. <br><br> SOLANA LABS, INC.; THE SOLANA FOUNDATION; ANATOLY YAKOVENKO; MULTICOIN CAPITAL MANAGEMENT LLC; KYLE SAMANI, <br><br>                       Defendants. | Case No.  3:22-cv-03912-RFL <br><br> CLASS ACTION <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT SOLANA LABS, INC.'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** <br><br> Judge:  Hon. Rita F. Lin <br> Date:  August 6, 2024 <br> Time:  10:00 a.m. <br> Court: Courtroom 15 – 18th Floor <br><br> JURY TRIAL DEMANDED |

1

**TABLE OF CONTENTS**

2   I.    INTRODUCTION ...................................................................................................... 1

3   II.   FACTUAL BACKGROUND ................................................................................... 2

4   III.  LEGAL STANDARD ............................................................................................... 5

5   IV.   ARGUMENT ............................................................................................................ 6

6         A.    Solana is a Statutory Seller Under Federal Securities Laws. ........................ 6

7         B.    Solana Labs Solicited Purchases of Solana Securities. ................................. 8

8         C.    Liability Attaches to Solana Labs' Solicitation of Sales Outside of Solana ICO. ............ 14

9         D.    Plaintiff Pleads a Domestic Transaction. ................................................... 17

10        E.    Plaintiff's Claims Are Timely and All Solicitation Is Actionable. ................... 19

11        F.    Leave To Amend. ..................................................................................... 20

12  V.    CONCLUSION ...................................................................................................... 20

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,

4

    677 F.3d 60 (2d Cir. 2012) ........................................................................................ 17

5

*Al-Kidd v. Ashcroft*,

6

    580 F.3d 949 (9th Cir. 2009), *rev'd on other grounds*, 563 U.S. 731 ............................. 5

7

*Alpha Mgmt. Inc. v. Last Atlantis Cap. Mgmt., LLC*,

8

    2012 WL 5389734 (N.D. Ill. Nov. 2, 2012) ................................................................ 16

9

*Arcaro v. Parks*,

10

    143 S. Ct. 427 (2022) ................................................................................................. 10

11

*Arcell v. Google LLC*,

12

    2024 U.S. Dist. LEXIS 45530 (N.D. Cal. Feb. 5, 2024) .............................................. 11

13

*Ashcroft v. Iqbal*,

14

    556 U.S. 662 (2009) ..................................................................................................... 5

15

*Balestra v. ATBCOIN LLC*,

16

    380 F. Supp. 3d 340 (S.D.N.Y. 2019) .......................................................................... 8

17

*Ballay v. Legg Mason Wood Walker, Inc.*,

18

    925 F.2d 682 (3d Cir. 1991) ....................................................................................... 15

19

*Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.*,

20

    849 Fed. App'x 289 (2d Cir. 2021) ............................................................................. 18

21

*Begay v. United States*,

22

    553 U.S. 137 (2008) ................................................................................................... 15

23

*Bell Atlantic Corp. v. Twombly*,

24

    550 U.S. 544 (2007) ..................................................................................................... 5

25

*Broam v. Bogan*,

26

    320 F.3d 1023 (9th Cir. 2003) ...................................................................................... 5

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Capri v. Murphy*,

    856 F.2d 473 (2d Cir. 1988) ................................................................................................. 13, 14

*Craftmatic Sec. Litig. v. Kraftsow*,

    890 F.2d 628 (3d Cir. 1989) .......................................................................................................... 15

*Crawford v. Glenns, Inc.*,

    876 F.2d 507, 510 (5th Cir. 1989) ............................................................................................... 10

*Cullen v. Ryvyl Inc.*,

    2024 U.S. Dist. LEXIS 36420 (S.D. Cal. Mar. 1, 2024) ............................................................. 16

*Delta Mech., Inc. v. Garden City Grp.*, Inc.,

    345 Fed. App'x 232 (9th Cir. 2009) ............................................................................................... 5

*Feinberg v. Leighton*,

    1987 WL 6147 (S.D.N.Y. Jan. 30, 1987) .................................................................................... 16

*Gustafson v. Alloyd Co.*,

    513 U.S. 561 (1995) ...................................................................................................................... 14

*Holland v. GEXA Corp.*,

    161 F. App'x 364 (5th Cir. 2005) ................................................................................................ 16

*Hollifield v. Resolute Cap. P'ners Ltd., LLC*,

    2023 U.S. Dist. LEXIS 115328, 2023 WL 4291524 (C.D. Cal. May 12, 2023) ............................ 9

*Houghton v. Leshner*,

    2023 U.S. Dist. LEXIS 188539 (N.D. Cal. Sept. 20, 2023) ................................................ 7, 8, 10

*In re Century Aluminum Co. Sec. Litig.*,

    749 F. Supp. 2d 964 (N.D. Cal. 2010) ........................................................................................ 16

*In re Longfin Corp. Sec. Class Action Litig.*,

    2019 WL 1569792 (S.D.N.Y. Apr. 11, 2019) ............................................................................... 6

*In re Longfin Corp. Secs. Class Action Litig.*,

    2019 U.S. Dist. LEXIS 62758 (S.D.N.Y. Apr. 11, 2019) ............................................................. 9

*In re Tezos Sec. Litig.*,

  2018 U.S. Dist. LEXIS 157247 (N.D. Cal. Aug. 7, 2018) ..................................................... 7, 8, 18

*In re WorldCom, Inc. Sec. Litig.*,

  346 F. Supp. 2d 628 (S.D.N.Y. 2004) ............................................................................................ 6

*Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*,

  1998 U.S. Dist. LEXIS 23473 (N.D. Cal. Sept. 14, 1998) ........................................................... 16

*Lewis v. Fresne*,

  252 F.3d 352 (5th Cir. 2001) ....................................................................................................... 15

*Lopez v. Smith*,

  203 F.3d 1122 (9th Cir. 2000) ..................................................................................................... 20

*Lutge v. Harrington*,

  2022 U.S. Dist. LEXIS 236516 (N.D. Cal. Dec. 20, 2022) (Thompson, J.) .................................. 20

*Mehedi v. View, Inc.*,

  2023 U.S. Dist. LEXIS 89106 (N.D. Cal. May 22, 2023) ............................................................ 11

*Mendiondo v. Centinela Hosp. Med. Ctr.*,

  521 F.3d 1097 (9th Cir. 2008) ....................................................................................................... 5

*Mexicanos v. Hewlett-Packard Co.*,

  2015 U.S. Dist. LEXIS 118725 (N.D. Cal. July 13, 2015) ........................................................... 18

*Moore v. Kayport Package Express*,

  885 F.2d 531 (9th Cir. 1989) ....................................................................................................... 15

*Mori v. Saito*,

  2013 U.S. Dist. LEXIS 209251 (S.D.N.Y. Mar. 29, 2013) .......................................................... 18

*Morrison v. National Australia Bank Ltd.*,

  561 U.S. 247 (2010) ................................................................................................................. 2, 17

*Pino v. Cadone Capital, LLC*, 55 F.4th 1253 (9th Cir. 2022),

  55 F.4th at 1258 ............................................................................................ 9, 12, 13, 15

*Pinter v. Dahl*,

    486 U.S. 622 (1988) ............................................................................................. 7, 12, 13

