LATHAM & WATKINS LLP
Matthew Rawlinson (CA Bar No. 231890)
 *matt.rawlinson@lw.com*
140 Scott Drive
Menlo Park, CA 94025
Telephone: +1.650.328.4600

Morgan E. Whitworth (CA Bar No. 304907)
 *morgan.whitworth@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone: +1.415.391.0600

Susan E. Engel (*pro hac vice*)
 *susan.engel.@lw.com*
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200

*Attorneys for Defendant Solana Labs, Inc.*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| MARK YOUNG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOLANA LABS, INC.; MULTICOIN CAPITAL MANAGEMENT LLC; KYLE SAMANI,<br><br>Defendants. | Case No. 3:22-cv-03912-RFL<br><br>**DEFENDANT SOLANA LABS, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Date: August 6, 2024<br>Time: 10:00 a.m.<br>Court: Courtroom 15 – 18th Floor<br>Judge: Hon. Rita F. Lin |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ....................................................................................................................... 2

    A.     *SEC v. Coinbase* Is Irrelevant To This Motion ........................................................ 2

    B.     Plaintiff Fails To Plead A Solicitation Claim Against Labs ................................. 3

        1.     Plaintiff Fails To Adequately Plead A Soliciting Statement ..................... 3

        2.     Plaintiff Fails To Adequately Plead A Successful Solicitation ................................................................................................. 6

        3.     Plaintiff Fails To Adequately Plead Labs Had A Financial Interest ........................................................................................................ 7

    C.     Plaintiff Fails To Plead That He Purchased In A Public Offering ........................ 7

    D.     Plaintiff Fails To Plead That He Purchased In A Domestic Transaction .............................................................................................................. 9

III. CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**

*Balestra v. ATBCOIN LLC*,
  380 F. Supp. 3d 340 (S.D.N.Y. 2019) ............................................................................... 3, 4

*Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineraco S.A.*,
  849 F. App'x 289 (2d Cir. 2021) ............................................................................................ 9

*Begay v. United States*,
  553 U.S. 137 (2008) ................................................................................................................ 8

*Capri v. Murphy*,
  856 F.2d 473 (2d Cir. 1988) .................................................................................................... 3

*Chan v. Soc'y Expeditions, Inc.*,
  123 F.3d 1287 (9th Cir. 1997) ................................................................................................ 5

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014) .................................................................................................... 9

*Flynn v. Sientra, Inc.*,
  2016 WL 3360676 (C.D. Cal. June 9, 2016) ......................................................................... 8

*Gustafson v. Alloyd Co.*,
  513 U.S. 561 (1995) ............................................................................................................ 1, 8

*Houghton v. Leshner*,
  2023 WL 6826814 (N.D. Cal. Sept. 20, 2023) ...................................................................... 4

*In re Genius Brands Int'l Inc. Sec. Litig.*,
  97 F.4th 1171 (9th Cir. 2024) ................................................................................................ 3

*In re Tezos Sec. Litig.*,
  2018 WL 4293341 (N.D. Cal. Aug. 7, 2018) ................................................................... 4, 10

*In re Zinc Antitrust Litig.*,
  155 F. Supp. 3d 337 (S.D.N.Y. 2016) .................................................................................... 5

*Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*,
  238 F.3d 363 (5th Cir. 2001) .................................................................................................. 4

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ................................................................................................................ 6

*Mehedi v. View, Inc.*,
  2023 WL 3592098 (N.D. Cal. May 22, 2023) ....................................................................... 5

*Mexicanos v. Hewlett-Packard Co.*,
  2015 WL 9592606 (N.D. Cal. July 13, 2015) ........................................................................ 9

*Mori v. Saito*,
  2013 WL 1736527 (S.D.N.Y. Apr. 19, 2013) ........................................................................ 9

*Pino v. Cardone Cap., LLC*,
  55 F.4th 1253 (9th Cir. 2022) .................................................................................. 5, 6, 7

*Pinter v. Dahl*,
  486 U.S. 622 (1988) .......................................................................................................passim

*Risley v. Universal Navigation Inc.*,
  690 F. Supp. 3d 195 (S.D.N.Y. 2023), *appeal filed*, No. 23-1340 (2d Cir. Sept.
  28, 2023) ................................................................................................................... 3, 5

