ORRICK, HERRINGTON & SUTCLIFFE LLP
  DAVID MCGILL (appearance *pro hac vice*)
  dmcgill@orrick.com
  2100 Pennsylvania Avenue NW
  Washington, D.C. 20037
  Telephone:   +1 202 339 8666
  Facsimile:   +1 202 339 8500

LATHAM & WATKINS LLP
  SUSAN E. ENGEL (appearance *pro hac vice*)
  susan.engel@lw.com
  555 Eleventh Street, N.W., Suite 1000
  Washington, D.C. 20004-1304
  Telephone:   +1 202 637 2200
  Facsimile:   +1 202 637 2201

Attorneys for Defendant
SOLANA LABS, INC.

*(Additional Attorneys for Defendant Solana Labs, Inc. on subsequent page)*

WAYMAKER LLP
  BRIAN E. KLEIN (SBN 258486)
  bklein@waymakerlaw.com
  SCOTT M. MALZAHN
  (SBN 229204)
  smalzahn@waymakerlaw.com
  KEVIN MICHAEL CASEY (SBN 338924)
  kcasey@waymakerlaw.com
  515 S. Flower Street
  Ste 3500
  Los Angeles, CA 90071
  Telephone: +1 424 652 7800
  Facsimile:   +1 424 652 7850

Attorneys for Defendants
MULTICOIN CAPITAL MANAGEMENT
LLC & KYLE SAMANI

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

|  |  |
|---|---|
| MARK YOUNG, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SOLANA LABS, INC., MULTICOIN CAPITAL MANAGEMENT LLC, and KYLE SAMANI,<br><br>Defendants. | Case No. 3:22-cv-03912-RFL<br><br>**DEFENDANTS SOLANA LABS, INC., MULTICOIN CAPITAL MANAGEMENT LLC, AND KYLE SAMANI'S JOINT REPLY IN FURTHER SUPPORT OF MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>(Civil L.R. 6-1, 6-2, 7-12)<br><br>Date: August 6, 2024<br>Time: 10:00 AM<br>Courtroom: Courtroom 15 – 18th Floor<br>Judge:  Hon. Rita F. Lin |

ORRICK, HERRINGTON & SUTCLIFFE LLP
  SACHI SCHURICHT (SBN 317845)
  sschuricht@orrick.com
  The Orrick Building
  405 Howard Street
  San Francisco, CA 94105-2669
  Telephone:   +1 415 773 5700
  Facsimile:    +1 415 773 5759

LATHAM & WATKINS LLP
  MATTHEW RAWLINSON (SBN 231890)
  matt.rawlinson@lw.com
  140 Scott Drive
  Menlo Park, CA 94025
  Telephone:   +1 650 328 4600

  MORGAN E. WHITWORTH (SBN 304907)
  morgan.whitworth@lw.com
  505 Montgomery Street, Suite 2000
  San Francisco, California 94111
  Telephone:   +1 415 391 0600

Attorneys for Defendant
SOLANA LABS, INC.

# TABLE OF CONTENTS

Page

1   I.     PRELIMINARY STATEMENT.................................................................................. 1

2   II.    ARGUMENT ........................................................................................................ 2

3        A.   Young Assented To The Arbitration Agreement In Exodus' TOS Before
He Allegedly Purchased Solana Tokens Using His Exodus Wallet. ..................... 2

4

5             i.    Exodus' hybrid clickwrap/browsewrap agreement adequately put
Young on inquiry notice that by downloading Exodus, he was
agreeing to the TOS. .............................................................................. 3

6

7             ii.   Defendants carried their burden of establishing the existence of an
arbitration agreement. ............................................................................. 6

8             iii.  At a minimum, the Court should grant discovery on contract
formation. ............................................................................................. 10

9

10       B.   An Arbitrator Must Decide Whether Defendants Can Enforce The
Arbitration Agreement Against Young In Light Of His Claims.......................... 11

11             i.    Young conflates questions of contract formation and contract
enforcement.......................................................................................... 11

12

13             ii.   Exodus' TOS clearly delegate questions of contract enforcement
and the scope of the arbitration agreement to an arbitrator...................... 12

14      C.   If The Court Decides The Enforceability Question, It Should Allow
Defendants To Enforce The Arbitration Agreement Against Young. ................. 15

15

16             i.    Young's claims are sufficiently intertwined with the Exodus TOS
to justify arbitration under equitable estoppel......................................... 17

17             ii.   Young's arguments against equitable estoppel are meritless.................... 19

18   III.   CONCLUSION ........................................................................................................ 20

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliff v. Vervent, Inc.*,
2020 WL 5709197 (S.D. Cal. Sept. 24, 2020) ....................................................... 16

*Anderson v. Amazon.com, Inc.*,
478 F. Supp. 3d 683 (M.D. Tenn. 2020) ................................................................ 9

*Apollo Comp., Inc. v. Berg*,
886 F.2d 469 (1st Cir. 1989) ................................................................................ 14

*In re: BAM Trading Servs. Inc. Securities Litig.*,
2024 WL 2520432 (N.D. Cal. May 14, 2024) ............................................... 14, 15

*Bazemore v. Jefferson Capital Systems, LLC*,
827 F.3d 1325 (11th Cir. 2016) ............................................................................ 8

*Belyea v. GreenSky, Inc.*,
2020 WL 3618959 (N.D. Cal. July 2, 2020) ......................................................... 8

*Berman v. Freedom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ................................................................................ 4

*Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*,
866 F.3d 709 (5th Cir. 2017) .............................................................................. 12

*Brooks v. IT Works Mktg.*,
2022 WL 2079747 (E.D. Cal. June 9, 2022) ......................................................... 3

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ............................................................... 7

*In re Carrier IQ, Inc. Consumer Priv. Litig.*,
2014 WL 1338474 (N.D. Cal. Mar. 28, 2014) ............................................... 16, 17

*Casa Arena Blanca LLC v. Rainwater by Est. of Green*,
2022 WL 839800 (10th Cir. Mar. 22, 2022) ....................................................... 11

*Chien v. Bumble Inc.*,
641 F. Supp. 3d 913 (S.D. Cal. 2022) ................................................................ 11

*Coinmint, LLC v. DX Corr Design, Inc.*,
2023 WL 9595893 (N.D. Cal. Apr. 24, 2023) ............................................... 17, 19

*Contec Corp. v. Remote Solution, Co.*,
398 F.3d 205 (2d Cir. 2005) ............................................................................... 14

*Crypto Asset Fund, LLC v. OPSkins Grp. Inc.*,
    478 F. Supp. 3d 919 (C.D. Cal. 2020)..................................................................... 16

*Cullinane v. Uber Techs., Inc.*
    893 F.3d 53 (1st Cir. 2018) ...................................................................................... 4

*Dohrmann v. Intuit, Inc.*,
    823 F. App'x 482 (9th Cir. 2020) ............................................................................ 6

*Fabian v. Renovate Am., Inc.*,
    42 Cal.App.5th 1062 (2019)........................................................................... 7, 8, 10

*In re Facebook, Inc. Sec. Litig.*,
    405 F. Supp. 3d 809 (N.D. Cal. 2019) ..................................................................... 7

*Faucett v. Move, Inc.*,
    2024 WL 2106727 (C.D. Cal. Apr. 22, 2024) ....................................................... 14

*Franklin v. Cmty. Reg'l Med. Ctr.*,
    998 F.3d 867, 873 & n.7 (9th Cir. 2021)................................................... 15, 19, 20

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)...................................................................... 3

*Garcia v. Pexco, LLC*,
    11 Cal.App.5th 782 (2017)................................................................... 16, 19, 20

*Garcia v. Trademark Constr. Co.*,
    2019 WL 1317329 (S.D. Cal. Mar. 22, 2019) ...................................................... 10

*Gerlach v. Tickmark, Inc.*,
    2021 WL 3191692 (N.D. Cal. July 28, 2021) ....................................................... 14

*Goldman v. KPMG*,
    173 Cal.App.4th 209 (2009) .................................................................................. 18

*Hansen v. LMB Mortg. Servs.*,
    1 F.4th 667 (9th Cir. 2021) ................................................................................... 10

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ...................................................................................... 11, 12