*Pirani v. Slack Techs.*, Inc.,

    445 F. Supp. 3d 367 (N.D. Cal. 2020) ............................................................................ 6

*S.E.C. v. Binance Holdings Limited, et al.*,

    Case No. 23-cv-1599 (D.D.C.), ECF No. 1 at ¶¶ 364-77 ................................................ 3

*S.E.C. v. Binance Holdings Limited, et al.*,

    Case No. 23-cv-1599 (D.D.C.), ECF No. 1 at ¶¶ 375-76 .............................................. 12

*S.E.C. v. Kraken*,

    Case No. 3:23-cv-06003-WHO (N.D. Cal.), ECF No. 1 at ¶¶ 330, 387, 381, 440-41 ..................... 3

*SEC v. Coinbase, Inc.*,

    2024 U.S. Dist. LEXIS 56994 (S.D.N.Y. Mar. 27, 2024) ...................................... passim

*SEC v. Terraform Labs Pte. Ltd.*,

    2023 U.S. Dist. LEXIS 132046 (S.D.N.Y. July 31, 2023) ...................................... 8, 14

*Shults v. Henderson*,

    625 F. Supp. 1419 (W.D.N.Y. 1986) ............................................................................ 15

*Silver Top Ltd. v. Monterey Indus. Inc.*,

    1995 WL 20266 (S.D.N.Y. Jan. 19, 1995) .................................................................... 16

*Slack Techs., LLC v. Pirani*,

    143 S. Ct. 1433 (2023) .................................................................................................... 6

*Sollberger v. Wachovia Sec., LLC*,

    2010 WL 2674456 (C.D. Cal. June 30, 2010) .............................................................. 11

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,

    802 F. Supp. 2d 1125 (9th Cir. 2005) .......................................................................... 19

*Stoyas v. Toshiba Corp.*,

    896 F.3d 933 (9th Cir. 2017) ................................................................................. 17, 20

*Tooley v. Napolitano,*

    556 F.3d 836 (D.C. Cir. 2009) ........................................................ 5

*Wildes v. BitConnect Int'l PLC,*

    25 F.4th at 1343 (11th Cir. 2022) ............................................... 10, 13

*Williams v. Binance,*

    96 F.4th 129 (2d Cir. 2024) ...................................................... 17, 19

*Williams v. Block One,*

    2022 U.S. Dist. LEXIS 171550 (S.D.N.Y. Aug. 13, 2022) ...................... 19

*Zakino v. Ripple Labs,*

    2020 WL 922815 (N.D. Cal. Feb.  26, 2020) ................................... 7, 8

**Statutes**

15 U.S.C. § 77l(a)(1) ....................................................................... 6

**Other Authorities**

California Corporations Code, Sections 25110 and 25503 ............................ 1

Securities Act of 1933, Section 12(a)(1) ...................................... passim

Securities Act of 1933, Section12(a)(2) ....................................... passim

**Rules**

Fed. R. Civ. P. 8(a) ........................................................................ 5, 6

Fed. R. Civ. P. 12(b)(6) ................................................................... 5

Fed. R. Civ. P. 15(a)(2) ................................................................. 20

Rule 506(c) of Regulation D under the Securities Act ............................. 3

## I.   INTRODUCTION

Plaintiff demonstrates that Defendant Solana Labs, Inc. ("Solana Labs" or "Defendant") violated the Securities Act of 1933, Section 12(a)(1) through soliciting purchases of unregistered securities. Solana Labs made enormous profits through the sale of Solana Securities to retail investors such as Plaintiff yet failed to register Solana Securities in violation of the registration provisions of federal and state securities laws. ¶ 1.[1] Defendant argues that Plaintiff's claims fail because Defendant never sold any Solana Securities to Plaintiff in an initial offering of Solana Securities; that Defendant never directly solicited any purchase by Plaintiff; that Defendant never made any statement soliciting or marketing to Plaintiff; and that Plaintiff fails to allege a domestic transaction. See generally Motion to Dismiss ("Motion"), ECF No. 76. Each of these contentions misstates the legal standard to plead a claim under Section 12(a)(1) and mischaracterizes Plaintiff's allegations.[2]

Earlier this year, a federal court in New York considered and rejected many of the same arguments Solana Labs makes here. *See SEC v. Coinbase, Inc.*, 2024 U.S. Dist. LEXIS 56994, *65 (S.D.N.Y. March 27, 2024). The court in Coinbase analyzed many of the same statements made concerning the Solana blockchain, as well as identical Twitter communications, and found that "Solana Labs touted its technical expertise in developing blockchain networks and described the efforts it would take to develop the blockchain and attract users to the technology." *Id.* at *65. Moreover, unlike Solana Labs here, "Coinbase concedes that these statements reached not only the purchasers in the primary market at the initial coin offering stage, but also those potential investors considering whether to acquire the Crypto-Assets in the secondary market." *Id.* The *Coinbase* decision rejected the distinction between a secondary market transaction and an initial offering, and held that Coinbase sold Solana Securities, which were unregistered securities: "the 'crypto' nomenclature may be of recent vintage, but the challenged transactions fall comfortably within the framework that courts have used to identify securities for nearly eighty years. Further, the Court finds that the SEC adequately alleges that Coinbase, through its Staking Program, engaged in the unregistered offer and sale of

---

[1] References to ¶ are to Plaintiff's Consolidated Amended Complaint, ECF No. 68.
[2] Plaintiff does not challenge the Motion insofar as it relates to his claims under Sections 25110 and 25503 of the California Corporations Code.

securities." 2024 U.S. Dist. LEXIS 56994, *3. Plaintiff alleges that similar "staking," essentially an interest rate paid to investors in Solana Securities, was an important aspect of Solana Labs' marketing. ¶¶ 86, 110.

Notably, Defendant does not challenge Plaintiff's allegations that Solana Securities are securities under the standards of *SEC v. W. J. Howey Co.*, 328 U.S. 298  (1946) (the "*Howey* test). Instead, Defendant invents a gauntlet of legal concepts—such as privity, causation, and reliance—that simply do not apply to claims for selling unregistered securities. In another desperate measure, Defendant manufactures a foreign nexus to Plaintiffs' wholly domestic transaction by falsely claiming that the Exodus platform uses foreign exchanges, and speculating that there may be a foreign purchaser on the other end of Plaintiff's transactions on the platform he used. The latter contention is irrelevant under *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), because the transaction becomes irrevocable for users under when they tap a button on their mobile applications. *See* Request for Judicial Notice ("RJN") & Ex. 1.

In short, Defendant does not contest that its SOL tokens are securities under the *Howey* test, or that Defendant did not register these Solana Securities. The central contention in Defendant's Motion is that Plaintiff lacked privity with Solana Labs, but Defendant lacks any basis in law or policy to impose this restriction on liability for promoting these unregistered securities, first sold directly to insiders at forty cents apiece and resold to investors such as Plaintiff for over hundred times that price. The rule Defendant advocates would protect the architects of similar 'pump and dump' schemes that were successful when the securities became available for purchase on exchanges and popular crypto platforms. The narrow construction Defendant's ascribe to Section 12 of the Securities Act is directly contrary to "[t]he statutory policy of affording broad protection to investors." *SEC v. W. J. Howey Co.*, 328 U.S. at 301. Defendant's Motion must be denied.