*Ryder Int'l Corp. v. First Am. Nat'l Bank*,
  943 F.2d 1521 (11th Cir. 1991) .................................................................................. 6

*SEC v. Chinese Consol. Benev. Ass'n*,
  120 F.2d 738 (2d Cir. 1941) ....................................................................................... 4

*SEC v. Coinbase*,
  2024 WL 1304037 (S.D.N.Y. Mar. 27, 2024) .................................................... 1, 2, 3, 8

*SEC v. Tecumseh Holdings Corp.*,
  2009 WL 4975263 (S.D.N.Y. Dec. 22, 2009) ............................................................ 4

*SEC v. Terraform Labs PTE. Ltd.*,
  684 F. Supp. 3d 170 (S.D.N.Y. 2023) ......................................................................... 7

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946) ..................................................................................................passim

*Shaw v. Dig. Equip. Corp.*,
  82 F.3d 1194 (1st Cir. 1996) ....................................................................................... 4

*Shults v. Henderson*,
  625 F. Supp. 1419 (W.D.N.Y. 1986) .......................................................................... 9

*Slack Techs., LLC v. Pirani*,
  598 U.S. 759 (2023) .................................................................................................... 9

*Sollberger v. Wachovia Sec., LLC*,
  2010 WL 2674456 (C.D. Cal. June 30, 2010) ............................................................ 5

*Stoyas v. Toshiba Corp.*,
  896 F.3d 933 (9th Cir. 2018) ...................................................................................... 9

*Tamraz v. Bakotic Pathology Assocs., LLC*,
  2022 WL 16985001 (S.D. Cal. Nov. 16, 2022) .......................................................... 5

*Wildes v. BitConnect Int'l PLC*,
  25 F.4th 1341 (11th Cir. 2022) ................................................................................... 5

*Williams v. Binance*,
  96 F.4th 129 (2d Cir. 2024) ........................................................................................ 10

*Wilson v. Saintine Exploration & Drilling Corp.*,
  872 F.2d 1124 (2d Cir. 1989) ..................................................................................... 7

*Zakinov v. Ripple Labs*,
  2020 WL 922815 (N.D. Cal. Feb. 26, 2020) ........................................................................ 8

**STATUTES**

15 U.S.C. § 77e(a) ............................................................................................................................. 8

15 U.S.C. § 77e(c) ............................................................................................................................. 8

15 U.S.C. § 77l(a)(1) .......................................................................................................................... 8

15 U.S.C. § 77l(a)(2) .......................................................................................................................... 8

15 U.S.C. § 78u–4(b)(2) .................................................................................................................... 4

**RULES**

Federal Rule of Civil Procedure 8(a) ................................................................................................. 5

Federal Rule of Civil Procedure 9(b) ................................................................................................. 5

## I. INTRODUCTION

In his Opposition ("Opp."), Plaintiff admits Labs did not pass title to any SOL tokens to him and concedes his state-law claims must be dismissed. Opp. 1 n.2, 7. All that remains against Labs is Plaintiff's Section 12 solicitation theory. For that theory, Plaintiff relies primarily on *SEC v. Coinbase*, 2024 WL 1304037 (S.D.N.Y. Mar. 27, 2024), even though *Coinbase* did not involve a Section 12 claim, and instead addressed a question that Plaintiff concedes is not at issue on this motion: whether transactions involving certain tokens, including SOL, are securities transactions under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946). Not surprisingly, *Coinbase* does not save Plaintiff's claim, which should be dismissed for three independent reasons.

First, Plaintiff's solicitation theory—that Labs solicited his purchase of SOL tokens by creating the Solana blockchain, selling SOL tokens in a Dutch Auction, and then marketing the blockchain and token—fails. Plaintiff admittedly did not purchase in Labs' only public sale, and he does not sufficiently plead that Labs urged Plaintiff to purchase SOL tokens, that Labs did so successfully, or that Labs financially benefited from his purchase—deficits that each independently defeat the claim.