*In re Henson*,
    869 F.3d 1052 (9th Cir. 2017).............................................................................. 18

*Herrera v. Cathay Pac. Airways Ltd.*,
    94 F.4th 1083 (9th Cir. 2024)........................................................................*passim*

*Hill v. Quicken Loans Inc.*,
    2020 WL 5358394 (C.D. Cal. Aug. 5, 2020)................................................... 8, 10

- iii -

*Hill v. Xerox Bus. Servs., LLC*,
    59 F.4th 457 (9th Cir. 2023) ........................................................................... 15

*Jackson v. Amazon.com*,
    559 F. Supp. 3d 1132 (S.D. Cal. 2021) ............................................................. 9

*Khalatian v. Prime Time Shuttle, Inc.*,
    237 Cal.App.4th 651 (2015) ............................................................................. 16

*Kramer v. Toyota Motor Corp.*,
    705 F.3d at 1127 .................................................................................... 13, 14, 18

*Lee v. Ticketmaster, L.L.C.*,
    817 F. App'x 393 (9th Cir. 2020) ...................................................................... 6

*Long v. Provide Commerce, Inc.*,
    245 Cal.App.4th 855 (2016) ........................................................................... 4, 9

*Meyer v. Uber Technologies, Inc.*,
    868 F.3d 66 (2d Cir. 2017) ................................................................................. 5

*Milfort v. Comcast Cable Comm's Mgmt. LLC*,
    309 F. Supp. 3d 1268 (S.D. Fla. 2018) .............................................................. 9

*Momot v. Mastro*,
    652 F.3d 982 (9th Cir. 2011) ........................................................................... 11

*Morrison v. Zangpo*,
    2008 WL 4449585 (N.D. Cal. Sept. 30, 2008) ................................................ 13

*MouseBelt Labs Pte. Ltd. v. Armstrong*,
    674 F. Supp. 3d 728 (N.D. Cal. 2023) ............................................................. 20

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ........................................................................... 3

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ........................................................................... 3, 4

*Patrick v. Running Warehouse, LLC*,
    93 F.4th 468 (9th Cir. 2024) ........................................................................... 14

*Patterson v. Jump Trading LLC*,
    2024 WL 49055 (N.D. Cal. Jan. 4, 2024) ........................................................ 13

*Peter v. DoorDash, Inc.*,
    445 F. Supp. 3d 580 (N.D. Cal. 2020) ............................................................... 5

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*,
    55 Cal.4th 223 (2012) ........................................................................................ 9

*Rajagopalan v. NoteWorld, LLC*,
    718 F.3d 844 (9th Cir. 2013) .................................................................................... 15

*Reid v. Tandym Grp., LLC*,
    2023 WL 6389131 (S.D.N.Y. Sept. 29, 2023) ........................................................ 14

*In re Ring LLC Privacy Litigation*,
    2021 WL 2621197 (C.D. Cal. June 24, 2021) .......................................................... 5

*Roberts v. Obelisk, Inc.*,
    2019 WL 1902605 (S.D. Cal. Apr. 29, 2019) .................................................... 17, 20

*Ruiz v. Moss Bros. Auto Grp.*,
    232 Cal.App.4th 836 (2014) ...................................................................................... 7

*S.S. by and through Stern v. Peloton Interactive, Inc.*,
    566 F. Supp. 3d 1019 (S.D. Cal. 2021) ................................................................. 5, 9

*Sellers v. JustAnswer LLC*,
    73 Cal.App.5th 444 (2021) ........................................................................................ 3

*Setty v. Shrinivas Sugandhalaya LLP*,
    3 F.4th 1166 (9th Cir. 2021) .................................................................................... 15

*Swiger v. Rosette*,
    989 F.3d 501 (6th Cir. 2021) .............................................................................. 11, 12

*Theodore v. Uber Techs., Inc.*,
    442 F. Supp. 3d 433 (D. Mass. 2020) ....................................................................... 4

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*,
    445 F. Supp. 3d 139 (N.D. Cal. 2020) ...................................................................... 7

*Trudeau v. Google LLC*,
    349 F. Supp. 3d 869 (N.D. Cal. 2018) ...................................................................... 7

*Villamar v. Clean Harbors Environmental Services*,
    2022 WL 4465549 (C.D. Cal. Sept. 23, 2022) ........................................................ 19

*West v. Uber Techs.*,
    2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) ............................................................ 4

*White v. Ring LLC*,
    2023 WL 1097554 (C.D. Cal. Jan. 25, 2023) .......................................................... 12

*Wiedenbeck v. United Educ. Inst.*,
    2015 WL 12743599 (C.D. Cal. Dec. 15, 2015) .................................................. 16, 17

*Wilson v. Redbox Automated Retail, LLC*,
    448 F. Supp. 3d 873 (N.D. Ill. 2020) .................................................................... 3, 4

*Yuksel v. Twitter, Inc.*,
  2022 WL 16748612 (N.D. Cal. Nov. 7, 2022)............................................................ 7

*Zhang v. Twitter Inc.*,
  2023 WL 5493823 (N.D. Cal. Aug. 23, 2023).......................................................... 6, 7

*In re Zoom Video Communications Inc. Privacy Litigation*,
  525 F. Supp. 3d 1017 (N.D. Cal. 2021) ................................................................... 8

**Other Authorities**

http://www.exodus.com/download ........................................................................ 4, 5

1   **I.      PRELIMINARY STATEMENT[1]**

2         Young claims that he purchased SOL in the summer of 2021, using an Exodus wallet.

3   Defendants have shown that by downloading Exodus and using the platform to purchase SOL at

4   that time, Plaintiff was put on inquiry notice of Exodus' TOS, including the arbitration

5   agreement. Young's Opposition contends that Defendants presented no evidence of his assent to

6   the TOS, but Defendants proffered precisely the kind of evidence that courts routinely consider

7   in finding assent to online terms—judicially noticeable screenshots of the Exodus download

8   page and TOS extant at the time Young alleges that he used the platform.

9         Exodus' download page—with a hyperlinked notice that "downloading Exodus"

10  constitutes "agree[ment] to the Terms of Service"—conspicuously warned Young that by

11  clicking the "download" button immediately below, he was agreeing to the hyperlinked TOS.

12  Plaintiff cites a number of cases to attack the sufficiency of this notice, but all of his cases are

13  materially distinguishable—either because they did not involve hybrid clickwrap/browsewrap

14  agreements, or because they presented less conspicuous warnings about how users manifested

15  assent to the terms. Young's purported parallels to these cases fail for another independent

16  reason: He relies on the *wrong* version of Exodus' download page and ignores the version from

17  the time of his alleged purchases.

18        Instead of confronting the relevant download page and applicable TOS, Young resorts to

19  kicking up dust and confusing the issues. He contradicts his own statements to the Court that he

20  purchased SOL using an Exodus wallet. He misstates Defendants' legal burdens by suggesting

21  they must do more than prove by a preponderance of the evidence that he was put on inquiry

22  notice of Exodus' TOS. And he fails to proffer any evidence to rebut Defendants' showing of

23  such notice, instead offering pure speculation about when and how he *might* have accessed

24  Exodus. At best, he shows the need for discovery on the issue of contract formation.

25        If this Court concludes that Young assented to Exodus' TOS, its job is over, because the

26  arbitration agreement clearly delegates to an arbitrator questions as to whether nonsignatories

27

28  _____

[1] This memorandum adopts the defined terms from the Memorandum of Points and Authorities in Support of Defendants' Joint Motion to Compel Arbitration.

1   (like Defendants) can enforce the agreement against signatories (like Young). Plaintiff's

2   argument to the contrary conflates issues of contract *formation* with contract *enforcement*. And

3   he selectively reads a couple of narrow clauses in the arbitration agreement to the exclusion of

4   other capacious language about the scope of the arbitrator's authority. If that were not enough,

5   the agreement incorporates JAMS rules; Young simply ignores recent Ninth Circuit precedent

6   holding that such incorporation evidences the parties' intent to delegate questions of arbitrability.

7   The only reasonable reading of the arbitration agreement is that the parties delegated to an

8   arbitrator the decision whether nonsignatories can enforce the agreement against signatories.