## II.   FACTUAL BACKGROUND

In 2017, Solana Labs created the Solana "blockchain network upon which decentralized apps ("dApps") are built. Such decentralized apps include the development of non-fungible tokens ("NFTs") and decentralized finance ('DeFi') applications." ¶ 2. The Solana blockchain is the source

of value from which the securities that are the heart of this litigation derive their value. Anatoly Yakovenko ("Yakovenko") founded Solana Labs, and the non-profit Solana Foundation, and has been a principal mouthpiece through which Solana Labs solicits investors.

To facilitate the growth of the Solana blockchain, Solana Labs issues SOL tokens, a crypto asset that trades (or traded) on U.S. exchanges such as Coinbase, FTX.US, Binance.US, and Kraken.. ¶¶ 85-86. Solana Securities are "created and minted on Solana, the Solana Labs' blockchain network." ¶ 45. These "Solana Securities" are one of the most widely traded crypto assets, and "hundreds of millions of dollars' worth of SOL securities are traded on Coinbase daily." ¶ 85.

Solana Labs has been responsible for all issuances of Solana Securities. Solana Labs arranged a "Dutch Auction" in March 2020 that was the initial coin offering ("ICO") for Solana Securities. ¶ 4. Between May 2018 and early March 2020, Solana Labs filed with the SEC multiple forms claiming that its offers and sales of securities were exempt from registration under Rule 506(c) of Regulation D under the Securities Act. ¶ 47.

Following the ICO, Yakovenko of Solana Labs developed the concept for what would be Solana Securities and raised funds for the Solana blockchain. ¶¶ 42-44. Accordingly, Solana Labs and "Yakovenko, through Solana Labs," raised funds to develop the Solana blockchain through issuing Solana Securities. *Id.* at ¶ 44. "As of May 2021, 48% of SOL securities were owned by insiders such as Solana Labs and its team." ¶ 83.

The price of Solana Securities has fluctuated wildly. *See* RJN Ex. 2. Solana Securities peaked at over $200 in 2021, and have fallen to below $30, before starting to rise again in 2024. *Id.*Solana's blockchain network is prone to devastating outages. The Solana blockchain's lack of decentralization has resulted in major outages in December 2020, September 2021, June 2022, and February 2023. ¶ 11. These outages cause the prices of Solana Securities to fall, as in June 2022, when Solana Securities lost 12% of their value after an outage. *Id.*

Solana does not challenge in its motion that Solana Securities are "securities" under the SEC framework.  That is because, as held by the district court in *Coinbase*, and as alleged repeatedly by the SEC in numerous other cases, they certainly are. *S.E.C. v. Kraken*, Case No. 3:23-cv-06003-WHO

(N.D. Cal.), ECF No. 1 at ¶¶ 330, 387, 381, 440-41; *S.E.C. v. Binance Holdings Limited, et al.*, Case No. 23-cv-1599 (D.D.C.), ECF No. 1 at ¶¶ 364-77.

Solana Labs has promoted and marketed Solana Securities through the Solana Foundation, and its leader Yakovenko. Yakovenko has explained the role of Solana Foundation in promoting Solana Securities for Solana Labs: "The Solana Foundation was founded with a mission to advance the adoption of decentralized technologies as a public good. The vision of a world where individuals are empowered to retain ownership of their data and can access networks through which they transfer value without being reliant on third-parties." ¶ 9.

Solana Labs, itself or with Solana Foundation, promotes and markets Solana Securities through the X account "@Solana." ¶ 86. Here, investors are informed of developments in Solana Labs' efforts to get listed on major U.S. exchanges. *Id.*

Plaintiff is a resident of California who purchased Solana Securities through the Exodus crypto platform. ECF No. 1 at 38. Plaintiff pleads that he used the "swap" feature for his purchases, as he alleges the specific crypto assets he swapped for Solana Securities. *Id.* Exodus is crypto platform based in Omaha, Nebraska, that offers its users the ability to trade Solana Securities through peer-to-peer transactions under the "swap" function. *See* RJN & Ex. 1. Once users push the "Swap Now" button, the transaction cannot be cancelled, and users receive their crypto assets automatically. *Id.* at 7.

Plaintiff does not allege that he used Exodus to trade on any foreign exchange, and nothing in the terms and service for Exodus users shows that Plaintiff would have been aware of the location of the counter-party to his purchase, or even what third party provided the exchange.[3] Exodus offers users

---

[3] Defendants' contentions that to trade on Exodus users are directed to "third-party exchanges located outside of the United States (Motion at 3)," or necessarily involve foreign trades, cannot be credited on a Rule 12 motion. Plaintiff objects to all such characterizations of Exhibit 4, and Defendants' request to judicially notice any of the incorrect conclusions they draw regarding transactions on Exodus. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) ("just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth"). Similarly, Plaintiff objects to the following contention regarding Exhibit 4 to Defendants RJN as unsupported: "The vast majority of transactions facilitated by Exodus are completed on international third-party exchanges; indeed, approximately 97% of Exodus's revenue comes from non-U.S. sources, and Exodus makes most of its revenue through third-party exchange contracts." Motion at 18.

peer-to-peer transactions through a decentralized platform that does not appear to rely on centrally maintained servers.[4]

### III.   LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). As the Supreme Court reaffirmed in *Ashcroft v. Iqbal*, "the pleading standard Rule 8 announces does not require 'detailed factual allegations'" though the complaint must offer more than just "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("*Iqbal*"). Instead, a complaint must only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal citations and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Id.*

Despite Defendant's contentions otherwise, specific facts need not be pleaded; Rule 8, and Supreme Court interpretation of it, require that Plaintiff's pleading "give the defendant fair notice of what the claim is . . . and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("*Twombly*"); *see also Tooley v. Napolitano*, 556 F.3d 836, 839 (D.C. Cir. 2009) ("*Twombly* leaves the longstanding fundamentals of notice pleading intact"). Post *Iqbal* and *Twombly*, the Ninth Circuit has clarified that granting a Rule 12 motion to dismiss is inappropriate where the fact in the "complaint and reasonable inferences therefrom are plausibly suggestive of a claim entitling [plaintiff] to relief." *Delta Mech., Inc. v. Garden City Grp.*, Inc., 345 Fed. App'x 232, 233 (9th Cir. 2009).

---

[4] Exodus platform "represents a novel combination of several concepts, including a publicly available database or ledger that represents the total ownership of the currency at any one time, novel methods of authenticating transactions using cryptography across distributed network nodes that permit decentralization by eliminating the need for a central clearing-house while guaranteeing that transactions are irreversible and consistent, differing methods of incentivizing this authentication by the use of new tokens issued as rewards for the validator of each new block or transaction fees paid by participants in a transaction to validators, and hard limits on the aggregate amount of currency that may be issued." ECF No. 79-4 at 24.

When considering a Rule 12(b)(6) motion to dismiss, the Ninth Circuit has explained that the trial court still proceeds "accepting as true all facts alleged in the complaint and drawing all reasonable inferences in favor of the plaintiff." *Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009), *rev'd on other grounds*, 563 U.S. 731. Dismissal is appropriate "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Courts have viewed with "disfavor" Rule 12(b)(6) motions because of the lesser role pleadings play in federal practice and the liberal policy regarding amendment to pleadings. *See Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003).