Second, Plaintiff does not plead that he purchased in a public offering. As explained in *Gustafson v. Alloyd Co.*, "only public offerings by an issuer of a security, or by controlling shareholders of an issuer, require the preparation and filing of registration statements" and a prospectus. 513 U.S. 561, 569 (1995). Because Section 12(a)(1) reaches only sales made through a "prospectus" or prospectus-like document, a plaintiff must have *purchased from* an issuer or controlling shareholder to have standing to sue. Plaintiff's counterargument—that, unless Section 12 is construed broadly, plaintiffs will have no remedy for fraud—is belied by the fact that he does not allege any fraud and badly misunderstands the division of labor between the Securities Act of 1933 ("Securities Act")—which regulates public securities offerings—and the Securities and Exchange Act of 1934 ("Exchange Act")—which regulates secondary market transactions.

Third, Plaintiff does not come close to meeting his burden to plead a domestic transaction. The AC is devoid of any allegations related to domesticity at all, which alone requires dismissal. Nor can Plaintiff cure the deficiency, as he points to no facts suggesting that

he incurred irrevocable liability in the U.S. To the contrary, he admits that the vehicle through which he purchased, Exodus, is a "decentralized platform that does not appear to rely on centrally maintained servers" and he is not "aware" of the location of his counterparty, Opp. 4-5—*i.e.*, he cannot amend his pleading to establish a U.S. nexus. The AC should be dismissed.

## II.     ARGUMENT

### A.     *SEC v. Coinbase* Is Irrelevant To This Motion

Plaintiff argues that in *Coinbase*, "a federal court in New York considered and rejected many of the same arguments . . . Labs makes here." Opp. 1-2; *see also id.* at 8-10, 13-14, 20. That is incorrect. *Coinbase* did not involve a Section 12 claim and so did not address any of the questions presented here, including whether Labs is a statutory seller under Section 12. Rather, *Coinbase* held—on a motion for judgment on the pleadings—that the SEC had sufficiently alleged that certain transactions on Coinbase's platform could be securities transactions under the *Howey* test. *Coinbase*, 2024 WL 1304037, at *23, 26, 33.[1]

To the extent Plaintiff suggests that *Coinbase also* held that Labs solicited purchases of SOL tokens under Section 12, Opp. 8, he is wrong. *Coinbase* found sufficient—at the pleading stage—allegations that reasonable investors would "believe they could earn a return on their investment [in SOL tokens] solely from the efforts of others." 2024 WL 1304037, at *22. But the *Howey* security question in *Coinbase* is entirely distinct from the *Pinter* solicitation question here. As the Supreme Court explained in *Pinter v. Dahl*, Section 12 only reaches a person who "urges another to make a securities purchase" and receives a "personal financial benefit from the sale." 486 U.S. 622, 647, 654-55 (1988); Labs MTD 12. Indeed, the same district court that decided *Coinbase* dismissed Section 12 claims in another case because statements touting the benefits of a crypto platform—not a particular token available on that platform—are "too attenuated" from plaintiffs' token purchases to be solicitations and, independently, because

---

[1] Based on its *Howey* analysis, *Coinbase* held that the Exchange Act required Coinbase to register as an exchange, a broker, and a clearing agency. 2024 WL 1304037, at *7-8, 26. The court also held that Coinbase allegedly violated Section 5 of the Securities Act by offering and selling a "Staking Program" to users without registering it as a security. *Id.* at *26-33. Coinbase's motion to certify this ruling for interlocutory appeal is pending. Motion for Leave to Appeal, *SEC v. Coinbase*, 23 Civ. 4738 (S.D.N.Y. Apr. 12, 2024), Dkt. 110.

plaintiffs did not plead "that the alleged solicitation was successful." *Risley v. Universal Navigation Inc.*, 690 F. Supp. 3d 195, 222 (S.D.N.Y. 2023), *appeal filed*, No. 23-1340 (2d Cir. Sept. 28, 2023).

Plaintiff admits that the *Howey* question of whether transactions in "SOL tokens are securities" transactions is *not* before this Court, Opp. 1-3; Labs Br. 7 n.10, yet he repeatedly falls back on *Coinbase*'s *Howey* discussion as the reason why his claims pass muster. These arguments are non-sequiturs. *Coinbase* does not fix the AC's fatal flaws.