9           In all events, Defendants can enforce the arbitration agreement against Young under

10   equitable estoppel. Yet again, Young ignores binding Ninth Circuit precedent, this time showing

11   that estoppel can be invoked by a nonsignatory to enforce an arbitration agreement against a

12   signatory. And he overlooks multiple cases applying estoppel where the plaintiff alleges

13   statutory violations rather than contract breaches. As in those cases, Young's statutory claims are

14   sufficiently "intertwined with" the Exodus TOS—as it governs the very transactions upon which

15   his claims rely. Indeed, in opposing Defendant Solana's Motion to Dismiss, Young himself

16   invokes features of Exodus' platform and Exodus' TOS in an effort to prove a critical element of

17   his claims: domestic transactions. The whole point of equitable estoppel is to prevent parties

18   from claiming the benefits of an agreement while simultaneously avoiding the burdens that it

19   imposes. Young thus cannot rely on Exodus' TOS to support his claims while simultaneously

20   evading his commitment to arbitrate. The Court should compel arbitration.

21   **II.      ARGUMENT**

22           **A.      Young Assented To The Arbitration Agreement In Exodus' TOS Before He
                        Allegedly Purchased Solana Tokens Using His Exodus Wallet.**
23

24           As Defendants explained in their Joint Motion to Compel Arbitration, Young assented to

25   the Exodus TOS when he downloaded and continued to use the platform to purchase SOL in

26   2021. Dkt. No. 78 ("Mot.") 6-7. Plaintiff's Opposition shows only that (i) the facts of this case

27   meaningfully differ from those where users were not sufficiently warned of their assent to online

28

terms, (ii) Defendants carried their burden to establish the existence of an arbitration agreement, and (iii) any doubt on Young's assent to the TOS should be resolved through discovery.

### i. Exodus' hybrid clickwrap/browsewrap agreement adequately put Young on inquiry notice that by downloading Exodus, he was agreeing to the TOS.

Defendants showed that Exodus users in 2021 were put on inquiry notice that "[b]y downloading Exodus," they were "agree[ing] to the Terms of Service." Mot. 3-4 (displaying images). This notice was placed immediately above the "Download Exodus" button that users clicked to manifest their assent to the TOS. *See id.* The white-colored text of the notice contrasted with the dark background, which contained very minimal clutter. *Id.* This is precisely the kind of hybrid clickwrap/browsewrap agreement that courts have found puts users on inquiry notice of their assent to online terms. *See, e.g., Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835, 840 (S.D.N.Y. 2012) (user was adequately advised of the terms where notice appeared "immediately below" the "'Sign Up' button" and read: "'By clicking Sign Up, you are indicating that you have read and agree to the Terms of Service.'").[2]

Young argues that "courts have overwhelmingly found the presentation of hyperlinks and disclosures, even more obvious than those employed by Exodus, to be insufficiently conspicuous to provide reasonable notice." Dkt. No. 86 ("Opp.") 15. But the cases he cites (Opp. 15-16) are all distinguishable:

- In *Brooks v. IT Works Mktg.*, 2022 WL 2079747, at *6 (E.D. Cal. June 9, 2022), the hyperlinked terms appeared in the bottom left corner of the screen—far from the button by which the user manifested assent to the terms. Here, by contrast, the TOS hyperlink was immediately above the button. Mot. 3.

- In *Sellers v. JustAnswer LLC*, 73 Cal.App.5th 444, 453, 465 (2021), the defendant's website constituted a "sign-in wrap agreement," where users unwittingly agreed to pay for a monthly subscription service. The webpage thus had to comply with

---

[2] Although out of circuit, *Fteja* is regularly cited as showing a hybrid clickwrap/browsewrap agreement that satisfies the test for inquiry notice. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1176-77 (9th Cir. 2014). Indeed, several of the cases Young cites rely on *Fteja*. *E.g.*, *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 237 (2d Cir. 2016); *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 883 (N.D. Ill. 2020).

California's Automatic Renewal Law, which requires "clear and conspicuous" disclosures and "affirmative consent," *id.* at 458-59, 477-80, and does not apply here.

- In *Long v. Provide Commerce, Inc.*, 245 Cal.App.4th 855, 859 (2016), the agreement constituted a browsewrap—not a hybrid clickwrap/browsewrap agreement—and the hyperlinked terms appeared at the bottom of the screen among fourteen other cluttered links.

- In *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236-37 (2d Cir. 2016) and *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 883 (N.D. Ill. 2020), the hyperlinked terms were "not directly adjacent" to the relevant button "so as to indicate that a user should construe clicking [the button] as acceptance." Here, Exodus' TOS was directly above the "download" button. Mot. 3.

- *Cullilane v. Uber Technologies, Inc.* 893 F.3d 53 (1st Cir. 2018) and its progeny *Theodore v. Uber Technologies, Inc.*, 442 F. Supp. 3d 433 (D. Mass. 2020) lack persuasive value here, because courts have expressly found that *Cullilane* "departs from Ninth Circuit reasoning" on inquiry notice. *See, e.g.*, *West v. Uber Techs.*, 2018 WL 5848903, at *4 (C.D. Cal. Sept. 5, 2018); *Theodore*, 442 F. Supp. at 442 (noting First Circuit's divergence with decisions).

- Young also invokes *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022), but the notice text there was "barely legible to the naked eye." And critically, as Plaintiff acknowledges (Opp. 18), the Ninth Circuit held that users were not put on inquiry notice because the notice text simply read, "I understand and agree to the Terms & Conditions" without "indicat[ing] to user[s] what action would constitute assent." *Id.* at 858. Here, Exodus's download page expressly indicated that "*[b]y downloading Exodus* you agree to the Terms of Service." Mot. 4 (emphasis added). That is precisely what the Ninth Circuit deemed sufficient to provide inquiry notice in *Berman*. *See* 30 F.4th at 858 (inquiry notice could be accomplished "by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions'").

Young's attempts to analogize Exodus' download page to the notifications in the above cases fail for another, independent reason: He compares them to Exodus' *current* download page, not the version that was operative at the time he avers he purchased SOL in 2021. *See* Dkt. No. 33-3 (Young Decl.) ¶ 5; *compare* Opp. 16 (citing current page at http://www.exodus.com/download, and arguing that "the TOS are provided by hyperlink at the very bottom of the website in tiny, gray font" on a screen that "is cluttered with other media and flanked by a midnight blue and black background") *with* Mot. 3-4 (portraying download page from August 2021, where hyperlink to TOS appears directly above the "Download Exodus" button, and only two other hyperlinks appear in the vicinity). Because Young relies on the wrong

version of the download page, his attempts (Opp. 18) to distinguish Defendants' other cases are unavailing[3]:

- In *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 78 (2d Cir. 2017), Uber's download page mirrored Exodus' page: both presented "uncluttered" screens notifying users that they agreed to the Terms of Service "[b]y downloading Exodus," or "[b]y creating an Uber account," and the notification text and TOS hyperlink appeared "directly below the [relevant] buttons." *Id.*; Mot. 3-4.

- Young claims Defendants' reliance on *In re Ring LLC Privacy Litigation*, 2021 WL 2621197 (C.D. Cal. June 24, 2021) is "misplaced, because … Ring's terms of service required users [to] *check a box*." Opp. 18. But *Ring* involved *nine different versions* of the sign-up page—only some of which required checking a box. The court held that users were put on inquiry notice for *each version*, including ones without a check box, where users were notified "immediately below" the relevant button that creating an account manifested assent to the hyperlinked terms. 2021 WL 2621197, at *6.

- In *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580 (N.D. Cal. 2020), DoorDash's sign-up page—like Exodus' 2021 download page—was "uncluttered," the "notice text appear[ed] … close[] to the sign-up button," and although the hyperlink to the terms was "not capitalize[d] or underline[d]," it was no less conspicuous than the one other blue hyperlink on the same page. *Id.* at 586-87.[4]

- In *S.S. by and through Stern v. Peloton Interactive, Inc.*, 566 F. Supp. 3d 1019, 1027 (S.D. Cal. 2021), Peloton users were presented with a series of screens notifying them of the "Terms of Service" and requiring them to click a button to confirm their agreement. Notably, the court did not hold that such repeated notifications and affirmative acceptance were required for inquiry notice. *Contra* Opp. 18. To the contrary, the court noted that less interactive sign-in agreements suffice "where plaintiffs d[o] not even click an 'I Accept' button," so long as "nearby language inform[s] them that clicking [other] buttons w[ill] constitute accepting the terms of service." 566 F. Supp. 3d at 1041.