Instead of accepting the extensive factual allegations in the CAC as true, and examining their legal sufficiency, Defendant insists these allegations are nothing more than conclusory assertions and incorrectly holds Plaintiff to a heightened standard of needing to plead additional evidentiary specific facts in order to survive a motion to dismiss. However, the factual allegations in Plaintiff's CAC speak for themselves, and give sufficient notice to Defendant as to the claims against it.

As to Defendant's primary argument regarding its status as a statutory seller, "whether or not defendants actually solicited plaintiffs' sales is a factual question which should generally be left to the jury; at this stage plaintiffs need only satisfy Rule 8(a)'s lenient pleading standards." *Pirani v. Slack Techs.*, Inc., 445 F. Supp. 3d 367, 384 (N.D. Cal. 2020), *rev'd on other grounds sub nom. Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433 (2023).

Plaintiff's 12(a)(1) claim also has the benefit of a lower pleading standard since alleging scienter, reliance, or fraud is not required. *See In re Longfin Corp. Sec. Class Action Litig.*, 2019 WL 1569792, at *5 (S.D.N.Y. Apr. 11, 2019), *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 659 (S.D.N.Y. 2004).

## IV.   ARGUMENT

Plaintiff pleads all the elements of a claim under Section 12(a)(1) against Solana Labs. Solana Labs created the Solana blockchain, the technical backbone of Solana Securities, and it then raised money to build the Solana network through the sale of Solana Securities. Solana Labs orchestrated a comprehensive promotional and marketing campaign across various social media platforms with the

deliberate aim of portraying Solana Securities as an investment poised to appreciate in value as a result of its endeavors. Additionally, Solana Labs touted the decentralization of the Solana blockchain as a source of "value" to investors. As such, Solana Labs is a statutory seller under the Securities Act of 1933. Solana Labs' arguments to the contrary ignore persuasive authorities and mischaracterize Plaintiff's allegations.

**A.   Solana is a Statutory Seller Under Federal Securities Laws.**

Section 12(a) of the Securities Act extends liability to any entity that "offers" or "sells" an unregistered security, 15 U.S.C. § 77l(a)(1), *or* "successfully solicits [a securities] purchase, motivated at least in part by a desire to serve [its] own financial interests or those of the securities owner." *Id.*; *see also Pinter v. Dahl*, 486 U.S. 622, 646 (1988) (liability can be based on either a direct sale or a "solicitation"); *Houghton v. Leshner*, 2023 U.S. Dist. LEXIS 188539, *7 (N.D. Cal. Sept. 20, 2023) (liability under Section 12(a)(1) under the *Pinter* test when a defendant "either pass[es] title or other interest in the security directly to the buyer, or where they 'successfully solicit' someone else to buy a security motivated in part by a desire to serve their own or the security owner's financial interests.").

Solana Labs is a statutory seller under the solicitation prong of *Pinter* because it created the Solana blockchain and orchestrated the sale of Solana Securities, including on large U.S. exchanges, and thus solicited thousands of purchases by investors such as Plaintiff. *Houghton*, 2023 U.S. Dist. LEXIS 188539, at *10 ("a company's comprehensive involvement with the design, operation and monetization of a cryptocurrency enterprise was sufficient to allege statutory seller liability"); *In re Tezos Sec. Litig.*, 2018 U.S. Dist. LEXIS 157247, at *9 (N.D. Cal. Aug. 7, 2018) (defendant's "comprehensive involvement with the planning and execution" of cryptocurrency offering, including "creation of the Tezos technology, establishment of a legal entity to monetize DLS' interest in that technology, development of a platform to facilitate said monetization, and minute-to-minute oversight of the monetization process itself" show sufficient planning to constitute solicitation); *Zakino v. Ripple Labs*, 2020 WL 922815, *12 (N.D. Cal. Feb.  26, 2020) (holding that a purchaser of cryptocurrency units had standing to assert claims for unregistered securities despite not having purchased in the initial offering).

*Houghton*, *Tezos*, and *Ripple Labs* are consistent with the conclusions reached by virtually every court outside this District, including most recently in *SEC v. Coinbase*. There, in response to a motion for judgment on the pleadings brought by defendant Coinbase, the SEC demonstrated that Solana Securities were frequently purchased on the secondary markets, and have the characteristics of securities, as an example to demonstrate that Coinbase sells unregistered securities. 2024 U.S. Dist. LEXIS 56994 (S.D.N.Y. Mar. 27, 2024). The Court explained "that issuers and promoters of the Crypto-Assets — through websites, social media posts, investor materials, town halls, and other fora — repeatedly encouraged investors to purchase tokens by advertising the ways in which their technical and entrepreneurial efforts would be used to improve the value of the asset, and continued to do so long after the tokens were made available for trading on the secondary market" and "that Solana Labs touted its technical expertise in developing blockchain networks and described the efforts it would take to develop the blockchain and attract users to the technology." *Id.* at *64. The court acknowledged that Solana Labs "took steps to make SOL available on the secondary market". *Id* at *17. The court cited promotional content shared by Defendant Labs regarding its foray into the secondary market to assert that these inducements led investors in Solana Securities to reasonably view their investments as securities. *Id* at *18. ("The Solana community in the United States has been eagerly awaiting the chance to trade SOL on a U.S. exchange, and now that day has come.  SOL/USDT, SOL/USD, and SOL/BTC pairs are all open for trading on @ftx_us."); ¶ 86 (alleging similar statements).

Defendant argues that it is not a statutory seller because it did not sell SOL securities directly to Plaintiff as he purchased SOL securities on a secondary market. Motion at 8. As shown in *Ripple Labs* and in *Coinbase*, however, that a plaintiff purchased on the secondary market speaks to only one prong of the *Pinter* test. Indeed, the fact that "a purchaser bought the coins directly from the defendants or, instead, in a secondary resale transaction has no impact on whether a reasonable individual would objectively view the defendants' actions and statements as evincing a promise of profits based on their effort." *SEC v. Terraform Labs Pte. Ltd.*, 2023 U.S. Dist. LEXIS 132046, at *44 (S.D.N.Y. July 31, 2023).

**B.  Solana Labs Solicited Purchases of Solana Securities.**

To plead solicitation under Section 12(a)(1), a plaintiff can show that the defendant created the crypto asset ecosystem and monetized it by use of a coin or token, whose value depended on the strength of the network, through social media. *Houghton*, 2023 U.S. Dist. LEXIS 188539, at *10; *Tezos*, 2018 U.S. Dist. LEXIS 157247, at *9; *Ripple Labs*, 2020 U.S. Dist. LEXIS 32982, at *35; *Coinbase*, 2024 U.S. Dist. LEXIS 56994, at *64. With respect to solicitation, "any person who engaged in steps necessary to the distribution of the unregistered security is liable." *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 357-58 (S.D.N.Y. 2019).

As well as creating the Solana blockchain and issuing Solana Securities, as discussed *infra* in Section IV.A., above, Solana Labs solicited Solana Securities through its website, numerous publications, and interviews where Yakovenko and Solana Labs touted the strength of the Solana network. ¶¶ 8 ("Solana's website asserts that SOL is 'decentralized and unstoppable.'"); 9 (Yakovenko claims Solana network is decentralized); 42 ("Yakovenko claimed that the Solana blockchain could process hundreds of thousands of transactions per second. For comparison, Visa processes 1,700 transactions per second."); and 62 (Yakovenko says at a conference in November 2021 that thanks to Solana Labs the network is "faster and more reliable").[5] Solana Labs, through Yakovenko, also claimed Solana Labs was taking deflationary steps such as "burning" Solana Securities, making Solana Securities more attractive to investors. ¶¶ 6-7; *Coinbase*, 2024 U.S. Dist. LEXIS 56994, *66 (noting "public statements by Solana Labs that 'Solana transaction fees are paid in SOL and burnt (or permanently destroyed) as a deflationary mechanism to reduce the total supply and thereby maintain a healthy SOL price'").