### B. Plaintiff Fails To Plead A Solicitation Claim Against Labs

Plaintiff admits that Labs did not pass title to him, but claims that Labs solicited purchases of SOL tokens by "creat[ing a] crypto asset ecosystem and monetiz[ing] it," and then touting the Solana blockchain's strength. Opp. 7-9. Plaintiff's solicitation theory fails for three independent reasons: it does not sufficiently allege (1) a solicitation by Labs; (2) that an alleged solicitation was successful; or (3) that Labs financially benefited from Plaintiff's purchase.

#### 1. Plaintiff Fails To Adequately Plead A Soliciting Statement

The threshold Section 12 question is whether Labs "'petition[ed],' 'entice[d],' 'lure[d]' or 'urge[d]' another to purchase" SOL tokens. *In re Genius Brands Int'l Inc. Sec. Litig.*, 97 F.4th 1171, 1182 (9th Cir. 2024). As the Supreme Court explained, Plaintiff must allege that Labs "request[ed] value in exchange for" SOL tokens. *Pinter*, 486 U.S. at 647. Under this standard, Labs' development of a blockchain and purported "efforts to list [SOL tokens]" are not solicitations. Opp. 12-13. Indeed, they do not involve communications at all, let alone communications requesting value for a token. Instead, they are preliminary steps that form part of the "surrounding circumstances" of a plaintiff's subsequent transaction. *Pinter*, 486 U.S. at 651; *Capri v. Murphy*, 856 F.2d 473, 478-79 (2d Cir. 1988) ("play[ing] a major role in setting up [a] venture" is insufficient); Labs MTD 10 n.12.

Solicitation liability does not, as Plaintiff suggests, attach to any "person who engaged in steps necessary to the distribution of the unregistered security." Opp. 9.[2] Rather, *Pinter* squarely

---

[2] Plaintiff's only authority for his "steps necessary to the distribution" test for solicitation is *Balestra v. ATBCOIN LLC*, which does not help him because it involved a plaintiff who

1 rejected a solicitation liability standard that, just like Plaintiff's, would reach anyone "whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place." 486 U.S. at 649. As courts have recognized, issuers do not incur solicitation liability under Section 12 for every subsequent sale of their securities. Rather, when issuers enlist underwriters to distribute their securities, an issuer is only liable for solicitation if it acts "in the manner of a broker or vendor's agent." *Shaw v. Dig. Equip. Corp.*, 82 F.3d 1194, 1215 (1st Cir. 1996), *superseded by statute on other grounds* 15 U.S.C. § 78u–4(b)(2); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 370 (5th Cir. 2001) (plaintiff must show "issuer's role was not the usual one" in firm commitment underwriting).

Plaintiff's cited authority reinforces the point. Opp. 7. Plaintiff relies on cases where defendants allegedly solicited a plaintiff's purchase because they promoted, oversaw, and directly profited from a buyer's purchase in an issuer's *initial coin offering*, *In re Tezos Sec. Litig.*, 2018 WL 4293341, at *2-3 (N.D. Cal. Aug. 7, 2018), or where defendants allegedly paid for the "Coinbase Earn" advertisements through which the plaintiffs directly obtained tokens, *Houghton v. Leshner*, 2023 WL 6826814, at *4-5 (N.D. Cal. Sept. 20, 2023). Neither decision holds that creating a blockchain, issuing a token, or assisting in its listing renders a defendant liable for every subsequent sale on the secondary market.

That leaves Plaintiff's theory based on social media statements. AC ¶ 86; *see also* Opp. 9, 11-12 (pointing to additional statements not alleged to be solicitations in the AC). These statements provide no basis for Plaintiff's solicitation claim for two reasons. *First*, the only statements *alleged* to be solicitations are tweets from the "@solana Twitter account" that has long been maintained by the *Foundation*, not *Labs*. AC ¶ 86. Plaintiff argues that Labs must be responsible for the @solana account because the account was activated before the Foundation's creation in April 2020. Opp. 10 & n.7. But the AC alleges—and Plaintiff does not dispute—that

---

purchased in an initial coin offering and defendants who personally "publiciz[ed]" and "directly benefit[ed]" from the offering. 380 F. Supp. 3d 340, 357-58 (S.D.N.Y. 2019). *Balestra* also mistakenly quotes a Section 5 case regarding liability for offers or sales that does not consider Section 12's "purchas[e] . . . from" requirement. *Id.* (citing *SEC v. Tecumseh Holdings Corp.*, 2009 WL 4975263, at *3 (S.D.N.Y. Dec. 22, 2009) (quoting *SEC v. Chinese Consol. Benev. Ass'n*, 120 F.2d 738, 741 (2d Cir. 1941))).

for more than a year before Plaintiff's purchases (*i.e.*, since July 7, 2020), @solana tweets have been attributed to the Foundation, long before his purchase. AC ¶ 86. Plaintiff alleges no facts supporting any inference that stale tweets from the @solana account solicited his purchase.