---

[3] Even if Young had downloaded Exodus through the current page, his use of the current page would be sufficient to bind him to arbitrate. Young misrepresents the functioning of Exodus' current homepage, which features a conspicuous button to "Download Exodus" with a carrot pointing downward to indicate an expandable menu. *See* http://www.exodus.com/download. When clicked, a box appears below that button and lists five different download options. *Id.* Immediately below the list—also in the newly expanded box—reads the following notice: "By downloading Exodus, you agree to the <u>Terms of Service</u> and <u>Privacy Policy</u>." *Id.* Plaintiff ignores these relevant details.

[4] That the hyperlink to Exodus' TOS was not colored blue does not undermine inquiry notice where the two other hyperlinks next to it appeared in the same color, font, and size. *See id*; *see also In re Ring*, 2021 WL 2621197, at *6 (finding inquiry notice, notwithstanding that hyperlinked terms did not appear in blue text, where, among other things, the warning text was "immediately below" box where user manifested assent and the screen was uncluttered).

- In *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020), the Ninth Circuit held that TurboTax users were put on inquiry notice where the "relevant warning language and hyperlink to the Terms … were the only text on the webpage in italics, were located directly below the sign-in button, and the sign-in page was relatively uncluttered." Young emphasizes the color of the hyperlink, which was "light blue," *id.* at 484—not "bright blue," as he claims. Opp. 18. But the other factors all were met here, and the color of the hyperlink is not dispositive. *Supra* n.4.

- Finally, in *Lee v. Ticketmaster, L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020), the Ninth Circuit held that the plaintiff was put on inquiry notice where the warning text appeared within "three lines" of the button to manifest assent and the warning text included a blue hyperlink to the "Terms of Use." Again, Exodus' download page shared the most critical characteristics. Young's description (Opp. 19) of "the Exodus TOS hyperlink [as] tiny and gray, located at the bottom of the screen, and flanked against a cluttered, black background" is based on the wrong version of the page.

At bottom, there are many ways for an online user to be put on inquiry notice of an arbitration agreement. The differences between Exodus' download page and the pages discussed in the cases above are immaterial and ultimately do not change that Young is bound to arbitrate.

> ### ii.   Defendants carried their burden of establishing the existence of an arbitration agreement.

Young argues that "Defendants present[ed] no facts regarding how notice of the Terms was provided to Plaintiff, or even if notice was ever provided at all." Opp. 10. Not so. Defendants provided screenshots of the Exodus download screen and TOS as they appeared during the time of Plaintiff's alleged purchases, and noted their consistency with all other archived records at that pertinent time. *See* Mot. 3-4; Dkt. No. 78-1 at ¶ 5.

Contrary to Young's contentions, courts routinely hold that archived screenshots may be used to establish a plaintiff's assent to arbitration based on the plaintiff's own alleged online activity. For instance, in *Zhang v. Twitter Inc.*, 2023 WL 5493823, at *2 (N.D. Cal. Aug. 23, 2023), the court took judicial notice of Twitter's Terms of Service "as they existed when Plaintiff allegedly created his Twitter account." Just like Defendants here, Twitter filed an attorney declaration containing Wayback Machine screenshots of Twitter's Terms of Service from ten years prior based on the plaintiff's own allegation that he had used Twitter "for roughly ten years." Defendant's Request for Judicial Notice ISO Its MTD, 1 ¶ 1, *Zhang*, No. 23-cv-00980-

1  JSC (N.D. Cal.); *see* Decl. of Kenneth M. Trujillo-Jamison ISO Defendant's Request for Judicial

2  Notice, Ex. B, *Zhang*, No. 23-cv-00980-JSC (N.D. Cal.).

3          And Young attacks Defendants' reliance on screenshots obtained from the WayBack

4  Machine, but cites no case from this jurisdiction suggesting the Court cannot consider them.

5  Opp. 12-14. In this jurisdiction, courts "have routinely taken judicial notice of content from the

6  Internet Archive's Wayback Machine" as authentic, reliable evidence of a website's prior

7  appearance. *In re Facebook, Inc. Sec. Litig.*, 405 F. Supp. 3d 809, 829 (N.D. Cal. 2019) (citing

8  cases); *accord Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) ("Courts

9  have taken judicial notice of the contents of web pages available through the WayBack Machine

10  as facts that can be accurately and readily determined from sources whose accuracy cannot

11  reasonably be questioning."). Likewise, courts here regularly take judicial notice of website

12  terms of service. *See Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146

13  (N.D. Cal. 2020) ("In general, websites and their contents may be judicially noticed"; collecting

14  cases); *Zhang*, 2023 WL 5493823, at *3 ("Courts routinely take judicial notice of terms of

15  service."); *e.g., Yuksel v. Twitter, Inc.*, 2022 WL 16748612, at *2 (N.D. Cal. Nov. 7, 2022)

16  (taking judicial notice of Twitter's Terms of Service); *Trudeau v. Google LLC*, 349 F. Supp. 3d

17  869, 876 (N.D. Cal. 2018) (taking judicial notice of Google's Terms of Service).[5]

18          Rather than engage with the evidence Defendants proffered, Young simply ignores it and

19  cites a handful of cases where courts denied motions to compel arbitration for lack of proof that

20  the plaintiff entered into a contract. *See* Opp. 9-10. None of his cases are comparable. In *Fabian

21  v. Renovate America, Inc.*, 42 Cal.App.5th 1062, 1069-70 (2019) and *Ruiz v. Moss Bros. Auto

22  Group*, 232 Cal.App.4th 836, 839-40 (2014), the defendants proffered electronically signed

23  arbitration agreements (*e.g.*, DocuSign agreements), but failed to authenticate the plaintiffs'

24  signatures, and the plaintiffs attested that they did not electronically sign anything. Because

25  those contracts required signatures, the defendants' failures to authenticate them "left a critical

26  _____

27  [5]  Young's argument (Opp. 14) that the Wayback Machine's own Terms of Service and
    disclaimer of warranties prevent the Court from judicially noticing its archives is thus wrong.

28  And Defendants submitted the screenshots to show how the websites appeared at prior times—
    not for the truth of their content.

1  gap in the evidence." *Fabian*, 42 Cal.App.5th at 1070; *Ruiz*, 232 Cal.App.4th at 844. Here, by

2  contrast, Young affirmatively represented to the Court that he purchased SOL using an Exodus

3  wallet, and Defendants presented evidence that downloading such a wallet put users like Young

4  on inquiry notice via a hybrid clickwrap/browsewrap agreement—with no signature required.

5      *Hill v. Quicken Loans Inc*., 2020 WL 5358394 (C.D. Cal. Aug. 5, 2020) is also

6  distinguishable, as the plaintiff there submitted evidence that website users could bypass the

7  clickwrap agreement altogether. *Id.* at *6. Here, however, Young proffers no evidence showing

8  that he could have created an Exodus wallet without accepting the TOS. *See infra* 9-10.

9      Young's other cases are even further afield. In *Belyea v. GreenSky, Inc.*, 2020 WL

10  3618959, at *3 (N.D. Cal. July 2, 2020), the arbitration agreement proffered by the defense was

11  missing a signature on the plaintiff's signature line, and the plaintiff's use of the service was

12  insufficient to show assent to a pure browsewrap agreement. *See id.* at *6. The defendants in *In*

13  *re Zoom Video Communications Inc. Privacy Litigation*, 525 F. Supp. 3d 1017, 1042 (N.D. Cal.

14  2021) and *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1327-28 (11th Cir. 2016)

15  claimed via conclusory declarations that the plaintiffs would have agreed to the defendants'

16  arbitration agreements by using their respective websites, but provided no "supporting

17  screenshots" or "documents to support" those conclusory assertions. Here, Defendants provided

18  the very screenshots that were missing in those cases.