---

[5] Defendant argues that mere "assistance" in issuing securities in insufficient, citing *In re Longfin Corp. Secs. Class Action Litig.*, 2019 U.S. Dist. LEXIS 62758, *17 (S.D.N.Y. April 11, 2019). In *Longfin*, however, the defendant did not sell develop the network for the securities, the securities, and then sell them on the open market as Solana Labs did here: "Network 1's assistance in the initial public offering and in the NASDAQ listing process did not make it a seller of Longfin shares on the open market." *Id.* Similarly, *Hollifield v. Resolute Cap. P'ners Ltd., LLC*, 2023 U.S. Dist. LEXIS 115328, 2023 WL 4291524, at *6 (C.D. Cal. May 12, 2023), is inapposite because there a defendant "hosted" seminars, dinners, and radio shows. Here, by contrast, Solana Labs developed and monetized a blockchain using Solana Securities.

Defendant argues Plaintiff does not satisfy the elements of *Pinter's* solicitation test because Plaintiff does not allege his particular purchases were solicited directly by Solana Labs. See Motion at 9. Defendant misrepresents the *Pinter* test by attempting to create privity and direct causation requirements that have been repeatedly rejected the Ninth Circuit, and other appellate courts. "The Securities Act does not distinguish between individually targeted sales efforts and broadly disseminated pitches…" *Pino*, 55 F.4th at 1258. In *Pino*, the Ninth Circuit ruled that "to conclude that their social media communications fall outside the [Securities] Act's protections would be at odds with Congress's remedial goals." 55 F.4th at 1260. Furthermore, the Eleventh Circuit recognized that "the Securities Act provides no free pass for online solicitations." *Wildes v. BitConnect Int'l PLC*, 25 F.4th at 1343 (11th Cir. 2022). *See also Arcaro v. Parks*, 143 S. Ct. 427 (2022) ("Broadly disseminated communications . . . can convey a solicitation.").[6]

In any event, Solana Labs directly solicited purchases of SOL securities itself, or through its affiliate Solana Foundation, using the @Solana Twitter account. ¶ 86. Defendant suggests that only the Solana Foundation is responsible for the tweets identified in the Complaint (Motion at 9-10), but this ignores Plaintiff's allegations.[7] Solana Labs created Solana Foundation in April 2020. ¶¶ 9 & n.3 ("On April 8th, 2020, Solana Labs transferred all IP related to the protocol and 167m SOLs to the Solana Foundation. Solana Labs plans to transfer more SOLs to the Foundation.").[8] The @Solana twitter account was created in January 2018, more than two years before Solana Foundation was created. *See* ECF No. 79-3 at 2. Plaintiff's attribution of statements of statements on the @Solana twitter handle to Solana Labs is plausible. Indeed, the SEC in *Coinbase* attributed many of these same tweets to Solana Labs. 2024 U.S. Dist. LEXIS 56994, *22-23. Moreover, Solana Labs owns 48% of

---

[6] Defendant cites *Crawford v. Glenns, Inc*., 876 F.2d 507, 510 (5th Cir. 1989) for the proposition that Plaintiff cannot plead a solicitation case if defendant never communicated directly to him, but Crawford was a Section 12(a)(2) claim and did not interpret "solicitation" for purposes of Section 12(a)(1).

[7] At least one tweet cited in the complaint is from March 24, 2020, two weeks before Solana Labs says Solana Foundation was created.

[8] Quoting from Anatoly Yakovenko, Announcing the Formation of the Solana Foundation, MEDIUM (June 7, 2020), https://medium.com/solana-labs/announcing-the-formation-of-the-solana-foundation-afde417afd73

the Solana Securities, giving it a vested interest in the promotion through the @Solana account. ¶ 58. As part of its "mission to advance the adoption of decentralized technologies as a public good (¶ 9)," Solana Foundation solicited and marketed Solana Securities to benefit Solana Labs and its owners.

In short, Solana Labs created Solana Foundation to further the adoption of the Solana network and promote Solana Securities. This is enough to constitute solicitation under the broad *Pino* test even if Solana Foundation and not Solana Labs is making the statements. *See Houghton*, 2023 U.S. Dist. LEXIS 188539, at *11 ("design and governance decisions, their efforts to successfully monetize COMP and bring it to secondary markets, and their public comments, plausibly plead solicitation"). This is especially true because many statements on the @Solana account refer to the Solana brand and blockchain generally, conflating the roles of Labs and Foundation, and specifically promote the Solana Securities developed by Solana Labs. *See* ¶ 86 ("The **Solana community** in the United States has been eagerly awaiting the chance to trade SOL on a US exchange, and now that day has come…. **Solana** & Tokocrypto are running an Earn Campaign where you can win up to 500 **SOL …** Today $40m in additional investment will flow into the **Solana ecosystem**… **Solana (SOL)** is launching on Coinbase Pro").[9]

The statements alleged by Plaintiff are merely illustrative, and not exhaustive. The SEC's actions against exchanges identify other solicitations made by Solana Labs, and the Court may take judicial notice of these allegations.

- "(a) a Solana podcast of which there have been at least 90 episodes since July 2019, with interviews of key Solana Labs management and other key personnel, including Yakovenko; (b) a YouTube channel with over 37,000 subscribers; and (c) dedicated Telegram, Twitter, Reddit, Solana Forums, Discord, GitHub, Meetup, and Weibo channels, with links to each available on Solana's website";
- "A July 28, 2019 post on Solana Labs' Medium blog in which Yakovenko stated that 'Solana ... supports upwards of 50,000 TPS' (transactions per second) 'making it the most performant blockchain and the world's first web-scale decentralized network' and

---

[9] Defendant is wrong that Plaintiff impermissibly "lumps" Solana Labs and Solana Foundation. Rule 9 does not apply, and as argued above, Rule 8 does not require Plaintiff to plead with specificity how Solana Labs directs Solana Foundation. *See Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4-5 (C.D. Cal. June 30, 2010) (specificity required for fraud under Rule 9); *Mehedi v. View, Inc.*, 2023 U.S. Dist. LEXIS 89106, *33 (N.D. Cal. May 22, 2023) (applying Rule 9 to a Section 12(a)(2) claims). Similarly, the Court's ruling in *Arcell v. Google LLC*, 2024 U.S. Dist. LEXIS 45530, *29 (N.D. Cal. Feb. 5, 2024) does not apply because Plaintiff pleads sufficient solicitation with respect to Solana Labs.

that the 'Solana team—comprised of pioneering technologists from [several high-profile technology companies]—has focused on building the tech required for Solana to function with these groundbreaking performance standards'; Solana's website statement that 'Solana is engineered for widespread, mainstream use by being energy efficient, lightning fast, and extremely inexpensive' and that '[m]any of the core Solana builders, like co-founder Anatoly Yakovenko, have a background in building cell phone networks,' which 'means that they are singularly focused on building for scalability (the ability to grow) and efficiency (the ability to get the most information across with the least amount of resources)'';