Plaintiff insists that Labs is responsible for the more recent @solana tweets too because Labs "created" the Foundation. Opp. 10. This argument ignores that "[c]orporate entities are presumed to have separate existences." *Tamraz v. Bakotic Pathology Assocs., LLC*, 2022 WL 16985001, at *3 (S.D. Cal. Nov. 16, 2022). It is not enough to plead that "separate legal entities are 'sometimes collectively referred to' by a shared generic name." *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016). Rather, a plaintiff must plausibly plead that one entity "exercise[s] total domination" over another. *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997). Plaintiff pleads nothing of the sort with respect to Labs and the Foundation. His failure to tie Labs to these statements violates Rule 8(a)'s requirement to "clear[ly] state[]" "what the defendants allegedly did wrong." *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010).[3]

*Second*, and independently, regardless of whoever made them, none of the statements on which Plaintiff now relies—whether in tweets, podcasts, or blog posts—are soliciting statements. At the outset, he points in his Opposition to statements that he did not allege were solicitations, including, for example, Yakovenko's claim about the Solana blockchain processing speed. Opp. 9; *but see* AC ¶ 86. Even if the court considers his argument (instead of his allegations), a statement about the *blockchain* does not "'urge or persuade' another to buy a *particular security*." *Pino v. Cardone Cap., LLC*, 55 F.4th 1253, 1258 (9th Cir. 2022) (emphasis added) (quoting *Wildes v. BitConnect Int'l PLC*, 25 F.4th 1341, 1346 (11th Cir. 2022)); *Risley*, 690 F. Supp. 3d at 222 (rejecting Section 12 claim based on statements touting the platform on which plaintiffs transacted).

Plaintiff also points to statements purporting to describe SOL tokens as "investment

---

[3] Contrary to Plaintiff's suggestion, Opp. 11 n.9, *Mehedi v. View, Inc.*, applied Rule 9(b) to claims under Section 14 of the Exchange Act, 2023 WL 3592098, at *13-14 (N.D. Cal. May 22, 2023), not in rejecting "conclusory" group pleading against Section 12 defendants, *id.* at *11-12.

1  opportunities" and identifying "what exchanges are offering them for sale." Opp. 12. But
2  describing a token's characteristics is not the same thing as urging someone to purchase it. *See*
3  *Ryder Int'l Corp. v. First Am. Nat'l Bank*, 943 F.2d 1521, 1522, 1532-33 (11th Cir. 1991)
4  (defendant's statements about "rates" and "yield" on commercial paper did not solicit because
5  they did not "specifically recommend or 'talk [plaintiff] into buying'" an alleged security). As
6  *Pinter* explained, soliciting a purchase within the meaning of Section 12 requires the solicitor to
7  "request value" for the alleged security. *Pinter*, 486 U.S. at 647. Plaintiff alleges no such request.
8  Indeed, he points to a tweet about "win[ning] up to 500 SOL," Opp. 11-12 (quoting AC ¶ 86)—
9  but a free giveaway does not even "gratuitously urge[] another" to buy a token, let alone
10 "request[] value" for it, *Pinter*, 486 U.S. at 647. Regardless, as discussed *infra*, Plaintiff's
11 purchases of SOL tokens on Exodus had nothing to do with the tweeted giveaway (which was on
12 an unrelated exchange months before his purchase).