19      Young also bizarrely contends that Defendants have not shown "whether Plaintiff had a

20  wallet or not when he purchased Solana." Opp. 12. That claim is defeated by the representations

21  of Young and his attorneys to the Court. *See* Dkt. No. 88 at 17 (claiming that Young's SOL

22  tokens "were delivered to him through a wallet he created"); Dkt. No. 89-1 (Decl. of Matthew S.

23  Weiler ISO Plaintiff's Request for Judicial Notice) at ¶ 4 ("I am informed and believe Plaintiff

24  Young exercised this [Exodus's swap] feature to purchase SOL."); *id.* Ex. 1 at 3 (explaining that

25  to use Exodus' "swap" feature, a user's "crypto is sent from [their] self-custody Exodus wallet to

26  a third-party swap API provider, which then sends [their] new crypto back.").

27      Young's other arguments regarding the existence of an arbitration agreement misstate the

28  applicable burdens. First, he suggests that "Defendants had the burden to present evidence of

actual notice in connection with their motion to compel." Opp. 9 (internal quotation marks omitted). That is wrong: "Absent actual notice of the terms of an internet contract, mutual assent turns on whether a 'reasonably prudent' user would have 'inquiry notice' of the 'agreement's existence and contents.'" *Jackson v. Amazon.com*, 559 F. Supp. 3d 1132, 1139 (S.D. Cal. 2021) (quoting *Long*, 245 Cal.App.4th at 862).

Next, Young argues that Defendants must prove he "actually read the TOS prior to downloading Exodus." Opp. 10. Wrong again. So long as the hyperlinked terms are reasonably conspicuous, "it is of no consequences whether the consumer actually clicks a hyperlink to read the terms containing the arbitration provision or not." *Stern*, 566 F. Supp. 3d at 1041; *see also Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*, 55 Cal.4th 223, 235 (2012) ("An arbitration clause within a contract may be binding on a party even if the party never actually read the clause.").

Young also suggests that Defendants failed to prove that he did not "opt out" of the Exodus TOS. Opp. 2, 10, 12. But Defendants need only prove the existence of an agreement to arbitrate; the burden then shifts to Young "to rebut that evidence by providing a declaration attesting … that he did not agree or later opted out." *Stern*, 566 F. Supp. 3d at 1041; *see also, e.g.*, *Anderson v. Amazon.com, Inc.*, 478 F. Supp. 3d 683, 696 (M.D. Tenn. 2020) (concluding that "Plaintiff … has not met his burden in demonstrating that he has effectively opted out of the Arbitration Agreement"); *Milfort v. Comcast Cable Comm's Mgmt. LLC*, 309 F. Supp. 3d 1268, 1272 (S.D. Fla. 2018) (same). Young has not even attempted to suggest he opted out.

Young also tries to undermine the relevance of Defendants' evidence by (a) arguing that "Defendants do not know whether Plaintiff used an iPhone or Android when using Exodus," Opp. 12; (b) speculating that "the processes are different between phones," Opp. 17; and (c) surmising that he may have downloaded Exodus "well before he purchased Solana" tokens, Opp. 12. These unsubstantiated claims cannot defeat Defendants' evidentiary showing and the reasonable inferences drawn therefrom. Young did not submit a declaration attesting that he used an iPhone or Android, or that he downloaded Exodus before purchasing SOL. Nor did he provide any factual support for his claims about how Exodus operated on different phones or that

1  he "was not asked to assent to the TOS." Opp. 17. Unsupported factual assertions cannot defeat

2  Defendants' properly submitted evidence. *See Garcia v. Trademark Constr. Co.*, 2019 WL

3  1317329, at *4 (S.D. Cal. Mar. 22, 2019) ("hypothetical" scenarios proposed by the plaintiff—

4  not asserted definitively in any "pleadings or in [his] own sworn declaration"—did not defeat the

5  defendant's showing of an agreement to arbitrate); *cf. Hill*, 2020 WL 5358394, at *6  (finding

6  "genuine dispute of material fact" as to the formation of an agreement to arbitrate where the

7  plaintiff "submitted a declaration and testified … that she did not click the [relevant] buttons on

8  the subject websites").[6]

9              **iii.        At a minimum, the Court should grant discovery on contract**

10                    **formation.**

11         If the Court, however, thinks that Defendants fall short of establishing mutual assent by a

12  preponderance of the evidence, the proper course is to grant limited discovery on the issue of

13  contract formation. *See* Mot. 14 n.10 (citing cases). The law is clear that if "a district court

14  concludes that there are genuine disputes of material fact as to whether the parties formed an

15  arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold

16  any motion to compel arbitration in abeyance until the factual issues have been resolved."

17  *Hansen v. LMB Mortg. Servs.*, 1 F.4th 667, 672 (9th Cir. 2021) (citing 9 U.S.C. § 4). Indeed, in

18  some of the very cases Young cites, courts granted discovery on contract formation before

19  resolving the motions to compel arbitration. *See, e.g.*, *Fabian*, 42 Cal.App.5th 1062, 1065 (2019)

20  ("After conducting a motion hearing, the court continued the matter 'to allow the parties to

21  conduct discovery as to whether [the plaintiff] electronically signed the subject contract"). Under

22  no circumstances should this Court deny the motion as a matter of law.

23

24

---

25  [6]  Even if Young had downloaded Exodus well before his SOL purchases (*i.e.*, when an earlier
     version of the TOS applied), that fact alone would not render the July 1, 2021 TOS

26  inapplicable. The Exodus TOS include a provision whereby users agree that "[b]y continuing
     to use [Exodus] following the release of updated Terms," they "consent to such updated

27  Terms." Dkt. No. 78-3 at 1. Indeed, the July 1, 2021 TOS themselves state in bold font at the
     top that they are "[e]ffective" since "Dec 24, 2017." *Id.*

28

**B.      An Arbitrator Must Decide Whether Defendants Can Enforce The Arbitration Agreement Against Young In Light Of His Claims.**

If this Court concludes that Young assented to the Exodus TOS, its job is over, as courts must compel arbitration where, as here, the arbitration agreement clearly delegates to an arbitrator threshold questions—including "whether the parties … are bound by a given arbitration clause." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011); *see* Mot. 8. That holds "even if the court thinks the application of the arbitration agreement is wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 526 (2019). Young's arguments to the contrary fall flat.

**i.       Young conflates questions of contract formation and contract enforcement.**

Young insists that this Court can decide whether Defendants can enforce the arbitration agreement because "[e]ven when there is a valid delegation clause, the court determines whether a valid arbitration agreement exists before referring the matter to an arbitrator." Opp. 22 (internal quotation marks omitted) (citing cases about contract formation). His argument conflates issues of contract *formation*, which Defendants agree are properly decided by the Court, with issues of contract *enforcement*, which Exodus' TOS delegate to an arbitrator. Mot. 9; *see infra* 12-15. Contract formation and contract enforcement are distinct concepts—the latter of which can be delegated to arbitration. *See Casa Arena Blanca LLC v. Rainwater by Est. of Green*, 2022 WL 839800, at *5 (10th Cir. Mar. 22, 2022) (delegation is appropriate when the issue is not one "of contract formation, only contract enforcement"). And when contract *enforcement* is in dispute, the FAA's presumption in favor of arbitrability does apply. *Contra* Opp. 22-23; *see Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 939 (S.D. Cal. 2022) ("[T]he FAA … requires that [plaintiff] bring his claims, as well as his disputes related to the … enforceability of the arbitration agreement, before an arbitrator.").

Rather than acknowledge this critical distinction, Young ignores Defendants' caselaw showing that the delegation of contract *enforcement* questions encompasses the delegation of whether *nonsignatories* can *enforce* the contract. For instance, in *Swiger v. Rosette*, 989 F.3d

- 11 -

501, 507 (6th Cir. 2021), the Sixth Circuit held that whether a nonsignatory defendant could enforce the arbitration agreement accepted by the plaintiff "presents a question of arbitrability" that was "delegated to an arbitrator." In *Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 715 (5th Cir. 2017), the Fifth Circuit similarly delegated to an arbitrator the question of whether a nonsignatory could enforce the arbitration agreement that the plaintiff had entered into with another party. Likewise, in *White v. Ring LLC*, 2023 WL 1097554, at *6 n.3 (C.D. Cal. Jan. 25, 2023), the district court compelled to arbitration the question whether a nonsignatory could enforce the arbitration agreement under the third-party beneficiary doctrine. Young does not even cite—let alone attempt to distinguish—these cases.