- "An April 14, 2021 post on gemini.com in which Yakovenko touted the Solana network's ability to 'support a theoretical peak capacity of 65,000 transactions per second, currently' ('around 10,000 times faster than Bitcoin, 4,000 times faster than Ethereum, and 35 times faster than Ripple—even around 2.5 times faster than Visa') and projecting that such speed would 'doubl[e] in capacity every two years with improvements in hardware and bandwidth'"; and

- "December 23, 2022 post on Solana's website marketing various 'upgrades' that Solana and its engineers would undertake, including 'turbine optimizations' introduced by the 'core engineering team,' which Yakovenko described as the 'coolest piece of technology that we built that nobody knows about.'"[10]

Next, Defendants mischaracterize the solicitations in the complaint, arguing they "simply provide information without trying to persuade anyone to purchase, and thus cannot amount to a solicitation, let alone a successful one." Motion at 11. The statements at issue did far more than "simply provide information," however. The statements at issue tout Solana Securities as investment opportunities, note what exchanges are offering them for sale, and give updates on investment developments and prizes. ¶ 86. ("win up to 500 [Solana Securities].").

Defendant attempts to inject reliance and causation requirements. Motion at 10-11. Defendants cite to *Pinter* in asserting that liability extends to "the person who successfully solicits the purchase," 486 U.S. at 647. However, the term "successfully" is used to contend that no liability exists unless "a sale has taken place," *Id* at 644. Plaintiff is not obligated to plead a specific statement that solicited his purchase. *Pino*, 55 F.4th at 1260 ("Reliance is not an element."). Defendant attempts to directly equate solicitation and causation. Motion at 10 (contending Plaintiff must show Solana Labs "solicited, i.e., caused, Plaintiff's purchase"). This is flat wrong. *Pinter*, 486 U.S. at 652 ("[N]o congressional intent to incorporate tort law doctrines of reliance and causation into § 12[(a)](1) emerges from the language or the legislative history of the statute."). Accordingly, Defendants' contention that Plaintiff does not tie any specific tweet to his purchases on Exodus (Motion at 11) are unavailing. What matters is that

---

[10] *S.E.C. v. Binance Holdings Limited, et al.*, Case No. 23-cv-1599 (D.D.C.), ECF No. 1 at ¶¶ 375-76.

1  Plaintiff ties Solana Labs' efforts to list Solana Securities on exchanges such as Coinbase, FTX, and
2  other major exchanges with purchases by retail investors such as him. ¶¶ 82-86.

3       Defendant questions the timing of the tweets in the complaint and Plaintiff's purchases. But
4  neither causation nor privity is required for solicitation. *See Pino*, 55 F.4th at 1260 ("the Supreme
5  Court interpreted the meaning of 'seller' under § 12 to include more than mere owners to encompass
6  those who engage in solicitation."); *Coinbase*, 2024 U.S. Dist. LEXIS 56994, at *45 ("there need not
7  be a formal contract between transacting parties for an investment contract to exist under *Howey*").  In
8  *Pino*, the Ninth Circuit concluded that social media posts generally soliciting sales can be solicitations
9  under Section 12 even if the defendant did not directly or actively target the particular plaintiff.  55
10 F.4th at 1256, 1258. Furthermore, the Eleventh Circuit concluded that "[u]nder the text" solicitation
11 "need not be 'personal' to trigger liability." *Wildes v*, 25 F.4th at 1345-46. Questions of whether
12 Plaintiff viewed the quoted tweets or when he viewed them is irrelevant to solicitation.

13      Defendant similarly misapplies the solicitation case law by contending that "Plaintiff fails to
14 plead that Labs had a financial interest in his purchase." Motion at 12. Solana Labs made hundreds of
15 millions of dollars selling Solana Securities. ¶ 81. Defendant does not dispute that they were
16 "motivated at least in part by a desire to serve [their] own financial interests." *Pinter*, 486 U.S. at 647.
17 The Court should reject Defendant's attempt to backdoor yet another privity requirement to solicitation
18 by requiring atomized allegations of profit with respect to each purchase of an unregistered security.

19      Lastly, Defendant attempts to minimize the role of Solana Labs in securities sales, contending
20 that even playing a "major role in setting up a venture" is not enough to impose liability. Motion at 13
21 (quoting *Capri v. Murphy*, 856 F.2d 473, 478 (2d Cir. 1988)). Solana Securities were developed by
22 Solana Labs, for the benefit of Solana Labs, and were marketed with the assistance of entities Solana
23 Labs created such as Solana Foundation.[11] It is simply inconceivable that anyone other than Solana
24 Labs has a larger role in soliciting Solana Securities, and in any event, factual disputes about the degree
25 of Solana Labs' participation in solicitation cannot be resolved on the pleadings.

26

27 [11] In *Murphy*, a private equity fund "a major role in setting up the coal-mining venture," but another
28 separate legal entity issued the securities and primarily marketed them. 856 F.2d at 478. Here,
   however, Solana Labs created and marketed Solana Securities soup to nuts.

**C.  Liability Attaches to Solana Labs' Solicitation of Sales Outside of Solana ICO.**

Defendant argues that Plaintiff failed to allege he purchased in the Solana Securities ICO. Motion at 13-16. This contention fails for the same reasons outlined in Section IV.A., above: whether Plaintiff purchased Solana Securities in an ICO or on the secondary market makes no difference in whether Plaintiff had an expectation of profit.

The court in *Terraform* rejected the contention that only unregistered securities sold in an ICO can be the basis of liability for selling unregistered securities: "It may also be mentioned that the Court declines to draw a distinction between these coins based on their manner of sale, such that coins sold directly to institutional investors are considered securities and those sold through secondary market transactions to retail investors are not." 2023 U.S. Dist. LEXIS 132046, at *44. The *Coinbase* court also rejected this contention in holding that exchange-based purchases of Solana Securities constitutes a basis for Section 12(a)(1) liability against Coinbase. 2024 U.S. Dist. LEXIS 56994, at *12-13 ("Indeed, to increase the demand for and value of their tokens, and correspondingly to drive secondary trading, crypto-asset issuers often list their tokens on trading platforms — like the Coinbase Platform discussed infra — and promote the token's blockchain to retail investors well after the initial coin offering.").

Defendant lacks any authority that even suggests the Court may dismiss Plaintiff's complaint for failing to allege a purchase in an ICO. *Gustafson v. Alloyd Co.*, 513 U.S. 561, 584 (1995), concerned interpretation under Section 12(a)(2) of the term "prospectus," which does not appear in Section 12(a)(1). *Id.* ("the word 'prospectus' is a term of art referring to a document that describes a public offering of securities by an issuer or controlling shareholder."). Plaintiff is not suing for any false claims in a prospectus.