### 2.  Plaintiff Fails To Adequately Plead A Successful Solicitation

Plaintiff does not dispute that he fails to allege that Labs *successfully* solicited *his* purchase. Labs MTD 10-12. Plaintiff argues instead that he is not required to plead "causation." That is wrong. As the Supreme Court explained, the "'purchase from' requirement of § 12 focuses on the defendant's relationship with the plaintiff-purchaser." *Pinter*, 486 U.S. at 651. *Pino* holds that the Section 12 relationship need not be "direct or personal," 55 F.4th at 1258, but it did not purport to suggest that Section 12 allows liability whenever a plaintiff alleges that (a) a defendant made a statement soliciting a purchase and (b) the plaintiff makes a purchase— without any link between the two events. To hold otherwise would impermissibly allow Section 12 claims to proceed without the causal connection required by Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). By limiting liability for a particular purchase to those who "*successfully* solicit[] the purchase," *Pinter* demands a causal connection between a defendant's solicitation and the sale to the plaintiff—*i.e.*, success. 486 U.S. at 647 (emphasis added).[4] That

---

[4] Plaintiff argues that *Pinter* refused to incorporate "tort law doctrines of reliance and causation" into Section 12(a)(1). Opp. 12. But Plaintiff pulls this quote out of its context. *Pinter* referred to causation and reliance in rejecting a "substantial factor liability" standard that would reach "participants only remotely related to the relevant aspects of the sales transaction." 486 U.S. at

causal connection was clear in *Pino* because the plaintiff "invested" in the defendant's real estate fund "two days after attending a marketing presentation" promoting the fund's Regulation A offering. 55 F.4th at 1256. Here, Plaintiff pleads no causal link between his purchase and any alleged solicitation by Labs (nor, apparently, can he), foreclosing his claim.[5]

### 3. Plaintiff Fails To Adequately Plead Labs Had A Financial Interest

Plaintiff also does not dispute that Labs did not financially benefit from his purchase—but argues that there is no such requirement and Labs benefited from allegedly selling to *others*. Opp. 13. Again, Plaintiff is wrong. A party that does not pass title to a buyer is only a proper defendant under *Pinter* if that person has been so involved in the particular sale that the person receives "a personal financial benefit from the sale," such that the buyer "purchased from" that person. 486 U.S. at 654; *Pino*, 55 F.4th at 1259 (a defendant "must have his own, independent financial interest in the sale"). That personal financial benefit is the "value" the solicitor receives "in exchange for his" successful pitch—*i.e.*, a commission or a share of the profits. *Pinter*, 486 U.S. at 647, 654; *see also Wilson v. Saintine Exploration & Drilling Corp.*, 872 F.2d 1124, 1126 (2d Cir. 1989) (*Pinter* focused on "brokers" and others "who might act on the seller's behalf for a profit"). Plaintiff claims that he is not required to include "atomized allegations of profit with respect to each purchase," Opp. 13, but atomized or not, that is precisely what *Pinter* requires before "align[ing]" a defendant "with the owner in a rescission action." *Pinter*, 486 U.S. at 647.

### C. Plaintiff Fails To Plead That He Purchased In A Public Offering

Plaintiff's argument that Section 12(a)(1) liability cannot be limited to public offerings again conflates the *Howey* test with Section 12. Plaintiff notes that courts have found certain crypto assets to be securities under *Howey*, without distinguishing between "coins sold directly to institutional investors" and "those sold through secondary market transactions to retail investors." Opp. 14 (quoting *SEC v. Terraform Labs PTE. Ltd.*, 684 F. Supp. 3d 170, 197

---

651-52. *Pinter* had already explained that solicitation creates a risk of "injury"—and warrants imposing liability—because it involves "the flow of information *to a potential purchaser*," but that solicitation must be "*successful[]*" to trigger liability, *i.e.*, there must be a causal link between the defendant's solicitation and the buyer's purchase. *Id.* at 646-47 (emphasis added).

[5] Plaintiff also argues that he can rely on alleged solicitations prior to July 1, 2021. Opp. 19-20. As Labs has explained, that is incorrect. Labs MTD 12 n.13.

(S.D.N.Y. 2023)); *id.* (incorrectly stating that *Coinbase* "h[eld] that exchange-based purchases of [SOL tokens] constitute[] a basis for Section 12(a)(1) liability against Coinbase"). But *Howey* does not answer whether a transaction gives rise to liability under Section 12(a)(1).