Instead, Young relies on a tautology: "when the party seeking to enforce arbitration is a nonsignatory, the issue of arbitrability falls to the trial court because the nonsignatory was not one of the contracting parties." Opp. 22. Nonsignatories are by definition "not one of the contracting parties," but that does not mean that only courts can decide whether those parties are authorized to enforce an agreement. If that were so, then the Sixth Circuit, Fifth Circuit, and Central District of California would have been wrong in *Swiger, Brittania-U Nigeria*, and *White*—cases Young does not even attempt to address. Even if this Court thinks that Defendants' arguments are "wholly groundless," it must compel arbitration of questions about contract enforcement. *Henry Schein, Inc.*, 139 S. Ct. at 529-30.

> **ii.      Exodus' TOS clearly delegate questions of contract enforcement and the scope of the arbitration agreement to an arbitrator.**

As Defendants explained (at Mot. 8-11), Exodus' TOS unambiguously delegate questions of contract enforcement to an arbitrator, as it provides: "The ***arbitrator*** … will have ***exclusive authority*** to (a) determine the scope and ***enforceability of this Arbitration Agreement*** and (b) resolve ***any dispute related to the*** interpretation, applicability, [or] ***enforceability*** … of this Arbitration Agreement." Dkt. No. 78-3 ¶ 10.3 (emphases added). To get around this capacious language, Young focuses on a couple of phrases that are limited to the contracting parties but without giving effect to the remainder of the arbitration agreement, which makes clear that nonsignatories like Defendants may take advantage of arbitration.

First, Young emphasizes paragraph 10.1's reference to the "relationship" between "you[]" and "Exodus." Opp. 19. But he disregards the rest of that very sentence, which states broadly that "*any dispute* or claim *relating in any way* to your access *or use of the Site*, Services, or Software, or to any aspect of your relationship with Exodus, will be resolved by binding arbitration, rather than in court …." Dkt. No. 78-3 ¶ 10.1 (emphases added). This sentence delegates to arbitration any dispute related to Young's "relationship with Exodus" *and* any dispute related "in any way" to Young's use of his Exodus wallet. It is not an either/or proposition. *See Morrison v. Zangpo*, 2008 WL 4449585, at *6 (N.D. Cal. Sept. 30, 2008) ("disjunctive between these two clauses implies the parties intended to have the scope of arbitrability sweep broadly to cover disputes which have any relationship to the [covered subject matter]"). Young also misreads paragraph 10.3, which prohibits consolidation or joinder of multiple arbitration proceedings, cases, or parties—none of which Defendants seek here. *Contra* Opp. 20. Next, Young emphasizes the references in paragraph 10.3 to "you and us [Exodus]," claiming they constitute "exclusionary language" that precludes delegation of questions about third-party enforcement. Opp. 20. But Young overlooks critical differences between Exodus' TOS and those in the cases he cites, including *Kramer* and its progeny.

In *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013), the Ninth Circuit declined to delegate an issue of third-party enforcement because the arbitration clause said: "Either you or we may choose to have any dispute between you and us decided by arbitration." Opp. 20. That clause is distinguishable for two independent reasons: it did *not* delegate questions of contract *enforcement* and it "expressly limited" *who could elect to arbitrate* a dispute to the contracting parties. 705 F.3d at 1127. Here, by contrast, there is no language expressly limiting who can "choose to have any dispute … decided by arbitration." *Id.* Immediately before the reference to "you and us [Exodus]," the parties grant the arbitrator "*exclusive authority*" to "determine the scope and *enforceability* of this Arbitration Agreement and to "resolve *any dispute* related to [its] interpretation, application, [or] *enforceability*." Dkt. No. 78-3 ¶ 10.3 (emphases added). *Patterson v. Jump Trading LLC* is distinguishable for the same reasons. *See* 2024 WL 49055, at *7 (N.D. Cal. Jan. 4, 2024) (analyzing narrow language of arbitration clause,

- 13 -

1  which was limited to disputes about "any acts or omissions for which you may contend that *we*

2  are liable" and which did not delegate questions about the contract's enforceability).[7]

3       Young also claims that paragraphs 1.4 and 5 of Exodus' TOS, which limit Exodus'

4  liability for the use of "Third Party Services" and "Third Party Properties," are akin to a

5  "negating clause" that creates "a netherworld" where the terms, including the arbitration

6  agreement, do not apply. Opp. 21. But, as Young acknowledges, a typical "negating clause"

7  states that the agreement is "for the exclusive benefit of the Parties hereto and shall not be

8  construed to create any right or benefit to any other party whatsoever." Opp. 22 (quoting *Reid v.*

9  *Tandym Grp., LLC*, 2023 WL 6389131, at *11 (S.D.N.Y. Sept. 29, 2023)). Paragraphs 1.4 and 5

10 of Exodus' TOS simply explain that third parties' terms *also* apply to users' transactions—not

11 that such terms apply *to the exclusion* of Exodus' TOS. Dkt. No. 78-3 ¶¶ 1.4, 5.

12      If there were any doubt whether Exodus' TOS delegate questions of third-party

13 enforcement to an arbitrator, it is dispelled by the incorporation of JAMS rules. *See id.* ¶ 10.2.

14 The Ninth Circuit recently held that "[i]ncorporation of the JAMS arbitration rules by reference

15 constitutes clear and unmistakable evidence that the parties agree to arbitrate arbitrability."

16 *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024); *see* Mot. 10 (citing

17 additional cases). Young argues that such incorporation is insufficient to accomplish delegation

18 when one of the parties is "unsophisticated," Opp. 23, but the "greater weight of authority" holds

19 that the parties' sophistication does not alter the analysis. *Gerlach v. Tickmark, Inc.*, 2021 WL

20 3191692, at *4 (N.D. Cal. July 28, 2021) (surveying caselaw); *In re: BAM Trading Servs. Inc.*

21 *Securities Litig.*, 2024 WL 2520432, at *5 (N.D. Cal. May 14, 2024) (this holding "is consistent

22 with the approach taken by other federal courts of appeal" and "an alternative approach 'requires

23 impractical line-drawing'").[8] Even if Young's sophistication mattered, he "has not alleged, let

24

25 ___

   [7] *Faucett v. Move, Inc.*, 2024 WL 2106727, at *8-9 (C.D. Cal. Apr. 22, 2024), cited at Opp. 23,
26     misinterpreted *Kramer* as meaning that delegation clauses can never apply to nonsignatories.
       As discussed, *Kramer* does not stand for that proposition.

27 [8] Young's additional argument that "Defendants' cited authorities do not involve attempts to
       enforce arbitration provisions … *by nonsignatories*," Opp. 24, simply ignores Defendants'
28

alone offered evidence, that he is an unsophisticated consumer." *BAM Trading.*, 2024 WL 2520432, at \*5. Plaintiff argues that he "is not a large corporation or trained in the law," Opp. 25, but that is not the test of sophistication. Much like the plaintiff in *BAM Trading*, Young claims to be "an investor in crypto assets" who purchased crypto tokens in the hundreds of thousands of dollars—more than any other potential class representative. *See* Dkt. No. 33-3. This is "a far cry from the unsophisticated consumers in the cases on which he relies." *BAM Trading*, at \*5.[9]

### C.   If The Court Decides The Enforceability Question, It Should Allow Defendants To Enforce The Arbitration Agreement Against Young.

Although the Court need not reach the issue, Young is in fact bound by the arbitration agreement under equitable estoppel. Young wrongly asserts (Opp. 2) that courts within the Ninth Circuit "refuse to apply" the equitable estoppel doctrine on behalf of nonsignatory defendants. In doing so, he fails to raise binding precedent: In 2021, the Ninth Circuit expressly found equitable estoppel to be a viable means of compelling arbitration. *See Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 873 & n.7 (9th Cir. 2021) (noting the Ninth Circuit had in fact applied the doctrine since 2020).[10]

---

citations to *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 209-11 (2d Cir. 2005) and *Apollo Comp., Inc. v. Berg*, 886 F.2d 469, 473 (1st Cir. 1989). Mot. 10 n.8.