The premise of Defendant's arguments regarding Section 12(a)(2) fail because Section 12(a)(1) does not limit liability to a "prospectus." Thus, contrary to Defendant's contention (Motion at 13), *Moore v. Kayport Package Express*, 885 F.2d 531 (9th Cir. 1989) does not hold, or even suggest, that liability under Section 12(a)(1) is limited to initial public offerings. *Moore* does not address whether liability under Section 12(a)(1) is limited to initial offerings, but simply notes the common language:

1    "We begin our analysis of section 12(2) in the same way, and note that pertinent language which is

2    present in and applicable to section 12(2) – 'offers or sells' and 'purchasing such security from him' -

3    - appears by identical language which is present in and applicable to section 12(1)." *Id*. at 536. [12] What

4    limits liability in Section 12(a)(2) to initial offerings is the use of an additional term, "prospectus,"

5    that is qualified in Section 12(a)(1) by the phrase "or otherwise." Defendant concedes that

6    Section12(a)(2) is constructed dispositively differently by limiting liability to "prospectus" but argues

7    that term "or otherwise" should be limited to prospectus-like communications in an initial offering.

8    Motion at 16. The Court should reject Defendant's attempt to limit or modify the phrase "or

9    otherwise," as it is at odds with both the plain terms of the statute, which is broadly framed, and the

10   policy to construe "solicitation" broadly under Section 12(a)(1).[13] *See Pino*, 55 F.4th at 1258 ("nothing

11   in the Act indicates that mass communications, directed to multiple potential purchasers at once, fall

12   outside the Act's protections"). Courts construe the phrase "or otherwise" broadly under the Securities

13   Act to effect is remedial purpose. *See Shults v. Henderson*, 625 F. Supp. 1419, 1423 (W.D.N.Y. 1986)

14   (the phrase "or otherwise" is to be "broadly construed to properly effectuate the purpose of the Act"

15   for purposes of Section 22 of the Securities Act).

16          Similarly, Defendant cites several cases that are irrelevant because they concern the distinct

17   issue of whether a securities offering was a "public offering," as opposed to a "private" offering, an

18   issue that is not present here. *See  Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, 1998 U.S. Dist.

19   LEXIS 23473, *11 (N.D. Cal. Sept. 14, 1998) (alleged "initial public offering" was not a "public

20   offering" because it was a private placement); *Holland v. GEXA Corp.*, 161 F. App'x 364, 366 (5th

21

---

22   [12]   Defendants' remaining authorities are inapplicable because they rest of the false premise that
     Section 12(a)(1) and 12(a)(2) use "parallel language." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d
23   628, 635 (3d Cir. 1989); *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 691 (3d Cir. 1991);
     *Lewis v. Fresne*, 252 F.3d 352, 357 n.4 (5th Cir. 2001).
24   [13] *Begay v. United States*, 553 U.S. 137, 144 (2008), cited by Defendant, has no application here, as it
     applies "or otherwise" in the context of a criminal statute. The Supreme Court provided a narrow
25   construction to a criminal statute given "the special danger created when a particular type of offender-
     -a violent criminal or drug trafficker--possesses a gun," out of concerns for due process and leniency,
26   but the Ninth Circuit in *Pino* held that broad terms of the Securities Act should have a broad
     construction. Moreover, the phrase "or otherwise" appears in the statute in *Begay* following several
27   examples, whereas the phrase here governs only one term, suggesting a broader construction.

28

Cir. 2005) (concerning a "fraudulent private placement memoranda").[14] Plaintiff certainly purchased Solana Securities through a "public offering," as he purchased in the open market on a crypto asset exchange. ¶¶ 103-04; ECF Nos. 1 at 39-40 (detailing Plaintiff's purchases at market prices). Thus, Defendant's contention that Plaintiff did not purchase in a public offering fails because Plaintiff purchased Solana Securities on the open market.[15]

Finally, Defendant falls back on the policy of avoiding "'vast additional liabilities' for sellers on the secondary market," and creating a "coherent" regulatory scheme. Motion at 15. These concerns cannot trump the plain language of Section 12(a)(1), which does not limit liability to initial offerings. Moreover, in the context of ICOs of crypto assets such as Solana Securities, the policy advanced by Defendant would be disastrous. Defendant made a small ICO of less than 2% of Solana Securities, selling them for pennies to insiders who could control the marketing and development of Solana blockchain. ¶¶ 52, 58-59. Were the Court to hold that only purchasers who made vast sums of money purchasing Solana Securities in the IPO and then dumped their shares on retail investors such as Plaintiff had standing to sue, private enforcement of federal securities laws would be thwarted. The Court should not reward Solana Labs by insulating it from liability for selling shares to insiders at cut-rate prices and dumping them on the public.

**D.  Plaintiff Pleads a Domestic Transaction.**

Defendant raises *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), and the presumption against extraterritorial application of securities laws. Under the Ninth Circuit's

---

[14] *Alpha Mgmt. Inc. v. Last Atlantis Cap. Mgmt., LLC*, 2012 WL 5389734, at *3 (N.D. Ill. Nov. 2, 2012) (same); *Silver Top Ltd. v. Monterey Indus. Inc.*, 1995 WL 20266, at *4 (S.D.N.Y. Jan. 19, 1995) (same); *Feinberg v. Leighton*, 1987 WL 6147, at *15 (S.D.N.Y. Jan. 30, 1987) (same).

[15] Defendant relies on inapplicable case law for the requirement that a plaintiff purchase pursuant to a public offering, applying the inapposite standard of Section 12(a)(2). *See Cullen v. Ryvyl Inc.*, 2024 U.S. Dist. LEXIS 36420, *24 (S.D. Cal. Mar. 1, 2024) (plaintiff's allegations were "insufficient to allege Section 12(a)(2) standing"); *In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 976 (N.D. Cal. 2010) ("Section 12(a)(2) requires a plaintiff to plead and prove that it purchased a security directly from the issuer as part of the initial offering, rather than in the secondary market").

"irrevocable liability" test, the location where the seller paid for the securities and received them is presumably the location for the transaction. *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 949 (9th Cir. 2017) ("Looking to where purchasers incurred the liability to take and pay for securities, and where sellers incurred the liability to deliver securities"). To defeat *Morrison*, plaintiff "must allege facts suggesting that irrevocable liability was incurred or title was transferred within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012). "[I]t is sufficient for a plaintiff to allege facts leading to the plausible inference that the parties incurred irrevocable liability within the United States[.]" *Id*. Such allegations may include "facts concerning the formation of the contracts, the placement of purchase orders, the passing of title, or the exchange of money." *Id*. at 70. As confirmed by the Second Circuit, purchasing crypto assets from smartphone creates irrevocable liability in the place where the customer placed the order. *Williams v. Binance*, 96 F.4th 129, 139 (2d Cir. 2024) ("[I]rrevocable liability may attach between different parties and intermediaries in a securities transaction at more than one transactional step," and the "submi[ssion of] purchase offers" is one of those steps).

Plaintiff, a California resident, pleads he purchased Solana Securities in California. ¶ 15. Solana Labs, which developed and issued the securities, is based in California. ¶ 16. The platform plaintiff used to purchase Solana Securities is based in Omaha, Nebraska. Plaintiff used a feature on the Exodus application where a transaction becomes irrevocable once the user taps the "Swap Now" feature on his mobile phone application. *See* RJN Ex. 1.