On that question, Plaintiff has no textual answer as to why Section 12(a)(1) would apply to purchases outside of public offerings, but Section 12(a)(2) would not. He claims this discontinuity is required because Section 12(a)(1) applies to sales or offers through a "prospectus or otherwise," 15 U.S.C. § 77e(a), (c); *id.* § 77l(a)(1), and Section 12(a)(2) applies to statements in a "prospectus or oral communication," *id.* § 77l(a)(2). But as Labs has explained, the term "prospectus" limits the scope of "otherwise," ensuring that a defendant who violates the prospectus requirement cannot escape liability for public distributions. Labs MTD 15-16 (citing *Begay v. United States*, 553 U.S. 137, 144 (2008)). Plaintiff also argues (at 15-16) that he too purchased "through a 'public offering'" because he purchased on the "open market," but that makes no sense. The public offering requirement exists because Section 12 creates liability only for those who offer or sell securities without publishing a *prospectus*, which is required when a security is distributed through "public offers by an issuer or its controlling shareholders." *Gustafson*, 513 U.S. at 570. Plaintiff does not allege that he purchased when Labs first distributed SOL tokens to the public—or that Labs ever offered tokens to the public again after the March 2020 Dutch Auction.[6] Labs MTD 14, 16-17. Plaintiff fails to plead any details about his swaps on Exodus, let alone details indicating that he purchased in a public offering.

Plaintiff next insists that secondary market purchases must be covered because the securities laws are "remedial" and must be read "broadly." Opp. 15. But "[t]he broad remedial goals of the Securities Act are insufficient justification for interpreting a specific provision 'more

---

[6] As Labs has explained, the defendants in *Zakinov v. Ripple Labs*, 2020 WL 922815 (N.D. Cal. Feb. 26, 2020), allegedly sold directly to the public both on the primary and secondary markets. Labs MTD 14 n.14. Labs has not argued—and neither *Gustafson* nor Section 12 suggest—that only *initial* public offerings can trigger liability under Section 12. The key is whether the plaintiff has purchased from the person who offered or sold without registering the alleged security and publishing the required prospectus (or, for Section 12(a)(2), publishing a misleading prospectus). Those registration and prospectus requirements apply to *secondary* public offerings too. *See, e.g., Flynn v. Sientra, Inc.*, 2016 WL 3360676, at *18 (C.D. Cal. June 9, 2016) (holding that plaintiffs stated Section 12(a)(2) claim against underwriters who sold and promoted stock sold to plaintiff in secondary public offering).

broadly than its language and the statutory scheme reasonably permit.'" *Pinter*, 486 U.S. at 653; *see also Slack Techs., LLC v. Pirani*, 598 U.S. 759, 769-70 (2023) (rejecting "broader reading" that plaintiff argued would "better accomplish the purpose of the 1933 Act").[7]

Limiting liability under Section 12(a)(1) to purchases in public offerings would not, as Plaintiff suggests, leave buyers without a remedy for "'pump and dump' schemes." Opp. 2, 16. Plaintiff's accusations are misdirected. Section 12 was not designed to cover fraud (which isn't alleged here); that is the domain of Exchange Act provisions applicable to "the purchase or sale of 'any security'" that is "trading on secondary markets." *Slack*, 598 U.S. at 763. Holding that Plaintiff lacks standing to sue under Section 12 because he is a downstream purchaser would thus have no impact on the anti-fraud provisions of the federal securities laws.

### D. Plaintiff Fails To Plead That He Purchased In A Domestic Transaction

It is Plaintiff's burden to "sufficiently allege" a domestic transaction, *Stoyas v. Toshiba Corp.*, 896 F.3d 933, 952 (9th Cir. 2018), and he has not even attempted to meet that burden. Plaintiff's claim that "a foreign nexus [need not] be disproven or disclaimed on the pleadings," Opp. 18-19, is contradicted by *Stoyas* and Plaintiff's own cited authority.[8]

Plaintiff pleads that he purchased SOL tokens "from California"—that's it. AC ¶ 15. It is axiomatic that placing a "buy order in the United States" is not enough, "standing alone," to establish the plaintiff "incurred irrevocable liability in the United States." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 181 (2d Cir. 2014). This deficiency is not cured by the PSLRA certification's statement that Plaintiff bought "on Exodus, using other crypto assets," with no accompanying details. Dkt. 1 at 38. Plaintiff's domestic transaction argument boils down to allegations that he was in California when he clicked a

---

[7] The sole case that Plaintiff relies on (at 15) to read "or otherwise" broadly in fact construed the terms "purchase" and "sale"—not "or otherwise." *Shults v. Henderson*, 625 F. Supp. 1419, 1423 n.9 (W.D.N.Y. 1986).