[9] By addressing only named Plaintiff's sophistication and otherwise addressing arbitrability of Young's claims, Defendants do not waive their right to compel arbitration against putative class members. *See generally Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 481 (9th Cir. 2023). In any event, Defendants could not waive their right at this point because waiver requires that Defendants have "knowledge of an existing right to compel arbitration." *Id.* at 468. Plaintiff's Complaint defines the putative class to include "[a]ll persons or entities who purchased SOL securities from March 24, 2020, to the present." Dkt. No. 68 ¶ 121. But as Plaintiff's own allegations make clear, these alleged securities may have been purchased using platforms that permit Defendants to compel arbitration. Defendants will not know whether they have a right to compel arbitration until they obtain additional details about and discovery into the identity and purchases of putative class members.

[10] *Franklin*, 998 F.3d at 872-73, expressly rejected the argument that *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013), cited at Opp. 2, foreclosed application of equitable estoppel to claims against nonsignatory defendants. Young's other case, *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166 (9th Cir. 2021), did not purport to overrule *Franklin*. Moreover, *Setty* is inapposite, as it applied the New York Convention, and the court there "accept[ed] that a nonsignatory *could compel arbitration*." *Id.* at 1169 (emphasis added).

- 15 -

Young contends (Opp. 3) that because his "claims are statutory" and based on alleged "violation[s] of federal and state securities laws," equitable estoppel cannot apply. But for estoppel purposes, it does not matter that Plaintiff brings claims under statutory securities laws rather than common-law contract theories. *See Herrera v. Cathay Pac. Airways Ltd.,* 94 F.4th 1083, 1090 (9th Cir. 2024) ("[I]t is the substance of the plaintiff's claim that counts, not the form of its pleading."). In fact, California courts routinely apply equitable estoppel to compel arbitration of statutory claims, including federal securities claims. *See, e.g.*, *Crypto Asset Fund, LLC v. OPSkins Grp. Inc.*, 478 F. Supp. 3d 919, 928-29 (C.D. Cal. 2020)  (finding "estoppel applies" to compel plaintiff's arbitration of Securities Act claims and other statutory, tort, and contract claims); *Garcia v. Pexco, LLC*, 11 Cal.App.5th 782, 795-96 (2017) (granting nonsignatory's motion to compel arbitration of statutory wage-and-hour claims under equitable estoppel); *cf. Khalatian v. Prime Time Shuttle, Inc.*, 237 Cal.App.4th 651, 660 (2015) (rejecting argument that statutory claims were not directly arbitrable). While Young points to cases where courts have declined to apply equitable estoppel to compel arbitration of statutory claims, none of these cases established a categorical rule that statutory claims may never be subject to arbitration; they simply required that statutory claims, like all others, be sufficiently intertwined with the contract to warrant its enforcement by a nonsignatory.[11]

---

[11] *In re Carrier IQ, Inc. Consumer Priv. Litig.*, 2014 WL 1338474, at *8 (N.D. Cal. Mar. 28, 2014) and *Wiedenbeck v. United Educ. Inst.*, 2015 WL 12743599, at *4 (C.D. Cal. Dec. 15, 2015) discuss this issue (and find the claims insufficiently intertwined), but Young puzzlingly cites to an irrelevant portion of those decisions addressing whether estoppel is appropriate when a nonsignatory invokes the third-party contract as part of a *defense*. *See* Opp. 3; *see also infra* 17-18. Plaintiff's citation to *Aliff v. Vervent, Inc.*, 2020 WL 5709197 (S.D. Cal. Sept. 24, 2020) is equally unavailing. First, the arbitration clause in Exodus' TOS is broader than the clause in *Aliff*, which expressly limited enforcement to the borrower and the loan issuer, meaning a nonsignatory loan servicer could not enforce the contract. *Id.* at *7. Second, in *Aliff*, the statutory claims could exist independent of the contract (*e.g.*, the RICO fraud claim could exist independent of the loan agreement if the defendants misled the plaintiffs into believing they had obligations that did not exist under the agreement, and the FDCPA claims against the loan servicer were disconnected entirely from the loan). Here, by contrast, Young's claims against Defendants could not exist apart from the agreement by which he purchased SOL. And, as explained *infra* at 18, Young's claims arise from obligations in Exodus' TOS, unlike the plaintiffs' claims in *Aliff*. Third, Young quotes from a section of *Aliff* addressing the defendants' "joint misconduct" as a basis for arbitration—a theory not at issue here. *Id.* at *9.

### i. Young's claims are sufficiently intertwined with the Exodus TOS to justify arbitration under equitable estoppel.

Young's claims are dependent on and "intertwined with" the Exodus TOS in multiple ways. First, although Young does not allege that he purchased SOL from Defendants, he insists that Exodus acted as an intermediary for his SOL purchases on secondary exchanges. Mot. 12-13. In *Herrera*, the Ninth Circuit held that the plaintiff was equitably estopped from denying arbitration based on an agreement with a "middleman" to the relevant transactions. 94 F.4th at 1090. Indeed, arbitration is particularly appropriate here because the agreement containing the arbitration clause governs the very transactions upon which Young must rely to prove damages should he prevail. *See* Dkt. No. 68 ¶ 120 (claiming damages based on allegation that SOL tokens "today are worth far less than the price the Class Members paid for them"); *see also Herrera*, 94 F.4th at 1090; *Roberts v. Obelisk, Inc.*, 2019 WL 1902605, at *7 (S.D. Cal. Apr. 29, 2019); *Coinmint, LLC v. DX Corr Design, Inc.*, 2023 WL 9595893, at *2-3 (N.D. Cal. Apr. 24, 2023).

Second, this is not—as Young seems to suggest—a case where the contract enters only as a defense to the plaintiff's claims. *See* Opp. 3-4 (citing *In re Carrier IQ*, 2014 WL 1338474, at *7 and *Wiedenbeck*, 2015 WL 12743599, at *4). In both *Carrier* and *Wiedenback*, the defendants themselves relied on the contract as part of their defense. In *Carrier*, the defendants "invok[ed] the agreements to disprove Plaintiffs' factual assertions" regarding lack of consent or authority in connection with the interception and transmittal of private information. 2014 WL 1338474, at *8. Likewise, in *Wiedenback*, the defendants argued that the plaintiff previously had consented to receive calls, as memorialized in the agreement, which barred TCPA claims. 2015 WL 12743599, at *4. Here, by contrast, Defendants have not relied on the Exodus TOS to defend against Young's claims.

---

Finally, *Aliff*'s reasoning arguably suggests that equitable estoppel could never apply to statutory or tort claims, which conflicts with longstanding California law holding that "a broadly worded arbitration clause … may extend to tort claims." *Garcia v. Pexco, LLC,* 11 Cal.App.5th 782, 795-96 (2017); *contra Aliff*, 2020 WL 5709197, at *9.

1       Indeed, illustrating the extent to which his claims are intertwined with Exodus' TOS,

2  Young himself invokes features of the Exodus platform and TOS in attempting to overcome

3  Defendants' Motion to Dismiss his Securities Act claims. Defendants argued that Young failed

4  to meet his burden to plead a domestic transaction. Dkt. No. 76 at 17; Dkt. No. 80 at 12. In an

5  effort to show that he has carried this burden, Young *himself* invoked the operation of Exodus

6  transactions and the language of Exodus' TOS. *See* Dkt. No. 88 at 17 (arguing that securities

7  violations arise at the time of purchase because a "feature on the Exodus application" makes "a

8  transaction . . . irrevocable once the user taps the 'Swap Now' feature"); Dkt. Nos. 89, 89-1

9  (seeking judicial notice of same); Dkt. No. 88 at 4 ("[N]othing in the [TOS] for Exodus users

10  shows that Plaintiff would have been aware of the location of the counter-party to his

11  purchase."); *id.* at 18 n.16 ("Nothing in the Exodus terms and conditions suggest a user would

12  know who a counter party would be."). Put simply, Young raised Exodus' TOS in an effort to

13  establish a critical element of his securities claims.[12] Thus, contrary to his argument otherwise,

14  Young must—and in fact does—"attempt to seek [a] benefit from the Exodus Agreement" in

15  proving his own claims. Opp. 3 (citing *In re Henson,* 869 F.3d 1052, 1061 (9th Cir. 2017)).