As in *Williams*, Exodus has no physical location and matches purchase orders of users on its platform. Thus irrevocable liability attaches where the plaintiff placed his order. The entire relevant series of events occurred in California, including the purchase and transfer of Solana Securities, by a user-initiated application: Plaintiff received the offer to purchase on his mobile phone; paid for the Solana Securities on his mobile phone; and the Solana Securities were delivered to him through a wallet he created and maintained in California. *See* RJN Ex. 1. Delivery is automatic and there is no button to cancel the swap:

1
2
3
4
5
6
7
8
9
10
11



12      Defendant may not invoke *Morrison* by speculating on an otherwise purely domestic

13  transaction. *Tezos*, 2018 U.S. Dist. LEXIS 157247, at *24-25 ("Try as the Foundation might to argue

14  that all critical aspects of the sale occurred outside of the United States, the realities of the transaction

15  (at least as alleged by Anvari) belie this conclusion. Anvari participated in the transaction from this

16  country. He did so by using an interactive website that was: (a) hosted on a server in Arizona and; (b)

17  run primarily by Arthur Breitman in California.").[16]

18      Defendants' attempts to introduce facts beyond the pleadings to inject doubt into this domestic

19  transaction should be rejected. Indeed, Defendants invert *Morrison* by seeking to apply a presumption

20  of foreign involvement in a purely domestic transaction and invent a foreign dimension to Plaintiff's

21  California purchase. Nothing in *Morrison* remotely suggests that a foreign nexus must be disproven

22  or disclaimed on the pleadings. *Mexicanos v. Hewlett-Packard Co.*, 2015 U.S. Dist. LEXIS 118725,

23
24
25

---

26  [16] Here it is irrelevant who the counter party to Plaintiff's transaction is, as irrevocable lability attaches

27  in California, at the push of a button. Nothing in the Exodus terms and conditions suggest a user would know who a counter party would be. Similarly, the location of servers is irrelevant because the transactions described in Exhibit 1 to the RJN appear to occur "peer to peer" over decentralized

28  servers, such as those maintained in the U.S. by Exodus and Plaintiff's internet provider.

1    at *25 (N.D. Cal. July 13, 2015) (internal citation omitted).[17] First, Defendants argue that Plaintiff fails

2    to plead the specifics of his purchase. But Defendant concedes Plaintiff identifies his residence, the

3    platform, and the Solana Securities he purchased. Motion at 18 (citing ECF No. 1 at 38). In *Stoyas*,

4    plaintiffs' claims involved ADR certificates for a Japanese company, so additional details were

5    necessary, but not here. In any event, Plaintiff seeks judicial notice of the feature of the Exodus

6    application he used to purchase Solana Securities. Ex. 1 to RJN. Second, Defendant argues that Exodus

7    derives "97%" of its revenues from foreign sources (Motion at 18), but Defendants' speculation as to

8    a foreign connection do not give rise to the *Morrison* presumption against extraterritorial application.[18]

9    Even were Defendants correct that most of Exodus' revenues came from outside the United States,

10   that is consistent with Exodus also being used for transactions with domestic connections as it was

11   here.

12       **E.  Plaintiff's Claims Are Timely and All Solicitation Is Actionable.**

13       In a footnote, Defendants contend that any action by Solana Labs prior to July 1, 2021, cannot

14   be the basis of a solicitation claim because they would be barred by the statute of limitations. Motion

15   at 12, n.13. Defendant does not contend, and cannot contend, that Plaintiff's claims are untimely. The

16   statute of limitations for claims under Section 12(a)(1) are based on Plaintiff's purchases, and the

17   analysis with respect to Solana Labs' conduct would be based on the three-year statute of repose. *See*

18

19   [17] *See also Mori v. Saito*, 2013 U.S. Dist. LEXIS 209251, at *17 n.10 (S.D.N.Y. Mar. 29, 2013) ("The

20   Court analyzes plaintiff's pleadings on the second prong of *Morrison*, which requires pleading the
     location of the transaction in issue[,]" but notably, does not require rebutting foreign contacts.). *Banco*

21   *Safra S.A.-Cayman Islands Branch v. Samarco Mineracao S.A.*, 849 Fed. App'x 289, 292-93 (2d Cir.
     2021) (Holding "[d]etailed factual allegations describing contract formation in the United States will

22   typically satisfy the domestic transaction test," yet requiring no disclaimer of foreign contacts under

23   *Morrison*.)

24   [18] Defendant cites *Williams v. Block One*, 2022 U.S. Dist. LEXIS 171550, *23 (S.D.N.Y. Aug. 13,
     2022) for the proposition that plaintiff must plead "transaction by transaction" whether his transactions

25   had a foreign connection. Motion at 18 n.19. Plaintiff pleads no foreign connection, unlike in *Williams*,
     where "the Court is left only with the knowledge that some of Lead Plaintiffs purchases were domestic

26   and some were foreign."

27

28

*Williams*, 96 F.4th at 142 ("It would make little sense to begin the running of Section 12's statute of limitations before a plaintiff made the purchase allowing her to sue."). The statute of repose provides that any conduct within its reach is actionable, so long as the statute of limitations has not run. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1130 (9th Cir. 2005) ("Although the distinction between statutes of limitations and statutes of repose is often blurred, statutes of limitations differ from statutes of repose because the former 'bars plaintiff[s] from bringing an already accrued claim after a specified period of time,' whereas the latter 'terminates a right of action after a specific time, even if the injury has not yet occurred.'"). Accordingly, under the statute of repose, every tweet falls within the three-year period and may be the basis of Plaintiff's timely claims.

### F. Leave To Amend

Should the Court determine that any of the federal or state law claims in the CAC have been insufficiently pled, Plaintiff respectfully requests leave to amend. Rule 15 of the Federal Rules of Civil Procedure provides that the court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This Court has recognized that "the underlying purpose of Rule 15 is to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lutge v. Harrington*, 2022 U.S. Dist. LEXIS 236516 at *3 (N.D. Cal. Dec. 20, 2022) (Thompson, J.) (*quoting Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

Any of the defects that Defendant complains of can be cured with an amended pleading. *See Stoyas*, 896 F.3d 933 (9th Cir. 2018) (reversing dismissal and giving plaintiffs leave to amend to allege where the Toshiba ADRs were purchased). Moreover, it would not be futile for Plaintiffs to attempt to cure any deficiencies that the Court determines exist. Two months after Plaintiff filed the CAC, the *Coinbase* court acknowledged SOL tokens are securities. *Coinbase*, 2024 U.S. Dist. LEXIS 56994 at *3, demonstrating that this Action has merit.

### V.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant Solana Lab's motion to dismiss in its entirety or grant Plaintiff leave to amend to cure any deficiencies with the allegations.

Dated: May 13, 2024.                   Respectfully submitted,

                                       */s/ Matthew S. Weiler*
                                       Todd M. Schneider (SBN 158253)
                                       Matthew S. Weiler (SBN 236052)
                                       Sunny S. Sarkis (SBN 258073)
                                       **SCHNEIDER WALLACE**
                                       **COTTRELL KONECKY LLP**
                                       2000 Powell Street, Suite 1400
                                       Emeryville, California 94608
                                       Telephone: (415) 421-7100
                                       Email: tschneider@schneiderwallace.com
                                       Email: mweiler@schneiderwallace.com
                                       Email: ssarkis@schneiderwallace.com

                                       Jason H. Kim (SBN 220279)
                                       **SCHNEIDER WALLACE**
                                       **COTTRELL KONECKY LLP**
                                       300 S. Grand Avenue, Suite 2700
                                       Los Angeles, California 90071
                                       Telephone: (415) 421-7100
                                       Email: jkim@schneiderwallace.com

                                       *Attorneys for Plaintiffs*