[8] *Banco Safra S.A.-Cayman Islands Branch v. Samarco Mineraco S.A.*, 849 F. App'x 289, 293 (2d Cir. 2021) ("[A] plaintiff 'must allege facts suggesting that irrevocable liability was incurred or title was transferred within the United States.'"); *Mori v. Saito*, 2013 WL 1736527, at *7 (S.D.N.Y. Apr. 19, 2013) (dismissing claims for which plaintiffs "failed to plead domestic transactions as required under *Morrison*"); *Mexicanos v. Hewlett-Packard Co.*, 2015 WL 9592606, at *7 (N.D. Cal. July 13, 2015) (similar, with respect to RICO predicate acts).

button on Exodus—a platform he admittedly never "make[s] any allegations" about in the AC, Dkt. 86 at 1. That is woefully inadequate and by itself warrants dismissal.

Plaintiff argues that "purchasing crypto assets from [a] smartphone creates irrevocable liability in the place where the customer placed the order." Opp. 17 (citing *Williams v. Binance*, 96 F.4th 129, 139 (2d Cir. 2024)). That is wrong. *Williams* rejected the Binance exchange's effort to avoid domesticity by disclaiming any physical location, holding that plaintiffs pleaded a domestic transaction based on allegations that the plaintiffs' transactions were matched on servers located in the United States and, alternatively, that the plaintiffs agreed to Binance's Terms of Use, which made their transactions irrevocable once they placed them and sent payment. 96 F.4th at 137-41. Plaintiff identifies no similar provisions in Exodus's terms—which in fact *disclaim* any role by Exodus in transactions. Dkt. 78-3 at § 1.4. Nor does Plaintiff plead any disclaimer of location by—or indeed any other detail about—the *exchange* he purchased on. To the contrary, he concedes (at 4-5) that Exodus merely offers "peer-to-peer transactions through a decentralized platform that does not appear to rely on centrally maintained servers." He also claims (at 4) he was not "*aware*" of whether he was dealing with a foreign counterparty or exchange, but cites nothing suggesting his awareness excuses his pleading burden (it does not). These facts make him unlike the plaintiff in *Tezos*, who alleged that he purchased on a website run on servers in Arizona by a defendant in California, 2018 WL 4293341, at *8.

Attempting to supplement his meager allegations, Plaintiff asks the Court to take judicial notice of screenshots of the Exodus website. Opp. 2, 4 n.3, 17-18. But Plaintiff's extra-record material cannot cure his pleadings and those materials do not suggest he can cure his pleadings, as nothing he cites states that "a transaction becomes irrevocable once the user taps the 'Swap Now' feature on his mobile phone application." Opp. 17. Confirming as much, Plaintiff will not be able to plead a domestic transaction because Exodus directs users to foreign third-party exchanges to complete crypto asset transactions. Labs MTD 18.

### III.    CONCLUSION

For all these reasons, this action should be dismissed.

Dated: June 20, 2024

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Susan E. Engel*
   Susan E. Engel (*pro hac vice*)
   susan.engel.@lw.com
   555 Eleventh Street, N.W., Suite 1000
   Washington, D.C. 20004-1304
   Telephone: +1.202.637.2200

   Matthew Rawlinson (CA Bar No. 231890)
   matt.rawlinson@lw.com
   140 Scott Drive
   Menlo Park, CA 94025
   Telephone: +1.650.328.4600

   Morgan E. Whitworth (CA Bar No. 304907)
   morgan.whitworth@lw.com
   505 Montgomery Street, Suite 2000
   San Francisco, California 94111
   Telephone: +1.415.391.0600

ORRICK, HERRINGTON & SUTCLIFFE LLP

   DAVID MCGILL (*pro hac vice*)
   dmcgill@orrick.com
   2100 Pennsylvania Avenue NW
   Washington, D.C. 20037
   Telephone:  +1 202 339 8666

   SACHI SCHURICHT (SBN 317845)
   sschuricht@orrick.com
   The Orrick Building
   405 Howard Street
   San Francisco, CA 94105-2669
   Telephone:  +1 415 773 5700

*Attorneys for Defendant Solana Labs, Inc.*