16       Finally, arbitration would still be required even if Young were correct that equitable

17  estoppel may be invoked only when the allegations involve a "violation of any duty, obligation,

18  term or condition imposed by the agreement[]." Opp. 3 (citing *Kramer*, 705 F.3d at 1130 and

19  *Goldman v. KPMG*, 173 Cal.App.4th 209, 230 (2009)). Here, Exodus' TOS expressly proscribe

20  using Exodus in any way that is "not compliant with any U.S. or international securities laws."

21  Dkt. No. 78-3 ¶ 3. Read in connection with the broad agreement to arbitrate "any dispute or

22  claim relating in any way to your access or use of the Site, Services, or Software," *id.* ¶ 10.1, this

23  contractual prohibition further ties Young's claims to the "dut[ies], obligation[s], term[s], or

24  conditions[s]" of the TOS, Opp. 3, and clearly places disputes related to alleged securities

25

26

---

27  [12] This, of course, follows Young's affirmative invocation of the Exodus platform as the medium
     through which he purchased the alleged securities at issue. *See* Affidavit of Mark Young, Ex.

28     B to Decl. of Sunny S. Sarkis ISO Mot. to Serve as Lead Pl. & to Appoint Lead Counsel ¶ 5.

1  violations in the arbitrable category. As such, even if this Court accepts Young's unduly narrow

2  conception of the doctrine, it should compel arbitration under equitable estoppel.

3  **ii.    Young's arguments against equitable estoppel are meritless.**

4  Young goes to great lengths to distinguish the cases cited by Defendants, but the

5  distinctions he draws are nonexistent or immaterial at best. For example, without citation, Young

6  claims that *Herrera* turned on whether the nonsignatory was the "agent of the signatory to the

7  arbitration agreement." Opp. 4. But Defendants did not cite *Herrera* for this proposition, nor

8  could they have. *Herrera* does not discuss agency at all; rather, it analyzes the enforceability of

9  an arbitration agreement under equitable estoppel. That is why Defendants cited *Herrera*, but not

10  *Villamar v. Clean Harbors Environmental Services*, 2022 WL 4465549, at *2 (C.D. Cal. Sept.

11  23, 2022)—the latter of which Young cites to show that "a nonsignatory sued as an agent of a

12  signatory may enforce an arbitration agreement." Opp. 4. Because Defendants do not advance an

13  agency theory here, *Villamar* is inapposite.

14  Young's remaining attempts to distinguish the cases cited by Defendants fare no better. It

15  does not matter that the court in *Coinmint, LLC v. DX Corr Design, Inc*, compelled arbitration of

16  claims against the nonsignatory defendants while the plaintiff proceeded concurrently with

17  arbitration against the signatory. 2023 WL 9595893, at *1 (describing procedural history);

18  *contra* Opp. 5-6 (purporting to "distinguish" *Coinmint* on this basis). What matters is that the

19  court analyzed the claims against the nonsignatory defendants under the traditional equitable

20  estoppel analysis and found that the plaintiff's claims were "intimately founded in and

21  intertwined with the underlying [agreement]," thereby warranting arbitration. *Id.* at *3-4 (finding

22  multiple independent grounds warranted application of equitable estoppel).

23  Any purported difference in the remaining cases noted by Young are a function of the

24  specific contracts and specific claims in those cases—not of a different framework or analysis

25  for equitable estoppel. For example, *Franklin* involves a different type of contract (employment

26  contract) and claims (labor and wage claims) than those here. *See* 998 F.3d at 874-76. Yet, as in

27  *Garcia v. Pexco*, the *Franklin* court "simply applie[d] a rule that we have (necessarily) long

28  recognized—that equitable estoppel applies to claims 'intimately founded in and intertwined

1    with' an underlying contract—to different facts." *Id.* at 874 (finding that *Garcia* "is consistent

2    with Ninth Circuit precedent on equitable estoppel," and compelling arbitration of similar

3    claims). Likewise, in *MouseBelt Labs Pte. Ltd. v. Armstrong*, 674 F. Supp. 3d 728, 741 (N.D.

4    Cal. 2023) and *Roberts*, 2019 WL 1902605, at *7, the courts applied the longstanding principles

5    of equitable estoppel and found that plaintiffs' claims relied on the terms of the respective

6    agreements—just as Young does here. *See supra* 15-18.

7            Finally, Young misunderstands Defendants' argument and misstates the law by arguing

8    that his claims are not "inextricably bound with" Exodus' TOS because they are not "predicated

9    on allegations that Exodus colluded or otherwise acted in concert with Defendants." Opp. 7. This

10   argument collapses two different bases for equitable estoppel, which applies when *either* (a) the

11   claims themselves are "intertwined with the underlying contract," *or* (b) the plaintiff alleges

12   "interdependent and concerted misconduct" by a signatory and nonsignatory where such

13   misconduct is "founded in or intimately connected with the obligations of the underlying

14   agreement." *Herrera*, 94 4th at 1088, n.5. Young has not alleged interconnected misconduct, and

15   Defendants never suggested otherwise. In fact, in an apparent attempt to avoid arbitration,

16   Young alleged no conduct whatsoever by Exodus. Defendants thus argued for estoppel under the

17   "intertwined" prong, which is unaffected by Young's tactical omission of Exodus from this suit.

18   **III.    CONCLUSION**

19           For the reasons above, the Court should grant the Joint Motion to Compel Arbitration.

20

21                                                   Respectfully Submitted,

22       June 20, 2024                           */s/ Sachi Schuricht*

23                                                   ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                      SACHI SCHURICHT (SBN 317845)
24                                                    sschuricht@orrick.com
                                                      The Orrick Building
25                                                    405 Howard Street
                                                      San Francisco, CA 94105-2669
26                                                    Telephone:  +1 415 773 5700
                                                      Facsimile:   +1 415 773 5759

27

28

DAVID MCGILL (appearance *pro hac vice*)
dmcgill@orrick.com
2100 Pennsylvania Avenue NW
Washington, D.C. 20037
Telephone:   +1 202 339 8666
Facsimile:    +1 202 339 8500

LATHAM & WATKINS LLP
SUSAN E. ENGEL (appearance *pro hac vice*)
susan.engel@lw.com
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004-1304
Telephone:   +1 202 637 2200
Facsimile:    +1 202 637 2201

MATTHEW RAWLINSON (SBN 231890)
matt.rawlinson@lw.com
140 Scott Drive
Menlo Park, CA 94025
Telephone:   +1 650 328 4600

MORGAN E. WHITWORTH (SBN 304907)
morgan.whitworth@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111
Telephone:   +1 415 391 0600

***Attorneys for Defendant Solana Labs, Inc.***

June 20, 2024

*/s/ Scott M. Malzahn*
_____

WAYMAKER LLP
SCOTT M. MALZAHN
(SBN 229204)
smalzahn@waymakerlaw.com
BRIAN E. KLEIN (SBN 258486)
bklein@waymakerlaw.com
KEVIN MICHAEL CASEY (SBN 338924)
kcasey@waymakerlaw.com
515 S. Flower Street
Ste 3500
Los Angeles, CA 90071
Telephone:  +1 424 652 7800
Facsimile:   +1 424 652 7850

***Attorneys for Defendants Multicoin Capital
Management, LLC and Kyle Samani***

- 21 -

1
2

**SIGNATURE ATTESTATION**

3          I am the ECF User whose identification and password are being used to file the foregoing
4    Joint Reply In Further Support of Motion to Compel Arbitration, and Memorandum of Points
5    and Authorities in Support Thereof. Pursuant to L.R 5-1(i)(3) regarding signatures, I, Sachi
6    Schuricht, attest that concurrence in the filing of this document has been obtained.
7
8    Dated: June 20, 2024                              */s/ Sachi Schuricht*
9                                                      Sachi Schuricht
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28